J. Malcolm DeVoy IV (Nevada Bar No. 11950)
Randazza Legal Group
jmd@Randazza.com
7001 W. Charleston Boulevard, # 1043
Las Vegas, NV 89117
Telephone: 888-667-1113
Facsimile: 305-437-7662

Attorney for Defendant,
*Wayne Hoehn*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited liability company, | Case No. 2:11-cv-00050 |
| Plaintiff, | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| WAYNE HOEHN, an individual | |
| Defendant. | |

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

Motion for Summary Judgment ...................................................................................... 1

Memorandum of Points and Authorities ......................................................................... 1

I. Facts ............................................................................................................................. 1

    A.  Introduction ......................................................................................................... 1

    B.  Statement of Facts ............................................................................................... 2

II. Legal Standard for Summary Judgment ..................................................................... 4

III. Righthaven Cannot Establish Copyright Infringement and Withstand Summary Judgment   5

    A.  Hoehn's Republication of the Article was for a Transformative Purpose and

        Possessed the Characteristics of an Educational, Critical and Non-Commercial Use   6

        1.  Hoehn's Purpose in republishing the Article is a Protectable Fair Use

            Interest. ......................................................................................................... 6

        2.  Hoehn's Use of the Article was Transformative in its Character. .................. 7

        3.  Hoehn's Use of the Article was for a Noncommercial Purpose. .................... 9

    B.  The Article is Informative in Nature, Not Creative, and Prone to Fair Use. ...... 10

    C.  Hoehn's Use of the Full Article Does Not Weigh Against Finding Fair Use. ..... 11

    D.  Hoehn's Use Could Not Have Had an Effect on the Article's Potential Market. ... 12

Conclusion ..................................................................................................................... 15

Certificate of Service ..................................................................................................... 17

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

TABLE OF AUTHORITIES

Statutes

17 U.S.C. § 107……………………………………………….……….2, 5-6, 15

17 U.S.C. § 107(4)…………………………………………………………12

17 U.S.C. § 504(c)…………………………………………………..……4


Rules

Fed. R. Civ. P. 56…………………………………………………………1

Fed. R. Civ. P. 56(c)………………………………………………………4

Local Rule 56-1……………………………………………………………4


Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)………………………………4-5

*Campbell v. Acuff-Rose Music*, 510 U.S. 569, 576-77, 579, 586-87 (1994)……..……...5-6, 8-9, 11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)……………………………………4, 5

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1399 (9th Cir. 1997)………5

*Elsmere Music, Inc. v. Nat'l Broadcasting Co.*, 482 F. Supp. 741, 747 (S.D.N.Y. 1980)………13

*Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 559, 562-64, 566-68 (1985)…………………………………………………………..5, 9-10, 12-14

*Hofheinz v. A&E Networks*, 146 F. Supp. 2d 442, 446-47 (S.D.N.Y. 2001)……………………...8

*Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1152-56 (9th Cir. 1986)……7-14

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818, 820-21 (9th Cir. 2003)………………...8, 10-14

*Los Angeles News. Svc. v. CBS Broadcasting, Inc.*, 305 F.3d 924, 938, 940 (9th Cir. 2002)……………………………………………………...5-6, 8, 10

*Los Angeles News Svc. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1998)…………10

*Los Angeles News Svc. v. Reuters Television Int'l*, 149 F.3d 987, 993-94 (9th Cir. 1998)……………………………………………….……………5, 10

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

1   *Mattel, Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 799 (9th Cir. 2003)……………….…………..5

2   *Meeropol v. Nizer*, 560 F.2d 1061, 1070 (2d Cir. 1977)…………………….……….…….13

3   *Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007)………………..8-9, 11-14

4   *Righthaven v. Angle*, No. 2:10- cv-01492 (D. Nev. Filed Sept. 3, 2010)…………………………1

5   *Righthaven v. Democratic Party of Nevada*, No. 2:10-cv-001129 (D. Nev. Filed July 9, 2010)…1

6   *Righthaven v. Drudge*, No. 2:10-cv-02135 (D. Nev. Filed Dec. 8, 2010)……………………….1

7   *Righthaven v. Klerks*, No. 2:10-cv-00741 *2010 WL 3724897* at *3 (D. Nev. Sept. 7, 2010)……10

8   *Righthaven v. National Organization for the Reform of Marijuana Laws*, 2:10-cv-00351 (D. Nev.

9   Filed Mar. 15, 2010)…………………………………………………………………….1

10  *Righthaven LLC v. Realty One Group, Inc.*, 38 Med. L. Rptr. 2441 (D. Nev. 2010)……………6

11  *Righthaven v. Vote for the Worst, LLC*, No. 2:10-cv-01045 (D. Nev. Filed June 28, 2010)……..1

12  *Righthaven v. Wilcox*, No. 2:10-cv-01192 (D. Nev. Filed Jul. 19, 2010)…………………………1

13  *Savage v. Council on Am.-Islamic Relations, Inc.*, 46 Med. L Rptr. 2089 (N.D. Cal. 2008)……..6

14  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448, 451, 453, 455

15  (1984)…………………………………………………………………………9, 13-15

16  *Stewart v. Abend*, 495 U.S. 207, 236 (1990)……………………………….…………..6

17  *Thornhill Publishing Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979)…………….…..4

18  *Wainwright Secy's v. Wall Street Transcript Corp.*, 558 F.2d 91, 96 (2d Cir. 1977)……………13

19  *Weissman v. Freeman*, 868 F.2d 1313, 1325 (2d Cir. 1989)……………………….…………..10

20
21
22
23
24
25
26
27
28

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

1  **MOTION FOR SUMMARY JUDGMENT**

2      Defendant Wayne Hoehn (herein "Hoehn," or the "Defendant") moves the Court for

3  summary judgment on the single claim raised in Plaintiff Righthaven, LLC's (herein

4  "Righthaven," or the "Plaintiff") Complaint.  No genuine material fact is in dispute.  The Court

5  may therefore enter judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56.

7  **MEMORANDUM OF POINTS AND AUTHORITIES**

8  **I. Facts**

9      **A. Introduction**

10      Righthaven has brought this lawsuit, like many others before this Court,[1] to wrest a quick

11  settlement from Mr. Hoehn on shaky copyright infringement grounds, based upon questionable

12  rights—rights it purchased from the author only *after* Righthaven discovered Hoehn's post, for

13  the sole purpose of filing suit against Hoehn.  Like other Righthaven targets, Hoehn is not a large

14  business or well-funded entity, but an individual who posted content from the *Las Vegas Review-*

15  *Journal* ("LVRJ") to a website in order to foster an online discussion about the article itself.

16  (Decl. of Wayne Hoehn, attached as "Exhibit A," ¶¶ 12-16.)   This commonplace conduct

17  permeates the internet to a degree where Righthaven would have to file lawsuits in perpetuity to

18  make it halt – if the law gave it a right to make it halt.  As this memorandum will show the

19  Court, Righthaven has no such right.

20      Presently, as in the past, people gather at churches and community centers, salons, barber

21  shops and taverns to discuss the issues of the day. Inevitably, someone would bring a newspaper

22  or magazine, or even just an article clipped therefrom, read an article in it to his or her friends,

23  and discussion would ensue.  Someone would even re-read a relevant portion of the article out

24  loud for emphasis.  Book clubs, where groups of people gather to discuss the books they have

26  ---
[1] *See, e.g., Righthaven v. Drudge*, No. 2:10-cv-02135 (D. Nev. Filed Dec. 8, 2010); *Righthaven v. Angle*, No. 2:10-
cv-01492 (D. Nev. Filed Sept. 3, 2010); *Righthaven v. Wilcox*, No. 2:10-cv-01192 (D. Nev. Filed Jul. 19, 2010);
27  *Righthaven v. Democratic Party of Nevada*, No. 2:10-cv-001129 (D. Nev. Filed July 9, 2010); *Righthaven v. Vote
for the Worst, LLC*, No. 2:10-cv-01045 (D. Nev. Filed June 28, 2010); *Righthaven v. National Organization for the
28  Reform of Marijuana Laws*, 2:10-cv-00351 (D. Nev. Filed Mar. 15, 2010).

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

read and even read excerpts to the attendees, are active in most communities.  This may have cost the publication a handful of immediate sales and cents of profit, as those in at the bar, or sitting around having their hair coiffed, had already taken in the article's context.  This interaction, however, is integral to functional society and community engagement – and exactly the conduct Righthaven seeks to stop (or simply extort money from participants) with this lawsuit.

The circumstances surrounding Hoehn's use of the LVRJ Article lead to an irrefutable legal conclusion that his republication of the article in this discussion forum constitutes fair use as a matter of law under 17 U.S.C. § 107.  There are no facts that would preclude Hoehn's use of the work from being immune to any damages for infringement under the fair use doctrine.  Thus, summary judgment is an appropriate remedy for this Court to award Hoehn in this case.

**B. Statement of Facts**

Wayne Hoehn, a Kentucky resident, enjoys discussing sports, betting and current events with friends and acquaintances, including MadJackSports.com's other forum users. (Exh. A ¶ 9.) A decorated veteran of the Vietnam War, Hoehn earned the Silver Star, Bronze Star Medal and Purple Heart among numerous other awards, during the course of his military service. (*Id.* ¶ 3.) Hoehn is also the proprietor of Mid-States Insurance Services, which has an A+ rating from the Better Business Bureau. (*Id.* ¶ 2.)

In lieu of the internet, Hoehn may have taken his affinity for debate and discussion to the local Veterans of Foreign Wars outpost and discussed newspaper articles with his friends there. In prior decades, he would have had no option.  As in any community or other interest group, Hoehn would have discussed news articles with his friends at the VFW, listening to their positions and explaining his own.  To broaden this experience, Hoehn took an avenue that would allow him to interact with the broadest possible cross-section of conversation partners: He decided to engage in these activities on a message board. (*Id.* ¶ 4.)

In 1999, Hoehn was one of millions of Americans becoming more engaged with the internet.  In July of that year, he signed up for an account at MadJackSports.  (*Id.*) This website

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

2

is located at <MadJackSports.com> (herein the "Website"), and it describes itself as "the premier handicapping and sportsbook discussion site on the web." A true and correct copy of the Website's main page is attached as Exhibit B. (*See* Decl. of J. Malcolm DeVoy, attached as Exhibit E, ¶¶ 2 and 4.) The Website also provided for discussion of a broad variety of other topics, including special forums for "Other Stuff" and "Politics and Religion." A true and correct copy of Hoehn's discussion thread at the center of this litigation, "CA/Ill to bite the big one," as it appeared on January 26, 2011, is attached as Exhibit D. Hoehn registered his account using the moniker "DOGS THAT BARK," allowed him to post on the Website's discussion forums. A true and correct copy of the public profile for Hoehn's account is attached as Exhibit C. (*See also* Exh. A ¶¶ 7-8.)  Never one to conceal his identity, though, Hoehn made his full name and contact information available in his account profile. (Exh. A ¶ 5.)

From July 1999 through January 2011, Hoehn engaged in vigorous debate and discussion on a multitude of topics; he made over 18,000 individual posts on the Website. (*See* Exh. C.) Each time Hoehn would leave a comment in a discussion thread, whether expressing his own new idea or responding to someone else, his post count increased by one. (*Id.*; *See also* Exh. A ¶ 8.)  Over more than a decade of discussion forum activity, Hoehn interacted, shared information and debated with dozens, if not hundreds of other registered forum users. (Exh. A ¶¶ 10-11.)

On November 29, 2010, Hoehn began a discussion thread titled "CA/Ill to bite the big one," debating the fiscal strain that public pensions place on the state budgets of Illinois and California. (Doc. # 1 Exh. 2; *see* Exh. D; Exh. E ¶ 3.)  In order to generate conversation among other forum users, Hoehn posted the November 28, 2010, LVRJ article "Public Employee Pensions; We Can't Afford Them" (the "Article") on the Website, complete with full attribution and copyright notice. (Doc. # 1 Exh. 2.)  Between November 29, 2010, when Hoehn first posted the Article for discussion, and December 3, 2010, 23 additional comments were posted in the discussion thread Hoehn began. (Exh. D.)

Hoehn did not post this for profit.  (Exh. A ¶ 11.)  The Website and its forum did not provide any mechanism by which Hoehn could even theoretically profit by posting the Article.

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

3

(*Id*. ¶ 20.)   Hoehn's sole purpose in posting the article was identical to a man cutting out a newspaper article and posting it on a community bulletin board – he sought to engage in debate and discussion with fellow citizens on a matter of public importance and to contribute to the crowd-sourced educational discussion about matters of public importance, as he had on many topics over the past decade.   (*Id*. ¶ 9.)   Hoehn participated in the discussion, advising other posters to read the article before offering their opinions. (Exh. D at 3.) Hoehn further discussed his experience with the legal system, which related to a conversation subtopic about a recent legal setback for those seeking Barack Obama's birth certificate (*Id*. at 3 and 12.)

Righthaven filed suit against Hoehn on January 11, 2011. (Doc. # 1.)   Yet, Hoehn's comment was removed from the discussion forum on January 6, 2011, meaning the Article was available for merely 38 days. (Exh. A ¶¶ 12 and 21.)   In its Complaint, Righthaven raised one claim of copyright infringement against Hoehn, alleging statutory damages up to $150,000.00 under 17 U.S.C. § 504(c). (Doc. # 1 ¶ 38-39 and at 6:3-4.)   Hoehn filed an Answer to the Complaint on February 4, 2011 (Doc. # 7.)   A Statement of Material Facts not in Issue is filed with contemporaneously with this Motion, as required by Local Rule 56-1.

**II. Legal Standard for Summary Judgment**

A party is entitled to summary judgment as a matter of law when the party can demonstrate that there is no genuine issue as to any material fact.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no genuine issue of material fact"). Moreover, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979).

If the moving party seeks summary judgment with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

evidence.  By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence supporting the claim or defense.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

**III. Righthaven Cannot Establish Copyright Infringement and Withstand Summary Judgment.**

The republication of copyrighted material does not automatically give rise to a claim for copyright infringement.  A defense to copyright infringement claims, the fair use doctrine holds harmless those who use copyrighted material for purposes of education, commentary, or critique. 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 576-77 (1994); *Mattel, Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 799 (9th Cir. 2003); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1399  (9th Cir. 1997).  When determining the fair use of copyrighted materials for purposes such as criticism, comment, news reporting, teaching, scholarship or research, courts look to the following factors:

> 1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> 2) the nature of the copyrighted work;
>
> 3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> 4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107; *Campbell*, 510 U.S. at 576-77; *Los Angeles News. Svc. v. CBS Broadcasting, Inc.*, 305 F.3d 924, 938 (9th Cir. 2002).  No one factor is dispositive, and they must be weighed together. *Campbell*, 510 U.S. at 577; *Los Angeles News Svc. v. Reuters Television Int'l*, 149 F.3d 987, 993 (9th Cir. 1998).  These factors are non-exhaustive, and this Court may look beyond them in ascertaining the defendant's fair use of copyrighted material. *Campbell*, 510 U.S. at 577;

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

*Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 559 (1985).  Indeed, courts "avoid rigid application of the copyright statute when […] it would stifle the very creativity that law is designed to foster." *Stewart v. Abend*, 495 U.S. 207, 236 (1990).

Hoehn's use of the Article falls within the scope of education, comment and criticism, rendering it as fair use under copyright law.  When copyrighted works are used for these purposes within a court's fair use analysis, along with other factors, their use is non-infringing. 17 U.S.C. § 107; *See CBS Broadcasting*, 305 F.3d at 924; *Savage v. Council on Am.-Islamic Relations, Inc.*, 46 Med. L Rptr. 2089 (N.D. Cal. 2008).  In fact, this very Court has seen fit to dispense with this plaintiff's over-reaching in *Righthaven LLC v. Realty One Group, Inc.*, 38 Med. L. Rptr. 2441 (D. Nev. 2010) (finding fair use on a Motion to Dismiss).  The undisputed facts in this case show that Hoehn's republication of the Article satisfies the factors set forth in 17 U.S.C. § 107 and, consistent with existing precedent, weighs in favor of this Court finding the Article's republication to be constitutionally protected fair use.  Each factor is analyzed individually below.

**A. Hoehn's Republication of the Article was for a Transformative Purpose and Possessed the Characteristics of an Educational, Critical and Non-Commercial Use.**

*1. Hoehn's Purpose in Republishing the Article is a Protectable Fair Use Interest.*

In republishing the Article, Hoehn sought to inform and discuss the budget crises of California and Illinois with others.  This republication satisfies three purposes for republication that are protected by the fair use doctrine: education, comment and criticism. 17 U.S.C. § 107; *Campbell*, 510 U.S. at 576-77.  Hoehn's use of the article satisfies all of these conditions as a matter of law.

Hoehn's very posting of the article on a discussion forum invites the inescapable conclusion that he posted the article not to compete with the LVRJ, but to engage others in discussion of the facts and opinions expressed therein. (Exh. D at 1.)  The forum post's title, "CA/Ill to bite the big one," was an invitation for forum readers and commentators to read the

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

article, discover exactly why California and Illinois would "bite the big one," and what that "bite" would involve. (Doc. # 1 Exh. 2; Exh. D at 1.)

The other forum users' reaction to this article fulfilled Hoehn's purpose in posting it. Within a few days, 23 additional posts were made discussing a variety of topics, largely centering on the legal and political realities of America (Exh. D), a subject addressed in the source material (Doc. # 1 Exh. 2).  The ensuing discussion addressed topics ranging from legal challenges to obtain President Barack Obama's Birth Certificate (Exh. D at 1-2), earmarks for funding (*id.* at 3), the budgetary woes faced by Illinois and California (*id.* at 2-3), issues with access to justice and the legal system (*id.* at 3), and impediments that the two-party political system creates to finding solutions to budgeting and other problems faced by state and federal governments (*id.* at 4-5).

As seen in Exhibit D, commentary and criticism concerning the article, and of the topics to which it related, constituted the true nature of the work's republication.  Within the 24-post discussion thread, the Article was reproduced in only one post, constituting 4.2% of the total exchange between forum members. (Exh. D.)  Moreover, the facts set forth within the Article, discussed in Section 2, presented new information to participants in the discussion, informing them of Illinois and California's pension-imposed fiscal woes and the effects that a switch to statewide defined-contribution retirement benefits would have on those states. (Doc. # 1 Exh. 2.) Based on the comments seen in Exhibit D, discussion participants realized Hoehn's goal of learning from the article, or at least discussing its merits and contentions.

### 2. Hoehn's Use of the Article was Transformative in its Character.

Hoehn's republication of the Article in a discussion forum was a transformative use of the copyrighted work in order to educate other forum users while stimulating and engaging in criticism and discussion.  The quantity of work copied does not determine the character and purpose of its use. *See Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1152-53 (9th Cir. 1986) (holding that Moral Majority's use of a full ad created by Hustler Magazine, even in a fundraising effort, constituted fair use of Hustler's copyrighted material).  Instead, a use of copyrighted material's transformative nature is assessed based on whether the use adds

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

something new to the copyrighted work, altering the first with a new expression, meaning or message; the more transformative the work, the less will be the significance of other factors potentially weighing against fair use. *Campbell*, 510 U.S. at 579; *CBS Broadcasting*, 305 F.3d at 938.

In addition to the wholly republished advertisement in *Hustler Magazine*, other copyrighted content has been reproduced in full, yet found to be transformative.  In *Kelly v. Arriba Soft Corporation*, the Ninth Circuit held that Arriba, a search engine that reproduced the plaintiff's images during its image searches, was not liable for copyright infringement in making such copies when presenting image search results to end-users. 336 F.3d 811 (9th Cir. 2003). Specifically, the court held that its creation and ordering of images results into a new work – the results requested by a search user – that is intended to engage and inform the user, rather than merely reproduce a copyright holder's images. *Arriba*, 336 F.3d at 818.  Similarly, the Ninth Circuit later ruled that reproducing an exact copy of copyrighted work does not diminish a transformative use like Arriba's, using copyrighted works to present a user with information, so long as the copy serves a different function than the original work. *Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007); *See also Hofheinz v. A&E Networks*, 146 F. Supp. 2d 442, 446-47 (S.D.N.Y. 2001) (finding that the inclusion of copyrighted material in a biography was "transformative" because it was not recreating the original work's creative expression, but informing the viewer of the subject's history).

Based on the criteria for assessing a republication's transformative nature set forth in *Campbell*, *Arriba*, *Perfect 10* and *Hustler Magazine*, Hoehn's use of the article was transformative.  Hoehn did not merely republish the work and let it stand on its own without comment or analysis, but converted it into an actual discussion, as one reading a newspaper aloud in a coffee house might do in the course of a conversation with one's peers.  The Article's original purpose was to present information about defined-contribution retirement plans for states (Doc. # 1 Exh. 2). Hoehn, however, used the whole article – like Arriba and Google, which were protected by fair use in *Arriba* and *Perfect 10* – for a different purpose, converting it into a source of discussion for others, in which it played a minor role. (*See* Exh D.)

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

8

Hoehn's use of the Article is identical to a conversation, but preserved in digital format. Thus, perceiving Hoehn's use of the article as a bare reproduction of Righthaven's copyrighted works is improper – what viewers of the discussion thread are actually viewing is a digitally preserved conversation between Hoehn and others, which is the final product achieved through the Article's use and transformation.  This incorporates the existing work into a new work in the course of an online discussion, putting it into a new context and, under *Perfect 10*, transforming the Article's purpose and character. 508 F.3d at 1165.  Because Hoehn's use of the Article effectively transforms its purpose, there is no risk of its reproduction on the Website's forums impermissibly superseding the original work. *Campbell*, 510 U.S. at 579.

### 3. Hoehn's Use of the Article was for a Noncommercial Purpose.

Hoehn did not republish the Article for any cognizable commercial purpose. Noncommercial, nonprofit use of copyrighted material is presumptively fair use. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984).   The legal inquiry as to whether Hoehn's use was for non-profit purposes is not limited to whether the sole motive of the Article's use was monetary gain, but considers whether Hoehn stands to profit from exploiting the copyrighted material without paying the traditional price for it. *Harper & Row*, 471 U.S. at 562; *Hustler Magazine*, 796 F.2d at 1152.  Under any metric, Hoehn's use was noncommercial.

Hoehn had no financial incentive to republish the article.  Posting the article to the Website's forums provided no financial benefit to Hoehn, as he did not receive any form of compensation from, nor have any financial or ownership interest in, the Website. (Exh. A ¶ 10.) Hoehn furthermore did not receive compensation, or the potential for compensation, from any source, for reposting the Article. (*Id.* ¶ 20.)  He simply placed the Article on the forums to create and participate in a discussion, spurring the transformative process that resulted in the conversation found in Exhibit D.  Hoehn had no financial incentive for republishing the Article. (*Id.* ¶¶ 17 and 20.)  As Hoehn's profit motive – or lack thereof – is the relevant inquiry in analyzing noncommercial use, this weighs heavily in favor of a finding of fair use.

//

//

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

9

**B. The Article is Informative in Nature, Not Creative, and Prone to Fair Use.**

The Article Hoehn posted to the Website's forum, which spread information and sparked discussion among other forum users, was of an informative nature, rather than a creative one. Where the use of copyrighted material is informative, rather than creative (e.g., a work of fiction or fantasy), courts have widened the scope of fair use. *Harper & Row*, 471 U.S. at 563-64; *Righthaven v. Klerks*, No. 2:10-cv-00741 *2010 WL 3724897* at *3 (D. Nev. Sept. 7, 2010) ("a news article may require some degree of creativity in order to appeal to the reader, [but] […] the article is primarily informational").  Use of published works, like the Article, are more likely to qualify as fair use because the first appearance of the creator's expression has already occurred. *Arriba*, 336 F.3d at 820.

In cases such as this, the nature of the work should determine the court's analysis, with the predominant factor weighing the court's decision as to whether the creation is informational or creative in nature. *Harper & Row*, 471 U.S. at 564; *CBS Broadcasting*, 305 F.3d at 940; *Hustler Magazine*, 796 F.2d at 1154.  Where informational elements predominate over creative ones, the work, even if mixed, is informational in nature and subject to a broader application of fair use. *Reuters*, 149 F.3d at 994; *Los Angeles News Svc. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1998); *see also Weissman v. Freeman*, 868 F.2d 1313, 1325 (2d Cir. 1989).

As an editorial piece, there is no dispute that the Article contains some creative elements.  However, the fact that the Article is an editorial piece, rather than a purely factual report, does not place it outside the boundaries of fair use, or even significantly weigh against Hoehn's use of it being fair. *CBS Broadcasting*, 305 F.3d at 940; *Reuters*, 149 F.3d at 994; *KCAL-TV*, 108 F.3d at 1122.  While the Article advocates for defined-contribution retirement plans, as opposed to those with defined benefits, it does so based on publicly available facts, mitigating its value as a creative, expressive work. *CBS Broadcasting*, 305 F.3d at 940; *Reuters*, 149 F.3d at 994. (Doc. # 1 Exh. 2 at 2-3.)

The Article begins by identifying the budgetary problems faced by California and Illinois, and the primary culprit for them: Expensive pensions and other benefits owed to public employees. (*Id*. at 2.)  Going on to identify the benefits of defined-contribution plans such as

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

401(k) retirement accounts, the Article reports information on why such plans would be beneficial in avoiding these crises. (*Id.*)  Having identified the problem, the Article cites specific figures to underscore the budgetary woes of California and Illinois (*id.*).  Investigative reporting then takes center stage, as the plight placed onto public coffers by a specific individual earning two pensions at age 57 and a Teachers' Union in Illinois are explained, quantified, and used to explain the exact budget shortfall projections of California, Illinois and Nevada. (*Id.* at 2-3.)

Despite the creative elements the Article contains, its content primarily is a presentation of factual data, without which the editorial would be almost devoid of content.  Even if interpreted as a mixed work of information and creativity, the Article's heavy informational emphasis supports it being, on balance, a factual presentation more prone to fair use.  As such, this factor weighs in favor of Hoehn's fair use.

**C. Hoehn's Use of the Full Article Does Not Weigh Against Finding Fair Use.**

Hoehn's republication of the entire Article does not preclude this Court from finding fair use.  Though in some contexts, using an entire work may militate against a finding of fair use, it is not a dispositive factor in a fair use analysis, and not a factor that must weigh against Hoehn.  The Supreme Court has held that the amount of permissible copying requires a case-by-case analysis varies with the purpose and character of the intended use. *Campbell*, 510 U.S. at 586-87.

In *Hustler Magazine*, Moral Majority's use of the entire parody advertisement created by Hustler was deemed to be a use of the entire work, yet was ultimately a fair use of Hustler's material under the court's analysis. 796 F.2d at 1155.  There, the work was being used for informative, non-profit purposes, namely to inform Moral Majority's members and supporters what Hustler had famously said about Jerry Falwell. *Id.* at 1150, 1153.  More recently, the *Arriba* court held that Arriba's complete copying of copyrighted images for depiction within search results was "reasonable," and "necessary" for pursuing its purpose in providing more information about the image to the end-user. 336 F.3d at 821.

The Ninth Circuit reaffirmed this reasoning in *Perfect 10*. 508 F.3d at 1165.  The court held that Google's full copying of copyrighted images was fair use because Google's use of the images were for a purpose – presentation of search information – different than the original

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

works', which was for entertainment. *Id*.  In both *Arriba*, 336 F.3d at 821, and *Perfect 10*, 508 F.3d at 1165, the defendants' use of the complete copyrighted works did not weigh against them in the courts' fair use analyses.

This precedent is consistent with Hoehn's use of the Article being fair use.  Full reproduction of the works was "reasonable" and "necessary" for Google and Arriba to achieve their transformational use of the images and provide information to end users, as the image search services' purpose of presenting and identifying images to its users would be defeated without showing the entire image. *Perfect 10*, 508 F.3d at 1165; *Arriba*, 336 F.3d at 821.  As in those cases, as well as *Hustler Magazine*, Hoehn's use of the entire article was integral to creating a discussion about it.  Without its presence, participants, potential participants and future readers would be without context for the discussion.  In fact, if denied the text of the article itself, they would almost be unable to participate, as they would lack requisite background information to join the conversation.

Hoehn's republication of the Article in its entirety should be of neutral weight in this case's fair use analysis.  As discussed in Section III A, *supra*, Hoehn's use of the Article was for a non-commercial educational and commentary-inducing purpose, and was transformative in nature, converting an article into a documented conversation about it and related issues.  In order to affect the goal of creating a discussion with analysis of the Article – an online, multi-party critique of it – full republication of the Article was necessary.

As Hoehn's republication did not supersede the Article in its original context within the LVRJ, there was no risk of the original work's market being diverted to Hoehn's posting, and thus no improper purpose for republishing the Article. The totality of circumstances established in Section III A and precedent within this Circuit give rise to the conclusion that Hoehn's use of the Article is neutral, neither harming nor benefitting him in this analysis.

**D. Hoehn's Use Could Not Have Had an Effect on the Article's Potential Market.**

The most important factor in a fair use analysis under 17 U.S.C. § 107(4) is the use's effect on the potential market for the copyrighted work. *Harper & Row*, 471 U.S. at 566 (noting that effect on the potential market is "undoubtedly the single most important element of fair

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

use"). When unauthorized use of a copyrighted work is for a noncommercial purpose, the copyright holder must show, by a preponderance of evidence, that there is some meaningful likelihood of future harm. *Harper & Row*, 471 U.S. at 567; *Sony*, 464 U.S. at 451.   In determining whether the use has diminished the work's potential market, courts have focused on whether the infringement 1) tends to diminish or prejudice the work's potential sale; 2) tends to interfere with the work's marketability; or 3) fulfills the demand for the original work. *See Hustler Magazine*, 796 F.2d at 1155-56, *citing Elsmere Music, Inc. v. Nat'l Broadcasting Co.*, 482 F. Supp. 741, 747 (S.D.N.Y. 1980); *Wainwright Secy's v. Wall Street Transcript Corp.*, 558 F.2d 91, 96 (2d Cir. 1977); *Meeropol v. Nizer*, 560 F.2d 1061, 1070 (2d Cir. 1977).

Hoehn's noncommercial use of the Article in this case is of particular relevance.  To negate any finding of fair use, the copyright holder must show that if the challenged use becomes widespread, it would adversely affect the potential market for the copyrighted work. *Harper & Row*, 471 U.S. at 568; *Sony*, 464 U.S. at 451.   In *Sony*, the Supreme Court found that the company's Betamax video recorder not affect the aggregate market for copyrighted work, despite creating copies of the work. 464 U.S. at 453 nn. 36-38.   Consequently, the Supreme Court found this was a permissible fair use of copyrighted content. *Id* at 455.

Hoehn's republication of the Article does not, and cannot, affect its potential market. Hoehn's use of the Article is markedly dissimilar from the Article's original purpose, described in which was to inform.  As the Article was only available on the Website for 38 days, Hoehn's likelihood of affecting the Article's market was nonexistent.   Hoehn's use of the Article to generate discussion and educate others is so substantially different from the copyright holder's purpose in creating the article that there is no likelihood of competition between them, as seen in *Perfect 10*, 508 F.3d at 1146 (9th Cir. 2007) (holding that Google's full reproduction of expressive, copyrighted images in a commercial venture constituted fair use) and  *See also Kelly v. Arriba Soft Corporation,* 336 F.3d 811 (9th Cir. 2003).  The LVRJ's use of the Article was present information about defined-contribution retirement plans for states (Doc. # 1 Exh. 2).  In contrast, Hoehn's use of the article was to stimulate discussion about the Article and relate it to a

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

13

broader range of topics, integrating it into an entirely new product – the discussion thread itself, a series of opinions, facts and statements presented by numerous different commentators. (Exh. D.)

Like Arriba and Google, Hoehn did not sell licenses of the Article, nor the article itself, and neither did the Website. (Exh. A ¶ 20; *See* Doc # 1 Exh 2 and Exh. D, observing the lack of any purchasing mechanism for the Article.)   Bearing further similarity to Arriba and Google, Hoehn's use of the article was not in the same market as the copyright holders'.   Google and Arriba's relevant market, even when displaying wholly copied works, is the web search and specifically web image search markets, where they compete on the quality, depth and speed of results they can provide to end-users.

In turn, Hoehn's relevant market is not the reporting of news and opinion, but the market of discussion itself.   By posting the Article on the Website's forum, Hoehn transformed the Article from a reporting tool to a basis for discussion, and was the progenitor of all resulting conversation between forum users in that thread.   If Hoehn competed with anyone, it was with other forum users and other discussion forums, as the market was no longer for the information within the article, but the discussion surrounding it.   This market for discussion is discrete from the market for the original copyrighted works.   As the market for image search results is distinct from the market for the images themselves, seen in *Perfect 10* and *Arriba*; the market for fundraising and information about Moral Majority is distinct from Hustler's market, illustrated in *Hustler Magazine*; and the market for video recorded via Betamax machine is distinct from that for originally broadcast shows, explained in *Sony*.

Even if conduct like Hoehn's were to become widespread, as prohibited in *Harper & Row*, it would not affect the Article's original market.   Users of the Website's forum are not interested in the Article, or any article in and of itself, but the discussion and expression fostered among other forum users.   The users' interest is in this ensuing discussion, and not in the Article or any article by the LVRJ or other news source – a point underscored by Hoehn's longtime participation in the Website's forums. (Exh. B.)   Consequently, the republication of copyrighted works for discussion and comment (if it is to be considered to be a market at all) constitutes a separate market, where consumers seek the discussion itself.   Widespread conduct of that nature

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

14

would not impede the market for people who would view the Article for its original expressive, information-relaying purpose.  The asymmetries between what is offered by the uses of both Article's copyright holder and Hoehn are so pronounced that they effectively preclude the two from competition.  Righthaven cannot demonstrate that a meaningful likelihood of future harm exists, as required in *Sony*, if people are allowed to engage in this alternate activity that has a separate purpose and market from that of the Article's copyright holders.

## **CONCLUSION**

As set forth in the examples provided in the beginning of this Motion, the use of news and opinion articles is essential to a functioning society and healthy democracy.  Allowing individuals to share and read out loud the information they receive from a newspaper or magazine fosters discussion and debate, which is one of the fair use doctrine's core aims. Moreover, it turns the article, especially in an online forum, from a source of information into a part of a discussion – repurposing the article's existence.

Hoehn, who provided exemplary service to his country, understood the vital role this discourse plays in democracy.  By debating important political issues with his acquaintances, Hoehn refined his own views and helped others develop their own.  While this discourse may have given the owners of Righthaven the fantasy of a quick cash-grab from Mr. Hoehn, this honorable Court must turn back this ignoble misuse of the copyright laws and protect the citizenry's right to free discourse on matters of public concern.  This Circuit's application of the fair use doctrine in prior cases all but assures that Hoehn's use of the Article was fair use, yet Righthaven seeks to curtail this permissible and publicly beneficial use of copyrighted material.

No material facts as to Hoehn's fair use of the Article are in dispute.  As a matter of law, none of the fair use factors set forth in 17 U.S.C. § 107 weigh against Hoehn.  Of them, only the amount of copyrighted work Hoehn used in creating a new work is neutral.  The remaining factors – the purpose and character of the Article's use, the Article's nature, and the effect on the Article's potential market – weigh in favor of finding Hoehn engaged in fair use by republishing

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

the Article on the Website's forum.  Resolving these questions of law based on the undisputed

facts provided above, this Court is justified in granting Hoehn summary judgment.

Dated: February 11, 2011                                        Respectfully Submitted,

                                                               RANDAZZA LEGAL GROUP


                                                               _____
                                                               J. Malcolm DeVoy IV

                                                               Attorney for Defendant,
                                                               *Wayne Hoehn*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 11th day of February, 2011, I caused documents entitled:

- DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

to be served as follows:

[   ]   by depositing same for mailing in the United States Mail, in a sealed envelope addressed to Steven A. Gibson, Esq., Righthaven, LLC, 9960 West Cheyenne Avenue, Suite 210, Las Vegas, Nevada, 89129-7701, upon which first class postage was fully prepaid; and/or

[   ]   Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile as indicated; and/or

[   ]   to be hand-delivered;

[ X ]   by the Court's CM/ECF system.

/s/ J. Malcolm DeVoy

J. Malcolm DeVoy

Randazza
Legal Group
7001 W Charleston Blvd
Suite 1043
Las Vegas, NV 89117
(888) 667-1113

17