SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Plaintiff Righthaven LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>    Plaintiff,<br><br>v.<br><br>WAYNE HOEHN, an individual,<br><br><br>    Defendant. | Case No.: 2:11-cv-00050-PMP-RJJ<br><br>**PLAINTIFF RIGHTHAVEN LLC'S RESPONSE TO DEFENDANT WAYNE HOEHN'S MOTION FOR SUMMARY JUDGMENT** |

   Righthaven LLC ("Righthaven") hereby responds to Defendant Wayne Hoehn's ("Defendant") Motion for Summary Judgment (the "Motion," Doc. # 8).  This response is based on the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

## I.  INTRODUCTION

   Like numerous other Righthaven defendants, Defendant in this action seeks to justify his unauthorized 100% copying and use of a copyrighted work by casting aspersions at Righthaven, the nature of the rights acquired by it and by characterizing its claim as being brought on "shaky copyright infringement grounds."  (Doc. # 8 at 1.)  Defendant additionally seeks to jaundice this Court's consideration of the issues before it by characterizing himself as being akin to other

1

"Righthaven targets . . . not a large corporation, but an individual who posted content from the *Las Vegas Review Journal* . . . ." (Doc. # 8 at 1.)

Defendant's characterizations of Righthaven, the rights acquired by it, and the merits of its claims are merely diversionary tactics designed to obfuscate the material issues in this case. These issues are straightforward – Defendant misappropriated a copyrighted editorial piece, cut and pasted it on another website and made it available for all users of and visitors to the website to read.   In this regard, Defendant did not write his own synopsis of the editorial piece or merely post a link back to the editorial as it appeared on the source publications website.  Defendant simply took the easiest path for accomplishing his stated goal – he took it without permission and used it for his own benefit.  These facts unquestionably support Righthaven's copyright infringement allegations and expose Defendant to liability for his conduct.

Defendant, however, seeks to color his actions as being akin to a book club or a discussion between patrons at a bar.  (*Id.* at 1-2.)  This is simply not the case before the Court. Under Defendant's book club scenario, this case would more accurately be described as a book club where the participants were given unauthorized, free photocopies of an author's book to read and discuss.  Or, under the bar patron scenario, topics contained in a news article would have been photocopied from a purchased copy of the newspaper and distributed to all in the bar free of charge and without the newspapers consent.   Under either of the foregoing scenarios, the author or source of the copyrighted work is deprived of the right to control its dissemination and enjoy the benefits associated with such control.  This is precisely what Defendant deprived the source publication of when re-publishing the editorial piece at-issue without its consent.  As alleged in the Complaint, this conduct gives rise to liability for copyright infringement. Moreover, as discussed below, Defendant's conduct does not justify entry of summary judgment in his favor on fair use grounds following a proper four factor analysis under 17 U.S.C. § 107.

## II.   STATEMENT OF FACTS

Righthaven filed this copyright infringement action on January 11, 2011.  (Doc. # 1.) Righthaven asserts that it is the owner of the copyrighted literary work entitled: "Public employee pensions. We can't afford them" (the "Work").  (*Id.* at 2, Doc. # 1-1 at 2-3.)

Righthaven contends that Defendant is, and has been at all times relevant to this lawsuit, a registered user of and content contributor to the Internet domain <madjacksports.com> (the "Domain" and the content available through the Internet at the Domain is referred to herein as the "Website"). (Doc. # 1 at 2.)  Defendant is, and has been since July 13, 1999, identified by the as the user name "Dogs that Bark" on the Website.  (*Id.*)  According to data published on the Website, Defendant has contributed content to the Website through approximately 18,000 total posts.  (*Id.*)  Righthaven contends that the owner and operator of the Website has never employed Defendant. (*Id.*)

Righthaven contends that on or about November 29, 2010, the Defendant displayed an unauthorized reproduction of the Work as part of the content contributed by him on the Website. (*Id.* at 2, 4.)  Righthaven further maintains that Defendant willfully copied the Work without authorization and contributed it as content on the Website. (*Id.* at 5.) Righthaven has, among other things, sought entry of a permanent injunction and an award of statutory damages against Defendant and others defending parties named in the action. (*Id.* at 5-6.)  Righthaven has demanded a jury trial in this case.  (*Id.* at 6.)

### III.   APPLICABLE STANDARDS

Entry of summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56") is only proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  This burden is only discharged through the submission of admissible evidence in support of the claimed basis for relief.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990).  As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial. *Anderson,* 477 U.S. at 249.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* at 256.

Rule 56 must be construed "with due regard . . . for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury." *Celotex Corp.,* 477 U.S. at 327.  Summary judgment is proper only after there is an adequate opportunity for discovery. *Id.* at 326.  This is particularly true when evidence is presented by a moving party in support of summary judgment on matters exclusively within their possession or based on their knowledge and there has not been an adequate opportunity to conduct discovery on those matters.  *See Anderson,* 477 U.S. at 257.  In fact, "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted as a matter of course."  *International Raw Materials, Ltd. v. Stauffer Chem. Co.,* 898 F.2d 946, 949 (3d 1990)(internal quotation marks omitted).

Application of the foregoing standards in view of the record before the Court demonstrates that summary judgment is unwarranted on fair use grounds.  To begin with, the factually intensive inquiry required under a fair use analysis supports denying Defendant's Motion in view of the applicable Rule 56 standards.  This conclusion is particularly warranted given that Defendant's Motion has been brought before he answered Righthaven's Complaint and before Righthaven has been permitted to engage in discovery.  These circumstances aside, denial is also warranted under a substantive fair use analysis – either because genuine issues of material fact are raised or because Defendant cannot sufficiently establish that his conduct weighs in favor of a fair use finding by the Court.

## IV.   ARGUMENT

### A.   *Summary Judgment is Particularly Inappropriate at the Inception of This Case and in View of the Factually Intensive Inquiry Required Under a Fair Use Analysis.*

Defendant seeks entry of summary judgment on fair use grounds before filing an answer to Righthaven's Complaint.  Given the factually intensive and case-by-case examination required

under a fair use analysis, summary judgment is inappropriate at the inception of these proceedings.  Moreover, summary judgment on fair use grounds is inappropriate given the Court's required reliance on statements contained in Defendant's declaration that Righthaven has not been afforded the opportunity to contest or explore through written and oral discovery means.

Substantively, summary judgment is inappropriate given the nature of the defense asserted by Defendant.  Fair use is an affirmative defense upon which a defendant bears the burden of proof and the burden of persuasion.  *See Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1158 (9th Cir. 2007).  "In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson,* 477 U.S. at 254. As explained by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"):

> "Fair use is a mixed question of law and fact.  If there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work."

*Los Angeles News Serv. v. KCAL-TV Channel 9,* 108 F.3d 1119, 1120 (9th Cir. 1997)(quoting *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1150 (9th Cir. 1986)).

Further complicating entry of summary judgment in fair use cases is that the Court's inquiry is not controlled by a bright line test.  Specifically, when a copyright defendant asserts the affirmative defense of fair use, the district court must consider the following factors: "(1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the work as a whole; and (4) the effect of the use upon the potential market for the work or the value of the work." *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1014 (9th Cir. 2001) (internal quotation marks omitted); *see also* 17 U.S.C. § 107.  The fair use doctrine requires a "case-by-case analysis."  *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577 (1994).  Courts are required to consider and weigh all four factors when

conducting a fair use analysis. *Id.* Conducting such an analysis as a matter of law requires that controlling facts be presumed or admitted. *See Fisher v. Dees,* 794 F.2d 432, 435-36 (9th Cir. 1986).

Procedurally, Defendant's request for entry of summary judgment is made before he has even filed an answer to Righthaven's Complaint. As the Court is aware, summary judgment is proper only after there is an adequate opportunity for discovery. *Celotex Corp.,* 477 U.S. at 326. Moreover, summary judgment is particularly inappropriate where the information relied upon in seeking such relief is exclusively within the knowledge and control of the moving party. *See Anderson,* 477 U.S. at 257.

Here, Defendant's Motion is predicated on highly factual assertions and contentions at a stage of the proceedings where Righthaven has not been authorized to conduct any discovery. As such, Defendant's Motion runs contrary to two hallmark concerns when performing a summary judgment analysis: (1) whether the facts and materials required to be relied upon by the Court are exclusively within the moving party's knowledge and control; and (2) whether the non-moving party has been given an ample opportunity to explore and test the veracity of the facts and materials relied upon by the moving party through the discovery process. The circumstances alone justify denying Defendant's Motion.

**B.**   ***Defendant is Not Entitled to Summary Judgment on Fair Use Grounds.***

The Court would be justified in denying Defendant's request for entry of summary judgment given the nascent stage of this action and given that his Motion is predicated upon facts and material which Righthaven has not been able to explore or test through discovery. These circumstances aside, however, the Motion should also be denied under a substantively fair use analysis in view of the standards required under Rule 56. Under such an analysis either Defendant cannot prevail in view of the facts presented or genuine issues of material fact are raised, which preclude entry of summary judgment under Rule 56.

a.      **The purpose and character of use weighs against a finding of**
**fair use raises genuine issues of material fact.**

Turning to the first factor in the fair use analysis, which calls for consideration of "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).  In considering the purpose and character of the use, courts must determine whether the alleged infringing publication, when comparatively viewed with the copyrighted work, "merely replaces the object of the original creation or instead adds a further purpose or different character." *Napster, Inc.,* 239 F.3d at 1015.  Stated differently, the "purpose and the character of use" factor involves resolving the question as to "whether the allegedly fair use was 'transformative,' *i.e.*, whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *Los Angeles News Serv. v. CBS Broad., Inc.,* 305 F.3d 924, 938 (9th Cir. 2002) (*quoting Campbell,* 510 U.S. at 579).  This inquiry has a wide-ranging impact on the fair use analysis: "the more transformative the new work, the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use." *Campbell,* 510 U.S. at 579.

To begin with, the Work was an editorial piece authored by *Las Vegas Review Journal* executive Sherman Frederick.  (Doc. 1-1 at 2-3.)  By their nature, editorial works are designed to educate, comment and critically examine a given subject through the author's written discourse. As such, editorial pieces are distinctly different from news articles, which generally contain a larger factual component and are not designed to advance a particular point of view.   Defendant admits that he utilized the unauthorized copy of the Work for the exact same purpose as the source publication – "education, comment and criticism . . . ."  (Doc. # 8 at 6:4.) Thus, Defendant's use of the Work was not "transformative," but rather he sought to disseminate the Work for the same purpose for which is appeared in the source publication.  These similar purposes – between that of the source publication's dissemination of the Work and the Defendant's display of the unauthorized version on the Website weighs against a finding of fair use as to the first analysis factor.

Also weighing against a finding of fair use is the fact that Defendant replicated 100% of the Work without authorization.  As noted by the Ninth Circuit, the copying a literary work "in its entirety bespeaks no 'intellectual labor and judgment.' It merely 'supersedes the object' of the original work." *Worldwide Church of God v. Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) ("*Worldwide Church*"). The decision in *Worldwide Church* does not stand-alone.  Other courts faced with the issue of wholesale or verbatim copying have likewise concluded that such infringing conduct weighs against a finding of fair use. *See Campbell,* 510 U.S. at 587-88 (whether "a substantial portion of the infringing work was copied verbatim from the copyrighted work is a relevant question . . . for it may reveal a dearth of transformative character or purpose under the first factor . . ."); *Walt Disney Prods. v. Air Pirates,* 581 F.2d 751, 757 (9th Cir. 1978) (acknowledging that "near-verbatim copying" generally precludes a finding of fair use); *Los Angeles Time v. Free Republic,* No. 98-7840, 1999 WL 33644483, at *10 (C.D. Cal. Nov. 8, 1999) ("There is nothing transformative about copying the entirety or portions of a work verbatim.") ("*Free Republic I*").

Here, the infringement at-issue in this case contains an exact, 100%, duplication of the Work.  (Doc. #1 at 2, Doc. # 1-1at 5-7.) No modifications or revisions to the Work are contained in the infringing copy published by Defendant on the displayed on Website. (*Id.*) In fact, the infringing copy of the Work is a wholesale replication from the source publication. This form of mindless infringing conduct clearly contains absolutely no "transformative value" under the first fair use factor.  As the *Worldwide Church* panel reasoned, to satisfy this requirement, "[t]here must be real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and *not merely the facile use of the scissors, or extracts of the essential parts, constituting the chief value of the original work.*" *Worldwide Church,* 227 F.3d at 1117 (emphasis added).

Defendant attempts to satisfy the first fair use factor by arguing that he posted the Work to engender commentary and discussion amongst users of the Website.  (Doc. # 8 at 7.)  While Defendant may have truly possessed such subjective intent when posting the entirety of the Work on the Website, he has ignored that other viable and permissible means for contributing such

content were available without committing copyright infringement.  For instance, Defendant could have simply posted the Work's title and subject matter along with a link to the Work as found on the source publication's website.  Alternatively, Defendant could have referenced the Work and summarized it contents without replicating it.  Defendant chose neither of these options.  Rather, he copied 100% of the Work without authorization, thereby depriving the source publication of the opportunity to control its dissemination and enjoy the benefits related to same.

Defendant additionally argues that his unauthorized replication of the Work was for a noncommercial purpose.  (Doc. # 8 at 9.)  This argument is completely inapplicable to Defendant's unauthorized posting of the Work.  As alleged in the Complaint, the owner and operator of the Website have never employed Defendant.  (Doc. # 1 at 2.)  Defendant is not the owner of the Website.  Rather, Defendant is merely a user or content contributor, albeit a substantial content contributor, to the Website.  (*Id.*)  As such, Defendant has no pecuniary interest in the commercial viability of the Website.  Accordingly, Defendant's reliance on the noncommercial purpose of his unauthorized replication of the Work is a proverbial red herring.  His noncommercial purpose is naturally attributed to his status as a content contributor and, as such, should not be interpreted as supporting a finding of fair use.

In sum, the Defendant's non-transformative wholesale, unauthorized copying of the Work weighs against a finding of fair use under the first analysis factor.  This conclusion is further supported by the fact that Defendant's infringing conduct was done for the same purpose that the Work was originally published.

### b.       *The nature of the copyrighted work weighs against a finding of fair use.*

The second factor in the fair use analysis calls for consideration of "the nature of the copyrighted work." 17 U.S.C. § 107(2).  This factor "turns on whether the work is informational or creative." *Worldwide Church,* 227 F.3d at 1118.  This factor weighs against a finding of fair use.

9

The Work is not a news article.  It is an editorial piece.  As such, Defendant necessarily concedes that Work "contains some creative elements."  (Doc. # 8 at 10:18.)  Despite this concession, however, Defendant nevertheless attempts to shoehorn the Work into a news article consisting primary of factual data.  (*Id.* at 10-11.)  Defendant's characterization is completely unwarranted and unjustified.  The Work is, even by Defendant's admission, an editorial piece.  It is not a pure factual piece of news reporting.  Accordingly, the nature of the Work weighs against a finding of fair use.

Even if the Work were to be construed as a factually-based news article, which it is not, such an interpretation does not necessarily weigh in favor of fair use as to the second analysis factor.  Blatant copyright infringement is not permitted simply because the Work's highly expressive attributes are coupled with substantial factual content.  The "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality." *Harper & Row Publishers, Inc.,* 471 U.S. at 547.  Moreover, written news articles reflect the reporter's creative endeavors in compiling a piece for dissemination. *Los Angeles Times v. Free Republic,* 54 U.S.P.Q.2d 1453, 1467 (C.D. Cal. Apr. 4, 2000) ("*Free Republic II*").  As noted by the court in *Free Republic II*, "a news reporter must determine which facts are significant and recount them in an interesting and appealing manner." *Id.*

In sum, the Work is an editorial piece.  As such, it includes content that is far removed from the primary factual recitations urged by Defendant.  Moreover, even if it were to contain significant factual content, such a determination does not render the Work incapable of protection under the laws of copyright.  Accordingly, given the nature of the Work, this factor weighs against a finding of fair use.

### c. *The amount and substantiality of the Work taken does not support a finding of fair use.*

The third factor examined under a fair use analysis requires the Court to consider "the amount and substantiality of the portion used in related to the copyrighted work as a whole." *See* 17 U.S.C. § 107(2).  This factor clearly weighs against a finding of fair use.

Defendant admits that he misappropriated 100% of the Work.  (Doc. # 8 at 11.)  This wholesale theft of the Work clearly weighs against a finding of fair use.  As noted by the Ninth Circuit in *Worldwide Church* with regard to the "amount and substantiality" third fair use factor, "[w]hile 'wholesale copying does not preclude fair use per se,' copying an entire work 'militates against a finding of fair use.'" *Worldwide Church,* 227 F.3d at 1117 (*quoting Hustler Magazine, Inc.,* 796 F.2d at 1155).  The *Worldwide Church* panel then explained, "'the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material . . . .'" *Id.* at 1118 (*quoting Harper & Row Publishers, Inc.,* 471 U.S. at 565)).  Thus, while Defendant claims that "[i]n order to affect the goal of creating a discussion with analysis of the Article – an online, multi-party critique of it – full republication of the Article was necessary[,]" this fact clearly supports the qualitative value of the Work.(Doc. # 8 at 17-19.)  In this regard, it should be noted that other viable options were available to Defendant for accomplishing his stated purpose without infringing the Work.  For instance, Defendant could have used his own words to summarize the Work along with a link to the original source publication for Website viewers interested in reading the entire story.  Instead of taking such an obvious and reasonable path, Defendant instead decided to take the easy road out by cutting and pasting a 100% copy of copyright protected content on the Website without authorization.  Such acts are not entitled to fair use protection.  As noted by the panel in *Worldwide Church:*

> We have found no published case holding that fair use protected the verbatim copying, without criticism, of a written work in its entirety.

*Worldwide Church,* 27 F.3d 1110, 1120.

Defendant's cited authorities do not justify his wholesale, unauthorized replication of the Work.  Defendant cites to a case where an entire work was replicated for parody purposes (*Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148 (9th Cir. 1986)) and to two cases involving wholesale replications for Internet search engine facilitation (*Kelly v. Arriba Soft Corp.,* 336 F.3d 811 (9th Cir. 2003); *Perfect 10, Inc. v. Amazon, Inc.,* 508 F.3d 1146 (9th Cir. 2007)) to justify his infringing conduct.  These cases are factually and legally inapplicable to the

facts before the Court.  Rather, Defendant's 100% unauthorized copying of the Work falls squarely in line with traditional cases of copyright infringement, such as the conduct at-issue in *Worldwide Church*.  The fact that Defendant's conduct occurred in a cyberspace forum does not change the fact that he merely copied and pasted the entirety of the Work without authorization.  Accordingly, the third fair use factor weighs squarely against a finding of fair use.

### d.   The fourth fair use factor is not amenable to summary judgment.

The fourth factor examined under a fair use analysis requires the Court to consider "the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  This factor does not weigh in favor of a fair use finding.

Given Defendant's unauthorized 100% copying of the Work, the record in this case weighs against a finding of fair use on the fourth analysis factor in view of the applicable case law.  First, as opposed to a transformative work, "a work that merely supplants or supersedes another is likely to cause a substantially adverse impact on the potential market of the original." *Sony Computer Entm't, Inc. v. Connectix Corp.,* 203 F.3d 596, 607 (9th Cir. 2000).  The law is clear that "a work composed primarily of an original, particularly its heart, with little added or changed, is more likely to be a merely superseding use, fulfilling the demand for the original." *Campbell,* 510 U.S. at 587-88.  In the *Campbell* decision, the Supreme Court explained that whether a work is copied verbatim is a relevant inquiry under the fourth fair use factor, as this may reveal "a greater likelihood of market harm . . ." *Id.* at 587.  "[W]here the [defendant's] use is for the same intrinsic purpose as the copyright holder's . . . *such use seriously weakens a claimed fair use*." *Worldwide Church,* 227 F.3d at 1117 (emphasis added) (*quoting Weissmann v. Freeman,* 868 F.2d 1313, 1324 (2d Cir. 1989)).

Here, the Defendant cannot escape the fact that he engaged in the cyberspace equivalent of making a Xerox copy of the Work and then used the Xerox copy to advance the same purpose – to educate and promote discussion of the fiscal drain public pensions place on state budgets – as the source publication's purposes.  Defendant did nothing to alter the content of the Work – he replicated the entirety of it without authorization.  Such circumstances warrant the conclusion that Defendant's infringement has likely caused a substantial impairment on the potential market

for the Work and that Defendants' infringing copy of the Work fulfilled the demand for the

original. *See Campbell,* 510 U.S. at 587-88; *Sony Computer Entm't, Inc.,* 203 F.3d at 607.

Additionally, the Court's analysis of the fourth fair use factor must consider "whether

unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a

substantially adverse impact on the potential market for the original." *See Campbell,* 510 U.S. at

590 (internal quotation marks omitted).  In this regard, the appropriate inquiry "must take

account not only of harm to the original but also of harm to the market for derivative works." *Id.*

*(quoting Harper & Row Publishing, Inc.,* 471 U.S. at 568).[1]  Such reasoning, when applied to the

instant case, clearly reflects the presence of potential market harm.

If numerous, additional Internet users were to replicate the Defendant's wholesale,

cyberspace Xerox copy of the Work, the market for both the Work and derivatives of the Work

would be inevitably diminished regardless of the intentions of each individual infringer.  The

Ninth Circuit has held that the fourth fair use factor is not limited to market impairment; this

analysis also includes "the effect of the use on the *value* of the copyrighted work." *Worldwide*

*Church of God,* 227 F.3d at 1119 *(quoting* 17 U.S.C. § 107(4)) (emphasis in original).  Thus,

"even copying for noncommercial purposes may impair the copyright holder's ability to obtain

the rewards that Congress intended him to have . . . [t]hose rewards need not be limited to

monetary rewards; compensation may take a variety of forms." *Id. (quoting Sony Corp.,* 464 U.S.

at 450).

The potential reduction of a literary work's present and future market value resulting

from Internet-based copyright infringement is exemplified by the district court's holding in *Free*

*Republic II.*  In *Free Republic II*, the defendants asserted a fair use defense to justify the posting

of the plaintiff's newspaper articles on the defendants' website.  *Free Republic II,* 54 U.S.P.Q.2d

at 1455-59.  In finding against fair use, the United States District Court for the Central District of

California explained that "[d]efendants use 'substitutes' for the originals, and has the potential of

lessening the frequency with which individuals visit plaintiffs' websites, of diminishing the

---

[1] Similarly, in this analysis, "[a]ctual present harm need not be shown; such a requirement would leave the copyright holder with no defense against predictable damage." *Sony Corp.,* 464 U.S. at 451.

market for the sale of archived articles, and decreasing the interest in licensing the articles." *Id.* at 1471.

The reasoning employed by the court in *Free Republic II* should be applied by this Court. As the Defendant's infringement arguably substitutes for and supersedes the purpose of the original Work given that it consists of a 100% replication of the Work, it takes very little, if any, leap in deductive reasoning to conclude that readers of the Work on the Website may be diverted from, or elect not to read, the Work's original source publication. Stated differently, there is simply no intuitive motivation for someone reading the wholesale, 100% replication of the Work on the Website to seek out and read the original version of the Work in any format – such as an Internet website copy or a hard copy. Simply put, the reader has digested the content and is in all likelihood through with the Work, thereby depriving the source publication of other tangible and intangible benefits of increased readership, viewership and/or subscribership. These virtually required logical inferences in view of Defendant's infringement clearly support a finding of diminished value of the Work and of derivatively associated literary works available from the source publication. Such a finding weighs against fair use under factor four of the Court's analysis.

In sum, there is ample reason for the Court to conclude that Defendant's 100% unauthorized copying of the Work for the same purpose, to inform and provoke critical examination of a topic, resulted in market harm. Defendant's arguments to the contrary are unpersuasive. As such, the fourth fair use factor supports a finding against fair use. At a minimum, the market harm issues raise genuine issues of material fact that support denying Defendant's Motion.

## V.     CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court deny Defendant's Motion and grant such other relief as it deems appropriate and just.

Dated this 7th day of March, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 7th day of March, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*