SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Plaintiff Righthaven LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE HOEHN, an individual,<br><br>Defendant. | Case No.: 2:11-cv-00050-PMP-RJJ<br><br>**PLAINTIFF RIGHTHAVEN LLC'S RESPONSE TO DEFENDANT WAYNE HOEHN'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Righthaven LLC ("Righthaven") hereby responds to Defendant Wayne Hoehn's ("Defendant") Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion," Doc. # 16). Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), which asserts that Righthaven lacks standing to bring this action for copyright infringement. (Doc. # 16 at 3-5.)

Righthaven's response is based on the below memorandum of points and authorities, the declaration of Steven A. Gibson (the "Gibson Decl."), the declaration of Mark A. Hinueber (the "Hinueber Decl."), the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

1

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

Congress authorized a limited monopoly in copyrighted works "to motivate the creative activity of authors and inventors by the provision of a special reward."  *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 429.   Yet, since the proliferation of the internet and the number of people with websites and blogs, copyright holders have seen their works repeatedly copied and posted online without permission, recognition, or compensation.  That is the case here, where Defendants displayed an unauthorized reproduction of an article by the *Las Vegas Review-Journal* on their blog.   The abundance of infringement just like the one at issue here is why Stephens Media LLC ("Stephens Media"), owner of the *Las Vegas Review-Journal*, entered into an agreement with Righthaven to help it pursue these infringers.

        Part of the strategy to pursuing online infringers requires Stephens Media to assign its copyright in a particular work to Righthaven, along with the right to sue for past, present and future infringement.  It is black letter law that at the moment such an assignment occurs, Righthaven, as the current copyright owner, has standing to pursue a claim for infringement. This is a much different situation than in *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005), where the plaintiff, assigned only a **bare right to sue** for past copyright infringement, lacked standing.

        To further clarify the mutual intent of Righthaven and Stephens Media to confer full ownership in copyright to Righthaven when entering into copyright assignments, both parties have provided declarations in support of this memorandum.  Thus, to the extent the Court finds that anything in the Strategic Alliance Agreement ("SAA") or copyright assignment is ambiguous such that it is unclear whether Righthaven has standing, it may interpret these agreements to confer full ownership rights in Righthaven.  The Court's ability to do this is also expressly set forth in the SAA, which vests the Court with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties."  (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

1    Finally, in an effort to cure any possible doubt as to whether Righthaven has full

2  ownership in an assigned copyright, Righthaven and Stephens Media have recently executed a

3  Clarification and Amendment to Strategic License Agreement (the "Amendment"), which not

4  only makes clear that Righthaven has full ownership rights in any assigned copyright, it gives

5  Stephens Media only a non-exclusive right to use an assigned work.

6    For these reasons, Righthaven respectfully requests that the Court find that it has at all

7  times had standing to maintain this suit, or in the alternative, that any defect in Righthaven's

8  standing has been cured by the Amendment.  Accordingly, Defendant's Motion must be denied.

9  **II.    STATEMENT OF FACTS**

10    Righthaven is the owner of a copyright registration for the literary piece "Public employee

11  pensions. We can't afford them" (the "Work"), which originally appeared in the *Las Vegas*

12  *Review-Journal* on or about November 28, 2010.  (Doc. # 1 at 2; Doc. # 1-1 at 2-3; Gibson Decl.

13  ¶ 3; Hinueber Decl. ¶ 3.)  December 6, 2010, Stephens Media, the original owner of the Work,

14  assigned all rights, title and interest in and to the Work, including the right to seek redress for all

15  past, present and future infringements (the "Assignment").  (Gibson Decl. ¶ 4, Ex. 1; Hinueber

16  Decl. ¶ 4, Ex. 1; *see also* Doc. #1 at 4.)  On December 15, 2010, Righthaven filed for registration

17  of the Work with the United States Copyright Office based on the ownership rights conveyed by

18  the Assignment. (Doc. # 1-1 at Ex. 3; Gibson Decl. ¶ 4.)

19    Righthaven contends that Defendant is, and has been at all times relevant to this lawsuit,

20  a registered user of and content contributor to the Internet domain <madjacksports.com> (the

21  "Domain" and the content available through the Internet at the Domain is referred to herein as

22  the "Website"). (Doc. # 1 at 2.)  Defendant is, and has been since July 13, 1999, identified by the

23  as the user name "Dogs that Bark" on the Website.  (*Id.*)  According to data published on the

24  Website, Defendant has contributed content to the Website through approximately 18,000 total

25  posts.  (*Id.*)  Righthaven contends that the owner and operator of the Website has never

26  employed Defendant. (*Id.*)

27    Righthaven alleges that on or about November 29, 2010, the Defendant displayed an

28  unauthorized reproduction of the Work as part of the content contributed by him on the Website.

3

1    (Doc. # 1 at 2, 4.)  Thus, Defendant's alleged act of copyright infringement occurred prior to the

2    Assignment, thereby constituting an accrued claim at the time Righthaven was conveyed

3    ownership rights in and to the Work along with the right to sue for past, present and future

4    infringement claims. (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1; *see also* Doc. #1 at 4.)

5    Defendant is alleged to have willfully violated the exclusive copyrights to the Work.  (Doc. # 1

6    at 5.)

7        As argued below, Defendant's Motion must be denied because Righthaven was effectively

8    conveyed ownership of the Work, along with, among other things, the right to seek redress of

9    accrued infringement claims, through the Assignment.  The terms of the SAA, upon which

10   Defendant relies, does not divest Righthaven of standing to maintain this action for past

11   infringement of the Work.  To the extent there is any dispute about the parties' intent in entering

12   into the transaction at issue, they have unquestionably expressed their intent and, if deemed

13   necessary, have further clarified their intent through the Amendment.  Accordingly,

14   Righthaven's standing to maintain this action is readily apparent in view of the record before the

15   Court.

16   **III.    ARGUMENT**

17        Standing is a jurisdictional requirement that can be raised at any time, including *sua*

18   *sponte* by the court, as is the case here.  *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d

19   1031, 1035 (9th Cir. 2008).  Pursuant to Section 501(b) of the Copyright Act, only "the legal or

20   beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement.

21   *Silvers*, 402 F.3d at 884.  Section 106 of the Act, in turn, defines the exclusive rights that can be

22   held in a copyright (*e.g.* the right to reproduce, to prepare derivative works, and to distribute

23   copies).  Exclusive rights in a copyright may be transferred and owned separately—for example,

24   through assignment or an exclusive license—but no exclusive rights exist other than those listed

25   in Section 106.  *Silvers*, 402 F.3d at 885.  While the right to assert an accrued cause of action for

26   copyright infringement cannot be transferred alone, such a right can be transferred along with

27   one or more of the exclusive rights in a copyright.  *See id.* at 890.

28

As the assignee-owner of the full right and title in and to the Work, Righthaven has standing to sue for acts of copyright infringement occurring after it acquired ownership of the copyright.  Pursuant to the express terms of the Assignment, Stephens Media also expressly transferred to Righthaven the right to assert accrued causes of action for infringement of the Work, giving Righthaven standing to sue for Defendant's infringement, even though that infringement occurred prior to the Assignment.  (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.)  In addition, Stephens Media and Righthaven recently executed a clarification and amendment to the SAA in order to further clarify and effectuate, to the extent not already accomplished, what has at all times been the intent of the parties—to transfer full ownership in copyright to Righthaven. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.)  This Amendment has cured any defects in standing that existed under the parties' original contractual relationship.  (*Id.*)  Therefore, as set forth below, Righthaven respectfully requests that the Court find that Righthaven has standing to maintain this action.[1]

**A.      Pursuant to the Written Assignment, Righthaven Has Standing to Sue for Past Infringement.**

Binding precedent establishes that the assignment from Stephens Media to Righthaven conveys upon Righthaven standing to bring this case.  In *Silvers*, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work. *Id.* at 889-90.  In so holding, the panel in *Silvers* aligned Ninth Circuit law with that of the Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased.  *Silvers,* 402 F.3d at 889.

---

[1] If the Court finds that despite the parties' Amendment to the SAA, Righthaven still lacks standing, Righthaven requests that it be granted leave to join Stephens Media as a plaintiff in order to cure the jurisdictional deficiency. *See Benchmark Homes, Inc. v. Legacy Home Builders L.L.C.*, 2006 WL 208830, at *1 (D. Neb. Jan. 26, 2006) (granting plaintiff's request for leave to

Multiple courts in this district have already determined that Righthaven has standing to bring a claim for past infringement under the Ninth Circuit's standard in *Silvers,* based on the plain language of the copyright assignment:

- *Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011) .

- *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010).

- *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).

(*See also* Gibson Decl. ¶¶ 9-10.)

Just like the assignments at issue in the cases above, the Assignment here transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all accrued causes of action for copyright infringement:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for ***past, present and future infringements*** of the copyright in and to the Work.

(Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1, emphasis added.)  At the moment of the Assignment, Righthaven became the owner of the Work with all rights of ownership, including the right to register the Work, license the Work and seek redress for infringement, including past infringement.  In other words, the Assignment conferred upon Righthaven the exclusive rights required under the Copyright Act to bring suit for ***both*** past and future acts of infringement.  As parties frequently do, Righthaven licensed back to Stephens Media the right to exploit the Work.  It also sought registration of the Work with the USCO and brought suit against a blatant infringer.

While Defendant argues that the SAA renders the Assignment ineffective, nothing in the SAA's provisions alter the unambiguous language of the Assignment or the rights that

Righthaven acquired.[2]   First, the SAA does not effectuate the assignment of any work.  (Gibson Decl. ¶ 5, Ex. 2 § 7.2; Hinueber Decl. ¶ 5, Ex. 2 § 7.2.)  Rather, the SAA reflects promises made by the parties with regard to future transactions in copyrights.  (*Id*.)  The SAA envisions an assignment to Righthaven of all rights, title and interest in and to potential copyrighted works, which includes the right to sue for any past, present or future infringements, coupled with a license back to Stephens Media of the right to exploit any copyrighted works.  (*Id*.)  But the SAA itself does not cause an assignment of property rights.

Nor does the SAA's right of reversion provision have any impact on Righthaven's present standing to sue for past infringement.  The right of reversion gives Stephens Media the right to regain the ownership to any assigned work in the future under certain conditions.  (*Id.* § 8.)  That future right has no impact on Righthaven's current ownership status, its ownership status at the time of the assignment, or its status at the time it filed this action.  Indeed, unless and until Stephens Media exercises its right of reversion, that right will have no impact whatsoever.  Stephens Media has not exercised that right (Gibson Decl. Ex. 2 § 8; Hinueber Decl. Ex. 2 § 8.), and there is nothing in the record to suggest it will.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions.  "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights."  *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978).  An assignment

---

[2] Righthaven further contends that Defendants' lack standing to challenge the contractual validity of the SAA.  Courts have held, that as a matter of public policy, it would be inequitable to allow an infringer to use the validity of transfer of rights to a copyrighted work as a defense when no dispute exists between the parties to the transfer.  *See Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1428-29 (9th Cir. 1996); *Elden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36-37 (2d Cir. 1982); *Sabroso Publ'g, Inc. v. Caiman Records Am., Inc.,* 141 F.Supp.2d 224, 227-28 (D. P.R. 2001)(denying motion to dismiss for lack of standing based on alleged invalidity of transfer of copyrighted interest).  Moreover, as a matter of general contract law, only the contracting parties to an agreement have standing to attack its validity.  *See, e.g., Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 792 (8th Cir. 1967).

transfers all rights, title and interest in and to the assigned property. *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . ."). Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some interest to the same party or to another party, complete title to ownership vests in the assignee ***prior to being divested through licensure***.

While the transactional structure described in the SAA, in which a license is given back to Stephens Media, may potentially be construed to limit Righthaven's ability to bring suit for present and future infringements during the term of the license, it does not limit the company's ability to bring suit for past infringements, which is precisely what is at issue here. As the Ninth Circuit held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement. *Silvers,* 402 F.3d at 889-90.

The transactional structure under the SAA and the actual assignment of rights comport with the holding in *Silvers*. Pursuant to the individual assignments that are ultimately executed, Righthaven is assigned all ownership rights, along with the right to sue for past, present and future infringements, associated with the work assigned. (*See, e.g.,* Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.) While Righthaven promises under the SAA to license rights back to Stephens Media to exploit the acquired works, there can be no license until ***after*** the assignment of ownership rights and the right to sue for past infringements is conveyed. This structure thus conveys ownership and the right to sue for accrued infringement claims, which is precisely what is required to establish standing under *Silvers* for purposes of accrued or past infringement claims. Any other conclusion would require the Court to ignore the expressly defined assignment and license-back structure contemplated by the parties to the SAA.

**B.   The Court Should Construe the Contracts to Convey to Righthaven All Rights Necessary for It to Have Standing.**

Under Nevada law,[3] the Court should interpret the contracts to find that they convey any and all rights necessary to establish Righthaven as the true and lawful owner of the copyright to the Work.  To the extent there is any ambiguity with respect to whether the Assignment sufficiently conveyed the rights to Righthaven so that it has standing to bring this action, the court should look to parties' intent.  *Sheehan & Sheehan v. Nelson Malley & Co.,* 121 Nev. 481, 488, 117 P.3d 219, 224 (2005) (internal quotation omitted).  Moreover, pursuant to the express language of the SAA, if any portion of the SAA is deemed void or unenforceable, the Court is contractually vested with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties." (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

Contrary to Defendant's assertions, there can be no question that the parties intended to convey to Righthaven any right necessary for it to bring suit.  As set forth in the accompanying declarations and as reflected in the SAA, the Assignment, and the recently-executed Amendment discussed below, the parties to the SAA and the Assignment intended to vest copyright ownership of specific works in Righthaven so as to grant it the right to sue for infringement, including past infringement, while still permitting Stephens Media to use the works going forward based on a license of rights to do so from Righthaven.  (Gibson Decl. ¶¶ 5-12, Exs. 2-3; Hinueber Decl. ¶¶ 5-11, Exs. 2-3.)   Accordingly, the Court should construe the contracts in such a way that they convey to Righthaven all rights that are necessary to have standing to maintain this action.  If the Court does so, Righthaven has always had standing to bring this suit.

**C.   Standing Is Also Effected by the Amendment.**

As stated above, Righthaven has standing to bring suit pursuant to the Assignment and SAA, which expressly confer (and reflect the intent to confer) full copyright ownership on Righthaven.  Nevertheless, to further clarify the parties' intent—and to preempt any future

---

[3] The SAA expressly states that it is governed by Nevada law.  (Gibson Decl. ¶ 5, Ex. § 15.3; Hinueber Decl. ¶ 5, Ex. § 15.3.)

challenges to Righthaven's standing—Righthaven and Stephens Media have clarified and amended their intent when entering into the SAA as set forth in the supporting declarations and in the Amendment.  (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.)  In the Amendment, Righthaven and Stephens Media promise to execute individual assignments for certain copyrighted works (as before), but Righthaven promises to grant Stephen's media only a non-exclusive license to Exploit the work.  (Gibson Decl. Ex. 3 at 1-2; Hinueber Decl. Ex. 3 at 1-2.)  As a mere holder of the right to use the assigned copyrighted work, Stephens Media would not have standing to sue for infringement.  *See, e.g., Silvers* 402 F.3d at 884-85.  Thus, the sole party holding any exclusive rights, and the attendant standing to sue for infringement, would be Righthaven.  *See id.*  This agreement reflects the parties' intent to transfer full rights in the copyright to Righthaven. (Gibson Decl. ¶¶ 5-12, Ex. 3; Hinueber Decl. ¶¶ 5-11, Ex. 3.)  Further, the Amendment extinguishes the "right of reversion" previously held by Stephens Media, and replaces it with a standard option to re-purchase the copyright upon the satisfaction of certain conditions.  (Gibson Decl. Ex. 3 at 2-3; Hinueber Decl. Exs. 3 at 2-3.)  The Amendment also contains provisions requiring Stephens Media to pay Righthaven royalties for its use of the Work, making Righthaven the beneficial owner in the Work, in addition to its status as legal owner. (*Id.* at 1-2.)

        Courts frequently allow parties to a copyright transfer to subsequently clarify or amend their agreement in order to express their original intent to grant the assignor the right to sue for infringement.  *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) (recognizing that an oral assignment can be confirmed later in writing); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir. 1994); *see also Sabroso Publ'g, Inc.,* 141 F. Supp. 2d at 228; *Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 318 (S.D.N.Y. 1996) (giving effect to a "very late" amendment granting the plaintiff the right to bring the accrued causes of action); *Goldfinger Silver Art Co., Ltd. v. Int'l Silver Co.,* 1995 WL 702357, at *4 (S.D.N.Y. Nov. 28, 1995) (holding that plaintiff could cure

standing defect after the action was filed); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993) (holding that second assignment cured standing defect).

Given that the parties to the Assignment and the Amendment do not dispute the rights in the Work and the Defendant has not been prejudiced in any way by the Amendment, the Court—if it finds that original standing was defective—should allow the Amendment to cure the defect without dismissing the case.[4]  *See Intimo, Inc.,* 948 F. Supp. at 317-18; *Infodek, Inc.,* 830 F. Supp. at 620; *Wade Williams Dist., Inc. v. Am. Broad. Co., Inc.,* 2005 WL 774275, at *4 (S.D.N.Y. April 5, 2005); *see also Dubuque Stone Prod. Co. v. Fred L. Gray Co.,* 356 F.2d 718, 724 (8th Cir. 1966); *Kilbourn v. Western Surety Co.,* 187 F.2d 567, 571 (10th Cir. 1951). Moreover, permitting subsequent clarification or amendment of the parties' original intent so as to cure any technical standing defects promotes judicial economy and reduces litigation costs that would necessarily arise from the dismissal and re-filing of a new action.  *Intimo, Inc.,* 948 F. Supp. at 318-19.

**D.      Defendant's Claim That Righthaven Has Willfully Deceived The Court is Wholly Without Merit.**

In a transparent attempt to benefit from the groundswell of Internet-based conspiracy theories and baseless attacks against the propriety of its alleged business model, Defendant alternatively requests dismissal of Righthaven's Complaint because it has willfully deceived the Court. (Doc. # 33 at 5-8.)  As the above arguments clearly establish, Righthaven has standing to maintain this action for past infringement of the Work. (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.) Righthaven has buttressed this inevitable conclusion by supplying the Court with supporting declarations from both parties to the transaction that unquestionably demonstrates their intent in effectuating the Assignment. (Gibson Decl. ¶¶ 5-12, Exs. 2-3; Hinueber Decl. ¶¶ 5-11, Exs. 2-3.)  Moreover, Righthaven has further submitted the Amendment, which, while unnecessary to vest the Court with standing for Defendant's past infringement under *Silvers*,

---

[4]  Federal Rule of Civil Procedure 17(a) additionally supports Righthaven's request to have the parties' intent to grant the company standing to bring this action by recognizing and giving effect to the Amendment through ratification.  *See Clarkson Co. Ltd. v. Rockwell Int'l Corp.,* 441 F. Supp. 792, 797 (N.D. Cal. 1977).

1  unequivocally clarifies Righthaven's standing to maintain this action along with actions for

2  present and future infringements of the Work.   (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11,

3  Ex. 3.)  Given the above-cited authority and supporting materials, Defendant would have to

4  somehow pull a proverbial rabbit from a magician's top hat in order to successfully justify

5  dismissal of Righthaven's Complaint on the ground that it willfully deceived this Court by filing

6  this action.  In short, the record before the Court demonstrates Righthaven's entitlement to

7  maintain this action.  Accordingly, Defendant's request for dismissal based on willful deception

8  by Righthaven must be rejected and the rampant, unjustified Internet-based criticism attendant to

9  such baseless claims must come to an end in view of this Court's anticipated, well-reasoned

10 decision.

11 **IV.    CONCLUSION**

12    For the foregoing reasons, Righthaven respectfully requests the Court find that Righthaven

13 has standing to maintain this infringement action.   Accordingly, Defendant's Motion must be

14 denied.

15           Dated this 9th day of May, 2011.

16                                          SHAWN A. MANGANO, LTD.

17                                          By: /s/ Shawn A. Mangano
                                           SHAWN A. MANGANO, ESQ.
18                                          Nevada Bar No. 6730
                                           shawn@manganolaw.com
19                                          9960 West Cheyenne Avenue, Suite 170
                                           Las Vegas, Nevada 89129-7701
20                                          Tel: (702) 304-0432
                                           Fax: (702) 922-3851
21
                                           *Attorney for Righthaven LLC*
22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2      Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 9th day of

3   May, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.

4

5                                              SHAWN A. MANGANO, LTD.

6                                              By: /s/ Shawn A. Mangano
                                               SHAWN A. MANGANO, ESQ.
7                                              Nevada Bar No. 6730
                                               shawn@manganolaw.com
8                                              9960 West Cheyenne Avenue, Suite 170
                                               Las Vegas, Nevada 89129-7701
9                                              Tel: (702) 304-0432
                                               Fax: (702) 922-3851
10
                                               *Attorney for Righthaven LLC*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28