SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Plaintiff Righthaven LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>       Plaintiff,<br><br>v.<br><br>WAYNE HOEHN, an individual,<br><br>       Defendant. | Case No.: 2:11-cv-00050-PMP-RJJ<br><br>**DECLARATION OF STEVEN A. GIBSON IN SUPPORT OF PLAINTIFF RIGHTHAVEN LLC'S RESPONSE TO DEFENDANT WAYNE HOEHN'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

I, Steven A. Gibson, being first duly sworn upon oath, do hereby depose and state:

1. I am, and at all times referenced in this declaration have been, the Chief Executive Officer of Plaintiff Righthaven LLC ("Righthaven"), which is a Nevada limited-liability company. I have personal knowledge of the facts stated herein, and if called upon to testify thereto, would be competent to do so. The declaration is made in support of Righthaven's response to Defendant Wayne Hoehn's ("Defendant") Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. # 16.)

2. Righthaven filed this action against the Defendant on January 11, 2011. (Doc. # 1.) I am familiar with Righthaven's allegations in this action concerning Defendant's alleged infringement of the copyrighted literary work entitled "Public employee pensions. We can't afford them" (the "Work"). (*Id.* at 2, Doc. # 1-1 at 2-3.)

1

3.   As alleged in the Complaint (Doc. # 1), the Work was originally published by the *Las Vegas Review-Journal*, which is owned by Stephens Media LLC ("Stephens Media"), on or about November 28, 2010.

4.   Stephens Media assigned all rights, title and interest in and to the Work, including the right to seek redress for all past, present and future infringements of the Work, to Righthaven on December 6, 2010 (the "Assignment"), a true and correct copy of which is attached hereto as Exhibit 1. As alleged in the Complaint, Righthaven applied for registration of the Work with the United States Copyright Office (the "USCO") based on its rights from Stephens Media as set forth in the Assignment prior to filing suit based upon the Defendant's act of copyright infringement that is alleged to have occurred before the Work was assigned.

5.   I am familiar with the contents of the Strategic Alliance Agreement (the "SAA") entered into by Righthaven and Stephens Media. A true and correct copy of the SAA is attached hereto as Exhibit 2. I executed the SAA on behalf of Righthaven.

6.   The intent of the parties when entering into the SAA was to describe general, mutually agreed upon procedures under which Stephens Media could assign all rights, title and interest to certain copyrighted works to Righthaven, including the right to seek redress for past, present and future infringement. Following such an assignment, the parties intended to permit Stephens Media to continue to display or otherwise use the assigned content through the grant of a license from Righthaven.

7.   At all times, it was Righthaven's intent, through the execution of each particular assignment, to acquire from Stephens Media full ownership of a copyrighted work, along with the right to sue for past, present and future infringement of that work.

8.   As intended by Righthaven and Stephens Media, the Assignment at issue here transferred full ownership rights of the Work to Righthaven, together with the right to sue for accrued, present and future infringement.

9.   Righthaven has faced numerous challenges to its standing to bring copyright infringement actions in this judicial district. Righthaven has prevailed on this issue in multiple other cases, based upon the unambiguous language contained in the copyright assignments: (1)

*Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011); (2) *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010); (3) *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010); and (4) *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).

10. The language in the assignments at issue in the aforementioned cases is identical to the Assignment in this case, other than with respect to the name of the particular work at issue.

11. Righthaven and Stephens Media also expressly intended to address any potentially void or unenforceable provisions in the SAA that would fail accomplish their mutual goals, intent and desire. Section 15.1 of the SAA was included in order to vest a court with the power to correct any identified defects "in a narrowly tailored manner to approximate the manifest intent of the Parties." (Ex. 2 at § 15.1.)

12. Righthaven and Stephens Media have also affirmatively attempted to clarify their mutual intent when they entered into the SAA by preparing and executing a Clarification and Amendment to the Strategic Alliance Agreement (the "Amendment"), effective as of January 18, 2010, which is the same Effective Date of the SAA. A true and correct copy of the Amendment is attached hereto as Exhibit 3.

13. To the extent the SAA, as clarified through the Amendment, somehow fails to effectively assign and convey from Stephens Media to Righthaven all ownership in and to particular copyright protectable content, along with standing to sue for accrued, present and future infringement, while also permitting Stephens Media to still use said content in a manner consistent with its general historical use via the grant of a license to do so from Righthaven, Righthaven asks the Court for direction, clarification or to correct the Amendment pursuant to the authority given to it under Section 15.1 of the SAA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of May, 2011.

Steven A. Gibson

1

## CERTIFICATE OF SERVICE

2    Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 9th day of

3    May, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.

4

5                                SHAWN A. MANGANO, LTD.

6                                By: /s/ Shawn A. Mangano
                                 SHAWN A. MANGANO, ESQ.
7                                Nevada Bar No. 6730
                                 shawn@manganolaw.com
8                                9960 West Cheyenne Avenue, Suite 170
                                 Las Vegas, Nevada 89129-7701
9                                Tel: (702) 304-0432
                                 Fax: (702) 922-3851
10

11                               *Attorney for Righthaven LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# EXHIBIT 1

## COPYRIGHT ASSIGNMENT

This Copyright Assignment is made effective as of December **6**, 2010 by Stephens Media LLC, a Nevada limited-liability company ("Assignor").

In consideration of monetary commitments and commitments to services to be provided and/or already provided by Righthaven LLC, a Nevada limited-liability company ("Righthaven"), to Assignor and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby transfers, vests and assigns the work described in Exhibit A, attached hereto and incorporated herein by this reference (the "Work"), to Righthaven, subject to Assignor's rights of reversion, all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present and future infringements of the copyright, both accrued and unaccrued, in and to the Work.

**IN WITNESS WHEREOF**, Assignor hereby executes this Assignment on this **6** day of December, 2010.

STEPHENS MEDIA LLC

By: _____

Name: Mark Hinueber
Title: Vice-President/General Counsel

STATE OF NEVADA
COUNTY OF CLARK

Subscribed and sworn to before me by Mark Hinueber this **6th** day of December, 2010.

_____
Notary Public

MARY A. LEE
Notary Public State of Nevada
No. 09-8941-1
My appt. exp. Nov. 13, 2012

0002166

## EXHIBIT A

Public employee pensions. Work made for hire by Sherman Frederick. Originally published November 28, 2010, Las Vegas *Review-Journal* and www.lvrj.com.

**EXHIBIT 2**

# STRATEGIC ALLIANCE AGREEMENT

This **STRATEGIC ALLIANCE AGREEMENT** (this "Agreement") is made and entered into this 18th day of January, 2010 ("Effective Date") by and between Right*haven* LLC, a Nevada limited-liability company ("Right*haven*") and Stephens Media LLC, a Nevada limited-liability company ("Stephens Media").

In consideration of the covenants, representations and warranties set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Right*haven* and Stephens Media agree as follows:

1. **Definitions and Interpretations.**

   1.1.   Certain terms used herein shall have the meaning ascribed to such terms as set forth in Schedule 1.

   1.2.   All of the defined terms as set forth in Schedule 1, if defined in the singular or present tense, shall also retain such general meaning if used in the plural or past tense, and if used in the plural or past tense, shall retain the general meaning if used in the singular or present tense.

   1.3.   Section headings are used for convenience only and shall have no interpretive effect or impact whatsoever.

2. **Integrated Transaction.**

   The Parties hereby covenant that this Agreement is part of an integrated transaction with the transaction (the "Right*haven* Transaction") represented by the formation of Right*haven* and the corresponding Operating Agreement by and amongst Net Sortie Systems, LLC, a Nevada limited-liability company ("Net Sortie"), Right*haven* and the Stephens Media's affiliated company, SI Content Monitor LLC, an Arkansas limited-liability company (said latter entity known herein as the "Stephens Media Affiliate" and said Operating Agreement known herein as the "Operating Agreement"). Stephens Media further covenants, represents and warrants that: (a) the Stephens Media Affiliate is presently and shall throughout the Term be Controlled by common owners, with no material variation in said ownership, (b) the Operating Agreement is being executed by the parties to the Operating Agreement simultaneously with the execution by the Parties of this Agreement; (c) that neither Right*haven* nor Net Sortie would enter into the Right*haven* Transaction if not for Stephens Media's execution of this Agreement; and (d) Right*haven* and Net Sortie, as third party beneficiaries, are relying upon Stephens Media's continued performance of Stephens Media's duties and obligations pursuant to and arising out of this Agreement as a basis of the consideration for Right*haven*'s and Net Sortie's respective duties and obligations pursuant to and arising out of the Operating Agreement.

1

CONFIDENTIAL

3.    *Exclusive Engagement.*

3.1.    Stephens Media shall assign (at the times stated) to Right*haven*, pursuant to the procedures set forth in Section 7: (a) any copyrights owned by Stephens Media that Stephens Media desires to be the subject of Searching (the "Searching Decision"), with each such respective assignment to occur within a reasonable time after Stephens Media makes each respective Searching Decision, (b) any copyrights owned by Stephens Media that Stephens Media considers (the "Material Risk Conclusion") a material risk of infringement (with each such respective assignment to occur within thirty (30) days after Stephens Media makes each respective Material Risk Conclusion, and (c) within thirty (30) days of having respective Infringement Notice, each and every Infringed Copyright that exist during the Term (the "Assigned Infringed Copyright(s)").

3.2.    During the Term, Right*haven* shall use commercially reasonable efforts to engage in Searching with respect to all Stephens Media Assigned Copyrights.

3.3.    During the Term, Right*haven* shall have the right, but not the obligation, to pursue an Infringement Action of the respective infringements that are the subject of the respective Infringed Copyrights. Right*haven* shall have sixty (60) days after each respective assignment of each respective Assigned Infringed Copyright to Notify Stephens Media of whether Right*haven* will pursue an Infringement Action of said respective Assigned Infringed Copyright (the "Remediation Option Notice"). If Right*haven* chooses in the Remediation Option Notice to not pursue an Infringement Action (the "Remediation Declination"), then Right*haven* shall reassign the Assigned Copyright to Stephens Media that is the subject of the Remediation Declination; provided, however, that Stephens Media shall have the right to reassign any such copyright pursuant to Section 2.1 upon learning new information concerning the circumstances of infringement or possible infringement associated with any copyright that is the subject of a Remediation Declination. If Right*haven* chooses in the Remediation Option Notice to pursue an Infringement Action, then Right*haven* shall commence Remediation within the times frames and pursuant to the procedures set forth in Section 4. Notwithstanding any other provision of this Agreement, Stephens Media shall have the right to Notify Right*haven*, within five (5) Business Days after receipt of a respective Remediation Option Notice, that Right*haven* should not take any Infringement Action with respect to a particular putative infringer as indicated in any respective Remediation Option Notice (the "Declination Notice") and upon receipt of a Declination Notice, Right*haven* shall not take any Infringement Action with respect to the particular putative infringer set forth in any Declination Notice; provided, however, that Stephens Media shall only send any Declination Notice on a reasonable basis with the grounds of reasonability being that a particular putative infringer is a charitable organization, is likely without financial resources, is affiliated with Stephens Media directly or indirectly, is a present or likely future valued business relationship of Stephens Media or otherwise would be a Person that, if the subject of an Infringement Action, would result in an adverse result to Stephens Media.

3.4.    While Stephens Media shall reserve the right to undertake litigation in order to pursue any infringement of any Stephens Media copyright through legal counsel duly licensed in

2

the jurisdiction through which such litigation would be undertaken, Stephens Media hereby engages Right*haven* throughout the Term on an exclusive basis to undertake all activities set forth in this Section 3, including, without limitation, the engaging in Searching as well as the pursuit of Infringement Actions. Stephens Media shall not, at any time during the Term, assign to any other Person that is a Competitor any copyrights owned by Stephens Media. Stephens Media shall also never Compete with Right*haven* at any time during the Term and for a period of five (5) years after termination of the Term.

4. *Actions to Address Copyright Infringement.*

Right*haven* shall take an Infringement Action against the Infringer in order to effect a Disposition within one (1) year of the later of (a) the procurement of a copyright registration covering the Stephens Media Assigned Copyrights or (b) if such registration already exists, within six (6) months after each respective Remediation Option Notice that gives rise to each respective requirement of an Infringement Action; provided, however, that if Right*haven* elects to contact Infringer prior to any Infringement Action and achieves a commercially reasonable Recovery, then Right*haven* shall not be required to take an Infringement Action (and such Recovery shall satisfy Right*haven*'s duties in this Agreement to pursue an Infringement Action); provided further, that if Right*haven* discovers Content that provides Right*haven* with a good-faith-based belief that the Infringer is not an infringer of the Stephens Media Assigned Copyrights, then Right*haven* shall have no duties to take any Infringement Action or pursue a Disposition.

5. *Recovery Distribution.*

Within one (1) week after receipt of the Recovery, Right*haven* shall pay to Stephens Media a the percentage of the Recovery provided to Right*haven*'s most preferred customers from time to time (which is, as of the Effective Date, fifty percent (50%)) minus Costs advanced or incurred by Right*haven* related to, with respect to or arising out of the preparation for, conduct of and ultimate resolution of the Infringement Action and/or Disposition.

6. *Infringement Action Costs.*

Subject to Section 2, Right*haven* shall be responsible for all Costs incurred in an Infringement Action (the "Infringement Action Costs"); provided, however, that Costs shall not include the salaries or other compensation to Right*haven* employees associated with or arising out of work performed arising out of or in association with this Agreement.

7. *Assignment of Copyright Content; Stephens Media License.*

7.1     Subject to the other terms and provisions of this Agreement and throughout the Term, Stephens Media shall effect the assignments to Right*haven* of copyrights as required by this Agreement (including, without limitation, within the time periods required by this Agreement) by executing a particularized assignment with respect to each copyright and each

3

**CONFIDENTIAL**

consistent with (and in form and substance the same as) the scope of assignment as set forth in the form of copyright assignment as embodied in Exhibit 1 (each a "Copyright Assignment"). Stephens Media shall provide Notice to Right*haven* of each copyright (each a "Notified Copyright") that is required to be the subject of a Copyright Assignment (a "Copyright Assignment Notice") by no later than five (5) Business Days prior to the last day upon which each respective Copyright Assignment is required to be executed by Stephens Media as provided in Section 3.1. Right*haven* shall then provide to Stephens Media a conforming Copyright Assignment for Stephens Media to execute with respect to each Notified Copyright within three (3) Business Days after receipt of the Copyright Assignment Notice.

7.2     Despite any such Copyright Assignment, Stephens Media shall retain (and is hereby granted by Right*haven*) an exclusive license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever and Right*haven* shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery. To the extent that Right*haven*'s maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Right*haven* hereby grants an exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights. Right*haven* shall have no Obligation to protect or enforce any Work of Stephens Media that is not Stephens Media Assigned Copyrights.

8.     ***Stephens Media's Right of Reversion.***

Stephens Media shall have the right at any time to terminate, in good faith, any Copyright Assignment (the "Assignment Termination") and enjoy a right of complete reversion to the ownership of any copyright that is the subject of a Copyright Assignment; provided, however, that if Right*haven* shall have commenced an action to prosecute an infringer of the Stephens Media Assigned Copyrights, Stephens Media shall be exclusively responsible for effecting termination of such action including, without limitation, all Losses associated with any dismissal with prejudice. In order to effect the termination of the any Copyright Assignment, Stephens Media shall be required to provide Right*haven* with thirty (30) days prior written notice. Within thirty (30) days after receipt of termination of the any Copyright Assignment, Right*haven* shall commence documentation to effect reassignment of the Stephens Media Assigned Copyrights to Stephens Media. Upon any Assignment Termination, Stephens Media shall pay to Right*haven* the Infringement Action Costs that would otherwise work an unjust enrichment benefitting Stephens Media (but under no circumstances shall Infringement Action Costs be less than the costs of any application for registrations or registrations of copyrights made and/or procured by Right*haven* for the benefit of Stephens Media), pursuant to or arising out of this Agreement. No termination of any Copyright Assignment shall impair Right*haven*'s rights to receive sums related to, with respect to and/or arising out of any Recovery pursuant to or arising out of this Agreement (the "Early Termination Amounts"), including, without limitation, a reasonable level of compensation associated with, with respect to, and arising out of, any and all efforts exerted

4

CONFIDENTIAL

by Right*haven* to Search, find, investigate, ascertain, pursue, redress, sue or otherwise file a claim against any Person with respect to, or otherwise address any copyright infringement benefitting, whether directly or indirectly, copyright holder, pursuant to or arising out of this Agreement, as well as all other rights to quantum meruit proceeds that any court of competent jurisdiction would award under such circumstances. Right*haven* shall provide Notice within thirty (30) days of any Assignment Termination of Right*haven*'s calculation of Early Termination Amounts. Within ten (10) days of receipt of any Recovery by Stephens Media, Stephens Media shall pay to Right*haven* the Early Termination Amounts or provide Notice to Right*haven* of any contest whereby Stephens Media contends that the Early Termination Amounts Notified by Right*haven* to Stephens Media were inaccurate or unjust and to what extent (the "Contested Amount") the Early Termination Amounts were inaccurate or unjust (the "Stephens Media Contest"). Within ten (10) days after receiving the Stephens Media Contest (the "Contest Notification Date"), Right*haven* shall have the option: (a) to elect to receive from Stephens Media within ten (10) days of the Contest Notification Date, the Early Termination Amounts minus the Contested Amount (the "Settled Amount"), or (b) to Notify Stephens Media that Stephens Media must pay to Right*haven* the Settled Amount within ten (10) days of the Contest Notification Date, and that Right*haven* reserves the right to make a claim that Stephens Media should pay the full Early Termination Amounts. In the event that Right*haven* preserves Right*haven*'s right to make a Claim pursuant to Section 5(b), the Parties shall mediate the dispute associated with the Contested Amount (the "Contest Dispute") within sixty (60) days by: (x) reasonably choosing a mediator or by employing a JAMS mediator through http://www.jamsadr.com, (y) mediating the Contest Dispute in Las Vegas, Nevada, and (z) mediating the Contest Dispute in good faith (the "Mediation"). In the event that the Mediation is not effective in resolving the Contest Dispute within sixty (60) days of the commencement of the Mediation, Right*haven* shall have the right to bring any and all relevant Claims for recovery of the Contested Amount, and any amounts accrued by Right*haven* in the Mediation, in any court of competent jurisdiction, in addition to all other rights and remedies available to Right*haven*, whether in law or equity.

9.   *Representations, Warranties and Covenants of Stephens Media.*

   Stephens Media hereby represents, warrants and covenants as of the Effective Date and throughout the Term:

   9.1.   The execution, delivery and performance of this Agreement by Stephens Media does not and shall not violate any of Stephens Media's organizational documents, any applicable Law, or any contractual or other obligation of Stephens Media or any order to which Stephens Media is bound.

   9.2.   Stephens Media is the owner of all Stephens Media Assigned Copyrights. The Stephens Media Assigned Copyrights is free and clear of all liens and Encumbrances. Stephens Media further represents and warrants that it has the exclusive right to use the Stephens Media Assigned Copyrights, and has the exclusive right to exclude others from Using the Stephens Media Assigned Copyrights. Stephens Media further warrants that, as of the Effective Date,

5

Stephens Media has no knowledge of any third-party Claim that any aspect of Stephens Media's present or contemplated business operations infringes or will infringe any rights of any third party in Stephens Media Assigned Copyrights.

9.3.    Stephens Media shall not sell, grant any Encumbrance on or in or assign, any of Stephens Media Assigned Copyrights to any third Person during the Term absent prior written approval of Right*haven*; provided, however, that Stephens Media may maintain Encumbrances on Stephens Media Assigned Copyrights as part of an overall funding securitization whereby all or substantially all of Stephens Media's assets are Encumbered as part of said funding securitization and Stephens Media Assigned Copyrights are not singled-out as or part of a particularized group of Encumbered assets.

9.4.    Stephens Media shall not reduce, adjust, settle or compromise any infringement of Stephens Media Assigned Copyrights except as approved in writing by Right*haven*.

9.5     Stephens Media shall instruct Stephens Media's general counsel, currently Mark A. Hinueber, Esq. (the "General Counsel"), to undertake the necessary and appropriate efforts to ensure Stephens Media's functional performance of Stephens Media's obligations pursuant to and arising from this Agreement.  Stephens Media shall further instruct the General Counsel to instruct, by way of internal electronic mail communications (in form and substance the same as Exhibit 9.5), to all employees of Stephens Media that have awareness of Stephens Media Content, within ten (10) Business Days after the Effective Date (the "Content Notice Date") and on every anniversary of the Content Notice Date thereafter during the Term, of the need to promptly apprise the General Counsel throughout the Term of any Content that any employee believes may reasonably be the subject of an unauthorized reproduction or publication.

9.5.    Stephens Media shall promptly notify Right*haven* of any unauthorized infringement of Stephens Media Assigned Copyrights that reasonably comes to Stephens Media's attention.

9.6.    Stephens Media shall cooperate fully and candidly with Right*haven* with respect to the Infringement Action and shall take all commercially reasonable actions necessary in order to effect the terms and provisions of this Agreement.

9.7.    Stephens Media shall provide all Content in whatsoever Media known, or available, to Stephens Media that may aid Right*haven* in the conduct of an Infringement Action, including, without limitation, privileged or confidential Content in any and all Media; provided, however, that nothing in this Section 9.7 shall require any waiver of any protections afforded by reporter shield laws, including, without limitation, as set forth pursuant to Nevada Revised Statute Section 49.275, as amended from time to time.

9.8.    Stephens Media shall execute such authorizations as may be required by third Persons in order to release Content in any Media whatsoever to Right*haven* to aid Right*haven* in an Infringement Action.

6

CONFIDENTIAL

9.9. Right*haven* has not made any express or implied warranties or representations that the Services provided by Right*haven* shall result in any particular amount or level of income to Stephens Media.

9.10.    Stephens Media hereby receives notice that Steven A. Gibson ("Gibson") has an ownership interest in one of the entities that owns Right*haven*, Gibson's interest in Right*haven* is therefore a minority interest and that Gibson is also the owner of Gibson Lowry Burris LLP ("Gibson's Participation").

9.11.    Stephens Media hereby waives any conflict of interest associated with and/or arising out of Gibson's Participation and that Stephens Media is represented by legal counsel in Nevada familiar with the rules of professional responsibility in Nevada concerning making an informed waiver of the conflict of interest hereby waived.

9.12.    Gibson is in no manner representing Stephens Media in or with respect to the negotiation, drafting or entering into this Agreement.

10.    *Recovery Instrument.*

10.1.    Any Recovery Instrument shall be written in a manner as to require the endorsement of Right*haven* to be properly endorsed prior to any distribution.

10.2.    Right*haven* is hereby authorized to act as attorney-in-fact for Stephens Media and to endorse any Recovery Instrument in Stephens Media's name for deposit into Right*haven*'s bank account for collection and final distribution pursuant to the terms of this Agreement. Stephens Media shall deliver any Recovery Instrument received by Stephens Media to Right*haven* for endorsement and deposit into Right*haven*'s account.

10.3.    If Stephens Media uses, disburses, deposits or takes any other action with respect to any Recovery Instrument in contravention of this Agreement, the Sums with respect to such Recovery Instrument shall be deemed held in trust to be distributed pursuant to the terms of this Agreement.

10.4.    If Right*haven* uses, disburses, deposits or takes any other action with respect to any Recovery Instrument in contravention of this Agreement, the Sums with respect to such Recovery Instrument shall be deemed held in trust to be distributed pursuant to the terms of this Agreement.

11.    *Stephens Media's Potential Liability.*

Stephens Media understands and acknowledges that Stephens Media and Right*haven* may be liable for an Infringer's attorneys' fees as required by Law in connection with an Infringement Action. Stephens Media further understands that a lawsuit brought solely to harass or to coerce a

7

settlement may result in liability for malicious prosecution or abuse of process. If any Claim made by an Infringer in an Infringement Action results in Losses, other than Losses described in Section 8, Right*haven* shall be solely liable for such Losses and shall indemnify Stephens Media from and against any such Losses but only if such Losses do not arise out of a misrepresentation by Stephens Media or other breach by Stephens Media of a provision of this Agreement.

12.   *Disclaimer of all Warranties and Representations.*

RIGHT*HAVEN* DISCLAIMS ALL IMPLIED WARRANTIES AND/OR REPRESENTATIONS AND MAKES NO WARRANTIES OR REPRESENTATIONS AS TO ANY PARTICULAR OUTCOME OF ANY INFRINGEMENT ACTION. Right*haven* hereby represents that Right*haven* has no knowledge that any Intellectual Property used or owned by Right*haven* infringes the Intellectual Property owned by any third Person.

13.   *Remedy.*

RIGHT*HAVEN* SHALL NOT BE HELD LIABLE TO ANY PARTY ON ACCOUNT OF OR DUE TO BREACH OF THIS AGREEMENT IN OR FOR ANY AMOUNT THAT EXCEEDS, IN THE AGGREGATE, THE LESSER OF: (A) ANY STEPHENS MEDIASHIP FEES RECEIVED BY RIGHT*HAVEN* FROM STEPHENS MEDIA WITHIN THE PRIOR SIX (6) MONTHS AND (B) ONE THOUSAND DOLLARS ($1,000) AND RIGHT*HAVEN* SHALL NOT BE LIABLE TO STEPHENS MEDIA (NOR TO ANY PERSON CLAIMING ANY RIGHT, TITLE OR INTEREST DERIVED FROM OR AS SUCCESSOR TO THE STEPHENS MEDIA'S RIGHT, TITLE AND INTEREST) FOR INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES OF ANY KIND INCLUDING, WITHOUT LIMITATION, LOST REVENUES OR PROFITS, LOSS OF BUSINESS OR LOSS OF CONTENT ARISING OUT OF THIS AGREEMENT, IRRESPECTIVE OF WHETHER THE PARTY HAS ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGES.

14.   *Indemnification.*

Subject to Section 8, Stephens Media shall indemnify and hold Right*haven* harmless from and against all Losses incurred by Right*haven* with respect to or arising out of any Claim brought by any third Person against Right*haven* based upon any act or omission (whether directly or indirectly) by Stephens Media, including, without limitation, any act or omission stemming from or arising out of this Agreement.

15.   *General Provisions.*

15.1.   If any provision of this Agreement should be held to be void or unenforceable, in whole or in part, by a court of competent jurisdiction, then such court shall correct the defect in a narrowly tailored manner to approximate the manifest intent of the Parties.

8

**CONFIDENTIAL**

15.2.    Subject to Section 2, this Agreement represents the entire understanding and agreement by and between Right*haven* and Stephens Media.

15.3.    This Agreement and any Dispute shall be interpreted and enforced in accordance with the laws of the State of Nevada without regard to its conflict of law principles.

15.4.    The Parties hereby submit to the non-exclusive personal jurisdiction of the state and federal courts present in Clark County, Nevada with respect to any Dispute.

15.5.    The term of this Agreement (the "Term") shall commence on the Effective Date and shall end upon the termination of the Operating Agreement.

16.    **Non-Solicitation.**

During the term of this Agreement and for a period of one (1) year subsequent to the termination date of this Agreement, neither party shall make any attempt to solicit for employment any current employee of the other party without the prior written consent of such party.

17.    **Notice.**

All notices and other communications hereunder shall only be in writing and shall be given by: (a) e-mail transmission to the other party (to be followed promptly by written confirmation mailed by certified mail as provided below) and deemed delivered upon transmission when confirmed as aforesaid and provided written confirmation and receipt is obtained by the sender; (b) facsimile transmission (to be followed promptly by written confirmation mailed by certified mail as provided below) and deemed delivered upon transmission when confirmed as aforesaid and provided written confirmation and receipt is obtained by the sender; (c) overnight courier and deemed delivered one (1) day after dispatch; or (d) registered or certified mail, return receipt requested and deemed delivered on the earlier of the date of the signed receipt for same or three (3) days after posting when addressed as follows:

If to Right*haven*:

Mr. Steven A. Gibson
Manager
Right*haven* LLC
7201 West Lake Mead Boulevard, Suite 580
Las Vegas, Nevada  89128
E-mail: sgibson@righthaven.com

9

CONFIDENTIAL

If to Stephens Media:

Stephens Media LLC
Attn: General Counsel
1111 West Bonanza Road
Las Vegas, Nevada  89106
E-mail: mhinueber@stephensmedia.com
Facsimile: (702) 383-0402

To the extent that no facsimile number is currently provided, a facsimile number will be provided within five (5) Business Days of obtaining same.

IN WITNESS WHEREOF, each of the undersigned duly execute this Agreement and represent that each has the authority to legally bind each respective entity.

Right*haven* LLC                              Stephens Media LLC


By: _____       By: _____
Name:  Steven A. Gibson                   Name:  *VP / General Counsel*
Title:   Manager                                Title:  _____
Date:   January 18, 2010                     Date:   *1·18·2010*


10


CONFIDENTIAL.

## SCHEDULE 1 – DEFINITIONS

"Agreement" shall mean this Right*haven* Standard Content Protection and Stephens Mediaship Agreement.

"Assigned Infringed Copyright(s)" shall have the meaning ascribed to such term as set forth in Section 3.1.

"Assignment Termination" shall have the meaning ascribed to such term as set forth in Section 8.

"Business Days" shall mean any day, Monday through Friday, excepting Saturday and Sunday and also excepting any day on which federal chartered banks situated in Clark County, Nevada are generally not open for business.

"Claim" shall mean any demand, cause of action or claim of whatsoever nature.

"Compete" shall mean to engage, anywhere in the known universe, in any of the business of Right*haven* or to offer or provide any of the services or products that Right*haven* provides as of the Effective Date, including, without limitation, those services and/or products as described in this Agreement, or to have any association, partnership or ownership interest in any Person that engages in any such conduct.

"Competitor" shall mean any Person who engages in any activity that would be within the meaning of the word Compete; provided, however, no law firm shall be deemed to be any such Person.

"Content" shall mean all material, information, documents, matter, text, data, graphics, computer-generated displays and interfaces, images, photographs and works of whatsoever nature, including, without limitation, all compilations of the foregoing and all results and/or derivations of the expression of the foregoing.

"Content Notice Date" shall have the meaning ascribed to such term as set forth in Section 9.5.

"Contest Notification Date" shall have the meaning ascribed to such term as set forth in Section 8.

"Contest Dispute" shall have the meaning ascribed to such term as set forth in Section 8.

"Contested Amount" shall have the meaning ascribed to such term as set forth in Section 8.

11

CONFIDENTIAL

"Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of any Person, or the power to veto major policy decisions of any such Person, whether through the ownership of voting securities, by contract, or otherwise.

"Copyright Assignment" shall have the meaning ascribed to such term as set forth in Section 7.1.

"Copyright Assignment Notice" shall have the meaning ascribed to such term as set forth in Section 7.1.

"Costs" shall mean any and every expenditure (at commercially reasonable rates) made on the part of Right*haven* with respect to an Infringement Action, including, without limitation, attorneys' fees to local counsel (not employed by Right*haven*) prosecuting such action, court reporter fees, application and registration fees, expert consultant and witness fees, computer research fees, private investigator fees, process server fees, courier fees, copy charges, long distance telephone charges, court filing fees, mailing costs, parking fees, expenses incident to travel by Right*haven* representatives related to the Infringement Action, including air (at coach rates) and ground transport, lodging, and meals, and other disbursements made in connection with the Infringement Action.

"Declination Notice" shall have the meaning ascribed to such term as set forth in Section 3.3.

"Develop" shall mean develop, conceive, reduce to practice, create, or otherwise arise out of efforts in any manner whatsoever and through any means whether now known or hereafter developed.

"Disposition" shall mean the final disposition of an Infringement Action through settlement, compromise, judgment and/or the execution and delivery of a Recovery Instrument by an Infringer with respect to, related to or otherwise associated with the Stephens Media Assigned Copyrights.

"Dispute" shall mean any controversy or other matter with respect to, or arising out of this Agreement.

"Early Termination Amounts" shall have the meaning ascribed to such term as set forth in Section 8.

"Effective Date" shall mean the date first entered in this Agreement.

"Encumbrance" shall mean any security interest, pledge, hypothecation, lien or other encumbrance of whatsoever nature.

"Exhibit" shall mean any document attached hereto denoted as an exhibit, which by reference made herein shall be deemed incorporated herein by such reference.

12

CONFIDENTIAL

"Exploit" shall mean to use, make, sell, or otherwise exploit in any manner whatsoever (through any means now known or hereafter Developed).

"General Counsel" shall have the meaning ascribed to such term as set forth in Section 9.5.

"Gibson" shall have the meaning ascribed to such term as set forth in Section 9.10.

"Gibson's Participation" shall have the meaning ascribed to such term as set forth in Section 9.12.

"Infringement Actions Costs" shall have the meaning ascribed to such term as set forth in Section 6.

"Intellectual Property" shall mean all foreign, federal, state and common law trademarks, service marks, patents, copyrights, trade secrets, universal resource locators, domain names, trade dress, mask works, know how, show how, proprietary information and other intangible asset, as well as all applications for registration or issuance and registrations and issuances relating thereto and arising there from.

"Infringed Copyright" shall mean any Stephens Media Content that Stephens Media either has actual notice is being infringed on a copyright basis or has a bona fide belief is the subject of infringement on a copyright basis.

"Infringement Action" shall mean an action commenced in a United States federal district court against one or more Infringers related to, arising from, or concerning the validity, enforcement, preservation or enforcement of Stephens Media Assigned Copyrights brought by Right*haven* regardless of whether this Agreement is terminated or any rights or licenses pursuant to or arising from this Agreement are terminated.

"Infringement Action Costs" shall have the meaning ascribed to such term as set forth in Section 3.

"Infringer" shall mean a Person presently infringing, or hereafter infringing Stephens Media Assigned Copyrights.

"Losses" shall mean any and all costs, expenses, fees (including, without limitation, attorneys', accountants', investigators', witnesses' and professionals' fees), charges, expenditures, liabilities, damages and other losses of whatsoever nature.

"Material Risk Conclusion" shall have the meaning ascribed to such term as set forth in Section 3.1.

"Mediation" shall have the meaning ascribed to such term as set forth in Section 8.

13

CONFIDENTIAL

"Net Sortie" shall mean Net Sortie Systems, LLC, a Nevada limited-liability company.

"Notice" shall mean to provide notice pursuant to Section 17.

"Notify" shall mean to give Notice.

"Notified Copyright" shall have the meaning ascribed to such term as set forth in Section 7.1.

"Operating Agreement" shall have the meaning ascribed to such term as set forth in Section 2.

"Parties" shall mean both Right*haven* and Stephens Media.

"Party" shall mean either Right*haven* or Stephens Media.

"Person" shall mean any natural person, corporation, limited liability company, limited partnership, partnership, trust, association, organization or other entity of whatsoever nature.

"Recovery" shall mean any and all Sums received, transferred to, assigned, conveyed, paid or otherwise obtained by Stephens Media and/or Right*haven* relating to, arising or resulting from (whether directly or indirectly) a Disposition, including, without limitation, all Sums paid by way of damages, costs and attorneys fees with respect to or arising from an Infringement Action.

"Recovery Instrument" shall mean any instrument or any other Content in any Media which evidences a right, title or interest in and to the Sums with respect to, related to or arising out of the Recovery.

"Remediation Declination" shall have the meaning ascribed to such term as set forth in Section 3.3.

"Remediation Option Notice" shall have the meaning ascribed to such term as set forth in Section 3.3.

"Right*haven*" shall mean Right*haven* LLC, a Nevada limited-liability company.

"Right*haven* Transaction" shall have the meaning ascribed to such term as set forth in Section 2.

"Schedule" shall mean an enumerated schedule all of which shall be deemed attached hereto and incorporated herein by way of the specific reference or references made in this Agreement.

"Searching" shall mean to employ the then available technology and means in Right*haven*'s possession to find the occurrence(s) of relevant copyright infringement.

14

CONFIDENTIAL

"Searching Decision" shall have the meaning ascribed to such term as set forth in Section 3.1.

"Section" shall be deemed a reference to an enumerated provision of this Agreement. Section headings are used for convenience only and shall have no interpretive effect or impact whatsoever.

"Settled Amount" shall have the meaning ascribed to such term as set forth in Section 8.

"Stephens Media" shall mean Stephens Media LLC, a Nevada limited-liability company.

"Stephens Media Affiliate" shall have the meaning ascribed to such term as set forth in Section 2.

"Stephens Media Assigned Copyrights" shall mean each copyright assigned by Stephens Media to Right*haven* pursuant to Section 7.

"Stephens Media Contest" shall have the meaning ascribed to such term as set forth in Section 8.

"Sums" shall mean all monies, sums, consideration, receivables, asset and other things (whether tangible or intangible) of value of whatsoever nature as well as all proceeds of any and/or all of the foregoing.

"Term" shall have the meaning ascribed to such term as set forth in Section 15.5.

"Work" shall have the meaning defined in the U.S. Copyright Act of 1976, as amended.

15

CONFIDENTIAL

EXHIBIT 1

## COPYRIGHT ASSIGNMENT

This Copyright Assignment (the "Assignment") is made effective as of _____ (the "Effective Date") by Stephens Media LLC, a Nevada limited-liability company ("Stephens Media").

In consideration of monetary commitments and commitments to services to be provided and/or already provided by Right*haven* LLC, a Nevada limited-liability company, ("Right*haven*") to Stephens Media and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Stephens Media hereby transfers, vests and assigns the work depicted in Exhibit A, attached hereto and incorporated herein by this reference (the "Work"), to Right*haven*, subject to Stephens Media's rights of reversion, all copyrights requisite to have Right*haven* recognized as the copyright owner of the Work for purposes of Right*haven* being able to claim ownership as well as the right to pursue past, present and future infringements of the copyright in and to the Work.

**IN WITNESS WHEREOF,** Stephens Media hereby executes this Assignment on this _____ day of _____, 20__.

STEPHENS MEDIA LLC

By: _____

Name: _____

Title: _____

STATE OF _____ )
COUNTY OF _____ )

Subscribed and sworn to before me this _____ day of _____, 2010.

_____
Notary Public

My Commission Expires: _____
SEAL

16

CONFIDENTIAL

**EXHIBIT 3**

# CLARIFICATION AND AMENDMENT TO
# STRATEGIC ALLIANCE AGREEMENT

This **CLARIFICATION AND AMENDMENT TO THE STRATEGIC LICENSE AGREEMENT** ("Amendment") is entered into by and between Righthaven LLC, a Nevada limited-liability company ("Righthaven") and Stephens Media LLC, a Nevada limited-liability company ("Stephens Media") and is made effective as of the 18th day of January, 2010 (the "Effective Date").

## *RECITALS*

WHEREAS, on January 18, 2010, Righthaven and Stephens Media entered into a Strategic Alliance Agreement (the "Agreement"), which is also the Effective Date for this Amendment;

WHEREAS, all defined terms used in this Amendment shall have the same meaning assigned under Schedule 1 of the Agreement unless otherwise stated herein;

WHEREAS, it was Righthaven's and Stephens Media's intent when the parties entered into the Agreement to convey all ownership rights in and to any identified Work to Righthaven through a Copyright Assignment so that Righthaven would be the rightful owner of any identified Work and entitled to seek copyright registration of same with the United States Copyright Office;

WHEREAS, it was Righthaven's and Stephens Media's further intent when the parties entered into the Agreement to grant Stephens Media a license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever without in any way hindering the right of Righthaven to seek redress for any past, present or future infringements of such copyrights; and

WHEREAS, this Amendment amends, clarifies, corrects, ratifies or otherwise conforms the Agreement to reflect the parties' above expressed intentions when entering into the Agreement on the Effective Date.

NOW, THEREFORE, in consideration of the mutual promises and agreements herein and other good and valuable consideration, the receipt and sufficiency of which each party expressly acknowledges, Righthaven and Stephens Media agree to this Amendment as follows:

1.      <u>Amendment of Section 7.2 of the Agreement.</u>  As of the Effective Date, Section 7.2 of the Agreement is hereby amended and replaced to read as follows:

> 7.2      Automatically upon execution of a Copyright Assignment, Stephens Media is granted a non-exclusive license to Exploit the Stephens Media Assigned Copyright to the greatest extent permitted by law in consideration for payment in the amount of One Dollar and Zero Cents ($1.00) per year to Righthaven as a license or royalty for each Stephens Media Assigned Copyright as consideration

1

for the license granted herein (the "License Fee"). Any License Fee required under this amended and revised Section 7.2 shall be retroactive to the Effective Date. In the event that Righthaven decides to Exploit or participate in the receipt of royalties from the Exploitation of a Stephens Media Assigned Copyright other than in association with a Recovery, Righthaven shall give Stephens Media 30 days prior written notice. The parties acknowledge that failure to provide such notice would be a material breach of this Agreement and would cause Stephens Media irreparable harm, remediable through injunctive relief, which Righthaven and those asserting rights obtained from it shall have no right to oppose.

2.      Amendment of Section 8 of the Agreement. As of the Effective Date, Section 8 of the Agreement is hereby amended and replaced to read as follows:

8.      *Stephens Media's Option to Re-Purchase the Stephens Media Assigned Copyright*

8.1     At any time, within its sole discretion, Stephens Media shall have the option, within 14 days of providing notice of the exercise of such option, to purchase all right and title to the Stephens Media Assigned Copyright in consideration for payment in the amount of Ten Dollars and Zero Cents ($10.00) ("Exercised Option").

8.2     Upon an Exercised Option, Stephens Media shall pay to Righthaven the Infringement Action Costs that would otherwise work an unjust enrichment benefitting Stephens Media (but under no circumstances shall Infringement Action Costs be less than the costs of any application for registrations or registrations of copyrights made and/or procured by Righthaven for the benefit of Stephens Media), pursuant to or arising out of this Agreement. No Exercised Option shall impair Righthaven's rights to receive sums related to, with respect to and/or arising out of any Recovery pursuant to or arising out of this Agreement (the "Early Termination Amounts"), including, without limitation, a reasonable level of compensation associated with, with respect to, and arising out of, any and all efforts exerted by Righthaven to Search, find, investigate, ascertain, pursue, redress, sue or otherwise file a claim against any Person with respect to, or otherwise address any copyright infringement benefitting, whether directly or indirectly, copyright holder, pursuant to or arising out of this Agreement, as well as all other rights to quantum meruit proceeds that any court of competent jurisdiction would award under such circumstances. Righthaven shall provide Notice within thirty (30) days of an Exercised Option of Righthaven's calculation of Early Termination Amounts. Within ten (10) days of receipt of any Recovery by Stephens Media, Stephens Media shall pay to Righthaven the Early Termination Amounts or provide Notice to Righthaven of any contest whereby Stephens Media contends that the Early Termination Amounts Notified by Righthaven to Stephens Media were inaccurate or unjust and to what extent (the "Contested Amount") the Early Termination Amounts were inaccurate or unjust (the "Stephens Media Contest"). Within ten (10) days after receiving the Stephens Media Contest (the "Contest Notification Date"), Righthaven shall have

the option: (a) to elect to receive from Stephens Media within ten (10) days of the Contest Notification Date, the Early Termination Amounts minus the Contested Amount (the "Settled Amount"), or (b) to Notify Stephens Media that Stephens Media must pay to Righthaven the Settled Amount within ten (10) days of the Contest Notification Date, and that Righthaven reserves the right to make a claim that Stephens Media should pay the full Early Termination Amounts.  In the event that Righthaven preserves Righthaven's right to make a Claim pursuant to Section 5(b), the Parties shall mediate the dispute associated with the Contested Amount (the "Contest Dispute") within sixty (60) days by: (x) reasonably choosing a mediator or by employing a JAMS mediator through http://www.jamsadr.com, (y) mediating the Contest Dispute in Las Vegas, Nevada, and (z) mediating the Contest Dispute in good faith (the "Mediation").  In the event that the Mediation is not effective in resolving the Contest Dispute within sixty (60) days of the commencement of the Mediation, Righthaven shall have the right to bring any and all relevant Claims for recovery of the Contested Amount, and any amounts accrued by Righthaven in the Mediation, in any court of competent jurisdiction, in addition to all other rights and remedies available to Righthaven, whether in law or equity.

      3.     <u>Amendment of Exhibit 1 to the Agreement.</u>  As of the Effective Date, Exhibit 1 of the Agreement is hereby amended and replaced to read, and any Assignment executed subsequent to the Effective Date shall be interpreted as retroactively including the amended and replaced language set forth herein, as follows:

      This Copyright Assignment (the "Assignment") is made effective as of _____ (the "Effective Date") by Stephens Media LLC, a Nevada limited-liability company ("Stephens Media").

      In consideration of monetary commitments and commitments to services to be provided and/or already provided by Righthaven LLC, a Nevada limited-liability company, ("Righthaven") to Stephens Media and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Stephens Media hereby transfers, vests and assigns the work depicted in Exhibit A, attached hereto and incorporated herein by this reference (the "Work"), to Righthaven, all right, title and interest to said Work such that Righthaven shall be recognized as the copyright owner of the Work, shall have the right to register said Work with the United States Copyright Office, and shall have the right to pursue past, present and future infringements of the copyright in and to the Work.

      **IN WITNESS WHEREOF**, Stephens Media hereby executes this Assignment on this _____ day of _____, 20__.

      4.     <u>Incorporation of Recitals.</u>  The above Recitals are expressly incorporated into and shall be deemed to constitute terms and conditions of this Amendment.

      5.     <u>Agreement Modification.</u>  Except as otherwise expressly set forth in this Amendment, all terms, conditions, representations and warranties set forth in the

Agreement shall survive and shall in no way be modified, supplanted, altered or changed as a result of this Amendment.

6.   <u>Counterparts</u>.  This Amendment may be executed in one or more counterparts, each of which shall be an original, and all of which shall collectively constitute the same document. This Amendment may also be executed by signatures provided by electronic facsimile transmission or by electronic mail transmission (also known as "Fax" or "e-mail" copies).  Facsimile or e-mail signatures shall be as binding and effective as original signatures.

IN WITNESS WHEREOF, each of the undersigned duly execute this Amendment and represent that each has the authority to legally bind each respective entity.

Righthaven LLC                                    Stephens Media LLC

By:   _____        By:   _____
Name:  Steven A. Gibson                   Name:  _____
Title:   Manager                               Title:   _____
Date:   5-9-11                                  Date:   _____

4

Agreement shall survive and shall in no way be modified, supplanted, altered or changed as a result of this Amendment.

     6.    <u>Counterparts</u>.  This Amendment may be executed in one or more counterparts, each of which shall be an original, and all of which shall collectively constitute the same document. This Amendment may also be executed by signatures provided by electronic facsimile transmission or by electronic mail transmission (also known as "Fax" or "e-mail" copies).  Facsimile or e-mail signatures shall be as binding and effective as original signatures.

     IN WITNESS WHEREOF, each of the undersigned duly execute this Amendment and represent that each has the authority to legally bind each respective entity.

Righthaven LLC                                            Stephens Media LLC

By: _____          By: _____
Name: Steven A. Gibson                      Name: _Mark A. Hinueber_
Title:  Manager                                      Title: _Vice President_
Date: _____        Date: _5/9/11_

4