Marc J. Randazza (Admitted *Pro Hac Vice*)
J. Malcolm DeVoy IV (Nevada Bar No. 11950)
RANDAZZA LEGAL GROUP
7001 W. Charleston Boulevard, # 1043
Las Vegas, NV 89117
Telephone: 888-667-1113
Facsimile: 305-437-7662
Randazza.com

Attorneys for Defendant,
*Wayne Hoehn*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited liability company,<br><br>                Plaintiff,<br><br>vs.<br><br>WAYNE HOEHN, an individual<br><br>                Defendant. | Case No. 2:11-cv-00050<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant Wayne Hoehn (hereinafter, "Hoehn," or the "Defendant"), by and through counsel, replies to Plaintiff Righthaven, LLC's (hereinafter "Righthaven['s]," or the "Plaintiff['s]") Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 23) filed on May 9, 2011 in opposition to Hoehn's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 16), filed on April 17, 2011.

**I. Introduction**

On May 9, 2011, Righthaven responded to Hoehn's Motion to Dismiss (Doc. # 23) and, simultaneously executed a "Clarification" (hereinafter, the "'Clarification'") of the Strategic Alliance Agreement (hereinafter, the "Agreement") between Righthaven and Stephens Media LLC (hereinafter, "Stephens Media"). Decl. of Steve Gibson (Doc. # 24) at 3:13-24, Exh. 3; Decl. of Mark Hinueber (Doc. # 25) at 3:10-21, Exh 3. This "Clarification," conveniently

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 1 -

executed on the day Righthaven had to respond to Defendant's pending Motion (Doc. # 16), supposedly rectifies the defects in Righthaven's Agreement, which governs the terms on which Stephens Media assigns its copyrights to Righthaven. The "Clarification", however, does no such thing, and serves only as a cynical attempt to obfuscate the unlawful nature of Righthaven's enterprise: The "Clarification," along with the Agreement, is a mere acquisition of the right to sue for copyright infringement without the true transfer of any other rights under Title 17. As the assignment of a right to sue in copyright cases has already been deemed unlawful by this Circuit and others, what is happening here is clear: Righthaven's unlawful enterprise has been unmasked, and it is now making a desperate attempt to revive its litigation business model. Unfortunately for Righthaven, but fortunately for free expression and the rule of law, this "Hail Mary pass" has fallen far short of its intended receiver – with the intended receiver being the deception of the parties and this Honorable Court.

The restructuring of Righthaven's and Stephens Media's Agreement, supposedly effected by the "Clarification," serves to do little more than re-arrange deck chairs on the Titanic. As seen in the rest of the Agreement, which remains in effect, Righthaven has no purpose for existence other than to sue on copyrights that it obtains *only after* finding evidence of infringement. A true and correct copy of this Agreement is attached to Hoehn's Motion to Dismiss (Doc. # 16 Exh. A) and is additionally attached hereto as Exhibit A. Exh. A §§ 3-5. Despite giving Stephens Media a poorly worded and unspecific non-exclusive license to content that Stephens Media assigned to Righthaven in the first place (Doc. # 24 Exh. 3 § 1; Doc. # 25 Exh. 3 § 1), the "Clarification" does not eliminate Stephens Media's right of reversion (Doc. # 24 Exh. 3 § 2; Doc. # 25 Exh. 3 § 2), and ultimately deprives Righthaven of any exclusive rights in the assigned copyright (Doc. # 24 Exh. 3 §§ 1 and 2; Doc. # 25 Exh. 3 §§ 1 and 2) – the possession of which is an essential component of Article III standing in copyright cases. *Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885, 890 (9th Cir. 2005).

This "Clarification" illuminates only one thing: Righthaven operates as a copyright litigation factory, but it has no lawful interests or use for the copyrights it acquires from Stephens

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

Media. If Righthaven were the copyrights' true legal and beneficial owner, it would not be necessary for Righthaven to give Stephens Media 30 days' notice to use the assigned, already infringed copyrights for any purpose other than litigation. (Doc. # 24 Exh. 3 § 1; Doc. # 25 Exh. 3 § 1.) Moreover, it would not give Stephens Media the unilateral right to buy back the assigned copyright before Righthaven could use the any of the copyright's exclusive rights under 17 U.S.C. § 106. (Doc. # 24 Exh. 3 § 2; Doc. # 25 Exh. 3 § 2.) Righthaven's CEO brings special attention to Section 15.1 of the Agreement, allowing the Court to "correct" the Agreement, or provide "direction" or "clarification." (Doc. # 24 at 3:5-9, 15-21.) Hoehn agrees, and this correction should come from viewing the Agreement and its accompanying "Clarification" for what they are – a cynical attempt to turn copyrights into lawsuits, and nothing more.

**II. Legal Standards**

Subject matter jurisdiction is an essential element to every lawsuit and must be demonstrated "at the successive stages of the litigation." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). A central component to subject matter jurisdiction is the question of standing, which requires that the party experience actual or imminent harm. *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)). A party's standing to bring a case is not subject to waiver, and can be used to dismiss the instant action at any time. Fed. R. Civ. P. 12(h)(3); *U.S. v. Hays*, 515 U.S. 737, 742 (1995); *Chapman*, 631 F.3d at 954. Within the realm of copyright law, 17 U.S.C. 501(b) allows only the legal or beneficial owner of an exclusive right in a copyright, specified in 17 U.S.C. § 106, to sue for infringement. *Silvers*, 402 F.3d at 884.

**III. Argument**

Defendant does not seek to contest the validity of the Agreement or "Clarification" as contracts between Righthaven and Stephens Media, but contests the copyright rights Righthaven possesses – or, specifically, does not possess – as a function of those written contracts' intended operation. *See Silvers*, 402 F.3d at 884 (forbidding transfer of the bare right to sue), *compare Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1428-29 (9th Cir. 1996) (precluding defendant from attacking the <u>transfer</u> of the copyrights used to sue for infringement) and *Sabroso Publ'g,*

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 3 -

*Inc. v. Caiman Records Am., Inc.,* 141 F.Supp.2d 224, 227-28 (D. P.R. 2001) (preventing a defendant from attacking the contractual validity of a copyright transferee from the transferor to the transferee plaintiff).  As such, the Court is presented with an inquiry of what rights Righthaven obtains as a result of the transfer as opposed to a probe into the transaction itself. The answer to this latter question, as to what rights Righthaven acquires, is none.

Under the Agreement, even with the "Clarification," Righthaven does not have standing to bring this case.  Accordingly, this Court lacks subject matter jurisdiction over the dispute. Righthaven deceptively cites three cases in which it was the plaintiff for the proposition that Righthaven's assignments are legal under *Silvers*: *Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045- KJD-GWF (D. Nev. March 30, 2011); *Righthaven LLC v. Majorwager.com, Inc.*, 2010 WL 4386499 at *2 (D. Nev. Oct. 28, 2010); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C., 2010 WL 3522372* at *2 (D. Nev. Sept. 2, 2010).

Righthaven's reliance on these cases is doubly flawed.  These cases considered only a one-page assignment between Righthaven and Stephens Media, and not the Agreement and "Clarification" that set forth the terms that control that transaction.  In those three cases, while Righthaven knew full well of the existence of the Agreement, it appears to have purposely hidden that agreement from the defendants in those cases.  As the Agreement and "Clarification" were not on the public record at the time this District rendered its opinions in these cases, the full scope of Righthaven's relationship with Stephens Media could not be considered.  Now that the Agreement and "Clarification" are before this Court, it may realize Righthaven's lack of standing, as it is an unlawful lawsuit mill.  The fact that Righthaven fought mightily to keep the Agreement from coming to light demonstrates not only that the Righthaven scheme is unlawful, but that Righthaven and its principals were fully aware of that fact.  Now, they seek to be rewarded for their "creativity," in ginning up a "Clarification".  Meanwhile, the "Clarification" does nothing to cure the underlying lack of rights and lack of standing.

/

/

/

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 4 -

**A. Despite Its "Clarification", Righthaven Still Does Not Have the Right to Sue for Infringement.**

Righthaven attempted to salvage its beleaguered Agreement by executing the "Clarification," which memorialized the parties' intent in creating the initial Agreement. (Doc. # 24 Exh. 3; Doc. # 25 Exh. 3.)  Contrary to Righthaven's ostensible hopes, though, this "Clarification" served only to make Righthaven's naked use of its acquired copyrights as the basis of lawsuits – and only as the basis of lawsuits – even clearer.

The "Clarification" does not retroactively remedy Righthaven's lack of standing.  While a subsequently executed agreement provides clarification regarding the parties' intent to cure standing defects in copyright cases, it does not retroactively confer standing that previously did not exist. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir. 1994); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993).  In these cases, cited by Righthaven in its opposition, a clarification was allowed to put a previously executed oral transfer into writing, or to include previously accrued causes of action in the assignment. *See Infodek,* 830 F. Supp. at 620.  None of these cases support Righthaven's proposition that cure its prior, ineffective attempt to transfer a copyright from Stephens Media to Righthaven with a new, equally unsuccessful attempt to transfer Stephens Media's copyrights to Righthaven solely for the purpose of litigation, in an effort to circumnavigate this Circuit's holding in *Silvers*. 402 F.3d at 890.

*1. The "Clarification" Denies Righthaven of Substantially All Ability to Use Its Assigned Copyrighted for Anything – Except Lawsuits.*

Despite the May 9, 2011 "Clarification," Righthaven's Agreement with Stephens Media provides it with nothing more than the bare right to sue.  An important component of Righthaven's "Clarification" is the revision of Agreement § 7.2 (Exh. A § 7.2) to no longer give Stephens Media an exclusive license to Exploit (defined in *id.* at Schedule 1) the copyrighted works for "any lawful purpose" (*id*. § 7.2).  In its place, as the putative owner of the copyright,

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

- 5 -

Righthaven has granted Stephens Media a non-exclusive license to Exploit the copyrighted work "to the greatest extent permitted by law" on condition that 1) Stephens Media pay Righthaven $1.00 per year for this right, and 2) that Righthaven give Stephens Media 30 days notice if it decides to Exploit the copyrighted work or receive any royalties from the copyright's use other than in connection with lawsuits, with failure to do so constituting a material breach of the Agreement. (Doc. # 24 Exh. 3 § 1; Doc. # 25 Exh. 3 § 1.)

This aspect of the "Clarification" is problematic for numerous reasons. First, Righthaven's non-exclusive license to Stephens Media contains no definitions as to duration, geography or media covered, but haphazardly lets Stephens Media use the copyright assigned to Righthaven "to the greatest extent permitted by law." (*Id.*) This broad language impairs the markets and interests of other licensees to which Righthaven could license its copyrighted works, such as those that better serve markets in which Stephens Market is permitted to compete, and especially in light of Righthaven's infringement litigation arrangement with Stephens Media evinced in Exhibit A §§ 3-5, and unchanged by the "Clarification."

Moreover, under the "Clarification," Righthaven's unilateral use of the assigned copyright would constitute a material breach of the Agreement, allowing Stephens Media to seek injunctive relief against Righthaven for using the copyright that it ostensibly owns. (Doc. # 24 Exh. 3 § 1; Doc. # 25 Exh. 3 § 1.) Such an extreme limitation by the assignor of a copyright is inimical to ownership of a copyright, yet in a desperate attempt to retain the right to extort money from Hoehn (and hundreds of other defendants), Righthaven dishonestly insists that it is the owner of the assigned Stephens Media copyrights. (Doc. # 24 Exh. 3 § 3; Doc. # 25 Exh. 3 § 3.) This dishonesty must not be rewarded.

Stephens Media's $1.00-per-year license and royalty fee (Doc. # 24 Exh. 3 § 1; Doc. # 25 Exh. 3 § 1) is also misleading. While a nominal fee for licensing back the copyright Stephens Media originally assigned to Righthaven, this sum is vastly outweighed by the revenues Stephens Media receives from Righthaven's litigation on the assigned copyright, as the Agreement – unaltered by the "Clarification" in this respect – entitles Stephens Media to 50% of any recovery Righthaven obtains from litigation. (Exh. A § 5). With all of the components taken together,

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 6 -

Stephens Media assigns its copyright to Righthaven and pays $1.00 in order to receive 50% of Righthaven's litigation recovery.[1] Based on what little public information is available about Righthaven's settlements, Stephens Media's recovery entitlement per copyright assignment has been orders of magnitude greater than $1.[2] Indeed, without the recovery clause in § 5 of the Agreement (Exh. A. § 5), this entire arrangement would fail to be profitable for Stephens and Righthaven and make no sense for either party, as Stephens assigns only copyrights that have been – or it believes have been – infringed. (*See* Exh. A. § 3.) It makes no sense for Stephens Media to assign only its infringed copyrights to Righthaven, just to license them back and give Righthaven the sole "right" to sue for infringement,[3] unless Righthaven's only purpose is to sue on these assigned copyrights.

Righthaven and Stephens Media also used the "Clarification" to amend the reversion provisions of its Agreement. Instead of allowing Stephens Media to have a complete reversion of the copyright (Exh. A § 8), the "Clarification" allows Stephens Media to, at any time, give Righthaven 14 days notice that it will repurchase the previously assigned copyright for $10. (Doc. # 24 Exh. 3 § 2; Doc. # 25 Exh. 3 § 2.) What's more, upon exercising this option, Stephens Media must repay Righthaven the costs Righthaven had undertaken to pursue infringement actions on that assigned copyright. (*Id.*) This new, revised section 8.2 goes into considerable detail governing how Righthaven will be compensated and disputes settled in the event of Stephens Media exercising its unilateral right to repurchase its assigned copyright from Righthaven, even at the cost of terminating Righthaven's pending litigation (*id.*) – a profound issue that belies Righthaven's claim as the true, legal and beneficial owner of the assigned copyrights.

Operating together, sections 1 and 2 of the "Clarification" make it clear that Stephens Media retains full ownership of the copyrights that Righthaven claims to own. (Doc. # 24 Exh. 3

---

[1] This presumably includes sharing any attorneys' fees award with Stephens Media, potentially violating Fed. R. Civ. P. 54(d)(2).
[2] *See* Righthaven Lawsuits, http://righthavenlawsuits.com/ (*last accessed* May 10, 2011) (providing Righthaven's estimated revenues based on lawsuit settlements).
[3] The right to sue for copyright infringement is not one of the exclusive copyright rights provided under 17 U.S.C. § 106.

Randazza Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

§§ 1 and 2; Doc. # 25 Exh. 3 §§ 1 and 2.) If Righthaven wants to exploit or otherwise license the assigned copyright, it must give Stephens Media 30 days' notice before doing so. (Doc. # 24 Exh. 3 § 1; Doc. # 25 Exh. 3 § 1.) Yet, once given notice of Righthaven's intent to use the copyright it supposedly owns, Stephens Media may exercise its rights under new § 8.1 to repurchase the copyright with 14 days' notice and the payment of $10. This creates a loop where, if Righthaven were to even try to use Stephens Media's assigned copyrights for a purpose other than litigation, Stephens Media could (and certainly would) snatch them back before Righthaven could actually use them. Righthaven's and Stephens Media's characterization of this arrangement as "ownership" is beyond bizarre, and reveals their intent to call an unlawful assignment of the right to sue "ownership" in an effort to misdirect the Court.

Substantively, this is not a non-exclusive license, but an exclusive license to Stephens Media. This mislabeled exclusive license permits Stephens Media to use the assigned copyright "to the greatest extent permitted by law" (*id*.) up to and until the time Righthaven uses or licenses the copyright for a purpose other than infringement litigation. (*Id*.) Should Righthaven provide Stephens Media notice that it intends to use the copyright for non-litigation purposes, though, Stephens Media can buy back its rights before anyone else can use the copyrights supposedly owned by Righthaven. (Doc. # 24 Exh. 3 §§ 1 and 2; Doc. # 25 Exh. 3 §§ 1 and 2.) *Sybersound*, 517 F.3d at 1150-51 (holding that only exclusive licensees may use or enforce the rights they possess); *Davis*, 505 F.3d at 101 (observing that "no one other than the exclusive licensee may exercise the right" where there is an exclusive license).

### 2. Taken Together, the Terms of Rightaven's Agreement and "Clarification" Show that Righthaven is not the Owner of the Assigned Copyrights, but has Merely been Assigned a Right to Sue.

Righthaven's and Stephens Media's "Clarification" describes Righthaven as the copyright "owner," but it is a word without meaning in this circumstance. (Doc. # 24 Exh. 3 § 3; Doc. # 25 Exh. 3 § 3.) Just as a child that lacks understanding of the world around her may call a dog a "cat," that does not make it so. Righthaven and Stephens Media have misidentified Righthaven as the owner of Stephens Media's assigned copyrights in § 3 of the "Clarification"

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

(*id*.). This characterization of Righthaven as an owner is inaccurate in light of the excessive restrictions on Righthaven's use of the assigned copyrights contained within the Agreement (Exh. A) and amplified in the "Clarification" (Doc. # 24 Exh. 3; Doc. # 25 Exh. 3).

It is not uncommon for courts to encounter restrictive agreements that purport to transfer ownership of a copyright but, in reality, convey no such right. In *Lahiri v. Universal Music & Video Distribution Corporation*, 606 F.3d 1216, 1222 (9th Cir. 2010) the appeals court found that a settlement agreement purportedly recognizing a party in the litigation as an "owner" of a copyright was too restrictive to convey such a right, holding that "[t]he record demonstrates [the attorney] misled the district court by use of a settlement agreement that deceptively used ownership language, but did not convey or recognize [the assignee's ownership]." This language should be of great instructive value for this Court, as the record in this case demonstrates the same thing.

Similarly, in *Nafal v. Carter*, the court held that the plaintiff's description in the putative assignment as a "co-owner" was not dispositive of the plaintiff's ownership rights. 540 F. Supp. 2d 1128, 1141 (C.D. Cal. 2007). Instead, the court held that the relevant test to determine proper ownership of a copyright was "Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id*. at 1141-42, citing *Althin v. W. Suburban Kidney Ctr*., 874 F. Supp. 837, 843 (N.D. Ill. 1994).

In *Nafal*, the document allegedly giving the plaintiff an ownership interest in the copyright prohibited him from "exercising any decision-making authority over almost every portion of the License Agreement." 540 F. Supp. 2d at 1142. Accordingly, the court found that Nafal was not the owner of the work, lacked Article III standing to pursue a copyright infringement claim, and disposed of the case at summary judgment. *Id*. at 1144. Similarly, in *Althin*, the trial court found that the plaintiff company lacked standing to bring its copyright infringement claims. 874 F. Supp. at 837. Upon review, the court found that the assignment agreement that putatively made the company an exclusive copyright right holder merely conveyed a non-exclusive license to the plaintiff company. *Id*. Specifically, the court found that

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

the rights transferred by the parties' agreement under the 1976 Copyright Act were "governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id*. As the licensor gave the licensee no right to transfer or assign the license agreement, with only a very narrow exception, the court held that Althin did not acquire sufficient rights to have standing to enforce them against others' infringement, and thus dismissed the case on the defendant's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss. *Id*.

As set forth above, Righthaven has extraordinarily limited rights for a copyright "owner." Righthaven's fundamental rights to dispose of its copyrights are so limited and crippled that cannot even use them for non-litigation purposes without seeking Stephens Media's approval, lest it "materially breach" its Agreement. (Doc. # 24 Exh. 3 § 1; Doc. # 25 Exh. 3 § 1.) Whenever Stephens Media wishes, with minimal notice, it may, without opposition, repurchase its assigned copyrights for $10 apiece. (Doc. # 24 Exh. 3 § 2; Doc. # 25 Exh. 3 § 2.) As is apparent from the Agreement, the only thing Righthaven has any authority to do is to pursue infringement litigation. (Exh. A §§ 3-5.)

A number of provisions in the Agreement that are not affected by the "Clarification" further deny Righthaven ownership of the copyright, and reserve rights to Stephens Media far beyond those due to a non-exclusive licensee. As part of its copyright assignments to Righthaven, Stephens Media is entitled to:

> maintain Encumbrances on Stephens Media Assigned Copyrights as part of an overall funding securitization whereby all or substantially all of Stephens Media's assets are Encumbered as part of said funding securitization and Stephens Media Assigned Copyrights are not singled-out as or part of a particularized group of Encumbered assets.

(Exh. A § 9.3.) This provision entitles Stephens Media, putatively the non-exclusive licensee of the assigned copyrights under the "Clarification", to mortgage the copyrights ostensibly owned by Righthaven. Thus, despite Righthaven being the apparent owner of these copyrights, Stephens Media is entitled to use them as security for funding and other financial obligations. This is inconsistent with the tale that Rightaven now weaves before this Court.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

Stephens Media retains a number of other rights in the copyrights Righthaven claims to own.  In Agreement § 3.3 (*id*. § 3.3), Stephens Media retains the right to reassign the copyright, despite Righthaven's ownership, if Righthaven declines to sue for its infringement.  If Righthaven was the sole and true owner of the assigned copyright, Stephens Media would have no such rights, yet this section of the Agreement gives Stephens Media the right to reassign a copyright that it insists is owned by Righthavn. (*Id*.)  Righthaven further reveals the flimsiness of its "ownership" in Agreement § 3.4, in which it does not even have the exclusive right to conduct litigation, and grants Stephens Media – a mere non-exclusive licensee under the "Clarification," which normally would not have standing to sue for infringement – the right to pursue infringement litigation on its own, without Righthaven. (*Id*. § 3.4.)

In sum, all of Righthaven's rights to the copyrights assigned to it by Stephens Media are completely beholden to Stephens Media's unfettered whims: From Righthaven's ability to exploit or license the work to a party other than Stephens Media and Stephens Media's right to re-purchase any assigned copyright for $10 without Righthaven having any ability to oppose, to Righthaven's sole pre-authorized use of the assigned copyright being for copyright infringement under Agreement §§ 3.1-3.4 and Stephens Media's ability to pursue its own copyright infringement lawsuits.  Stephens Media's rights and privileges permeate the Agreement and "Clarification" so completely and thoroughly that Righthaven's "ownership" of the assigned copyright is little more than a cruel joke at Hoehn's expense (and the expense of hundreds of other defendants who have been sued under this unlawful arrangement, to say nothing for the poor souls who have paid Righthaven its extortionate demands).

To the extent this Court must examine this Agreement, and correct it as Righthaven has encouraged the Court to do in § 15.1 of its Agreement (*id*. § 15.1) in order to effect the parties' "manifest intent" (Doc. # 24 at 3:8-12, 18-24; Doc. # 25 at 3:10-14, 15-21), it should find that it is nothing more than a vehicle to unlawfully transfer the right to sue, and no other rights, under the guise of copyright ownership.  Indeed, the Agreement and its "Clarification" haphazardly consider Righthaven's ability to use and protect its copyright rights in all arenas except its meticulously detailed scheme to pursue infringement litigation on the assigned copyrights in

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

Agreement §§ 3-5. (Exh. A. §§ 3-5.)  The very inclusion of § 15.1 (*id*. § 15.1) in the Agreement, and its retention in the "Clarification," demonstrates that Righthaven and Stephens Media knew their arrangement was a sham, yet they couldn't find a way to make the Righthaven model work – predominantly because such operations are prohibited by *Silvers* and other law in this Circuit – and want the Court to change the parties' agreement to effectuate its unlawful scheme.  Not only is the Agreement and "Clarification" between Stephens Media and Righthaven unlawful, so too is the parties' intent – to transfer the right to sue to Righthaven, with no other rights – and the Court cannot cure what ails Righthaven and its business model.

The operation of this Agreement and its "Clarification" is nothing more than the transfer of an accrued right to sue without any exclusive rights.  This practice has been held unlawful in every jurisdiction to consider it, including the controlling Court of Appeals for the Ninth Circuit. *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007); *Silvers*, 402 F.3d at 885; *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982); *see also Sybersound*, 517 F.3d at 1144.  No matter what Righthaven calls the rights it supposedly obtains, substantive analysis reveals them to be little more than the bare right to sue – something that not only is not provided for in 17 U.S.C. § 106, but has been specifically held to be unlawful in case after case, and runs directly contrary to the Copyright Act's entire purpose.

**B. Defendant Was Justified in Claiming Righthaven Deceived the Court, and as Righthaven's Deception Continues, Defendant Renews this Claim.**

In its Response brief (Doc. # 23), Righthaven argues, incorrectly, that the cause of Hoehn's argument for dismissal in light of Righthaven's misrepresentations is "internet-based criticism" and "conspiracy theories" (Doc. # 23 at 11-12).  Based on the Agreement (Exh. A), which was the only publicly available information detailing the terms of Stephens Media's assignments to Righthaven, Hoehn's arguments were proper under the precedent of this Circuit. *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *Phoceene Sous- Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982).

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

At the time this argument was made (Doc. # 16 at 5-6) on April 17, 2011, Righthaven's and Stephens Media's "Clarification" was not available on the public record. In fact, the "Clarification" did not even exist at the time Hoehn filed his Motion (Doc. # 16), as it was conveniently signed by both Righthaven and Stephens Media on May 9, 2011 – the date on which Righthaven filed it with its Response (Doc. # 23). (Doc. # 24 Exh. 3; Doc. # 25 Exh. 3.) The fact that Righthaven apparently operated for almost one and one-half years without amending its Agreement or executing the "Clarification" before May 9, 2011, is clear evidence that it was caught with its hand in the proverbial cookie jar of unlawful copyright assignments, and is desperately, retroactively trying to protect its business model. As explained at the outset of this brief, Righthaven's desperate, backward-looking attempt to make its model legal under the precedent of this Circuit is not only unsuccessful, but does not cure its existing lack of exclusive rights alleged in Hoehn's Motion to Dismiss (Doc. # 16 at 5-6).

For the reasons articulated above, Righthaven still has not acquired the copyrights it allegedly owns through Stephens Media's fraudulent assignments. As such, Righthaven's assertions that it is the "owner" of the copyrighted work and possesses the exclusive rights to reproduce the work, create derivatives of the copyrighted work, distribute copies of the work and publicly display the work under 17 U.S.C. § 106, (Doc. # 1 ¶¶ 9, 22, 29-32) are false.

While this "Clarification" might be creative, the intent is clear. And, as Righthaven has asked this court to interpret the Agreement and the "Clarification" to operate as the parties intended, the court should do so. The court should recognize what these documents really mean – that the parties conspired to unlawfully create a copyright litigation entity, with no actual assignment of any intellectual property rights. Upon doing so, this Court should end this case immediately.

**C. Substituting or Adding Stephens Media as Plaintiff in This Case is Improper, and Will Not Remedy Righthaven's Lack of Standing.**

As a simple technical matter, under Local Rule 7.2, Rightaven's request to add or substitute Stephens Media as Plaintiff in this action is improper, as it should be brought before this Court as a separate motion. Such a request for substitution is improperly brought with

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

Righthaven's brief. (Doc. # 23 at 11). Nevertheless, considering Righthaven's request at this time is in the interest of judicial economy.

The circumstances of this case do not permit Righthaven to add or substitute Stephens Media as a plaintiff in this case due to it being the proper party in interest. When a plaintiff has not suffered an injury and lacked standing since a lawsuit's inception, a proper party in interest cannot substitute for the plaintiff later in litigation. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2007); *Blackwell v. Skywest Airlines*, 245 F.R.D. 453, 463 (S.D. Cal. 2007). As Righthaven never owned, nor was it ever the exclusive assignee, of a copyright right defined in 17 U.S.C. § 106, it <u>never</u> had a claim against Hoehn, nor was there any confusion as to who the proper party-in-interest was.

If there were some actual bona-fide confusion as to the copyright's ownership, there might be grounds under which Stephens Media could be substituted in as the plaintiff. *See Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 308 (5th Cir. 2001); *Isbell v. DM Records, Inc.*, Case No. 4:07-cv-146, *2009 U.S. Dist. LEXIS 23735* at *2-3 (E.D. Tex. 2009). However, the right to substitute a party is not a right granted to plaintiffs who get caught breaking the law, and then who want to save face. This right is there for parties who have an honest misunderstanding of the legal owner of certain rights. There is nothing honest about Righthaven, and it does not deserve such grace from this Honorable Court. Righthaven's "Clarification" to its Agreement with Stephens Media does not confer standing upon Righthaven, as the Agreement still operates just as it ever has – to grant Righthaven the bare right to sue for infringement, and nothing more. From the Agreement's construction and "Clarification's" added terms, there is no question that Righthaven still lacks these rights.

This Agreement and its desperately manufactured "Clarification" exist solely to serve whatever purpose is furthered by Stephens Media not being the plaintiff in the more than 250 lawsuits filed by Righthaven. Ironically, if Stephens Media had acted as the plaintiff in these cases, it would obviate the need for its attempts to appear as if it had transferred some kind of copyright rights to Righthaven in an effort to masquerade its assignment of the bare right to sue. For whatever reason, Stephens Media chose to ignore *Silvers*, set up a copyright litigation entity,

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

and attempted to dance around this Circuit's precedent forbidding exactly Righthaven's and Stephens Media's relationship *ex post*.

## Conclusion

Despite Righthaven's last-minute "Clarification" of its Agreement with Stephens Media, the relationship between the parties fails to convey Righthaven ownership or any exclusive rights in the allegedly assigned copyright. As such, Righthaven lacks, and has never possessed, standing to bring this action, and this Court therefore lacks subject matter jurisdiction over the dispute. Defendant's allegations of Righthaven's representations were, and continue to be, accurate, and provide this Court another justification for dismissing this action. Finally, no substitution or addition of parties at this juncture would be proper, or curative of Righthaven's fundamental standing defects. Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 16) should be granted.

Dated: May 15, 2011

Respectfully Submitted,

RANDAZZA LEGAL GROUP

_____
Marc J. Randazza
J. Malcolm DeVoy IV

Attorneys for Defendant,
*Wayne Hoehn*

Randazza Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 15th day of May, 2011, I caused documents entitled:

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

to be served as follows:

[ ]  by depositing same for mailing in the United States Mail, in a sealed envelope addressed to Steven A. Gibson, Esq., Righthaven, LLC, 9960 West Cheyenne Avenue, Suite 210, Las Vegas, Nevada, 89129-7701, upon which first class postage was fully prepaid; and/or

[ ]  Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile as indicated; and/or

[ ]  to be hand-delivered;

[ X ]  by the Court's CM/ECF system.

/s/ J. Malcolm DeVoy
J. Malcolm DeVoy