# EXHIBIT A

## STRATEGIC ALLIANCE AGREEMENT

This **STRATEGIC ALLIANCE AGREEMENT** (this "Agreement") is made and entered into this 18th day of January, 2010 ("Effective Date") by and between Right*haven* LLC, a Nevada limited-liability company ("Right*haven*") and Stephens Media LLC, a Nevada limited-liability company ("Stephens Media").

In consideration of the covenants, representations and warranties set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Right*haven* and Stephens Media agree as follows:

1. *Definitions and Interpretations.*

    1.1. Certain terms used herein shall have the meaning ascribed to such terms as set forth in Schedule 1.

    1.2. All of the defined terms as set forth in Schedule 1, if defined in the singular or present tense, shall also retain such general meaning if used in the plural or past tense, and if used in the plural or past tense, shall retain the general meaning if used in the singular or present tense.

    1.3. Section headings are used for convenience only and shall have no interpretive effect or impact whatsoever.

2. *Integrated Transaction.*

    The Parties hereby covenant that this Agreement is part of an integrated transaction with the transaction (the "Right*haven* Transaction") represented by the formation of Right*haven* and the corresponding Operating Agreement by and amongst Net Sortie Systems, LLC, a Nevada limited-liability company ("Net Sortie"), Right*haven* and the Stephens Media's affiliated company, SI Content Monitor LLC, an Arkansas limited-liability company (said latter entity known herein as the "Stephens Media Affiliate" and said Operating Agreement known herein as the "Operating Agreement"). Stephens Media further covenants, represents and warrants that: (a) the Stephens Media Affiliate is presently and shall throughout the Term be Controlled by common owners, with no material variation in said ownership, (b) the Operating Agreement is being executed by the parties to the Operating Agreement simultaneously with the execution by the Parties of this Agreement; (c) that neither Right*haven* nor Net Sortie would enter into the Right*haven* Transaction if not for Stephens Media's execution of this Agreement; and (d) Right*haven* and Net Sortie, as third party beneficiaries, are relying upon Stephens Media's continued performance of Stephens Media's duties and obligations pursuant to and arising out of this Agreement as a basis of the consideration for Right*haven*'s and Net Sortie's respective duties and obligations pursuant to and arising out of the Operating Agreement.

Confidential Attorneys Eyes Only                    SM000078

3. *Exclusive Engagement.*

    3.1. Stephens Media shall assign (at the times stated) to Right*haven*, pursuant to the procedures set forth in Section 7: (a) any copyrights owned by Stephens Media that Stephens Media desires to be the subject of Searching (the "Searching Decision"), with each such respective assignment to occur within a reasonable time after Stephens Media makes each respective Searching Decision, (b) any copyrights owned by Stephens Media that Stephens Media considers (the "Material Risk Conclusion") a material risk of infringement (with each such respective assignment to occur within thirty (30) days after Stephens Media makes each respective Material Risk Conclusion, and (c) within thirty (30) days of having respective Infringement Notice, each and every Infringed Copyright that exist during the Term (the "Assigned Infringed Copyright(s)").

    3.2. During the Term, Right*haven* shall use commercially reasonable efforts to engage in Searching with respect to all Stephens Media Assigned Copyrights.

    3.3. During the Term, Right*haven* shall have the right, but not the obligation, to pursue an Infringement Action of the respective infringements that are the subject of the respective Infringed Copyrights. Right*haven* shall have sixty (60) days after each respective assignment of each respective Assigned Infringed Copyright to Notify Stephens Media of whether Right*haven* will pursue an Infringement Action of said respective Assigned Infringed Copyright (the "Remediation Option Notice"). If Right*haven* chooses in the Remediation Option Notice to not pursue an Infringement Action (the "Remediation Declination"), then Right*haven* shall reassign the Assigned Copyright to Stephens Media that is the subject of the Remediation Declination; provided, however, that Stephens Media shall have the right to reassign any such copyright pursuant to Section 2.1 upon learning new information concerning the circumstances of infringement or possible infringement associated with any copyright that is the subject of a Remediation Declination. If Right*haven* chooses in the Remediation Option Notice to pursue an Infringement Action, then Right*haven* shall commence Remediation within the times frames and pursuant to the procedures set forth in Section 4. Notwithstanding any other provision of this Agreement, Stephens Media shall have the right to Notify Right*haven*, within five (5) Business Days after receipt of a respective Remediation Option Notice, that Right*haven* should not take any Infringement Action with respect to a particular putative infringer as indicated in any respective Remediation Option Notice (the "Declination Notice") and upon receipt of a Declination Notice, Right*haven* shall not take any Infringement Action with respect to the particular putative infringer set forth in any Declination Notice; provided, however, that Stephens Media shall only send any Declination Notice on a reasonable basis with the grounds of reasonability being that a particular putative infringer is a charitable organization, is likely without financial resources, is affiliated with Stephens Media directly or indirectly, is a present or likely future valued business relationship of Stephens Media or otherwise would be a Person that, if the subject of an Infringement Action, would result in an adverse result to Stephens Media.

    3.4. While Stephens Media shall reserve the right to undertake litigation in order to pursue any infringement of any Stephens Media copyright through legal counsel duly licensed in

Confidential Attorneys Eyes Only      SM000079

the jurisdiction through which such litigation would be undertaken, Stephens Media hereby engages Right*haven* throughout the Term on an exclusive basis to undertake all activities set forth in this Section 3, including, without limitation, the engaging in Searching as well as the pursuit of Infringement Actions. Stephens Media shall not, at any time during the Term, assign to any other Person that is a Competitor any copyrights owned by Stephens Media. Stephens Media shall also never Compete with Right*haven* at any time during the Term and for a period of five (5) years after termination of the Term.

4.  ***Actions to Address Copyright Infringement.***

Right*haven* shall take an Infringement Action against the Infringer in order to effect a Disposition within one (1) year of the later of (a) the procurement of a copyright registration covering the Stephens Media Assigned Copyrights or (b) if such registration already exists, within six (6) months after each respective Remediation Option Notice that gives rise to each respective requirement of an Infringement Action; provided, however, that if Right*haven* elects to contact Infringer prior to any Infringement Action and achieves a commercially reasonable Recovery, then Right*haven* shall not be required to take an Infringement Action (and such Recovery shall satisfy Right*haven*'s duties in this Agreement to pursue an Infringement Action); provided further, that if Right*haven* discovers Content that provides Right*haven* with a good-faith-based belief that the Infringer is not an infringer of the Stephens Media Assigned Copyrights, then Right*haven* shall have no duties to take any Infringement Action or pursue a Disposition.

5.  ***Recovery Distribution.***

Within one (1) week after receipt of the Recovery, Right*haven* shall pay to Stephens Media a the percentage of the Recovery provided to Right*haven*'s most preferred customers from time to time (which is, as of the Effective Date, fifty percent (50%)) minus Costs advanced or incurred by Right*haven* related to, with respect to or arising out of the preparation for, conduct of and ultimate resolution of the Infringement Action and/or Disposition.

6.  ***Infringement Action Costs.***

Subject to Section 2, Right*haven* shall be responsible for all Costs incurred in an Infringement Action (the "Infringement Action Costs"); provided, however, that Costs shall not include the salaries or other compensation to Right*haven* employees associated with or arising out of work performed arising out of or in association with this Agreement.

7.  ***Assignment of Copyright Content; Stephens Media License.***

7.1  Subject to the other terms and provisions of this Agreement and throughout the Term, Stephens Media shall effect the assignments to Right*haven* of copyrights as required by this Agreement (including, without limitation, within the time periods required by this Agreement) by executing a particularized assignment with respect to each copyright and each

3

Confidential Attorneys Eyes Only  SM000080

consistent with (and in form and substance the same as) the scope of assignment as set forth in the form of copyright assignment as embodied in Exhibit 1 (each a "Copyright Assignment"). Stephens Media shall provide Notice to Right*haven* of each copyright (each a "Notified Copyright") that is required to be the subject of a Copyright Assignment (a "Copyright Assignment Notice") by no later than five (5) Business Days prior to the last day upon which each respective Copyright Assignment is required to be executed by Stephens Media as provided in Section 3.1. Right*haven* shall then provide to Stephens Media a conforming Copyright Assignment for Stephens Media to execute with respect to each Notified Copyright within three (3) Business Days after receipt of the Copyright Assignment Notice.

7.2   Despite any such Copyright Assignment, Stephens Media shall retain (and is hereby granted by Right*haven*) an exclusive license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever and Right*haven* shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery. To the extent that Right*haven*'s maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Right*haven* hereby grants an exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights. Right*haven* shall have no Obligation to protect or enforce any Work of Stephens Media that is not Stephens Media Assigned Copyrights.

8.   ***Stephens Media's Right of Reversion.***

Stephens Media shall have the right at any time to terminate, in good faith, any Copyright Assignment (the "Assignment Termination") and enjoy a right of complete reversion to the ownership of any copyright that is the subject of a Copyright Assignment; provided, however, that if Right*haven* shall have commenced an action to prosecute an infringer of the Stephens Media Assigned Copyrights, Stephens Media shall be exclusively responsible for effecting termination of such action including, without limitation, all Losses associated with any dismissal with prejudice. In order to effect the termination of the any Copyright Assignment, Stephens Media shall be required to provide Right*haven* with thirty (30) days prior written notice. Within thirty (30) days after receipt of termination of the any Copyright Assignment, Right*haven* shall commence documentation to effect reassignment of the Stephens Media Assigned Copyrights to Stephens Media. Upon any Assignment Termination, Stephens Media shall pay to Right*haven* the Infringement Action Costs that would otherwise work an unjust enrichment benefitting Stephens Media (but under no circumstances shall Infringement Action Costs be less than the costs of any application for registrations or registrations of copyrights made and/or procured by Right*haven* for the benefit of Stephens Media), pursuant to or arising out of this Agreement. No termination of any Copyright Assignment shall impair Right*haven*'s rights to receive sums related to, with respect to and/or arising out of any Recovery pursuant to or arising out of this Agreement (the "Early Termination Amounts"), including, without limitation, a reasonable level of compensation associated with, with respect to, and arising out of, any and all efforts exerted

Confidential Attorneys Eyes Only                                    SM000081

by Right*haven* to Search, find, investigate, ascertain, pursue, redress, sue or otherwise file a claim against any Person with respect to, or otherwise address any copyright infringement benefitting, whether directly or indirectly, copyright holder, pursuant to or arising out of this Agreement, as well as all other rights to quantum meruit proceeds that any court of competent jurisdiction would award under such circumstances. Right*haven* shall provide Notice within thirty (30) days of any Assignment Termination of Right*haven*'s calculation of Early Termination Amounts. Within ten (10) days of receipt of any Recovery by Stephens Media, Stephens Media shall pay to Right*haven* the Early Termination Amounts or provide Notice to Right*haven* of any contest whereby Stephens Media contends that the Early Termination Amounts Notified by Right*haven* to Stephens Media were inaccurate or unjust and to what extent (the "Contested Amount") the Early Termination Amounts were inaccurate or unjust (the "Stephens Media Contest"). Within ten (10) days after receiving the Stephens Media Contest (the "Contest Notification Date"), Right*haven* shall have the option: (a) to elect to receive from Stephens Media within ten (10) days of the Contest Notification Date, the Early Termination Amounts minus the Contested Amount (the "Settled Amount"), or (b) to Notify Stephens Media that Stephens Media must pay to Right*haven* the Settled Amount within ten (10) days of the Contest Notification Date, and that Right*haven* reserves the right to make a claim that Stephens Media should pay the full Early Termination Amounts. In the event that Right*haven* preserves Right*haven*'s right to make a Claim pursuant to Section 5(b), the Parties shall mediate the dispute associated with the Contested Amount (the "Contest Dispute") within sixty (60) days by: (x) reasonably choosing a mediator or by employing a JAMS mediator through http://www.jamsadr.com, (y) mediating the Contest Dispute in Las Vegas, Nevada, and (z) mediating the Contest Dispute in good faith (the "Mediation"). In the event that the Mediation is not effective in resolving the Contest Dispute within sixty (60) days of the commencement of the Mediation, Right*haven* shall have the right to bring any and all relevant Claims for recovery of the Contested Amount, and any amounts accrued by Right*haven* in the Mediation, in any court of competent jurisdiction, in addition to all other rights and remedies available to Right*haven*, whether in law or equity.

9. ***Representations, Warranties and Covenants of Stephens Media.***

Stephens Media hereby represents, warrants and covenants as of the Effective Date and throughout the Term:

9.1. The execution, delivery and performance of this Agreement by Stephens Media does not and shall not violate any of Stephens Media's organizational documents, any applicable Law, or any contractual or other obligation of Stephens Media or any order to which Stephens Media is bound.

9.2. Stephens Media is the owner of all Stephens Media Assigned Copyrights. The Stephens Media Assigned Copyrights is free and clear of all liens and Encumbrances. Stephens Media further represents and warrants that it has the exclusive right to use the Stephens Media Assigned Copyrights, and has the exclusive right to exclude others from Using the Stephens Media Assigned Copyrights. Stephens Media further warrants that, as of the Effective Date,

Confidential Attorneys Eyes Only    SM000082

Stephens Media has no knowledge of any third-party Claim that any aspect of Stephens Media's present or contemplated business operations infringes or will infringe any rights of any third party in Stephens Media Assigned Copyrights.

9.3. Stephens Media shall not sell, grant any Encumbrance on or in or assign, any of Stephens Media Assigned Copyrights to any third Person during the Term absent prior written approval of Right*haven*; provided, however, that Stephens Media may maintain Encumbrances on Stephens Media Assigned Copyrights as part of an overall funding securitization whereby all or substantially all of Stephens Media's assets are Encumbered as part of said funding securitization and Stephens Media Assigned Copyrights are not singled-out as or part of a particularized group of Encumbered assets.

9.4. Stephens Media shall not reduce, adjust, settle or compromise any infringement of Stephens Media Assigned Copyrights except as approved in writing by Right*haven*.

9.5 Stephens Media shall instruct Stephens Media's general counsel, currently Mark A. Hinueber, Esq. (the "General Counsel"), to undertake the necessary and appropriate efforts to ensure Stephens Media's functional performance of Stephens Media's obligations pursuant to and arising from this Agreement. Stephens Media shall further instruct the General Counsel to instruct, by way of internal electronic mail communications (in form and substance the same as Exhibit 9.5), to all employees of Stephens Media that have awareness of Stephens Media Content, within ten (10) Business Days after the Effective Date (the "Content Notice Date") and on every anniversary of the Content Notice Date thereafter during the Term, of the need to promptly apprise the General Counsel throughout the Term of any Content that any employee believes may reasonably be the subject of an unauthorized reproduction or publication.

9.5. Stephens Media shall promptly notify Right*haven* of any unauthorized infringement of Stephens Media Assigned Copyrights that reasonably comes to Stephens Media's attention.

9.6. Stephens Media shall cooperate fully and candidly with Right*haven* with respect to the Infringement Action and shall take all commercially reasonable actions necessary in order to effect the terms and provisions of this Agreement.

9.7. Stephens Media shall provide all Content in whatsoever Media known, or available, to Stephens Media that may aid Right*haven* in the conduct of an Infringement Action, including, without limitation, privileged or confidential Content in any and all Media; provided, however, that nothing in this Section 9.7 shall require any waiver of any protections afforded by reporter shield laws, including, without limitation, as set forth pursuant to Nevada Revised Statute Section 49.275, as amended from time to time.

9.8. Stephens Media shall execute such authorizations as may be required by third Persons in order to release Content in any Media whatsoever to Right*haven* to aid Right*haven* in an Infringement Action.

6

Confidential Attorneys Eyes Only

SM000083

9.9. Right*haven* has not made any express or implied warranties or representations that the Services provided by Right*haven* shall result in any particular amount or level of income to Stephens Media.

9.10. Stephens Media hereby receives notice that Steven A. Gibson ("Gibson") has an ownership interest in one of the entities that owns Right*haven*, Gibson's interest in Right*haven* is therefore a minority interest and that Gibson is also the owner of Gibson Lowry Burris LLP ("Gibson's Participation").

9.11. Stephens Media hereby waives any conflict of interest associated with and/or arising out of Gibson's Participation and that Stephens Media is represented by legal counsel in Nevada familiar with the rules of professional responsibility in Nevada concerning making an informed waiver of the conflict of interest hereby waived.

9.12. Gibson is in no manner representing Stephens Media in or with respect to the negotiation, drafting or entering into this Agreement.

10. ***Recovery Instrument.***

10.1. Any Recovery Instrument shall be written in a manner as to require the endorsement of Right*haven* to be properly endorsed prior to any distribution.

10.2. Right*haven* is hereby authorized to act as attorney-in-fact for Stephens Media and to endorse any Recovery Instrument in Stephens Media's name for deposit into Right*haven*'s bank account for collection and final distribution pursuant to the terms of this Agreement. Stephens Media shall deliver any Recovery Instrument received by Stephens Media to Right*haven* for endorsement and deposit into Right*haven*'s account.

10.3. If Stephens Media uses, disburses, deposits or takes any other action with respect to any Recovery Instrument in contravention of this Agreement, the Sums with respect to such Recovery Instrument shall be deemed held in trust to be distributed pursuant to the terms of this Agreement.

10.4. If Right*haven* uses, disburses, deposits or takes any other action with respect to any Recovery Instrument in contravention of this Agreement, the Sums with respect to such Recovery Instrument shall be deemed held in trust to be distributed pursuant to the terms of this Agreement.

11. ***Stephens Media's Potential Liability.***

Stephens Media understands and acknowledges that Stephens Media and Right*haven* may be liable for an Infringer's attorneys' fees as required by Law in connection with an Infringement Action. Stephens Media further understands that a lawsuit brought solely to harass or to coerce a

7

Confidential Attorneys Eyes Only

settlement may result in liability for malicious prosecution or abuse of process. If any Claim made by an Infringer in an Infringement Action results in Losses, other than Losses described in Section 8, Right*haven* shall be solely liable for such Losses and shall indemnify Stephens Media from and against any such Losses but only if such Losses do not arise out of a misrepresentation by Stephens Media or other breach by Stephens Media of a provision of this Agreement.

12. ***Disclaimer of all Warranties and Representations.***

RIGHT*HAVEN* DISCLAIMS ALL IMPLIED WARRANTIES AND/OR REPRESENTATIONS AND MAKES NO WARRANTIES OR REPRESENTATIONS AS TO ANY PARTICULAR OUTCOME OF ANY INFRINGEMENT ACTION. Right*haven* hereby represents that Right*haven* has no knowledge that any Intellectual Property used or owned by Right*haven* infringes the Intellectual Property owned by any third Person.

13. ***Remedy.***

RIGHT*HAVEN* SHALL NOT BE HELD LIABLE TO ANY PARTY ON ACCOUNT OF OR DUE TO BREACH OF THIS AGREEMENT IN OR FOR ANY AMOUNT THAT EXCEEDS, IN THE AGGREGATE, THE LESSER OF: (A) ANY STEPHENS MEDIASHIP FEES RECEIVED BY RIGHT*HAVEN* FROM STEPHENS MEDIA WITHIN THE PRIOR SIX (6) MONTHS AND (B) ONE THOUSAND DOLLARS ($1,000) AND RIGHT*HAVEN* SHALL NOT BE LIABLE TO STEPHENS MEDIA (NOR TO ANY PERSON CLAIMING ANY RIGHT, TITLE OR INTEREST DERIVED FROM OR AS SUCCESSOR TO THE STEPHENS MEDIA'S RIGHT, TITLE AND INTEREST) FOR INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES OF ANY KIND INCLUDING, WITHOUT LIMITATION, LOST REVENUES OR PROFITS, LOSS OF BUSINESS OR LOSS OF CONTENT ARISING OUT OF THIS AGREEMENT, IRRESPECTIVE OF WHETHER THE PARTY HAS ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGES.

14. ***Indemnification.***

Subject to Section 8, Stephens Media shall indemnify and hold Right*haven* harmless from and against all Losses incurred by Right*haven* with respect to or arising out of any Claim brought by any third Person against Right*haven* based upon any act or omission (whether directly or indirectly) by Stephens Media, including, without limitation, any act or omission stemming from or arising out of this Agreement.

15. ***General Provisions.***

15.1. If any provision of this Agreement should be held to be void or unenforceable, in whole or in part, by a court of competent jurisdiction, then such court shall correct the defect in a narrowly tailored manner to approximate the manifest intent of the Parties.

Confidential Attorneys Eyes Only

SM000085

15.2. Subject to Section 2, this Agreement represents the entire understanding and agreement by and between Right*haven* and Stephens Media.

15.3. This Agreement and any Dispute shall be interpreted and enforced in accordance with the laws of the State of Nevada without regard to its conflict of law principles.

15.4. The Parties hereby submit to the non-exclusive personal jurisdiction of the state and federal courts present in Clark County, Nevada with respect to any Dispute.

15.5. The term of this Agreement (the "Term") shall commence on the Effective Date and shall end upon the termination of the Operating Agreement.

16. *Non-Solicitation.*

During the term of this Agreement and for a period of one (1) year subsequent to the termination date of this Agreement, neither party shall make any attempt to solicit for employment any current employee of the other party without the prior written consent of such party.

17. *Notice.*

All notices and other communications hereunder shall only be in writing and shall be given by: (a) e-mail transmission to the other party (to be followed promptly by written confirmation mailed by certified mail as provided below) and deemed delivered upon transmission when confirmed as aforesaid and provided written confirmation and receipt is obtained by the sender; (b) facsimile transmission (to be followed promptly by written confirmation mailed by certified mail as provided below) and deemed delivered upon transmission when confirmed as aforesaid and provided written confirmation and receipt is obtained by the sender; (c) overnight courier and deemed delivered one (1) day after dispatch; or (d) registered or certified mail, return receipt requested and deemed delivered on the earlier of the date of the signed receipt for same or three (3) days after posting when addressed as follows:

If to Right*haven*:

Mr. Steven A. Gibson
Manager
Right*haven* LLC
7201 West Lake Mead Boulevard, Suite 580
Las Vegas, Nevada 89128
E-mail: sgibson@righthaven.com

Confidential Attorneys Eyes Only                    SM000086

If to Stephens Media:

Stephens Media LLC
Attn: General Counsel
1111 West Bonanza Road
Las Vegas, Nevada 89106
E-mail: mhinueber@stephensmedia.com
Facsimile: (702) 383-0402

To the extent that no facsimile number is currently provided, a facsimile number will be provided within five (5) Business Days of obtaining same.

IN WITNESS WHEREOF, each of the undersigned duly execute this Agreement and represent that each has the authority to legally bind each respective entity.

Right*haven* LLC                                    Stephens Media LLC

By: _____                           By: _____
Name: Steven A. Gibson                              Name: VP/General Counsel
Title: Manager                                      Title: _____
Date: January 18, 2010                              Date: 1.18.2010

10

Confidential Attorneys Eyes Only                                       SM000087

## SCHEDULE 1 – DEFINITIONS

"Agreement" shall mean this Right*haven* Standard Content Protection and Stephens Mediaship Agreement.

"Assigned Infringed Copyright(s)" shall have the meaning ascribed to such term as set forth in Section 3.1.

"Assignment Termination" shall have the meaning ascribed to such term as set forth in Section 8.

"Business Days" shall mean any day, Monday through Friday, excepting Saturday and Sunday and also excepting any day on which federal chartered banks situated in Clark County, Nevada are generally not open for business.

"Claim" shall mean any demand, cause of action or claim of whatsoever nature.

"Compete" shall mean to engage, anywhere in the known universe, in any of the business of Right*haven* or to offer or provide any of the services or products that Right*haven* provides as of the Effective Date, including, without limitation, those services and/or products as described in this Agreement, or to have any association, partnership or ownership interest in any Person that engages in any such conduct.

"Competitor" shall mean any Person who engages in any activity that would be within the meaning of the word Compete; provided, however, no law firm shall be deemed to be any such Person.

"Content" shall mean all material, information, documents, matter, text, data, graphics, computer-generated displays and interfaces, images, photographs and works of whatsoever nature, including, without limitation, all compilations of the foregoing and all results and/or derivations of the expression of the foregoing.

"Content Notice Date" shall have the meaning ascribed to such term as set forth in Section 9.5.

"Contest Notification Date" shall have the meaning ascribed to such term as set forth in Section 8.

"Contest Dispute" shall have the meaning ascribed to such term as set forth in Section 8.

"Contested Amount" shall have the meaning ascribed to such term as set forth in Section 8.

11

Confidential Attorneys Eyes Only

SM000088

"Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of any Person, or the power to veto major policy decisions of any such Person, whether through the ownership of voting securities, by contract, or otherwise.

"Copyright Assignment" shall have the meaning ascribed to such term as set forth in Section 7.1.

"Copyright Assignment Notice" shall have the meaning ascribed to such term as set forth in Section 7.1.

"Costs" shall mean any and every expenditure (at commercially reasonable rates) made on the part of Right*haven* with respect to an Infringement Action, including, without limitation, attorneys' fees to local counsel (not employed by Right*haven*) prosecuting such action, court reporter fees, application and registration fees, expert consultant and witness fees, computer research fees, private investigator fees, process server fees, courier fees, copy charges, long distance telephone charges, court filing fees, mailing costs, parking fees, expenses incident to travel by Right*haven* representatives related to the Infringement Action, including air (at coach rates) and ground transport, lodging, and meals, and other disbursements made in connection with the Infringement Action.

"Declination Notice" shall have the meaning ascribed to such term as set forth in Section 3.3.

"Develop" shall mean develop, conceive, reduce to practice, create, or otherwise arise out of efforts in any manner whatsoever and through any means whether now known or hereafter developed.

"Disposition" shall mean the final disposition of an Infringement Action through settlement, compromise, judgment and/or the execution and delivery of a Recovery Instrument by an Infringer with respect to, related to or otherwise associated with the Stephens Media Assigned Copyrights.

"Dispute" shall mean any controversy or other matter with respect to, or arising out of this Agreement.

"Early Termination Amounts" shall have the meaning ascribed to such term as set forth in Section 8.

"Effective Date" shall mean the date first entered in this Agreement.

"Encumbrance" shall mean any security interest, pledge, hypothecation, lien or other encumbrance of whatsoever nature.

"Exhibit" shall mean any document attached hereto denoted as an exhibit, which by reference made herein shall be deemed incorporated herein by such reference.

12

Confidential Attorneys Eyes Only

"Exploit" shall mean to use, make, sell, or otherwise exploit in any manner whatsoever (through any means now known or hereafter Developed).

"General Counsel" shall have the meaning ascribed to such term as set forth in Section 9.5.

"Gibson" shall have the meaning ascribed to such term as set forth in Section 9.10.

"Gibson's Participation" shall have the meaning ascribed to such term as set forth in Section 9.12.

"Infringement Actions Costs" shall have the meaning ascribed to such term as set forth in Section 6.

"Intellectual Property" shall mean all foreign, federal, state and common law trademarks, service marks, patents, copyrights, trade secrets, universal resource locators, domain names, trade dress, mask works, know how, show how, proprietary information and other intangible asset, as well as all applications for registration or issuance and registrations and issuances relating thereto and arising there from.

"Infringed Copyright" shall mean any Stephens Media Content that Stephens Media either has actual notice is being infringed on a copyright basis or has a bon a fide belief is the subject of infringement on a copyright basis.

"Infringement Action" shall mean an action commenced in a United States federal district court against one or more Infringers related to, arising from, or concerning the validity, enforcement, preservation or enforcement of Stephens Media Assigned Copyrights brought by Right*haven* regardless of whether this Agreement is terminated or any rights or licenses pursuant to or arising from this Agreement are terminated.

"Infringement Action Costs" shall have the meaning ascribed to such term as set forth in Section 3.

"Infringer" shall mean a Person presently infringing, or hereafter infringing Stephens Media Assigned Copyrights.

"Losses" shall mean any and all costs, expenses, fees (including, without limitation, attorneys', accountants', investigators', witnesses' and professionals' fees), charges, expenditures, liabilities, damages and other losses of whatsoever nature.

"Material Risk Conclusion" shall have the meaning ascribed to such term as set forth in Section 3.1.

"Mediation" shall have the meaning ascribed to such term as set forth in Section 8.

13

Confidential Attorneys Eyes Only                                   SM000090

"Net Sortie" shall mean Net Sortie Systems, LLC, a Nevada limited-liability company.

"Notice" shall mean to provide notice pursuant to Section 17.

"Notify" shall mean to give Notice.

"Notified Copyright" shall have the meaning ascribed to such term as set forth in Section 7.1.

"Operating Agreement" shall have the meaning ascribed to such term as set forth in Section 2.

"Parties" shall mean both Right*haven* and Stephens Media.

"Party" shall mean either Right*haven* or Stephens Media.

"Person" shall mean any natural person, corporation, limited liability company, limited partnership, partnership, trust, association, organization or other entity of whatsoever nature.

"Recovery" shall mean any and all Sums received, transferred to, assigned, conveyed, paid or otherwise obtained by Stephens Media and/or Right*haven* relating to, arising or resulting from (whether directly or indirectly) a Disposition, including, without limitation, all Sums paid by way of damages, costs and attorneys fees with respect to or arising from an Infringement Action.

"Recovery Instrument" shall mean any instrument or any other Content in any Media which evidences a right, title or interest in and to the Sums with respect to, related to or arising out of the Recovery.

"Remediation Declination" shall have the meaning ascribed to such term as set forth in Section 3.3.

"Remediation Option Notice" shall have the meaning ascribed to such term as set forth in Section 3.3.

"Right*haven*" shall mean Right*haven* LLC, a Nevada limited-liability company.

"Right*haven* Transaction" shall have the meaning ascribed to such term as set forth in Section 2.

"Schedule" shall mean an enumerated schedule all of which shall be deemed attached hereto and incorporated herein by way of the specific reference or references made in this Agreement.

"Searching" shall mean to employ the then available technology and means in Right*haven*'s possession to find the occurrence(s) of relevant copyright infringement.

Confidential Attorneys Eyes Only       SM000091

"Searching Decision" shall have the meaning ascribed to such term as set forth in Section 3.1.

"Section" shall be deemed a reference to an enumerated provision of this Agreement. Section headings are used for convenience only and shall have no interpretive effect or impact whatsoever.

"Settled Amount" shall have the meaning ascribed to such term as set forth in Section 8.

"Stephens Media" shall mean Stephens Media LLC, a Nevada limited-liability company.

"Stephens Media Affiliate" shall have the meaning ascribed to such term as set forth in Section 2.

"Stephens Media Assigned Copyrights" shall mean each copyright assigned by Stephens Media to Right*haven* pursuant to Section 7.

"Stephens Media Contest" shall have the meaning ascribed to such term as set forth in Section 8.

"Sums" shall mean all monies, sums, consideration, receivables, asset and other things (whether tangible or intangible) of value of whatsoever nature as well as all proceeds of any and/or all of the foregoing.

"Term" shall have the meaning ascribed to such term as set forth in Section 15.5.

"Work" shall have the meaning defined in the U.S. Copyright Act of 1976, as amended.

Confidential Attorneys Eyes Only                                    SM000092

Exhibit 1

**COPYRIGHT ASSIGNMENT**

This Copyright Assignment (the "Assignment") is made effective as of _____ (the "Effective Date") by Stephens Media LLC, a Nevada limited-liability company ("Stephens Media").

In consideration of monetary commitments and commitments to services to be provided and/or already provided by Right*haven* LLC, a Nevada limited-liability company, ("Right*haven*") to Stephens Media and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Stephens Media hereby transfers, vests and assigns the work depicted in Exhibit A, attached hereto and incorporated herein by this reference (the "Work"), to Right*haven*, subject to Stephens Media's rights of reversion, all copyrights requisite to have Right*haven* recognized as the copyright owner of the Work for purposes of Right*haven* being able to claim ownership as well as the right to pursue past, present and future infringements of the copyright in and to the Work.

**IN WITNESS WHEREOF**, Stephens Media hereby executes this Assignment on this _____ day of _____, 20__.

STEPHENS MEDIA LLC

By: _____

Name: _____

Title: _____

STATE OF _____ )
COUNTY OF _____ )

Subscribed and sworn to before me this _____ day of _____, 2010.

_____
Notary Public

My Commission Expires: _____
SEAL

16

Confidential Attorneys Eyes Only    SM000093

## Exhibit 9.5

## DUE DILIGENCE NOTICE

"As Stephens Media has decided to reinvigorate the company's efforts to protect the company's valued copyrights, we ask you to immediately report to the Office of General Counsel via e-mail any suspected or known unauthorized reproduction or publication of any Stephens Media story, photograph or other content of any nature by any person or entity at any time."

Confidential Attorneys Eyes Only                                    SM000094