1

2

3

4                          UNITED STATES DISTRICT COURT

5                              DISTRICT OF NEVADA

6                                      * * *
                                        )
7    RIGHTHAVEN, LLC,                    )
                                        )
8              Plaintiff,                )           2:11-CV-00050-PMP-RJJ
                                        )
9    v.                                  )
                                        )
10                                       )           O R D E R
     WAYNE HOEHN,                        )
11                                       )
               Defendant.                )
12   _____)

13          Presently before the Court is Defendant's Motion to Dismiss for Lack of Subject

14   Matter Jurisdiction (Doc. #16), filed on April 17, 2011.  Plaintiff filed a Response (Doc.

15   #23), on May 9, 2011.  Defendant filed a Reply (Doc. #26), on May 15, 2011.  Also before

16   the Court is Defendant's Motion for Summary Judgment (Doc. #8), filed on February 11,

17   2011.  Plaintiff filed a Response (Doc. #13), on March 7, 2011.  Defendant filed a Reply

18   (Doc. #14), on March 24, 2011.  This Court held a hearing on the Motion for Summary

19   Judgment on May 3, 2011.  (Mins. of Proceedings (Doc. #19).)

20   **I. BACKGROUND**

21          This is a copyright infringement action brought by Plaintiff Righthaven LLC

22   ("Righthaven") against Defendant Wayne Hoehn ("Hoehn"), who is and was at all relevant

23   times a registered user and content contributor to the website <madjacksports.com> (the

24   "Website").  (Pl.'s Resp. To Mot. For Summ. J. ["Resp."] (Doc. #13).)  Hoehn has never

25   been employed by the Website's owner and operator.  (Id.)  On or about November 29,

26   2010, Hoehn displayed an unauthorized reproduction of a copyrighted literary work entitled

1   "Public Employee Pensions.  We Can't Afford Them" (the "Work") as part of the content

2   contributed by him to the Website.  (Id.)  In his reproduction, Hoehn attributed the source of

3   the Work to the Las Vegas Review Journal ("LVRJ").  (Compl. (Doc. #1).)  Hoehn avers

4   that he did not post the Work for profit and that there was no mechanism for him to profit

5   by posting the Work on the website.  (Def.'s Mot. For Summ. J. ["MSJ"] (Doc. #8), Hoehn

6   Decl., Ex. A.)  Hoehn states he removed the Work from the Website on January 6, 2011.

7   (Id.)

8           At the time of the posting, Righthaven was not the owner of the Work, rather the

9   Work was owned by Stephens Media.  (Gibson Decl. (Doc. #24), Ex 1.)  In January 2010,

10  Righthaven and Stephens Media entered into the Strategic Alliance Agreement (the

11  "SAA"), governing the ongoing relationship between Righthaven and Stephens Media

12  regarding assignment of copyrights originally owned by Stephens Media.  (Gibson Decl.)

13  Section 3.3 of the SAA governs the rights and responsibilities of Righthaven and Stephens

14  Media with respect to pursuing alleged infringers and states in part:

15          If Righthaven chooses in the Remediation Option Notice to not pursue
            an Infringement Action (the "Remediation Declination"), then
16          Righthaven shall reassign the Assigned Copyright to Stephens Media
            that is the subject of the Remediation Declination . . . .
17          Notwithstanding any other provision of this Agreement, Stephens
            Media shall have the right to Notify Righthaven, within five (5)
18          Business Days after receipt of a respective Remediation Option Notice,
            that Righthaven should not take any Infringement Action with respect
19          to a particular putative infringer as indicated in any Remediation
            Option Notice (the "Declination Notice") and upon receipt of a
20          Declination Notice, Righthaven shall not take any Infringement Action
            with respect to the particular putative infringer set forth in any
21          Declination Notice; provided, however, that Stephens Media shall only
            send any Declination Notice on a reasonable basis with the grounds of
22          reasonability being that a particular infringer is a charitable
            organization, is likely without financial resources, is affiliated with
23          Stephens Media directly or indirectly, is a present or likely future
            valued business relationship of Stephens Media or otherwise would be
24          a Person that, if the subject of an Infringement Action, would result in
            an adverse result to Stephens Media.

25

26  (Gibson Decl., Ex. 2.)

Section 7.2 of the SAA states in part:

> Despite any such Copyright Assignment, Stephens Media Shall retain
> (and is hereby granted by Righthaven) an exclusive license to Exploit
> the Stephens Media Assigned Copyrights for any lawful purpose
> whatsoever and Righthaven shall have no right or license to Exploit or
> participate in the receipt of royalties from the Exploitation of the
> Stephens Media Assigned Copyrights other than the right to proceeds
> in association with a Recovery.  To the extent that Righthaven's
> maintenance of rights to pursue infringers of the Stephens Media
> Assigned Copyrights in any manner would be deemed to diminish
> Stephens Media's right to Exploit the Stephens Media Assigned
> Copyrights, Righthaven hereby grants an exclusive license to Stephens
> Media to the greatest extent permitted by law so that Stephens Media
> shall have unfettered and exclusive ability to Exploit the Stephens
> Media Assigned Copyrights.

(Id.)

Section 8 of the SAA is titled "Stephens Media's Right of Reversion."  Section 8 states in part:

> Stephens Media shall have the right at any time to terminate, in good
> faith, any Copyright Assignment (the "Assignment Termination") and
> enjoy a right of complete reversion to the ownership of any copyright
> that is subject of a Copyright Assignment. . . .  In order to effect
> termination of the [sic] any Copyright Assignment, Stephens Media
> shall be required to provided Righthaven with thirty (30) days prior
> written notice.  Within thirty (30) days after receipt of termination of
> the [sic] any Copyright Assignment, Righthaven shall commence
> documentation to effect reassignment of the Stephens Media Assigned
> Copyrights to Stephens Media.

(Id.)

On December 6, 2010, Stephens Media, the original owner of the Work, assigned all rights, title, and interest in and to the Work, including the right to seek redress for all past, present, and future infringements, to Plaintiff Righthaven (the "Assignment"). (Gibson Decl.)  The Assignment states in part:

> Assignor hereby transfers, vests and assigns the work described in Exhibit A,
> attached hereto and incorporated herein by this reference (the "Work"), to
> Righthaven, subject to the Assignor's rights of reversion, all copyrights requisite
> to have Righthaven recognized as the copyright owner of the Work for purposes
> of Righthaven being able to claim ownership as well as the right to seek redress

3

1    for past, present and future infringements of the copyright, both accrued and
2    unaccrued, in and to the Work.

3   (Gibson Decl., Ex. 1.)

4           Plaintiff Righthaven brought the present suit against Hoehn on January 11, 2011,

5   based on Hoehn's posting of the Work on the Website.  (Compl. (Doc. #1).)  The suit seeks

6   a permanent injunction prohibiting Hoehn from posting the Work and an award of statutory

7   damages.

8           On April 17, 2011, Hoehn filed a Motion to Dismiss for lack of subject matter

9   jurisdiction, arguing that Righthaven did not have the requisite standing to bring a copyright

10  infringement suit because it was not the owner of an exclusive right.  On May 9, 2011,

11  Stephens Media and Righthaven entered into the Clarification and Amendment to Strategic

12  Alliance Agreement (the "Clarification").  (Gibson Decl., Ex. 3.)  The Clarification states

13  that the intent of the parties when they entered into the SAA was "to grant Stephens Media

14  a license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose

15  whatsoever without in any way hindering the right of Righthaven to seek redress for any

16  past, present or future infringements of such copyright."  (Id.)  The Clarification amends

17  section 7.2 of the SAA and replaces it with the following:

18          Automatically upon execution of a Copyright Assignment, Stephens
            Media is granted a non-exclusive license to Exploit the Stephens
19          Media Assigned Copyright to the greatest extent permitted by law in
            consideration for payment in the amount of One Dollar and Zero Cents
20          ($1.00) per year to Righthaven as a license or royalty for each Stephens
            Media Assigned Copyright as Consideration for the license granted
21          herein (the "License Fee").  Any License Fee required under this
            amended and revised Section 7.2 shall be retroactive to the Effective
22          Date.  In the event that Righthaven decides to Exploit or participate in
            receipt of royalties from Exploitation of a Stephens Media Assigned
23          Copyright other than in association with a Recovery, Righthaven shall
            give Stephens Media 30 days prior written notice.  The parties
24          acknowledge that failure to provide such notice would be a material
            breach of this Agreement and would cause Stephens Media irreparable
25          harm, remediable through injunctive relief, which Righthaven and
            those asserting rights obtained from it shall have no right to oppose.

26

4

1    (Id.)

2          Additionally, the Clarification amends section 8 of the SAA and replaces it with

3    sections 8.1 and 8.2, including the following:

4          At any time, within its sole discretion, Stephens Media shall have the
           option, within 14 days of providing notice of the exercise of such
5          option, to purchase all right and title to the Stephens Media Assigned
           Copyright in consideration for payment in the amount of Ten Dollars
6          and Zero Cents ($10.00) ("Exercised Option").

7    (Id.)  The Clarification states it is to be retroactively effective to the original date of the

8    SAA.  (Id.)

9          Also on May 9, 2011, Righthaven filed the Declarations of Steven A. Gibson

10   ("Gibson"), CEO of Righthaven, and Mark Hinueber ("Hinueber"), General Counsel of

11   Stephens Media.  (Gibson Decl.; Hinueber Decl. (Doc. #25).)  Both Gibson and Hinueber

12   state that it was the parties' intent to grant all ownership rights in the Work to Righthaven

13   together with the right to sue for all past, present, and future copyright infringement.  (Id.)

14   Hinueber also states that it was not the intent of Stephens Media "to divest or otherwise

15   impair Righthaven's ability to file or otherwise maintain copyrighted infringement actions

16   based on content . . . specifically assigned to Righthaven through the license-back rights

17   described in the SAA.  Rather it was [the parties'] intent in this regard to acknowledge

18   Stephens Media's ability to continue to use the assigned content as a licensee."  (Hinueber

19   Decl.)

20         Hoehn now moves to dismiss, arguing this Court does not have subject matter

21   jurisdiction over this matter because Righthaven does not own any exclusive rights in the

22   copyright necessary to bring suit.  Hoehn further contends that the May 9, 2011

23   Clarification to the SAA does not correct these deficiencies and ultimately deprives

24   Righthaven of any exclusive rights in the assigned copyright.  Righthaven responds that it

25   has standing to bring this suit, and in any event, the May 9, 2011 Clarification cures any

26   alleged defect in standing.   Further, Righthaven argues the SAA reflects promises made

5

between Righthaven and Stephens Media with regard to future transactions, but itself does not cause an assignment of rights.  Rather, Righthaven argues, the assignment of rights is governed by the Assignment entered into on December 6, 2010.

Additionally, Hoehn moves for summary judgment, arguing that his use of the Work is protected as fair use.  Righthaven responds that summary judgment on fair use is premature as Plaintiff has not been permitted to engage in discovery and, in any case, Defendant fails to establish that his conduct is protected as fair use.  Defendant replies that Plaintiff was given the opportunity to engage in discovery and did not do so.  Additionally, Defendant states that because both parties agree as to the facts of the case, there is no genuine issue of material fact and summary judgment is appropriate.

## II.  MOTION TO DISMISS FOR LACK OF JURISDICTION

To hear a case, a federal court must have subject matter jurisdiction over the matter at hand.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Central to the issue of subject matter jurisdiction is the issue of standing, requiring the party invoking jurisdiction to establish actual or imminent harm.  Id. at 560.  The invoking party bears the burden of establishing standing with the same burden of proof "required at the successive stages of the litigation."  Id. at 561.  If a court does not set a hearing on a motion to dismiss, "a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss."  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

"[O]nly copyright owners and exclusive licensees of copyright may enforce a copyright."  Sybersound Records v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008).  Exclusive rights in a copyright are enumerated in 17 U.S.C. § 106 and include the exclusive rights:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work; [and]
> (3) to distribute copies or phonorecords of the copyrighted work to the public by

1    sale or other transfer of ownership, or by rental, lease, or lending.

2    Id.  "The right to sue for an accrued claim for infringement is not an exclusive right under

3    § 106."  Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 884 (2005).  "Exclusive rights

4    in a copyright may be transferred and owned separately, but . . . [there are] no exclusive

5    rights other than those listed in §106."  Id. at 885.  While the right to sue is not an exclusive

6    right, it may be transferred to another party if accompanied with an exclusive right.  Id. at

7    890 n.1.  Additionally, the right to sue for past infringement can be transferred to another

8    party so long as it is expressly included in the assignment along with an exclusive right.  Id.

9    at 889-90.

10    Plaintiff Righthaven alleges it has presented evidence in the form of the

11    Assignment that Stephens Media transferred to Righthaven exclusive rights in the Work

12    coupled with the right to sue based on infringement of the copyrighted Work.  Additionally,

13    Righthaven argues that to the extent the Court finds the Assignment ambiguous, the Court

14    should look to the parties' intent, evidenced by the Gibson and Hinueber declarations, that

15    the parties intended to transfer the exclusive rights in the Work along with the right to sue

16    based on past, present, and future infringement of the copyrighted Work.

17    Ownership of the exclusive right to reproduce the copyrighted work is necessary

18    to bring a suit for infringement based on reproduction of the copyrighted work.

19    Sybersound, 517 F.3d at 1144.  The language of the Assignment transfers "all copyrights

20    requisite to have Righthaven recognized as the copyright owner of the Work for purposes of

21    Righthaven being able to claim ownership as well as the right to seek redress for past,

22    present and future infringements of the copyright."  Additionally, Hinueber states that

23    "Stephens Media assigned all rights, title and interest in and to the Work, including the right

24    to seek redress for all past, present and future infringements of the Work to Righthaven on

25    December 6, 2010."  (Hinueber Decl.)

26    ///

1   However, the Assignment cannot be read in isolation.  The SAA governs the

2   parties' relationship with respect to Copyright Assignments.  (Gibson Decl., Ex. 2 at 7.1.)

3   Additionally, the blank form Assignment is incorporated as an attachment to the SAA,

4   indicating that the two documents together govern the transfer of Copyright Assignments

5   rather than the Assignment alone.  (Id., Ex. 1.) The Assignment together with the SAA are

6   unambiguous.

7   The Court finds the SAA in its original form qualifies the Assignment with

8   restrictions or rights of reversion, such that in the end, Righthaven is not left with

9   ownership of any exclusive rights.  Under Section 3.3 of the SAA, Righthaven is obligated

10  to reassign the rights to the Work if it does not pursue an infringement action within 60 days

11  of the Assignment.  Additionally, this section gives Stephens Media the right to direct

12  Righthaven not to pursue an action against an alleged infringer.  Further, under Section 7.2,

13  Righthaven has "no right of license to Exploit or participate in the receipt of royalties from

14  the Exploitation of the Stephens Media Assigned Copyrights . . . ."  Stephens Media has the

15  unilateral right, at any time, to terminate the Copyright Assignment and enjoy a complete

16  right of reversion.  These carveouts deprive Righthaven of any of the rights normally

17  associated with ownership of an exclusive right necessary to bring suit for copyright

18  infringement and leave Righthaven no rights except to pursue infringement actions, a right

19  which itself is subject to Stephens Media's veto.

20  In Nafal v. Carter, the court faced a similar disconnect between the parties' label

21  of a transfer of exclusive rights in a copyright assignment and the reality of their transfer.

22  540 F. Supp. 2d 1128 (C.D. Cal. 2007).  The Nafal court found that despite an assignment

23  purporting to give the plaintiff "an undivided one-half (50%) of [assignor's] rights, title and

24  interest [in the work]," this label could not subvert summary judgment where the reality of

25  the assignment left the plaintiff with little to no rights in the copyrighted work.  Id. at 1141-

26  42.  The court found that the assignment did not make the plaintiff a "co-exclusive

8

1   licensee" with the right to sue for infringement because the assignment gave the plaintiff no

2   discretion in deciding when to sue an alleged infringer; the plaintiff's interest in the

3   copyrighted work would be terminable if the plaintiff did not bring an infringement lawsuit

4   within a certain time period; nearly every effort by the plaintiff to exploit the copyrighted

5   work had to be approved in advance; and the plaintiff did not offer facts that would permit

6   the inference that he had rights to do anything beyond negotiating "compulsory mechanical

7   licenses, which does not confer Plaintiff with the power to exploit any exclusive rights."[1] Id.

8   at 1143.

9           Although the Court is evaluating Righthaven's standing at the dismissal stage,

10  rather than summary judgment as in Nafal, similar factors lead the Court to the same

11  conclusion.  Stephens Media retains discretion over when to bring suit for infringement and

12  Righthaven's rights will be terminated if it does not bring suit within a specified time

13  period.  Righthaven has no right to exploit or profit from the work in any way other than

14  that associated with recovery from an infringement action.  The Copyright Assignment is

15  fully terminable by Stephens Media at any time. Righthaven has no meaningful rights other

16  than the bare right to sue, something that is not transferable under Silvers.  402 F.3d at 884.

17          Similarly, in Lahiri v. Universal Music & Video Distrib. Corp., the Court found

18  that an assignment that used ownership language but was too restrictive to convey such a

19  right could not transfer an exclusive right.  606 F.3d 1216, 1222 (9th Cir. 2010).  The

20  assignment the plaintiff relied on to establish a right in the copyrighted work transferred

21  only an interest in the recovery based on copyright infringement and no interest in the work

22  itself.  Here, the rights in the copyrighted Work retained by Stephens Media deprive

23  Righthaven of everything except the right to pursue alleged infringers, a right that is still

24

25          [1]   A mechanical license "grants third parties the non-exclusive right to reproduce a musical
    composition on phonorecords, provided that the copyright owner has already authorized the use of such
26  work," during the manufacture and sale of phonorecords.  Nafal, 540 F. Supp. 2d at 1143.

subject to Stephens Media's oversight.  Accordingly, Righthaven does not possess an exclusive right in the Work and therefore does not have standing to bring a suit for infringement.

Even assuming that the May 9, 2011 Clarification can change the jurisdictional facts as they existed at the time of the filing of the suit, it still does not correct the deficiencies with respect to lack of standing.  The May 9, 2011 Clarification offers recitals stating the parties' intent "to convey all ownership rights in and to any identified Work to Righthaven . . . so that Righthaven would be the rightful owner of any identified Work and entitled to seek copyright registration."  However, it does not provide Righthaven with any exclusive rights necessary to bring suit.

The May 9, 2011 Clarification provides Righthaven with only an illusory right to exploit or profit from the Work, requiring 30 days advance notice to Stephens Media before being able to exploit the Work for any purpose other than bringing an infringement action. Stephens Media has, in its sole discretion, the option to repurchase the Copyright Assignment for a nominal amount within 14 days, thereby retaining  the ability to prevent Righthaven from ever exploiting or reproducing the Work.  Stephens Media's power to prevent Righthaven from exploiting the Work for any purpose other than pursuing infringement actions is further bolstered by the Clarification's provision that every exploitation of the Work by Righthaven other than pursuing an infringement action without first giving Stephens Media notice constitutes irreparable harm to Stephens Media. Stephens Media may obtain injunctive relief against Righthaven to prevent such "irreparable harm" and, pursuant to the Clarification, Righthaven has no right to oppose Stephens Media's request for injunctive relief.  Accordingly, Righthaven does not have any exclusive rights in the Work and thus does not have standing to bring an infringement action.  The Court therefore will grant Defendant's Motion to Dismiss for lack of standing.

///

1   **III. SUMMARY JUDGMENT**

2         Assuming Righthaven was found to have standing to bring this action, the Court

3   nonetheless finds Hoehn is entitled to summary judgment on the ground of fair use of the

4   Work.  Summary judgment is appropriate if the pleadings, depositions, answers to

5   interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to

6   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

7   56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing

8   law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine if

9   "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

10   Id.  Where a party fails to offer evidence sufficient to establish an element essential to its

11   case, no genuine issue of material fact can exist, because "a complete failure of proof

12   concerning an essential element of the nonmoving party's case necessarily renders all other

13   facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

14         The party "seeking summary judgment bears the initial responsibility of

15   informing the district court of the basis for its motion, and identifying those portions of 'the

16   pleadings . . .' which it believes demonstrate the absence of a genuine issue of material

17   fact."  Id. at 323.  The burden then shifts to the non-moving party to go beyond the

18   pleadings and set forth specific facts demonstrating there is a genuine issue of material fact

19   for trial.  Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000).  The

20   Court views all evidence in the light most favorable to the non-moving party.  County of

21   Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

22         Under Federal Rule of Civil Procedure 56(b) "a party may file a motion for

23   summary judgment at any time until 30 days after the close of all discovery."  "If a

24   nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present

25   facts essential to justify its opposition, the court may" defer consideration of a motion or

26   deny it, allow the parties time to complete additional discovery, or grant other appropriate

relief. Fed. R. Civ. P. 56(d).  The party requesting additional time to conduct discovery to oppose summary judgment must present an affidavit stating the specific facts it hopes to elicit from further discovery, that the facts exist, and that the facts are essential to oppose summary judgment.  Family Home & Fin. Ctr, Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008).  If the nonmovant does not satisfy these requirements, the court may proceed to rule on summary judgment without granting additional discovery.  Id.

Fair use is a defense to use of a copyrighted work which otherwise would be copyright infringement if the work is used "for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research."  17 U.S.C. § 107.  Factors to be considered when determining fair use include-

> (1) the purpose and character of the use, including whether such use is of commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Id.

Fair use is evaluated on a case-by-case basis.  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994).  "Fair use is a mixed question of law and fact.  If there are no genuine issues of material fact, . . . and a reasonable trier can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work."  Los Angeles News Serv. v. KCAL-TV Channel 9, 108 F.3d 1119, 1120 (9th Cir. 1997) (quotation omitted).  "Where material facts are not in dispute, fair use is appropriately decided on summary judgment."  Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 800 (9th Cir. 2003).

As an initial matter, Righthaven argues that summary judgment is premature because Righthaven has not conducted discovery.  Hoehn responds that Righthaven has had the opportunity to conduct discovery and has failed to do so.  Additionally, Hoehn argues

1   that all facts necessary to decide summary judgment are undisputed and before the Court.

2        Hoehn's motion complies with the time strictures set by Rule 56(b).  Righthaven

3   has not presented an affidavit showing the specified reasons it needs to conduct discovery to

4   oppose summary judgment, or, the types of facts it hopes to elicit, that these facts exist, and

5   that these facts are necessary to oppose summary judgment.  Accordingly, the Court will

6   deny additional discovery on this matter and decide Hoehn's motion on the facts before the

7   Court.

8        1) The Purpose and Character of the Use

9        The first factor of fair use is the purpose and character of the use.  17 U.S.C.

10   § 107.  Noncommercial, nonprofit use is presumptively fair.  Sony Corp. of Am. v.

11   Universal City Studios, Inc., 464 U.S. 417, 449 (1984).  "The crux of the profit/nonprofit

12   distinction is not whether the sole motive of the use is monetary gain but whether the user

13   stands to profit from exploitation of the copyrighted material without paying the customary

14   price."  Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 562 (1985).  "This

15   factor focuses on whether the new work merely replaces the object of the original creation

16   or instead adds a further purpose or different character.  In other words, this factor asks

17   whether and to what extent the new work is transformative."  A & M Records, Inc. v.

18   Napster, Inc., 239 F.3d 1004, 1015 (9th Cir. 2001) (quotation omitted).  If the character of

19   the use differs from the original usage, the use may be considered fair.  Worldwide Church

20   of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1117 (9th Cir. 2000) (duplicating a

21   church's religious book for use by a different church was not transformative and was not

22   protected by fair use).  However, mere transmission of a copyrighted work in a different

23   medium is likely not fair use.  Napster, 239 F.3d at 1015.

24        It is undisputed that Hoehn did not and could not profit from posting the Work.

25   Under Sony, noncommercial/nonprofit use is presumptively fair.  Additionally, this factor

26   focuses on the purpose or character of the new work.  Here, Hoehn posted the Work as part

1    of an online discussion.  Hoehn avers he posted the Work to foster discussion in a specific

2    interactive website forum regarding the recent budget shortfalls facing state governments.

3    This purpose is consistent with comment, for which 17 U.S.C. § 107 provides fair use

4    protection.  There is no genuine issue of material fact that Hoehn's noncommercial use of

5    the Work for comment favors a finding that the use was fair.

6              2) The Nature of the Copyrighted Work

7              The second factor is the nature of the copyrighted work.  17 U.S.C. § 107.

8    Generally, "creative works are closer to the core of intended copyright protection than

9    informational and functional works."  Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,

10   109 F.3d 1394, 1402 (9th Cir. 1997) (quotation omitted).  "The scope of fair use is greater

11   when informational as opposed to creative works are involved."  Hustler Magazine Inc. v.

12   Moral Majority Inc., 796 F.2d 1148, 1153-54 (9th Cir. 1986).  The types of works deemed

13   to be creative to tilt this factor against a finding of fair use have been complete works of

14   fiction, song lyrics, and Barbie Dolls.  Dr. Seuss, 109 F.3d at 1402; Leadsinger, Inc. v.

15   BMG Music Publ'g, 512 F.3d 522, 531 (9th Cir. 2008); and Mattel, 353 F.3d at 803.

16   However, "this factor [is] not terribly significant in the overall fair use balancing."  Dr.

17   Seuss, 109 F.3d at 1402.

18             The Work is an editorial originally published in the LVRJ.  The Work is a

19   combination of an informational piece with some creative elements.  Roughly eight of the

20   nineteen paragraphs of the Work provide purely factual data, about five are purely creative

21   opinions of the author, and the rest are a mix of factual and creative elements.  While the

22   Work does have some creative or editorial elements, these elements are not enough to

23   consider the Work a purely "creative work" in the realm of fictional stories, song lyrics, or

24   Barbie dolls.  Accordingly, the Work is not within  "the core of intended copyright

25   protection."  Dr. Seuss, 109 F.3d at 1402.  Rather, because the Work contains a significant

26   informational element, the scope of fair use is greater than it would be for a creative work,

14

but likely less than it would for a purely informational work.  However, this factor is not

terribly relevant in the overall fair use balancing, and the lesser creative element of the

Work lessens the impact further.  Accordingly, this factor must be balanced with the other

fair use factors to determine if Hoehn's use of the Work was fair.

### 3) The Amount Used

The third factor of fair use is the amount of the use of the copyrighted work.  17

U.S.C. § 107.  "[T]he extent of permissible copying varies with the purpose and character

of the use."  Campbell, 510 U.S. at 586-87.  "While wholesale copying does not preclude

fair use per se, copying an entire work militates against finding a fair use."  Napster, 239

F.3d at 1016 (quotation omitted).  However, copying of an entire copyrighted work has

been deemed justified where the purpose of the new work differs from the original.  Kelly

v. Arriba Soft Corp., 336 F.3d 811, 821 (9th Cir. 2003); see also Sony, 464 U.S. at 449-50

(videotaping whole broadcast television programs for later private viewing constituted fair

use).

It is undisputed that Hoehn posted the entire work in his comment on the

Website.  Posting an entire work generally "militates against finding a fair use."  Napster,

239 F.3d at 1016.  However, while wholesale copying of the Work shifts this factor against

finding fair use, wholesale copying does not preclude a finding of fair use.  Id.  The three

other factors need to be balanced to determine if fair use is appropriate.

### 4) The Effect Upon the Potential Market for the Work

The final factor to be weighed is the effect on the potential market for or value of

the copyrighted work.  17 U.S.C. § 107.  "Fair use, when properly applied, is limited to

copying by others which does not materially impair the marketability of the work which is

copied."  Harper, 471 U.S. 566-67 (quotation omitted).  Additionally, "[a] challenge to

noncommercial use of a copyrighted work requires proof either that the particular use is

harmful, or that if it should become widespread, it would adversely affect the potential

market for the copyrighted work."  Napster, 239 F.3d at 1016 (quotation omitted).

It is undisputed that Hoehn's use of the Work is noncommercial.  Challenges to noncommercial use require a showing that the particular use is harmful or negatively impacts the potential market for the copyrighted work.  Id.  Righthaven has not presented evidence raising a genuine issue of material fact that Hoehn's use is harmful.  Rather, Righthaven contends that because Hoehn replicated the entirety of the Work "[s]uch circumstances warrant the conclusion that [Hoehn's] infringement has likely caused a substantial impairment on the potential market for the Work and that [Hoehn's] infringing copy of the Work fulfilled the demand for the original."  (Resp. (Doc. #13) at 12-13.)  Additionally, Righthaven argues that the market for the Work was impacted negatively because potential readers are able to read the Work on the Website and would have no reason to view the Work at its original source of publication.  However, Righthaven has not presented any evidence of harm or negative impact from Hoehn's use of the Work on the Website between November 29, 2010 and January 6, 2011.  Merely arguing that because Hoehn replicated the entirety of the Work the market for the Work was diminished is not sufficient to show harm.  Therefore, Righthaven has not presented evidence raising a genuine issue of material fact that the fourth factor favors a finding of fair use.

There is no genuine issue of material fact that the above factors favor a finding of fair use.  Of the four factors, only the fact that Hoehn replicated the entire Work weighs against a finding of fair use.  Hoehn used the Work for a noncommercial and nonprofit use that was different from the original use.  The copyrighted Work was an informational work with only some creative aspects, and the Work was used for an informational purpose.  Righthaven did not present any evidence that the market for the Work was harmed by Hoehn's noncommercial use for the 40 days it appeared on the Website.  Accordingly, there is no genuine issue of material fact that Hoehn's use of the Work was fair and summary judgment is appropriate.

**IV.    CONCLUSION**

        IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. #16) and Defendant's Motion for Summary Judgment (Doc. #8) are hereby GRANTED, and Plaintiff's Complaint is hereby DISMISSED.

DATED: June 20, 2011.


                                                  _____

                                                  PHILIP M. PRO
                                    United States District Judge