Marc J. Randazza (Admitted *Pro Hac Vice*)
J. Malcolm DeVoy IV (Nevada Bar No. 11950)
RANDAZZA LEGAL GROUP
mjr@Randazza.com
jmd@Randazza.com
7001 W. Charleston Boulevard, # 1043
Las Vegas, NV 89117
Telephone: 888-667-1113
Facsimile: 305-437-7662
www.Randazza.com

Attorneys for Defendant,
*Wayne Hoehn*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited liability company,<br><br>                    Plaintiff,<br><br>          vs.<br><br>WAYNE HOEHN, an individual,<br><br>                    Defendant. | Case No. 2:11-cv-00050<br><br>**MEMORANDUM OF LAW AND POINTS OF AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

### MEMORANDUM OF LAW AND POINTS OF AUTHORITIES IN SUPPORT OF DEFENDANT'S COUNSEL'S MOTION FOR ATTORNEYS' FEES AND COSTS

Randazza Legal Group (hereinafter, collectively, the "Firm") and attorneys Marc J. Randazza (hereinafter, "Randazza") and J. Malcolm DeVoy IV (hereinafter, "DeVoy"), retained for Defendant Wayne Hoehn's (hereinafter, "Hoehn['s]," or the "Defendant['s]") representation in the above-captioned matter, hereby file this memorandum of law and points of authorities in support of its motion for attorney's fees against Righthaven LLC (hereinafter, "Righthaven"), pursuant to Fed. R. Civ. P. 54, 17 U.S.C. § 505, the Court's June 20, 2011 Order (Doc. # 28) dismissing Righthaven's action against Hoehn on two bases – Righthaven's lack of subject matter jurisdiction and Hoehn's fair use of the copyrighted work – and the clerk's June 20, 2011 entry of judgment in Hoehn's favor (Doc. # 30).

//

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 1 -

## I. Introduction

On September 11, 1969, Mr. Hoehn was inducted into the United States Army in Saint Louis, Missouri. On that day, he raised his hand and swore to support and defend the Constitution of the United States against all enemies, foreign and domestic. Hoehn upheld that oath through his combat tour in Vietnam with Reconnaissance Company E 2/12, 12th Cavalry Regiment, and was heavily decorated for his service.

Thirty-two years later, Hoehn found himself embroiled in this lawsuit. For exercising his First Amendment rights, he was hit with one of the hundreds of infamous Righthaven lawsuits.[1] When he was served with the Complaint, Hoehn was confident that he was in the right. However, like hundreds of other Righthaven victims, Hoehn contemplated his options upon being sued. Should he cave in and write Righthaven a check, or should he risk his savings to stand up for what he knew was right? Hoehn recalled his oath, and considered the fact that so many others had been sued, and made payments, for what clearly was fair use. Hoehn knew that he could not live up to his oath if he gave up without a fight. Hoehn stood up for fair use – for free speech – and he prevailed.

At this point, the Court must consider whether to grant Hoehn his attorneys' fees as a "prevailing party," under 17 U.S.C. § 505. If the Court fails to do so, a terrible injustice will be done, and the moral of Mr. Hoehn's story will be that standing up for what is right will bankrupt you – so better to give your money to any bully with a summons in hand. The fact is, when Mr. Hoehn stood up for fair use, he stood up for all of us.[2] His contribution to the public good should not be met with indifference.

---

[1] At the time he was served with the suit, the issue of Righthaven's ownership of the copyrights at issue was not yet in play, as Righthaven managed to keep its arrangement a secret until it was revealed by the Electronic Frontier Foundations' efforts in *Righthaven LLC v. Democratic Underground LLC*, Case No. 2:10-cv-01356, *2011 WL 2378186* at *1 (D. Nev. June 14, 2011).

[2] Fair use is valuable when counterbalancing the potential free speech costs of an unchecked copyright regime. However, if fair use were to be weakened, not only would free speech suffer, but the U.S. economy at large would find itself weakened. *See* Computer and Communications Industry Association, Fair Use Economy Represents One-Sixth of U.S. GDP (September 12, 2007), *available at* http://web.archive.org/web/20090221063526/http://www.ccianet.org/artmanager/publish/news/First-Ever_Economic_Study_Calculates_Dollar_Value_of.shtml (*last accessed* July 4, 2011).

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

The Copyright Clause exists to grant Congress the power to reward authors for their contributions to the collective culture. And they are rewarded handsomely. The Copyright Act is virtually a strict-liability statute. Authors maintain their rights not only throughout their lifetime, but now their heirs enjoy those rights 70 years after the author's death. The Copyright Act stands in direct tension with the First Amendment, and the only thing that society asks of authors in return is found in Section 107 of the Copyright Act – fair use.[3]

"From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 575 (1994). "[I]n truth, in literature, in science and in art, there are, and can be, few, if any, things, which in an abstract sense, are strictly new and original throughout. Every book in literature, science and art, borrows, and must necessarily borrow, and use much which was well known and used before." *Id*. (internal quotations omitted). Fair use "permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Id*. at 577, quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990). The great importance of fair use, for expression and discovery, is obvious to the U.S. Supreme Court and, indeed, everyone – except Righthaven.

Free speech would not mean much without fair use. When we criticize, comment, and critique, we use our free speech rights just as they were designed for us by the Founders. Sharing the news of the day, debating social issues, fertilizing the political discourse by using the works of journalists and editorial authors alike – these are all free speech values that fair use protects for us. However, in the Righthaven cases filed in this District, Righthaven has acted as if fair use is nonexistent. Righthaven sued the defendants in *Righthaven LLC v. Realty One Group, Incorporated* for using eight sentences in a 30-sentence article while still giving

---

[3] Although fair use is codified at 17 U.S.C. § 107, the concept is as old as copyright itself. The Chancery Court of England recognized "fair abridgment" as a doctrine in *Gyles v. Wilcox*, 26 ER 489 (1740). In that case, the court noted that the Statute of Anne was not enacted to provide a publishing monopoly, but rather to promote learning and the public good. The spirit of the Statute of Anne is enshrined in our own Copyright Clause, where the authors of the Constitution chose to explicitly state its intent: "*To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.*" US CONST. ART. I, § 8, CL. 8.

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

attribution to the source. 38 Med. L. Rptr. 2441 (D. Nev. 2010).  Righthaven then lost against the Center for Intercultural Organizing, as the court in that case held that the transformative nature of the use, the work's informative character, and Righthaven's complete dearth of economic harm arising from the copyright's "infringement," militated for finding fair use. *Righthaven LLC v. Ctr. for Intercultural Organizing*, Case No. 2:10-cv-01322 (Doc. # 38) (D. Nev. Apr. 22, 2011).

In its *coup de grace*, Righthaven sued Eriq Gardner, a journalist, for displaying an exhibit from one of Righthaven's own lawsuits on his blog.[4]  This pattern of conduct evinces Righthaven's total disregard for even the notion of fair use, and that many of the republications it targets are not infringements at all.  Instead, Righthaven was going to continue its campaign terrorizing people into making payments to it, and if they wanted to raise fair use as a defense, it would cost them dearly – as it has cost Mr. Hoehn.  This cost should be shifted to Righthaven, as provided for by § 505 of the Copyright Act.

Mr. Hoehn's courage was not without cost, but he believed that if he did what was right – if he held true to uphold and defend the Constitution, that the rule of law he was fighting for would not let him down.  He knew that recovering fees in this case would be a long shot.  Despite the fact that the Supreme Court has held that prevailing party fees in Copyright Cases can be awarded to Defendants as well as Plaintiffs, only the Seventh Circuit has adopted a strict "loser pays" regime. *See Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005); *Assessment Technologies of Wisconsin, LLC v. WIREdata, Inc.*, 361 F.3d 434 (7th Cir. 2004).  However, Courts in the Ninth Circuit apply a nuanced approach – granting fees when it serves a public interest. *Love v. Mail on Sunday*, Case No. CV-05-7798, *2007 U.S. Dist. LEXIS 97061* at * 16-18 (C.D. Cal. Sept. 7, 2007).  In this case, this is precisely what is before the Court.

//
//

---

[4] Nate Anderson, *Copyright Troll Righthaven's Epic Blunder: A Lawsuit Targeting Ars*, Ars Technica (Mar. 29, 2011), http://arstechnica.com/tech-policy/news/2011/03/copyright-troll-righthavens-epic-blunder-a-lawsuit-targeting-ars.ars (last accessed July 3, 2011) (noting that government works are exempt from copyright protection).

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

Section 505's plain language provides for the prevailing party to be awarded fees in a copyright case. However, the nuanced approach in this circuit screams out for Mr. Hoehn to be awarded his fees. Not only did Righthaven not prevail, Hoehn's victory rested upon an important free speech issue, which other Defendants should be incentivized to raise, lest all of us find fair use weakened. Furthermore, it was later revealed that Righthaven simply did not have the right to sue – and this Court's colleagues have found that Righthaven has engaged in a shocking amount of bad faith behavior.[5] If ever there were a prevailing defendant who deserved to be compensated with a fee award, it is Mr. Hoehn; similarly, if ever there were a losing Plaintiff who deserved to pay a fee award, it is Righthaven.

**II. Facts**

On January 11, 2011, Righthaven filed its complaint against Wayne Hoehn (Doc. # 1). On February 4, 2011, Hoehn filed an Answer (Doc. # 7) and one week later filed his Motion for Summary Judgment on the grounds that his use of the article was a non-infringing fair use (Doc. # 8). Both parties further briefed this issue, culminating in a hearing on May 3, 2011. (Docs. # 13-15, 19.) In the interim, facts revealed in *Righthaven LLC v. Democratic Underground LLC*, Case No. 2:10-cv-1356, namely Righthaven's Strategic Alliance Agreement ("SAA") with Stephens Media, led Hoehn to believe Righthaven did not have standing to pursue its lawsuit against him. Consequently, Hoehn filed a Motion to Dismiss based on Federal Rule of Civil Procedure 12(b)(1) on April 17, 2011 (Doc. # 16). The parties further briefed this issue before receiving this Court's Order (*See* Docs. # 23-26).

On June 20, 2011, the Court issued an Order dismissing Righthaven's case against Hoehn (Doc. # 28). Within the Order, the Court found that Righthaven did not have standing to sue Hoehn, both under the SAA and its May 9, 2011 "Clarification" and, additionally, Hoehn's use of the article was a non-infringing fair use under 17 U.S.C. § 107. (*Id*.) Since the hearing, Randazza and DeVoy met and conferred with Righthaven in an effort to recover attorney's fees from Righthaven through negotiations, rather than motion practice. (Aff. of J. Malcolm DeVoy

---

[5] *See Democratic Underground, 2011 WL 2378186* at *1.

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

¶¶ 13-16.) Righthaven demurred on this issue (*id*. ¶¶ 17-18). As Fed. R. Civ. P. and Local Rule 54-16 require a motion for attorney's fees to be made within 14 days of the case's disposition,[6] the fruitlessness of negotiations compels the Firm to file its Motion, and its attached Memorandum of Law and related exhibits, in order to recoup Hoehn's legal fees in this matter.

### III. Legal Standard for Attorney's Fees

Federal Rule of Civil Procedure 54(d) permits a prevailing party to recover the costs entailed with representation as well as attorney's fees; the Court retains discretion over what a "reasonable" attorney's fee is. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (articulating the lodestar standard of taking the number of hours reasonably expended on a case and multiplying it by a reasonable hourly rate); *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1174 (D. Nev. 1999) (applying the lodestar factors to determine an appropriate attorney's fee award). Pursuant to 17 U.S.C. § 505, a prevailing party is also entitled to receive attorney's fees and costs. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614-15 (9th Cir. 2010); *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994). In these cases, a "prevailing" party is defined as the party to obtain "a material alteration of the legal relationship of the parties." *Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 604 (2001).

While a Court's award of fees is discretionary under 17 U.S.C. § 505, there are several factors a Court may consider when determining whether to award attorney's fees. *Fogerty*, 510 U.S. at 534 n. 4. These factors include: 1) the degree of success obtained; 2) frivolousness of the plaintiff's case; 3) motivation; 4) the objective unreasonableness of the losing party's factual and legal arguments; and 5) the need, in particular circumstances, to advance considerations of compensation and deterrence. *Id*. Other courts have held that it is "peculiarly important" that "*defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them*," id. at 527, making an award of fees in cases such as this one – where the Plaintiff did not own the copyrights underlying the suit, and Fair Use principles were

---

[6] The 14th day after June 20 is July 4, a federal holiday. As such, Fed. R. Civ. P. 6(a)(3)(A) allows the filing of this Motion the next day the Clerk's office is available to the public – July 5, 2011.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 6 -

defended – particularly appropriate. *Mail on Sunday*, 2007 U.S. Dist. LEXIS 97061 at * 17 (emphasis added).

**IV. Hoehn is Entitled to Attorney's Fees from Righthaven.**

Judge Pro's June 20 Order (Doc. # 28) is significant not only for ending this case, but in its ramifications for both free speech and Righthaven's ongoing litigation. Consistent with Judge Pro's order and the clerk's entry of judgment (Docs. # 28, 30), Fed. R. Civ. P. 54(d) and 17 U.S.C. § 505 (allowing a prevailing party to recover attorney's fees and costs in copyright matters) allow Hoehn to recover his legal fees in this action.

**A. The Ninth Circuit Allows Counsel to Recover Attorney's Fees and Costs.**

The United States Court of Appeals for the Ninth Circuit (hereinafter, the "Ninth Circuit") has repeatedly held that prevailing parties in copyright cases are entitled to awards of attorney's fees under 17 U.S.C. § 505. *See Associated Newspapers*, 611 F.3d at 614-15 (9th Cir. 2010); *Jackson*, 25 F.3d at 890. Among the factors considered set forth for consideration in fee awards by *Fogerty*, 510 U.S. at 534 n. 4, prevailing party fees are particularly appropriate when the underlying lawsuit is frivolous and meritless, with a substantial need for the losing party to be deterred. *Mail on Sunday*, 2007 U.S. Dist. LEXIS 97061 at * 17. A court's award of attorney's fees is important in promoting the enforcement of fee-shifting statutes. *Curran v. Dept. of Treasury*, 805 F.2d 1406, 1408 (9th Cir. 1986).

Within this framework, Hoehn has a clear legal entitlement to fees, especially based on the information set forth in this Motion and Attorney DeVoy's accompanying affidavit. The law concerning such awards, as established by the Supreme Court and Ninth Circuit, supports granting such an award for the fees incurred by Hoehn in this case. Righthaven's case against Hoehn was dismissed and judgment entered in the Defendant's favor (Docs. # 28, 30), making Hoehn's position a success.

//
//
//

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 7 -

**B. Hoehn is Entitled to Attorney's Fees For the Full Scope of the Firm's Representation.**

Hoehn seeks to recover fees based on the victories he has experienced in this litigation, which included a successful Motion for Summary Judgment on fair use grounds (Doc. # 8), a successful Motion to Dismiss for lack of subject matter jurisdiction (Doc. # 16), and now this Motion seeking attorney's fees. To date, Hoehn is one of only a few defendants targeted by Righthaven with the courage to properly raise the issue of fair use, despite the fact that it seems that the majority of the defendants could have raised this argument. Also, Hoehn was one of the first Righthaven defendants to move for dismissal based on Righthaven's lack of subject matter jurisdiction. This Court's analysis of Righthaven's May 9, 2011 "Clarification" of its SAA with Stephens Media has been a guiding force on the issue of Righthaven's standing within this District.[7]

Additionally, the Firm's time spent pursuing an award of attorney's fees is properly included in the Court's award of fees and costs. The Ninth Circuit has held that the attorney time spent moving for fees and applying for a fee award is proper to include as part of the Court's final attorney's fee award. *Holland v. Roeser*, 37 F.3d 501 (9th Cir. 1994); *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (holding that time spent preparing a fee application is compensable within a reasonable attorney's fee). While many decisions concerning attorney's fees awards at the district and appellate level arise from federal civil rights statutes, as opposed to the Copyright Act and 17 U.S.C. § 505 in particular, the Supreme Court has held that what constitutes a "reasonable" fee award under *any* federal fee-shifting statute applies with equal force to *all* federal fee-shifting statutes. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) (holding that language about what is a "reasonable" fee award in case law applies equally to all federal fee-shifting statutes). Thus, this precedent concerning the reasonableness of including the time spent moving and applying for attorney's fees under 42 U.S.C. § 1988, or a similar

---

[7] *See* (Doc. # 31); *Righthaven LLC v. Coker*, Case No. 2:10-cv-02245 (Doc. # 14) (D. Nev. June 28, 2011) (staying 10 cases in which Righthaven is plaintiff and ordering Righthaven to show cause why they should not be dismissed); *Righthaven LLC v. Pahrump Life et al.*, Case No. 2:10-cv-01575 (Doc. # 50) (D. Nev. June 27, 2011); *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01343 (Doc. # 72) (D. Nev. June 22, 2011).

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

federal fee-shifting statute, applies with equal force to 17 U.S.C. § 505. As such, the time spent by the Firm in preparing this Motion should be included in the Court's award of attorney's fees and costs.

### 1. The *Fogerty* Factors Support An Award of Attorney's Fees and Costs in This Case.

In this case, Hoehn did not merely prevail over Righthaven, but he did so on every argument he raised. (Doc. # 28.) In granting Hoehn's Motion for Summary Judgment (Doc. # 8), filed in February before the SAA was made public, and argued before briefing on Righthaven's standing was complete (Docs. # 15, 19), the Court found that Hoehn's use of the *Las Vegas Review-Journal* Article "Public Employee Pensions, We Can't Afford Them," was a non-infringing fair use under 17 U.S.C. § 107. On the subsequently raised issue of standing, the Court agreed with Hoehn's Motion to Dismiss (Doc. # 16) and found that Righthaven did not have standing under the original SAA, nor under its May 9 "Clarification." (Doc. # 28 at 6:11-10:25.) As such, each and every one of the fee award factors identified for consideration in *Fogerty* weighed in Hoehn's favor.[8] 510 U.S. at 534 n. 4. The above-stated facts demonstrate that the degree of success obtained in this case weighs substantially in Hoehn's favor, inuring to the award of attorney's fees.

The second two factors for consideration, the frivolity of the case and Righthaven's motivation, *id*, are closely related. It is hardly a secret that this Court's ruling is Righthaven's third consecutive loss on fair use grounds. *See Ctr. for Intercultural Organizing*, Case No. 2:10-cv-01322 (Doc. # 38); *Realty One Group, Inc.*, 38 Med. L. Rptr. at 2441. To date, Righthaven has never prevailed when a defendant has properly raised the fair use defense. At this point, one would hope Righthaven would have received the message that before filing suit against a defendant, the issue of fair use should at least be contemplated. *C.f. Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150 (N.D. Cal. 2008). Furthermore, Righthaven's lack of economic

---

[8] These factors are: 1) the degree of success obtained; 2) frivolousness; 3) motivation; 4) the objective unreasonableness of the losing party's factual and legal arguments; and 5) the need, in particular circumstances, to advance considerations of compensation and deterrence.

harm suffered from others' uses strongly weighs against courts finding infringement occurred in a fair use analysis, if it doesn't preclude it entirely.

As Auric Goldfinger once said: "Once is happenstance. Twice is coincidence. Three times is enemy action."[9] Righthaven's consistent losses on fair use grounds do not evince a good faith legal dispute over where the boundaries of fair use lie. Rather, this consistent litigation without respect for prior fair use rulings reveals Righthaven's true motivation: Filing as many lawsuits as possible and, as a matter of probability, waiting for defendants to capitulate and settle. Righthaven's failure to win a single fair use decision demonstrates that its claims are meritless, animated solely by a desire to wrest fast settlements from under-represented defendants. Its lack of standing simply compounds the sin.

As this Court and others within this District[10] have observed, Righthaven lacked standing to sue on the copyrights it ostensibly obtained from Stephens Media and therefore did not have standing to bring its lawsuits. Righthaven executed the SAA on January 18, 2010 and brought more than 200 lawsuits based on Stephens Media copyrights in this District since then – presumably all of which were without standing. This is nothing short of *prima facie* evidence that Righthaven had no rights to enforce, but cloaked itself in the appearance of copyright ownership to file a series of smash-and-grab lawsuits against individuals lacking sophistication in copyright law and usually lacking the resources to properly fight. As Righthaven did not put its allegedly acquired copyrights to any productive use outside of litigation, both in practice and under the SAA (*see* Doc. # 28 at 6-10), Righthaven did not suffer any market harm from the article's alleged infringement. (*Id*. at 15:20-16:26.) Not only did Righthaven not acquire rights to the copyrighted work, it would not have suffered any harm if it had, making the frivolity of this action patent, and laying bare its base motivation: extorting a nuisance settlement from Hoehn under threat of $150,000 in statutory damages.[11]

---

[9] ThinkExist.com, Auric Goldfinger Quotes, http://thinkexist.com/quotation/once_is_happenstance-twice_is_coincidence-three/220863.html (*last accessed* July 3, 2011) (originating from the 1964 film *Goldfinger*).
[10] *See Righthaven LLC v. Democratic Underground LLC*, 2011 WL 2378186 at * 1.
[11] Under 17 U.S.C. § 504(c)(2), and sought in Righthaven's Complaint (Doc. # 1), maximum damages are $150,000.

Randazza Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

1   This analysis relates to the unreasonableness of Righthaven's factual and legal arguments. The reasonableness of Righthaven's arguments, or lack thereof, is obvious based on their results: Righthaven has not won a single fair use dispute. *See Ctr. for Intercultural Organizing*, Case No. 2:10-cv-01322 (Doc. # 38); *Realty One Group, Inc.*, 38 Med. L. Rptr. at 2441.  In fact, this Court's Order (Doc. # 28) is the second consecutive decision to find that the full republication of an article was a non-infringing fair use under 17 U.S.C. § 107. *Ctr. for Intercultural Organizing*, Case No. 2:10-cv-01322 (Doc. # 38).  Despite these victories for defendants, the chilling effects of Righthaven's litigation campaign have been felt by other non-profit entities.[12]  The factual and legal bases of Righthaven's arguments are compromised.

Righthaven also did not have any right to bring its lawsuit against Hoehn. (Doc. # 28 at 2-10.)  Yet, from January 2011 until June 2011, Hoehn had to spend thousands of dollars in legal fees – diverting attention away from his business – to assert his rights and contend with Righthaven's mendacious litigation.  If Righthaven had been forthcoming about the nature of its SAA and relationship with Stephens Media, this lawsuit would never have made it through the courthouse doors.  Rather than defend its SAA, Righthaven attempted to "clarify" it on May 9, 2011 (*id.*) further evincing the hole in which it had dug itself.

Because Righthaven's SAA was indefensible, it attempted to misdirect the Court by changing its wording with a "Clarification." (Docs. # 23-25.) This "Clarification," however, failed to cure the illusory transfer of copyright rights that belied Righthaven's standing in the first place. (Doc. # 28 at 8-10.)  Yet, within its Complaint, Righthaven misrepresented that it was the sole owner of the Stephens Media copyright at issue (Doc. # 1 ¶¶ 9, 22, 29-32).  These statements were false under the SAA, and unaffected by the "Clarification" (Doc. # 28 at 2-10). In fact, these misrepresentations, among others, are the basis for potential sanctions against Righthaven within this District. *Democratic Underground*, 2011 WL 2378186 at *1 (finding Righthaven did not acquire sufficient copyright rights to bring suit under the SAA, and ordering

---

[12] Steve Green, *Righthaven "Chilling Effect" Prompts Nonprofit to Adjust*, Vegas Inc (June 20, 2011), *available at* http://www.vegasinc.com/news/2011/jun/20/righthaven-chilling-effect-prompts-nonprofit-adjus/ (*last accessed* July 2, 2011).

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

Righthaven to show cause why it should not be sanctioned for "multiple inaccurate and likely dishonest statements to the Court"). As Righthaven lacked requisite copyright rights to bring and sustain this litigation (*id*.; Doc. # 28 at 2-10) its initiation and maintenance of this lawsuit against Hoehn is and was baseless.

Finally, the need for deterrence in this case and those like it is acute. Righthaven has consistently lost on both fair use and standing grounds, yet continues its litigation in this District and across the country, notably in Colorado and South Carolina. To date, Righthaven has filed 275 lawsuits against various entities – the vast majority of which are individuals – accused of copyright infringement.[13] When actually litigated, though, the substantive results of these cases have been overwhelmingly and consistently unfavorable to Righthaven. Nevertheless, defendants continue to write checks to Righthaven rather than asserting their rights, presumably because no court has yet shown Righthaven that there is a downside to its tactics, and no court has yet shown these defendants that they may recover their fees for defending their just causes.

Not all of the afflicted individuals are able to effectively assert their considerable legal rights against Righthaven. Under the color of copyright enforcement, Righthaven punishes people from all walks of life for exercising their free speech rights by posting on message boards or writing blogs. Once Righthaven traps people like Hoehn in its web, they are faced with two difficult options: A costly settlement, or a more costly vindication of their free speech rights. If this court denies Mr. Hoehn's plea for fees, it will be effectively sanctioning Righthaven's tactics, and it will turn the chilling effect of Righthaven's litigation into a veritable free expression ice age.

To the extent the Righthaven model is still economically viable in light of its repeated fair use losses, and its lack of standing to even sue on Stephens Media's copyrights, its revenues are derived from defendants' ignorance of, and lack of access to, the growing body of precedent needed to thwart the operation. Even legal aid outfits, which specialize in making justice accessible to all, are unable to contend with an operation as aggressive as Righthaven when

---

[13] Righthaven Lawsuits, http://www.righthavenlawsuits.com (*last accessed* July 2, 2011).

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

dealing with complex issues of fair use and far rarer issues of standing in copyright cases. Righthaven knows this, and has incorporated it into its business model. There is nary an excuse for an operation whose CEO has gone on the record saying that it has hired the "top lawyers" in the country, including Harvard Law professors,[14] to be so deliberately blind to its defendants' strong fair use and standing arguments, especially in light of prior rulings within this District. Mere ignorance of fair use is not the culprit here – greed is.

Righthaven's winless record on fair use decisions and demonstrated lack of standing to even bring these cases invite a firm rebuke from the Court to mitigate Righthaven's already significant chilling effects.[15] With sufficient deterrence, Righthaven will not baselessly sue the innocent, burdening them with improper settlements or even more onerous legal bills. When Righthaven sues, everyone loses.

In short, Righthaven's ham-fisted business model is victimizing hundreds of people across the country – Hoehn among them – to the tune of thousands of dollars each. Most defendants presumably pay out of fear – fear that the consequences of defeat (no matter how remote) were too dire to risk, or worse yet, that they simply could not effectively afford to stand up for their fair use rights. At this point, this Court's decision will have far-reaching implications for those who are bullied by Righthaven, when they have a fair use defense or when fraud needs to be uncovered. Righthaven has done wrong, there is a fee shifting statute that applies, and Mr. Hoehn has done right.

Righthaven has failed, repeatedly, to consider that the works it sues over may be non-infringing fair uses of copyrighted material. In fact, in light of such clear disregard for non-infringing activity, if Righthaven were dealing in take-down notices required by the Digital Millennium Copyright Act ("DMCA") – rather than surprise lawsuits – it could be liable to its victims for damages *and attorney's fees* under 17 U.S.C. § 512(f). *Lenz*, 572 F. Supp. 2d at 11504-56. In *Lenz*, the court held that § 512(f) was designed to stop abuse of the DMCA's

---

[14] Mike Masnick, *Righthaven CEO: Judges Are Really Just Giving Guidance To Righthaven Competitors*, Techdirt (June 24, 2011), http://www.techdirt.com/articles/20110624/02490614837/righthaven-ceo-judges-are-really-just-giving-guidance-to-righthaven-competitors.shtml (*last accessed* July 3, 2011).
[15] *See* Green, *supra* n. 12.

- 13 -

takedown notice provisions. *Id*. The court further noted, with approval, that the statute would require owners to make a good faith consideration as to whether or not the take-down notice targeted a constitutionally protected fair use. *Id*.

However, Righthaven does not send DMCA take-down notices – presumably because it knows that if it does, § 512(f) and its fee shifting provision await. Inversely, if Righthaven simply brings a lawsuit, the odds were that fees would not be awarded to a prevailing defendant. This Court must send a message that copyright plaintiffs must accord greater (or at least some) deference to fair use – and failing that, they should not sue on fraudulent assignments and clarifications designed to evade the mandates of the Copyright Act. If deterrence is not appropriate here, in the case of a serial litigant that lacked standing to bring its cases in the first place, it is hard to conceive of a scenario where it would be justified.

### 2. This Litigation Furthers Understanding of the Copyright Act, Making this Court's Award of Fees Particularly Appropriate.

While Righthaven's actions warrant an award of fees to Hoehn as punishment, precedent reveals positive reasons for courts to award attorney's fees. In *Mail on Sunday*, 2007 U.S. Dist. LEXIS 97061 at *16-17, the Central District of California awarded fees to a defendant when, as in this case, the Plaintiff was not the actual owner of the copyright rights at issue. In addition to holding that the *Fogerty* factors weighed in favor of punishing the plaintiff, the court found that the defendant's advancement and litigation of meritorious defenses served the Copyright Act's purpose by determining the boundaries of liability. *Id*. at *17-18. Quoting *Fogerty* at length, the *Mail on Sunday* court explained its reasoning:

> [T]he successful defense of the action furthered the purposes of the Copyright Act. "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." citations omitted). "**Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright**

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

**defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement**."
*2007 U.S. Dist. LEXIS 97061* at *17-18, quoting *Fogerty*, 510 U.S. at 527 (emphasis added).

The parallels between *Mail on Sunday* and the instant case are striking.  As in *Mail on Sunday*, Hoehn has successfully exposed the flaws in Righthaven's licensing scheme and revealed it not to have standing in this case and others like it. To the extent Righthaven asserts that its copyright ownership is distinguishable from the assignment of a bare right to sue, forbidden in *Silvers v. Sony Pictures Entertainment, Incorporated*, 402 F. 3d 881 (9th Cir. 2005), Hoehn has clarified the law that Righthaven's structure is impermissible.  In addition, Hoehn's litigation has led the Court to shed light on how copyright assignments are viewed, looking to the substance of the parties' relationship rather than the mere representation of what rights they claim to assign. (Doc. # 28 at 8:20-10:25.)

The Court's Order does not stop at the issue of subject matter jurisdiction, though.  In fact, given that this statutory question was the first issue briefed and the essential lifeblood of the case, it was proper for the court to render its opinion on it. *See Begay v. Public Svc. Co. of N.M.*, 710 F. Supp. 2d 1161, 1190 (D.N.M. 2010) (holding that judicial restraint – a court's refusal to decide a question before doing so is necessary – applies only to questions of constitutional law); *see also Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988).  Hoehn's use of the article was found to be a non-infringing fair use, with particular analysis given to the economic hardship, if any, Righthaven would have incurred if it had standing.  As an alternate basis for dismissal, the Court's Order (*id*. at 11-16) enhances the knowledge of the bar, internet users, and the general public as to what constitutes fair use under the Copyright Act.  Because Hoehn's use of this defense was successful in demarcating the meaning and application of 17 U.S.C. § 107's four fair use factors, fees should be awarded in recognition of the contribution Hoehn's litigation has made to the legal system's understanding of copyright law. *Mail on Sunday*, 2007 U.S. Dist. LEXIS 97061 at *17-18.  Hoehn's successful litigation has also been a boon for this District, contributing new precedent on the issue of fair use and aiding the District

Randazza Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 15 -

in developing robust case law on copyright issues. Poorly funded defendants should not be afraid to advance such goals.

### C. The Fees Sought by Hoehn are Reasonable, in Light of this Case's Complexity.

When exercising their authority to grant attorney's fees, the courts have held that such awards must be "reasonable." *Fischer v. SJB-P.D. Inc.*, 214 F.3d at 1119; *Ilick v. Miller*, 68 F. Supp. 2d at 1174. In the Ninth Circuit, this standard is met using the lodestar test, which multiplies the hours reasonably spent on the case by a reasonable hourly fee. *Fischer*, 214 F.3d at 1119; *Ilick*, 68 F. Supp 2d at 1174.

Under the lodestar test, this Court must determine what hours were reasonably spent working on the case. In order to determine the reasonableness of hours expended, courts look to two primary factors: The adequacy of documentation for time spent, and the results obtained by counsel. *Corbett v. Wild W. Enterprises, Inc.*, 713 F. Supp. 1360, 1365 (D. Nev. 1989); *see also Gorelangton v. Reno*, 638 F. Supp. 1426 (D. Nev. 1986). Based on the time entries and explanations of tasks accomplished within that time found in Exhibit A, all of the time the Firm spent working on this matter is reasonably expended. Moreover, by obtaining a dismissal for Hoehn on both subject matter jurisdiction and fair use groups, the Firm obtained a favorable disposition of the case. The time expended to prepare Hoehn's substantive motions (Docs. # 8, 16) and complete this Motion seeking fees is, similarly, necessary to comply with the Local Rules and ensure thorough, competent advocacy. The time expended on the instant Motion, like those before it, is supported by detailed time entries (Exh. A).

The second lodestar factor courts consider is the reasonableness of the hourly rate by which the hours expended on the case are multiplied. *Corbett*, 713 F. Supp at 1365. Here, the locality where the case is heard governs the reasonableness of attorneys' rates. *Maldonado v. Lehman*, 811 F.2d 1341, 1342 (9th Cir. 1987); *Corbett*, 713 F. Supp at 1365. In this case, the attorneys' customary market rates of $425 (Randazza) and $275 (DeVoy) per hour is reasonable within Las Vegas. (Exh. A; DeVoy Aff. ¶¶ 29-30, 38.) This determination is based on Randazza's and DeVoy's credentials, expertise in intellectual property matters, and depth of

Randazza Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

experience in cases defending against Righthaven. (*Id.* ¶¶ 2-4.) Even before Hoehn retained the Firm for his case, Randazza Legal Group and Marc Randazza were nationally regarded as among the most prominent and active attorneys in Righthaven cases.[16] (*Id.*) In light of the Firm's accomplishments in this representation and other copyright matters, as well as the increasingly deep substantive issues arising in Righthaven cases, the Firm's hourly rates are not only customary, but also are reasonable and supported within the Las Vegas legal economy. (*See* DeVoy Aff. ¶ 38.) As such, the Court's award of attorney's fees is properly calculated based on these rates.

**Conclusion**

In light of the Court's June 20, 2011 Order and entry of judgment (Docs. # 28, 30), Fed. R. Civ. P. 54 and 17 U.S.C. § 505, Hoehn is entitled to an award of attorney's fees from Righthaven. Supreme Court and Ninth Circuit precedent support such an award of attorney's fees. All of the time spent by the Firm in representing Hoehn – including the time invested in preparing this Motion and supporting documents – is reasonable, and should be reflected in an award of attorney's fees to Hoehn.

Dated July 5, 2011                                                       Respectfully Submitted,

                                                                         RANDAZZA LEGAL GROUP

                                                                         _____
                                                                         Marc J. Randazza
                                                                         J. Malcolm DeVoy IV

                                                                         Attorneys for Defendant,
                                                                         *Wayne Hoehn*

---

[16] *See, e.g.,* Kate Silver, *Fighting the Copyright War*, Vegas Seven (July 21, 2010), *available at* http://weeklyseven.com/news/2010/july/22/fighting-copyright-war (*last accessed* July 2, 2011); Wendy Davis, *NORML Settles Copyright Case With Righthaven After Rare Strategic Maneuver*, Online Media Daily (June 8, 2010), *available at* http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=129625 (*last accessed* July 2, 2011); Wendy Davis, *These Go to 11: Righthaven Files Yet More Copyright Lawsuits*, Online Media Daily (May 7, 2010), *available at* http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=127775 (*last accessed* July 2, 2011).