Lara Pearson (Nev. Bar No. 7132)
Lara@Rimonlaw.com
RIMON, P.C.
PMB 405, 774 Mays Blvd. # 10
Incline Village, NV 89451
tel.:    775-833-1600
fax:    888-842-4492
rimonlaw.com

Receiver for Righthaven, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited liability company,<br><br>                    Plaintiff,<br><br>          vs.<br><br>WAYNE HOEHN, an individual,<br><br>                    Defendant. | Case No. 2:11-cv-00050<br><br>**DECLARATION OF LARA PEARSON** |

### DECLARATION OF LARA PEARSON

I, Lara Pearson, hereby declare as follows under the penalty of perjury:

1.  My name is Lara Pearson. I am a duly licensed attorney in Nevada and a member of the Nevada bar in good standing. This Declaration is made in support of my Notice of Receiver's Report. If asked to testify, I could testify competently to the matters set forth herein.

2.  On November 14, 2011 Defendant Wayne Hoehn (Hoehn) filed a Motion for Appointment of Receiver and Compelled Assignment of Intellectual Property (the Motion). (Doc. # 62.)

3.  The Motion contained pro forma copyright and trademark assignments. (Doc # 62, Exh. C & D.)

- 1 -

4.   On December 12, 2011, the Court granted the Motion. (Doc. # 66.)

5.   Understanding the motion to be self-executing, I began the domain name transfer process and awaited compliance or communication from Righthaven regarding the trademark and copyright assignments.

6.   I first heard from Righthaven's counsel, Mr. Magano on December 21, 2011. Mr. Magano's December 21, 2011 letter states in pertinent part:

> Righthaven intends to comply with the district court's Order appointing [me] receiver . . . and asks that [I] provide it with some guidance as to how to proceed given my appointment as receiver . . . and look[s] forward to my guidance as to what actions [I] expect the company to undertake so that it is in full compliance with the district court's December 12, 2011 order.

Attached hereto as Exhibit 1 is a true and correct copy of Mr. Magano's December 21, 2011 correspondence to me.

7.   On December 22, 2011, I responded to Mr. Magano's December 21, 2011 correspondence, including a pro forma trademark assignment therewith. I also informed Mr. Magano that I soon would provide him with 278 separate copyright assignments -- one for each of the works Righthaven registered  with the U.S. Copyright Office. Attached hereto as Exhibit 2 is a true and correct copy of my December 22, 2011 correspondence to Mr. Magano.

8.   On December 23, 2011, I re-sent Mr. Magano my December 22, 2011 Correspondence, including the trademark assignment originally included therewith and 278 copyright assignments (combined into a single PDF) requiring only the signature of Righthaven's CEO, a date, and notarization. Attached hereto as Exhibit 3 is a true and correct copy of my December 22, 2011 correspondence to Mr. Magano, including a representative sampling of the copyright assignments.

9.   I have tried to work with Righthaven to ensure its compliance with the Court's

December 12, 2011 Order.

10.  In addition to e-mailing Mr. Magano on December 22, 2011 and December 23, 2011, I also left two voice mail messages for him at 702.304.0432. My assistant, Anthony Winbush, also left Mr. Magano two voice mail messages on December 23, 2011. Attached hereto as Exhibit 4 are true and correct copies of the December 23, 2011 correspondence from Mr. Winbush to me confirming his attempts to reach Mr. Magano by phone.

11. On December 26, 2011, I sent Mr. Magano and Hoehn's counsel, Mr. Marc Randazza e-mail correspondence to inform them about the auction of the <righthaven.com> Domain Name. Attached hereto as Exhibit 5 is true and correct copy of my December 26, 2011 to Mr. Magano and Mr. Randazza.

12. On December 27, 2011, I sent Mr. Magano follow-up correspondence, which included another copy of my December 23, 2011 letter to him and the form trademark and copyright assignment documents. Attached hereto as Exhibit 6 is true and correct copy of my December 26, 2011 to Mr. Magano (assignments omitted due to length – please reference Exh. 3).

13. My assistant, Anthony Winbush, also left Mr. Magano another voice mail message on December 27, 2011. Attached hereto as Exhibit 7 is a true and correct copy of the December 27, 2011 correspondence from Mr. Winbush to me confirming his attempt to reach Mr. Magano by phone.

14.     Further to my December 26, 2011 correspondence to Mr. Magano and Mr. Randazza regarding the auction of <righthaven.com> Domain Name on Snapnames (See Exh 5), Ms. Van Tilborg at Snapnames offered to conduct a call with all interested parties, which was held at 9:00 a.m. PST on Tuesday, December 27, 2011. Attached hereto as Exhibit 8 is true and

correct copy of the December 27, 2011 e-mail from Ms. Van Tilborg at Snapnames confirming the call  regarding the auction. Mr. Mangano elected not to participate in this call.

15.     My assistant, Anthony Winbush, left Mr. Magano another voice mail message on December 28, 2011. Attached hereto as Exhibit 9 is a true and correct copy of the December 28, 2011 correspondence from Mr. Winbush to me confirming his attempt to reach Mr. Magano by phone.

16.     I sent follow-up correspondence to Mr. Magano again on December 28, 2011 with additional copies of my December 22, 2011 correspondence (Exh. 2) and the assignment documents (Exh. 3). Attached hereto as Exhibit 10 is a true and correct copy of my December 28, 2011 correspondence to Mr. Magano (assignments omitted due to length – please reference Exh. 3).

17.     I received Mr. Magano's response to my December 22, 2011 letter on December 29, 2011. Attached hereto as Exhibit 11 is a true and correct copy of Mr. Magano's December 29, 2011 correspondence to me.

18.     Mr. Magano's December 29, 2011 letter stated that under Righthaven, LLC's operating agreement, Mr. Gibson could not execute the assignment agreements absent consent from the other limited-liability company member, from whom Mr. Magano had not sought consent until now. (See Exh. 11).

19.     Mr. Magano's December 29, 2011 correspondence also stated that Mr. Gibson cannot execute copyright assignments purporting to transfer assign "any and all copyrights owned," since the district court determined that Righthaven does not own the copyrights to be assigned. (See Exh. 11).

- 4 -

20.     Mr. Magano's December 29, 2011 concludes that its concerns might be mitigated by "the district court's entry of an order assigning the copyrights without requiring the signature of either Mr. Gibson or anyone affiliated with Righthaven," which, "Righthaven would likely not oppose such a request."

21.      I responded to Mr. Magano's December 29, 2011 correspondence on December 30, 2011. Attached hereto as Exhibit 12 is a true and correct copy of my December 30, 2011 response to Mr. Magano's December 29, 2011 correspondence.

22.     My December 30, 2011 response to Mr. Magano requested that he inform me who else needs to execute the copyright and trademark assignments so that I could revise the forms I sent him to include that name. (See Exh. 12.)

23.     My December 30, 2011 response to Mr. Magano also addressed his concern about copyright ownership by informing him that the auction of the copyrights will make Righthaven's questionable ownership therein clear to all potential and actual bidders. This letter also explains that use of the term "any and all" in the assignments refers to whatever rights Righthaven may own, if any. (See Id.)

24.     My December 30, 2011 correspondence also requested the name of the other Righthaven signatory in order to complete for the trademark assignment, along with a list of the tangible assets to be auctioned. (See Id.)

25.     Mr. Magano responded almost immediately to my December 30, 2011 correspondence. Attached hereto as Exhibit 13 is a true and correct copy of Mr. Magano's December 30, 2011 response to my correspondence of the same date.

26.     Mr. Magano's December 30, 2011 correspondence states that the copyrights cannot be assigned because:

> . . . the very real fact that the copyrights are not owned by
> Righthaven, but rather constitute property of the assignor based on
> the ineffective assignment of ownership. Simply put, Righthaven
> cannot assign copyrights that are owned by the assignor for sale to
> a third party through an auction.

(See Exh. 13.)

27.     Mr. Magano also requested to see "any language that [I] propose to include as a disclaimer to potential purchasers of whatever it is [I] intend to auction," which I since provided to him and Mr. Randazza for comment. (See Exh 14.)

28.     As explained to Mr. Magano in my correspondence of December 30, 2011, I believe the December 12, 2011 Order requires Righthaven to transfer whatever rights it owns (even if none) to be auctioned off to pay the judgment against it. (See Exhs. 12, 14.)

29.     Mr. Magano's December 30, 2011 correspondence also incorrectly states that the trademark assignment (provided to him on 12/22/2011, 12/23/2011, 12/27/2011 and 12/28/2011 (See Exhs. 2, 3, 6 & 10)) lacks goodwill when it expressly includes any and all commercial goodwill. (See Exh 2.)

30.      Mr. Magano's December 29, 2011 letter claims that Mr. Gibson cannot execute assignments containing the language, "Mr. Gibson is acting with authority to bind the company," because both limited-liability company members must consent to effectuate such a transaction. However, the redacted version of the Operating Agreement entered into by and between Righthaven, Net Sortie Systems, LLC and SI Content Monitor LLC indicates that while such consent is required to "transfer substantially all of the assets of the Company," upon such consent Mr. Gibson may execute the transfer. (See Exh. 15.)

31.     Mr. Magano states that he has not yet completed the assignments because he does not have consent of Righthaven, LLC member SI Content Monitor, LLC, however he waited until December 29, 2011 to seek consent. (See Exh. 11.)

32.     Righthaven has refused to execute the assignments due to perceived deficiencies that it could have, but failed to correct and has ignored repeated requests for a trademark assignment and an inventory of physical assets without explanation.

33.     I sent Mr. Magano and Mr. Randazza copies of my Notice of Receiver's Report and this Declaration On January 2, 2011 informing them that the Notice would be filed after close of business today if the issues addressed herein were not resolved prior to that time.  A true and correct copy of my January 2, 2011 correspondence is attached hereto as Exhibit 16.

34.     Mr. Magano made no attempt to contact me since I sent the copy of the Notice to him.

35.     The sole piece of Righthaven property that has made it to auction – the <righthaven.com> Domain Name – currently has a bid of $1,900 (bidding increment is at $100) and the auction does not close until 3:15 EST January 6, 2012. (See Exh. 16.)

36.     My obligation as Receiver is to maximize the value of Righthaven's property. Time is of the essence in this matter; given the recent newsworthiness of this matter, the sooner the property is auctioned the greater the value it is likely to receive.

37.     Righthaven has been uncooperative in this endeavor, which is not in its best interest since the value of its property likely will decrease over time, while the judgments against will continue to grow and multiply over time.

38.      Righthaven did not oppose the Motion, yet Mr. Mangano continues to negotiate its merits with me. (See Exh. 1, 11, 13.)

///

///

- 7 -

Subscribed and sworn to on the 3rd day of January, 2012 in Incline Village, Nevada.

By:_____
    Lara Pearson