# Exhibit 15

# EXHIBIT B

LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
lpulgram@fenwick.com
CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice*)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:      (415) 875-2300
Facsimile:      (415) 281-1350

KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone:      (415) 436-9333
Facsimile:      (415) 436-9993

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone:      (702) 457-1001

Attorneys for Defendant and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC, and
Defendant DAVID ALLEN

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>            Plaintiff,<br><br>      v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>            Defendants. | Case No. 10-01356-RLH (GWF)<br><br>**DECLARATION OF LAURENCE F. PULGRAM IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL MEMO ADDRESSING RECENTLY PRODUCED EVIDENCE RELATING TO PENDING MOTIONS** |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>            Counterclaimant,<br><br>      v.<br><br>RIGHTHAVEN LLC, a Nevada limited liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>            Counterdefendants. | |

I, Laurence F. Pulgram, declare as follows:

1.      I am an attorney licensed to practice law in the state of California and a partner at the law firm Fenwick & West, LLP.  I serve as counsel for Defendant and Cross-Complainant Democratic Underground, LLC and Defendant David Allen (hereinafter "Defendants") in this matter.  I have personal knowledge of the facts stated in this declaration, and if called upon to do so, could and would competently testify thereto.

2.      On March 22, 2011, Stephens Media LLC ("Stephens Media") produced a document purporting to be the Operating Agreement of Righthaven LLC ("Righthaven"), entered into by Righthaven, Net Sorties Systems, LLC, and SI Content Monitor LLC.  The Operating Agreement is referred to in Section 2 of the SAA as part of the same "integrated transaction."

3.      Stephens Media originally designated this Operating Agreement as "Confidential Attorneys Eyes Only" under the Stipulated Protective Order in this case.  However, in subsequent discussions with Righthaven and Stephens Media, they agreed to dedesignate for public filing all but a handful of provision in the Operating Agreement.  Attached hereto as **Exhibit 1** is a true and correct copy of the Operating Agreement as produced by Stephens Media, redacted to exclude those provisions that Righthaven and Stephens Media did not agree to dedesignate for public filing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on May 20, 2011, in San Francisco, California.

*/s/ Laurence F. Pulgram*
Laurence F. Pulgram

# EXHIBIT 1

# OPERATING AGREEMENT

## OF

## RIGHT*HAVEN* LLC

## A NEVADA LIMITED-LIABILITY COMPANY

**Confidential**
**Attorneys Eyes only**

SM000095

THE INTERESTS DESCRIBED AND REPRESENTED BY THIS OPERATING AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT" OR ANY APPLICABLE STATE SECURITIES LAWS ("STATE ACTS") AND ARE RESTRICTED SECURITIES AS THAT TERM IS DEFINED IN RULE 144 UNDER THE SECURITIES ACT. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, OR OTHERWISE TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR QUALIFICATION UNDER THE SECURITIES ACT AND APPLICABLE STATE ACTS OR PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT AND APPLICABLE STATE ACTS, THE AVAILABILITY OF WHICH IS TO BE ESTABLISHED TO THE SATISFACTION OF THE COMPANY.

Confidential
Attorneys Eyes only

# TABLE OF CONTENTS

Article 1. DEFINITIONS AND INTERPRETATIONS ................................................. 1
    1.1       Terms. .......................................................................................................... 1
    1.2       Definitions. .................................................................................................. 1

Article 2. FORMATION OF COMPANY .................................................................... 1
    2.1       Formation. .................................................................................................... 1
    2.2       Name. ........................................................................................................... 1
    2.3       Place of Business. ....................................................................................... 2
    2.4       Registered Office and Registered Agent. .................................................. 2
    2.5       Term. ........................................................................................................... 2

Article 3. LEGAL AUTHORITY OF THE BUSINESS OF THE COMPANY &
PURPOSE OF THE COMPANY ................................................................................. 2
    3.1       Scope Of Legal Authority Of The Business Of The Company ................ 2
    3.2       The Company's Focus. ............................................................................... 3

Article 4. NAMES, ADDRESSES AND RESPECTIVE MEMBERSHIP
INTERESTS OF THE MEMBERS ............................................................................. 4
    4.1       Names and Addresses. ................................................................................ 4
    4.2       Membership Interests. ................................................................................ 4

Article 5. RIGHTS AND DUTIES OF MANAGER ................................................... 5
    5.1       Management. ................................................................................................ 5
    5.2       Certain Powers of the Manager. ................................................................ 5
    5.3       Limitations on Authority. ........................................................................... 7
    5.4       Liability for Certain Acts. .......................................................................... 8
    5.5       Bank Accounts. ........................................................................................... 9
    5.6       Indemnity of the Manager, Employees and Other Agents. ..................... 9
    5.7       Resignation. ................................................................................................. 9
    5.8       Removal. ...................................................................................................... 9
    5.9       Vacancies. ................................................................................................. 10
    5.10      Reimbursement, Organization Expenses. ............................................... 11
    5.11      Right to Rely on the Manager. ................................................................ 11

Article 6. APPOINTMENT OF OFFICERS, AUTHORITY AND
COMPENSATION ..................................................................................................... 11
    6.1       Appointment and Termination. ............................................................... 11
    6.2       CEO. .......................................................................................................... 12
    6.3       Authority of the CEO. .............................................................................. 12
    6.4       COO. ......................................................................................................... 14

i

**Confidential**
**Attorneys Eyes only**

SM000097

## ARTICLE 5.
## RIGHTS AND DUTIES OF MANAGER

5.1     <u>Management.</u>

The Business and affairs of the Company shall be managed by the Company's Manager.  Subject to Section 5.8, the Manager of the Company shall be Net Sortie.  Except for situations in which the approval of the Members is expressly required by this Agreement or by non-waivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the Business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts and activities customary or incident to the management of the Business.  The Manager shall have the authority to act on behalf of the Company, and to legally bind the Company, and to delegate to any Officer, in writing, authority to make disbursements out of Company accounts with financial institutions.  Unless authorized to do so by this Agreement or by the Manager, no Officer, employee or other agent of the Company, other than the Manager, shall have any power or authority to bind the Company in any way, to pledge the Company's credit or to render the Company liable pecuniarily for any purpose.  Notwithstanding the foregoing, as provided further in Article 6, the Manager hereby delegates full power and authority to the CEO (as defined in Article 6) to implement all policies and decisions made by the Manager with respect to the day-to-day management and operation of the Business and affairs of the Company (including, without limitation, those powers set forth in Section 5.2, subject to the provisions of Section 5.3 and other provisions of this Agreement requiring approval by Members holding at least a Super-Majority Interest.

5.2     <u>Certain Powers of the Manager.</u>

Without limiting the generality of Section 5.1 but subject to the limitations of Section 5.3, the Manager shall have full power and authority, on behalf of the Company:

   (a)    to acquire property from any Person as the Manager may determine;

   (b)    to borrow money for the Company from banks, other lending institutions, the Manager, the Members, or Affiliates of the Manager or the Members on such terms as the Manager deems appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in Company Property to secure repayment of the borrowed sums;

   (c)    to purchase liability and other insurance to protect the Company Property and the Business of the Company;

5

Confidential
Attorneys Eyes only                                         SM000105

(d) to hold and own any and all Company Properties in the name of the Company;

(e) to invest any Company funds in time deposits, short-term governmental obligations, commercial paper or other investments;

(f) to execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of Company property; assignments; bills of Transfer; leases; partnership agreements, operating (or limited-liability company) agreements of other limited-liability companies; and any other instruments or documents necessary or appropriate, as determined in the discretion of the Manager, to the conduct of the Business of the Company;

(g) to employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;

(h) to enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Manager may approve;

(i) to execute and file such other instruments, documents and certificates which may from time to time be required by the laws of the State of Nevada or any other jurisdiction in which the Company shall determine to do Business, or any political subdivision or agency thereof, to effectuate, implement, continue and defend the valid existence of the Company;

(j) to file any and all registrations necessary or appropriate, in the sole discretion of the Manager, to protect Intellectual Property rights of the Company;

(k) to do and perform all other acts as may be necessary or appropriate to the conduct of the Business;

(l) to hire employees necessary and/or appropriate to conduct the Business;

(m) to terminate employees in the Manager's sole and absolute discretion;

6

**Confidential**
**Attorneys Eyes only**

SM000106

(n)    to appoint Officers; provided, however, that the Manager shall provide prompt Notice ("Officer Notice") to all Members of any appointment of any Officer (other than the Officers instituted by virtue of this Agreement); provided, further, that in any Officer Notice the Manager shall indicate both the name of the individual that is the subject of an Officer appointment as well as the title of such Officer; and

(o)    to terminate any Officer; provided, however, that the Manager shall provide prompt Notice to all Members of any termination of any Officer.

Nothing set forth above in this Section 5.2 shall preclude the Manager from engaging in any transaction with an Affiliate of the Manager on an arm's length basis.

5.3    <u>Limitations on Authority</u>.

Notwithstanding any other provision of this Agreement, the Manager shall not cause or commit the Company to do any of the following without the express written consent of Members holding at least a Super-Majority Interest:

(a)    mortgage, pledge, hypothecate, encumber or grant a security interest of (collectively, "Pledge") any Company Property to the extent that the secured indebtedness from such Pledge would exceed $100,000.00;

(b)    incur or refinance any indebtedness for money borrowed by the Company, whether secured or unsecured and including any indebtedness for money borrowed from a Member if, after such financing, the aggregate indebtedness of the Company would exceed $100,000.00;

(c)    lend money to or guaranty or become surety for the obligations of any Person, except for reasonable advances of salaries of Officers and other employees of the Company;

(d)    cause the Company to commence a voluntary case as debtor under the United States Bankruptcy Code;

(e)    any merger, consolidation, Reorganization or recapitalization involving the Company;

(f)    any Transfer of substantially all of the assets of the Company;

7

**Confidential**
**Attorneys Eyes only**

(g)     any dissolution, liquidation or voluntary termination of the Company;

(h)     any repurchase or redemption of any Membership Interests;

(i)     any purchase, acquisition or otherwise becoming the holder, beneficially or of record, of any interest in any Person or purchase or acquisition of any such Person by means of any transaction or series of related transactions (including, without limitation, any merger, consolidation or recapitalization, or acquisition of all or any substantial portion of the assets of any such Person);

(j)     any entry into any transaction with any Officer, employee, Member, or affiliate of the Company, or any affiliate or relative of the foregoing (other than the transactions pursuant to, acknowledged in, arising out of and/or described in this Agreement, inclusive, but not limited to, the Exhibits, as well as any other attachments incorporated herein);

(k)     any material changes in the terms of the employment, including compensation, of senior management;

(l)     any conversion of the Company to a corporation or any election to be taxable as a corporation; and

(m)     any establishment of any joint venture, partnership, limited liability company or other similar relationship between the Company and any third Person (other than the transactions pursuant to, acknowledged in, arising out of and/or described in this Agreement, inclusive of, but not limited to, the Exhibits, as well as any other attachments incorporated herein).

5.4     <u>Liability for Certain Acts.</u>

5.4.1     The Members stipulate that neither the Company nor the Manager, in any way, covenants, represents or guarantees that the operations of the Company will be profitable or that any Member will receive a return of or on any Member's Capital Contributions, at any point in time or over any period of time.

5.4.2     The Members hereby covenant that the Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member (or successor thereto), except to the extent, if any, that

8

**Confidential
Attorneys Eyes only**