# EXHIBIT A

Office of the Clerk
UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
P.O. Box 193939
San Francisco, California 94119-3939

Molly C. Dwyer
Clerk of Court

(415) 355-8000

## NOTICE OF APPEARANCE OF COUNSEL or
## RE-ASSIGNMENT OF COUNSEL WITHIN THE SAME OFFICE

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

9th Circuit Case Number(s)   11-16751

Case Name:   Righthaven, LLC          v.   Wayne Hoehn

The Clerk will enter my
appearance as counsel on behalf of:   Righthaven, LLC

☒ Appellant    ☐ Petitioner    ☐ Amicus Curiae    ☐ Appellant/Cross-Appellee
☐ Appellee     ☐ Respondent    ☐ Intervenor       ☐ Appellee/Cross-Appellant

☒ Check if you are lead counsel. Lead counsel must be designated if a party is represented by more than one attorney or law firm.

☐ Re-Assignment. (Optional) This case has been re-assigned to me from another attorney in my office (for ex., the Federal Public Defenders Office, OIL, or a law firm). Enter name of counsel you are replacing below.

I am replacing (name of counsel):   N/A

Signature
(use "s/" format)   s/ Erik S. Syverson          Date   April 16, 2012

Name      Erik S. Syverson

Address   1999 Avenue of the Stars, Suite 1000

City   Century City      State   CA      Zip Code   90067

Phone Number (including area code)   (310) 552-5236

# EXHIBIT B





CHICAGO | INCLINE VILLAGE | LOS ANGELES | NEW YORK | NORTHERN VIRGINIA
ORANGE COUNTY | PALO ALTO | SAN FRANCISCO | TEL AVIV | WASHINGTON, D.C.

PMB 405, 774 Mays Blvd No. 10, Incline Village, NV 89451 P: 800.930.7271 x219 / 775.833.1600
PROTECTING THE BRANDS THAT ARE CHANGING THE WORLD®
www.rimonlaw.com Lara@Rimonlaw.com

June 25, 2012

**Sent via e-mail to: Shawn@Manganolaw.com**

Mr. Steven A. Gibson
c/o Mr. Shawn Mangano
8367 West Flamingo Rd., Ste 100
Las Vegas, NV 89147

Mr. Gibson:

As former CEO of Righthaven LLC ("Righthaven"), you are aware that I was appointed the company's Receiver on December 12, 2011 in *Righthaven v. Hoehn*, Case No. 2:11-cv-00050 (Docs. # 62, 66) (D. Nev.). According to the information I have, it appears that you ceased performing any functions as CEO at least as early as September 2011. Further, upon my appointment as Receiver on December 12, 2011, I took over legal control of the company.

Your actions have caused, and continue to cause, ongoing harm to Righthaven and its finances. To put an end to this damage and prevent future harm, I hereby remove any and all authority for you to act on behalf of the company, and formally place you on notice that the company will be taking legal action against you for your *ultra vires* acts as well as for claims of legal malpractice, which led the company to its current state.

At the time of my appointment and shortly thereafter, it appeared that Righthaven had gone dormant and ceased conducting any activity as the judgments against it mounted. Recently, it has come to my attention that you engaged the services of Miller Barondess LLP in *Righthaven v. Hoehn*, Case No. 11-16751 before the Ninth Circuit Court of Appeals. I was neither informed of nor did I authorize this action, nor did I authorize any expenditure. Engaging yet another law firm and pursuing an appeal that both the Ninth Circuit and the District of Nevada have declined to find has a substantial likelihood of success is not in Righthaven's best interest. In addition to the immediate expenditure of funds needed to prosecute the appeal, Mr. Hoehn's fees and costs in defending the appeal may be taxed to Righthaven under 17 U.S.C. § 505 if he again prevails.

Presently, Righthaven must satisfy more than $350,000 in judgments entered against it.. This figure includes claims against Righthaven's receivership estate, pending fee motions, pending lawsuits against Righthaven, and potential claims held by other parties. For you or anyone else acting on behalf of Righthaven to incur new fees or engage in any activity other than mitigating these liabilities is directly contrary to the company's best interests.



**2 | PAGE**

In order to remove any potential for your continued abuse and misuse of Righthaven funds and resources, this letter shall serve as formal written notice that **both you and your wife, Ms. Raisha Gibson, are terminated by Righthaven *nunc pro tunc* as of December 12, 2011**. This action is authorized by the authority granted to me under NRS Chapter 32, NRS 78.635 and 640, and Judge Pro's order of December 12, 2011.

To be clear, you are fully terminated from any position with Righthaven LLC. You are prohibited from taking further actions on its behalf, and may not hold yourself out as an officer, employee, or representative of the company. Any further actions you purport to take on Righthaven's behalf shall be met by requests for injunctive relief and personal sanctions. Concurrently with this notice, I am filing a formal Notice with the *Righthaven v. Hoehn* court notifying it of my actions and seeking its ratification thereof. Any response hereto should be filed with the court in response to that Notice.

Regards,

Lara Pearson, Esq.
Receiver, Righthaven LLC

cc: Mr. Eric Syverson
    Mr. Marc Randazza

# EXHIBIT C





PMB 405, 774 Mays Blvd No. 10, Incline Village, NV 89451 P: 800.930.7271 x219 / 775.833.1600
PROTECTING THE BRANDS THAT ARE CHANGING THE WORLD®
www.rimonlaw.com Lara@Rimonlaw.com

June 25, 2012

**Sent via e-mail to: Shawn@Manganolaw.com**

Mrs. Raisha Y. "Drizzle" Gibson
c/o Mr. Shawn Mangano
8367 West Flamingo Rd., Ste 100
Las Vegas, NV 89147

Mrs. Gibson:

As former COO of Righthaven LLC ("Righthaven"), you are aware that I was appointed the
company's Receiver on December 12, 2011 in *Righthaven v. Hoehn*, Case No. 2:11-cv-00050 (Docs.
# 62, 66) (D. Nev.). According to the information I have, it appears that you ceased performing any
functions as CEO at least as early as September, 2011. Further, upon my appointment as Receiver on
December 12, 2011, I took over legal control of the company.

For the avoidance of doubt, I hereby remove all authority for you to act on behalf of Righthaven, and
place you on notice that the company will pursue legal action against you for any *ultra vires* acts you
may purport to take on the company's behalf.

At the time of my appointment and shortly thereafter, it appeared that Righthaven had gone dormant
and ceased conducting any activity as the judgments against it mounted.  Recently, it has come to
my attention that you and/or Mr. Gibson engaged the services of Miller Barondess LLP in
*Righthaven v. Hoehn*, Case No. 11-16751 before the Ninth Circuit Court of Appeals.  I was neither
informed of nor did I authorize this action, nor did I authorize any expenditure.  Engaging yet
another law firm and pursuing an appeal that both the Ninth Circuit and the District of Nevada have
declined to find has a substantial likelihood of success is not in Righthaven's best interest.  In
addition to the immediate expenditure of funds needed to prosecute the appeal, Mr. Hoehn's fees and
costs in defending the appeal may be taxed to Righthaven under 17 U.S.C. § 505 if he prevails.

Presently, Righthaven must satisfy more than $350,000 in judgments entered against it.  This figure
includes claims against Righthaven's receivership estate, pending fee motions, pending lawsuits
against Righthaven, and potential claims held by other parties.  For you or anyone else acting on
behalf of Righthaven to incur new fees or engage in any activity other than mitigating these
liabilities is directly contrary to the company's best interests.

In order to remove any potential for your continued misuse of Righthaven funds and resources, this
letter serves as formal written notice that **both you and your husband, Mr. Steven A. Gibson, are
terminated by Righthaven *nunc pro tunc* as of December 12, 2011**.  This action is authorized by



**2 | PAGE**

the authority granted to me under NRS Chapter 32, NRS 78.635 and 640, and Judge Pro's order of December 12, 2011.

To be clear, you are fully terminated from any position with Righthaven LLC. You are prohibited from taking further actions on its behalf, and may not hold yourself out as an officer, employee, or representative of the company.  Any further actions you purport to take on Righthaven's behalf shall be met by requests for injunctive relief and personal sanctions. Concurrently with this notice, I am filing a formal Notice with the *Righthaven v. Hoehn* court notifying it of my actions and seeking its ratification thereof. Any response hereto should be filed with the court in response to that Notice.

Regards,

Lara Pearson, Esq.
Receiver, Righthaven LLC

cc:  Mr. Eric Syverson
     Mr. Marc Randazza

# EXHIBIT D





PMB 405, 774 Mays Blvd No. 10, Incline Village, NV 89451 P: 800.930.7271 x219 / 775.833.1600
PROTECTING THE BRANDS THAT ARE CHANGING THE WORLD®
www.rimonlaw.com Lara@Rimonlaw.com

June 25, 2012

**Sent via e-mail to esyverson@millerbarondess.com**

Mr. Eric Syverson
Miller Barondess LLP
1999 Avenue of the Stars , Suite 1000
Los Angeles, CA 90067

Mr. Syverson:

As you know from your representation of Righthaven LLC ("Righthaven") in *Righthaven LLC v. Hoehn*, Case No. 11-16751 before the Ninth Circuit Court of Appeals, the company is currently in receivership.  I was appointed as receiver for the company on December 12, 2011 in *Righthaven v. Hoehn*, Case No. 2:11-cv-00050 (Docs. # 62, 66) (D. Nev.).  Mr. Gibson does not and has not had authority to enter new contracts and incur new expenses for the company, which presently must satisfy more than $350,000 in judgments entered against it.

I was unaware that Mr. Gibson had retained your firm until Mr. Hoehn's counsel inquired about this development and whether I had approved it. Mr. Gibson has no authority to act on behalf of Righthaven – and even if he did, the act of pursuing this appeal would add further costs onto Righthaven's already substantial debts – which I would not have approved.  As the Receiver, I am writing to you to inform you that Mr. Gibson has no authority to make any decisions on behalf of the company. Further, **Mr. Gibson and his wife, Raisha Gibson have been formally terminated *nunc pro tunc* as of December 12, 2011 of which I notified both individuals in writing today through their counsel of record, Shawn Mangano**.

I demand that you cease all billing activity immediately.  I also demand that you provide me with a full accounting of all funds in trust for Righthaven via e-mail and fax to 888.842.4492 within seven (7) calendar days (by no later than close of business on Tuesday, July 3, 2012). All future actions taken with respect to Righthaven require my approval, as I am the only person with the authority to make decisions on Righthaven's behalf unless and until my receivership is terminated.

///

///

///

///



**2** | P A G E

I soon will you and your firm with provide further guidance as to your representation of Righthaven. At this time, though, you and Miller Barondess are to cease taking any orders from Mr. Gibson with respect to Righthaven and refrain from any further activity on this file until I approve such activity. Concurrently with this notice, I am filing a formal Notice with the *Righthaven v. Hoehn* court notifying it of my actions and seeking its ratification thereof. Any response hereto should be filed with the court in response to that Notice.

Regards,

Lara Pearson, Esq.
Receiver, Righthaven LLC

cc:  Shawn Mangano
     Marc Randazza

# EXHIBIT E

*Case No. 11-16751*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### RIGHTHAVEN LLC,
*Plaintiff-Appellant,*

v.

### WAYNE HOEHN,
*Defendant-Appellee,*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA
(Hon. Philip M. Pro)

Case No. 2:11-cv-00050-PMP-RJJ

---

### RIGHTHAVEN LLC'S MOTION TO FILE LATE EXCERPTS OF THE RECORD; SUPPORTING DECLARATIONS OF STEVEN A. GIBSON AND ERIK S. SYVERSON

---

### MILLER BARONDESS, LLP
Erik S. Syverson (California SBN 221933)
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-5236
Facsimile: (310) 552-8400
Email: esyverson@millerbarondess.com

Attorneys for *Plaintiff-Appellant* Righthaven LLC

120206.2

## MOTION TO FILE LATE EXCERPTS OF THE RECORD

Plaintiff-Appellant Righthaven LLC ("Righthaven") respectfully requests this Court accept its late filed excepts of the record and the certificate of service for such excerpts used by Righthaven for its opening brief in this appeal. This motion is necessitated by the failure of Righthaven's prior counsel to either timely file such excerpts or to file any certificate of service regarding the excerpts. Righthaven's prior counsel failed to apprise Righthaven of the notice of deficiency sent by the Court in January 2012, and has failed to contact or respond to any communications from Righthaven or its Chief Executive Officer Steven A. Gibson since February 2012. The motion is supported by the attached declarations of Steven A. Gibson and Erik S. Syverson.

Under the original schedule, the excerpts of the record were to be submitted at the same time as the filing of the opening brief, November 28, 2011. Syverson Declaration at ¶ 2(i). Instead, it appears that Righthaven's prior counsel submitted the excerpts such that they were received by the Court on or before January 17, 2012, without the requisite certificate of service. *Id.* at ¶ 2(iv).

Righthaven makes this request after its counsel, Shawn A. Mangano, ceased communications with Righthaven, necessitating the engagement of additional counsel to continue its pursuit of this appeal. Gibson Declaration at ¶ 9. In his last communication with Righthaven, Mr. Mangano informed Righthaven that he had

1

traveled to California in order to visit his hospitalized mother, and that he would file a request with this Court for an extension of time relating to Righthaven's reply brief. *Id*. at ¶ 3. Mr. Mangano made no mention of the notice of deficiency or his failure to properly or timely submit the excerpts of the record. *Id*. at ¶ 4. Since that February 2012 communication, Mr. Mangano has failed to respond to communications from Righthaven, including telephone calls, U.S. Mail, and email. *Id*. at ¶ 5. Although it was not unprecedented that Mr. Mangano failed to communicate with Righthaven for small periods of time, Righthaven was forced to conclude that it would need to engage additional counsel in order to continue its efforts in this appeal. *Id*. at ¶¶ 9-10.

To the greatest extent possible, Righthaven has attempted to ensure that all applicable deadlines were met in this case. Righthaven had consistently and timely fulfilled all payment obligations to Mr. Mangano. *Id*. at ¶ 7. Righthaven had consistently instructed Mr. Mangano to conduct Righthaven's litigation in such a manner as to fully comply with all court orders to the best of his ability at all times. *Id*. at ¶ 6. However, Righthaven recently became aware that Mr. Mangano has not done so, nor has he been responsive to communications from Righthaven on this matter or any other of Righthaven's litigation matters. *Id*. at ¶ 11.

As part of the request for leave to late file its excerpts of the record, Righthaven is concurrently re-serving its excerpts of the record and submitting its

120206.2

certificate of service, such that the filing will be complete if permitted by the Court. Syverson Decl. at ¶ 4. Righthaven does not believe that there will be any prejudice to any party or to the Court if its request is granted— although Righthaven is re-serving its excerpts in their original form, Appellee-Defendant Hoehn had apparently received a copy of the same, as his answering brief cited to the excerpts. *Id*. at ¶ 2(v).

For the foregoing reasons, Righthaven respectfully requests leave to file its excerpts of the record in the present appeal.


DATED: May 9, 2012                    Respectfully submitted,

                                      MILLER BARONDESS, LLP


                                      By: s/ Erik S. Syverson
                                          Erik S. Syverson
                                          Attorney for Appellant-Plaintiff
                                          Righthaven LLC

I, Steven A. Gibson, hereby declare as follows:

1. I am the Chief Executive Officer of Plaintiff-Appellant Righthaven LLC ("Righthaven"). I make this declaration in support of Righthaven's Motion to File Late Excerpts of the Record in the above-captioned case. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. Mr. Shawn A. Mangano, Esq. of Shawn A. Mangano, LTD. has been legal counsel for all litigation matters for Righthaven since at least November, 2010.

3. The last communication I received from Mr. Mangano was in February 2012. In this communication, Mr. Mangano indicated that he was visiting his hospitalized mother in California and he acknowledged and apologized for having not met the reply brief deadline in the above-captioned case and deadlines in other cases. Mr. Mangano further indicated that he would file a request with the Ninth Circuit to late file a reply brief in the above-captioned case on the basis of his attending to the illness of his mother.

4. Mr. Mangano did not disclose that he had not timely filed the excerpts of the record for the opening brief, that he had failed to file a certificate of service with the excerpts, or that he had received a notice indicating both of these deficiencies.

5. Since this communication in February 2012, I have attempted to contact Mr. Mangano regarding Righthaven's litigation obligations and deadlines, reaching out

1

via telephone, electronic mail, and U.S. Mail.  To date, neither I nor Righthaven have received any response from Mr. Mangano.

6.  As the CEO of Righthaven, I have consistently instructed Mr. Mangano to conduct Righthaven's litigation in such a manner as to fully comply with all court orders to the best of his ability at all times.

7.  Prior to this period in which Mr. Mangano has been completely non-responsive, Righthaven has consistently and timely fulfilled all payment obligations to Mr. Mangano.  Following Mr. Mangano's refusal or failure to respond to any and all communications from Righthaven, the company ceased making payments to Mr. Mangano.  Mr. Mangano still made no response to Righthaven or to my communications.

8.  Neither I nor Righthaven have received any notice from Mr. Mangano of any intent to withdraw from his representation as Righthaven's legal counsel in this matter or any other matter.

9.  Prior to his current and ongoing failure to communicate with Righthaven, there have been certain periods of time when Mr. Mangano was not as communicative as I might desire.  However, Mr. Mangano had previously ultimately responded to communications from Righthaven and would indicate that his response was delayed as a result of attending to other urgent client matters.

120206.2

10. Having received no response from Mr. Mangano, Righthaven ultimately determined that additional legal counsel would be required in the above-captioned case, and it pursued alternative legal counsel diligently, to the best of its limited ability.

11. Righthaven only became aware of the deficiencies with its excerpts of the record after being notified by Erik S. Syverson of Miller Barondess.


I declare under penalty of perjury under the laws of the United States of America and the State of Nevada that the foregoing is true and correct. Executed this 2½ day of May 2012, at Las Vegas, Nevada.

By: _____

STEVEN A. GIBSON
*CEO, Righthaven LLC*

3

I, Erik S. Syverson, hereby declare as follows:

1. I am an attorney at law, duly licensed to practice before the Ninth Circuit Court of Appeals, and am a partner in the law firm of MILLER BARONDESS, LLP. My firm was recently retained and I made an appearance on behalf of Plaintiff-Appellant Righthaven LLC ("Righthaven") in this matter. I have personal knowledge of all of the facts contained in this declaration and, if called as a witness, I could and would competently testify to all said facts.

2. In order to make the statements required pursuant to Ninth Circuit Local Rule 31-2.2(b), I have reviewed the Ninth Circuit's docket for this action, which sets forth the following:

     i. The deadline for Righthaven's opening brief was November 28, 2011; it was filed on this date, and the excerpts of the record should have been served and submitted on the same day.

     ii. Righthaven's excerpts of the record were originally due on the initial deadline for the opening brief of October 27, 2011, but this deadline was rescheduled as a result of Righthaven's motion to extend the time to file its opening brief.

     iii. No court reporter is in default with regard to any designated transcripts, as Righthaven did not designate any transcripts for this appeal.

1

iv. Righthaven apparently late served the excerpts of the record to the Court, and failed to include a certificate of service with the copies previously served, resulting in a letter from the Clerk of the Court dated January 17, 2012, noting the two deficiencies.

v. It appears that Appellee-Defendant Hoehn had previously received a copy of the excerpts of the record, as he cited to items therein within his answering brief, which was filed on January 12, 2012.

3. I and my firm have worked diligently to prepare the instant motion. Upon discovery of the deficiency, my firm contacted the Clerk's office to obtain a copy of the originally submitted excerpts of the record, in order to re-serve and re-submit it in compliance with the rules and notice of deficiency.

4. Concurrently with the filing of this motion, Righthaven will be re-serving the excerpts of the record with a certificate of service, in order to ensure that Righthaven's excerpts are properly filed if this motion is granted.

5. My firm contacted counsel for Appellee on May 8, 2012 regarding the instant motion and was informed that Appellee objects to Righthaven's request.

///

///

///

2

120206.2

I declare under penalty of perjury under the laws of the United States of

America and the State of California that the foregoing is true and correct.

Executed this 9th day of May 2012, at Los Angeles, California.

By:  s/ Erik S. Syverson

ERIK S. SYVERSON
Attorney for Appellant-Plaintiff
Righthaven LLC

120206.2

# EXHIBIT F

*Case No. 11-16751*

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**RIGHTHAVEN LLC,**
*Plaintiff-Appellant,*

**v.**

**WAYNE HOEHN,**
*Defendant-Appellee,*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA
(Hon. Philip M. Pro)

Case No. 2:11-cv-00050-PMP-RJJ

---

**RIGHTHAVEN LLC'S MOTION TO FILE LATE REPLY BRIEF;
SUPPORTING DECLARATIONS OF STEVEN A. GIBSON
AND ERIK S. SYVERSON**

---

**MILLER BARONDESS, LLP**
Erik S. Syverson (California SBN 221933)
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-5236
Facsimile: (310) 552-8400
Email: esyverson@millerbarondess.com

Attorneys for *Plaintiff-Appellant* Righthaven LLC

118471.2

## MOTION TO FILE LATE REPLY BRIEF

Plaintiff-Appellant Righthaven LLC ("Righthaven") respectfully requests this Court accept its late filed reply brief in this appeal after the conclusion of the previously set fourteen day period for filing such reply brief. This motion is necessitated by the failure of Righthaven's prior counsel to timely prepare or file such reply brief, and his contemporaneous failure to respond to communications from Righthaven and its Chief Executive Officer Steven A. Gibson. The motion is supported by the attached declarations of Steven A. Gibson and Erik S. Syverson.

Under the original schedule, the reply brief was scheduled to be due on or before December 12, 2011. Syverson Declaration at ¶ 2(ii). Righthaven's Motion to Extend Time for its opening brief was previously granted, as was Appellee-Defendant Hoehn's Oral extension by phone for his answering brief. *Id*. After these extensions and the timely filing of the parties' respective briefs following such extensions, the reply brief was due on or before January 26, 2012. *Id*. at ¶ 2(i). No previous extension was sought in connection with Righthaven's reply brief. *Id*.

Righthaven makes this request after its counsel, Shawn Mangano, ceased communications with Righthaven, necessitating the engagement of additional counsel to prepare the reply brief and submit this motion on its behalf.

1

Gibson Declaration at ¶ 10.  In his last communication with Righthaven, Mr. Mangano had informed Righthaven that he had traveled to California in order to visit his hospitalized mother, and that he would file a request with this Court for an extension of time to file Righthaven's reply brief.  *Id*. at ¶ 3.  Since that February 2012 communication, Mr. Mangano has failed to respond to communications from Righthaven, including telephone calls, U.S. Mail, and email.  *Id*. at ¶ 4.  Although prior periods have occurred where Mr. Mangano had failed to communicate with Righthaven for small periods of time, Righthaven eventually concluded it would need to engage additional counsel in order to continue its efforts in this appeal.  *Id*. at ¶ 4.  Following its engagement of current counsel, Righthaven discovered that Mr. Mangano had failed to properly file and serve its excerpts of the record, which it then had corrected.  *Id*. at ¶ 11.  It then asked counsel to prepare and file the reply brief that Mr. Mangano never did.  *Id*.

        To the greatest extent possible, Righthaven has attempted to make certain that all applicable deadlines were met in this case.  Righthaven had consistently and timely fulfilled all payment obligations to Mr. Mangano.  *Id*. at ¶ 6.  Righthaven had consistently and at all times instructed Mr. Mangano to conduct Righthaven's litigation in such a manner as to fully comply with all court orders to the best of its ability.  *Id*. at ¶ 5.  Righthaven further attempted to ascertain why Mr. Mangano failed to timely file the reply brief in this appeal, and determined that

Mr. Mangano was aware of the situation and had planned to meet Righthaven's obligations. *Id*. at ¶ 3. However, Mr. Mangano has not done so, nor has he been responsive to communications from Righthaven on this or any other of Righthaven's litigation matters. *Id*. at ¶ 4.

As part of the request for leave to late file its reply, Righthaven is concurrently serving its proposed reply, such that the filing will be promptly completed if permitted by the Court. Syverson Decl. at ¶ 4. Righthaven does not believe that there will be any prejudice to any party or to the Court if its request is granted— the Federal Rules of Appellate Procedure do not provide for sur-reply and the oral argument in this case has not yet been scheduled. Indeed, Righthaven's request to present argument in reply should be a benefit to the Court in that it will provide clarification of the issues on appeal and of the Appellant's position before oral argument.

For the foregoing reasons, Righthaven respectfully requests leave to file its reply brief in the present appeal within seven days of the entry of an order granting this motion.

DATED:  June 22, 2012          Respectfully submitted,

MILLER BARONDESS, LLP

By:  /s/ Erik S. Syverson
       ERIK S. SYVERSON
       Attorney for Appellant-Plaintiff
       Righthaven LLC

3

118471.2

I, Steven A. Gibson, hereby declare as follows:

1.      I am the Chief Executive Officer of Plaintiff-Appellant Righthaven
LLC ("Righthaven").  I make this declaration in support of Righthaven's Motion to
File a Late Reply Brief in the above-captioned case.  I make this declaration of my
own personal knowledge and, if called as a witness, I could and would testify
competently to the truth of the matters set forth herein.

2.      Mr. Shawn Mangano, Esq. of Shawn A. Mangano, LTD. had been
legal counsel for all litigation matters for Righthaven since at least November,
2010.

3.      The last communication I received from Mr. Mangano was in
February 2012.  In this communication, Mr. Mangano indicated that he was
visiting his hospitalized mother in California and he acknowledged and apologized
for not having met the reply brief deadline in the above-captioned case and
deadlines in other cases.  Mr. Mangano further indicated that he would file a
request with the Ninth Circuit to file a late reply brief in the above-captioned case,
on the basis of his attending to the illness of his mother.

4.      Since this communication in February 2012, I have attempted to
contact Mr. Mangano regarding Righthaven's litigation obligations and deadlines,
reaching out via telephone, electronic mail, and U.S. Mail.  To date, neither I nor
Righthaven have received any response from Mr. Mangano.

1

5.      As the CEO of Righthaven, I have consistently and at all times instructed Mr. Mangano to conduct Righthaven's litigation in such a manner as to fully comply with all court orders to the best of its ability.

6.      Prior to this period in which Mr. Mangano has been completely non-responsive, Righthaven had consistently and timely fulfilled all payment obligations to Mr. Mangano.  Following Mr. Mangano's refusal or failure to respond to any and all communications from Righthaven, the company ceased making payments to Mr. Mangano.  Mr. Mangano still made no response to Righthaven or to my communications.

7.      Neither I nor Righthaven have received any notice from Mr. Mangano of any intent to withdraw from his representation as Righthaven's legal counsel in this or any other matter.

8.      Prior to his current and ongoing failure to communicate with Righthaven, there had been certain periods of time when Mr. Mangano was not as communicative as I might desire.  However, Mr. Mangano had previously ultimately responded to communications from Righthaven and would indicate that his response was delayed as a result of attending to other urgent client matters.

9.      Having had no response from Mr. Mangano, Righthaven ultimately determined that additional legal counsel would be required in the above-captioned

2

case, and it pursued alternative legal counsel diligently, to the best of its limited ability.

10. Having had no response from Mr. Mangano, Righthaven ultimately determined that additional legal counsel would be required in the above captioned case, and it pursued alternative legal counsel diligently, to the best of its limited ability.

11. After engaging Mr. Syverson of Miller Barondess as counsel for this appeal, Righthaven became aware that Mr. Mangano had failed to properly file excerpts of the record in this appeal. Righthaven instructed Mr. Syverson to rectify that issue, and following its correction requested that a reply brief be prepared, in an attempt to fulfill the duties not completed by Mr. Mangano.

I declare under penalty of perjury under the laws of the United States of America and the State of Nevada that the foregoing is true and correct. Executed this 21st day of June 2012, at Las Vegas, Nevada

By: _____

STEVEN A. GIBSON
*CEO, Righthaven LLC*

I, Erik S. Syverson, hereby declare as follows:

1.      I am an attorney at law, duly licensed to practice before the Ninth Circuit Court of Appeals, and am a partner in the law firm of Miller Barondess, LLP.  My firm was recently retained and I made an appearance on behalf of Plaintiff-Appellant Righthaven LLC ("Righthaven") in this matter.  I have personal knowledge of all of the facts contained in this declaration and, if called as a witness, I could and would competently testify to all of said facts.

2.      In order to make the statements required pursuant to Ninth Circuit Local Rule 31-2.2(b), I have reviewed the Ninth Circuit's docket for this action, which sets forth as follows:

 i. The deadline for Righthaven's reply brief was January 26, 2012, or 14 days after Appellant filed its opposition brief on January 12, 2012;

 ii. Righthaven's reply brief was initially scheduled to be due on December 12, 2011, but this deadline was rescheduled as a result of Righthaven's motion to extend time to file its opening brief and by Appellee's oral request to extend time to file its answering brief.  No extension of time was sought in connection with Righthaven's reply brief.

1

    iii.  No court reporter is in default with regard to any designated

transcripts, as Righthaven did not designate any transcripts for this

appeal.

3.      I and my firm have worked diligently to prepare the instant motion

and the attached reply brief.

4.      Concurrently with the filing of this motion, Righthaven will be

serving its proposed reply brief, such that the filing may be promptly completed if

permitted by the Court.

5.      My firm contacted counsel for Appellee regarding the instant motion

and was informed that Appellee objects to Righthaven's request.

I declare under penalty of perjury under the laws of the United States of

America and the State of California that the foregoing is true and correct.

Executed this 22nd day of June 2012, at Los Angeles, California.


By:  /s/ Erik S. Syverson
        ERIK S. SYVERSON
        Attorney for Appellant-Plaintiff
        Righthaven LLC

118471.2

# CERTIFICATE OF WORD COUNT

I certify that the text of Appellant's Motion to File Late Reply Brief is presented in 14 point Times New Roman font and consists of 667 (excluding caption page, tables, and declarations) words as counted by the Microsoft Office Word word processing program used to generate this motion.

Dated: June 22, 2012                    Respectfully submitted,

|  | /s/ Erik S. Syverson |
|---|---|
|  | ERIK S. SYVERSON |
|  | Attorney for Appellant-Plaintiff |
|  | Righthaven LLC |

118471.2

*Case No. 11-16751*

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**RIGHTHAVEN LLC,**
*Plaintiff-Appellant,*

**v.**

**WAYNE HOEHN,**
*Defendant-Appellee,*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA
(Hon. Philip M. Pro)

Case No. 2:11-cv-00050-PMP-RJJ

---

**RIGHTHAVEN LLC'S REPLY BRIEF**

---

**MILLER BARONDESS, LLP**
Erik S. Syverson (California SBN 221933)
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 552-5236
Facsimile: (310) 552-8400
Email: esyverson@millerbarondess.com

Attorneys for *Plaintiff-Appellant* Righthaven LLC

122166.2

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................... 1

II.   THE CLEAR INTENT AND EFFECT OF THE AGREEMENTS
      WAS TO TRANSFER COPYRIGHT INTERESTS NECESSARY
      TO SUPPORT RIGHTHAVEN'S ABILITY TO PROSECUTE ITS
      CLAIMS AGAINST HOEHN ...................................................... 5

III.  THE DISTRICT COURT'S "FAIR USE" RULING WAS CLEARLY
      ERRONEOUS AND AN ADVISORY OPINION. ................................. 13

      A.    It Was Improper for the District Court to Make a Merits Based
            Determination After Wrongly Deciding that it Lacked Subject
            Matter Jurisdiction Over the Case. .................................... 13

      B.    The District Court's Analysis of Hoehn's Fair Use Defense
            Was Clearly Erroneous ................................................... 18

            1.    Hoehn's Copying and Reproduction of the Entire Work
                  at a Different Online Location was not Transformative
                  and Was Commercial. ........................................... 18

            2.    The Nature of the Work Weighed Against Fair Use. ........... 21

            3.    The Amount and Substantiality of the Use Weighs
                  Heavily Against Fair Use. ...................................... 21

            4.    The Affected Market (for work, not for Righthaven;
                  direct competition for online viewership; disasterous if
                  allowed to proliferate) .......................................... 22

IV.   CONCLUSION .......................................................................... 23

122166.2

# TABLE OF AUTHORITIES

Page

CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .............................................................. 18, 19, 20

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F. 2d 971 (2nd Cir. 1991) ...................................................................8, 9

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ...................................................................17

*Barringer v. Gunderson*,
81 Nev. 288, 402 P.2d 470 (1965).............................................................6

*Flast v. Cohen*,
392 US 83 (1968) ................................................................................ 14, 15

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
471 US 539 (1985) ............................................................................... 19, 21

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
796 F.2d 1148 (9th Cir. 1986) ..................................................................20

*Kelly v. Arriba Soft Corp.*,
336 F. 3d 811 (9th Cir. 2003) ...................................................................20

*L.A. Times v. Free Republic*,
54 U.S.P.Q.2d 1453 (C.D.Cal. 2000) .....................................................22

*Lahiri v. Universal Music and Video Dist.*,
606 F. 3d 1216 (9th Cir. 2010) ........................................................... 10, 12

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998) ....................................................................22

## TABLE OF AUTHORITIES
### (Cont'd)

Page

*Nafal v. Carter*,
  540 F. Supp. 2d 1128 (C.D. Cal. 2007) *aff'd*,
  388 F. App'x 721 (9th Cir. 2010) ................................................. 11, 12

*Nippon Steel Corp. v. United States*,
  219 F.3d 1348 (Fed. Cir. 2000) ........................................................15

*Perfect 10, Inc. v. Amazon. com, Inc.*,
  508 F. 3d 1146 (9th Cir. 2007) ........................................................20

*Pitt County v. Hotels.com, L.P.*,
  553 F.3d 308 (4th Cir. 2009) ...........................................................17

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d (9th Cir. 2011) ..................................................................17

Rattleskanke Coalition v. E.PA.,
  509 F.3d 1095 ...................................................................................17

*Sheehan & Sheehan v. Nelson Malley & Co.*,
  121 Nev. 481 P.3d 219 (2005) ...........................................................6

*Silvers v. Sony Pictures Entertainment, Inc.*,
  402 F.3d 881(2005) ................................................. 1, 8, 9, 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) .................................................................. 18, 20

*Steel Co. v. Citizens for a Better Environment*,
  *523 U.S. 83 (1998)* ............................................................... 3, 13, 14

*Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*,
  594 F.2d 730 (9th Cir. 1979) ...........................................................16

122166.2

<u>TABLE OF AUTHORITIES</u>

(Cont'd)

STATUTES AND RULES

17 U.S.C. § 106 .................................................................................................2

17 U.S.C. § 107 .................................................................................................3

iv

## I.    __INTRODUCTION__

The questions in this appeal are whether or not an agreement to transfer ***all*** copyright interests in a newspaper opinion article sufficiently created standing for the transferee — Righthaven — to bring suit for infringement of the work, and if so, whether or not the wholesale online reproduction of the entire work by Hoehn was a "fair use." Based on the facts in the record, Supreme Court jurisprudence, this Court's prior decisions, and the decisions of other Circuit Courts of Appeals, the answers are that Righthaven had standing to bring suit and Hoehn's copying was not "fair use."

Plaintiff-Appellant Righthaven LLC ("Righthaven") asserted that its standing to bring the case was established under the transfer agreement for rights in the work at issue (the "Assignment"). Its standing was not destroyed by the license-back provisions of the Strategic Alliance Agreement (the "SAA") between Righthaven and Stephens Media, LLC ("Stephens Media"). Nor was its standing invalidated by the Clarification and Amendment to Strategic Alliance Agreement (the "Amendment"). Instead, the record demonstrates that the clear intent and effect of each of these agreements was to give Righthaven the rights necessary for its suit against Defendant-Appellee Wayne Hoehn ("Hoehn").

Since this Court's 2005 decision in *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, it has been clear that an assignee of an exclusive right under 17

1

U.S.C. § 106 is entitled to bring an action for infringement.  Here, the undisputed evidence showed that the Assignment of the article "transfers, vests and assigns the work" and "all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present and future infringements of the copyright, both accrued and unaccrued, in and to the Work."  (EOR 25, p. 5) Despite the clear language of the transferring instrument and the undisputed intent of the parties to "grant all ownership rights in the Work to Righthaven together with the right to sue for all past, present, and future copyright infringement," the district court interpreted the Assignment, the SAA, and the Amendment such that they did not transfer ***any*** exclusive rights.  (EOR 28, pp. 5, 10)

Appellee's Answering Brief ("AB") and its argument in support of the district court's decision is incorrect for the same reasons — it ignores the clear language and intent of the parties and instead asserts that Righthaven's receipt and grant of rights were a nullity.  Hoehn attempts to distract from the language and intent of the parties by arguing that "Righthaven's reticence to make" the SAA public proves that it destroys Righthaven's acquisition of ownership rights in the work.  (AB p. 17)  This is simply not true.  The Assignment and SAA make it explicitly clear that Righthaven received all exclusive rights in the work and granted a license back to Stephens Media.

2

Furthermore, after the district court decided that subject matter jurisdiction was absent by finding that Righthaven lacked standing to bring suit, it improperly moved on to the intensive factual inquiry of the 17 U.S.C. § 107 analysis in order to conclude that Hoehn's copying of the entire article was "fair use." In doing so, the district court based its decision on a clearly erroneous analysis of the "fair use factors," including its findings that Hoehn's wholesale reposting of the entire work was non-commercial, transformative, and would not affect the market for the work. Hoehn's arguments in support of the district court's "fair use" decision highlight the problems with reaching the issue and with the analysis of the issue below.

First, Hoehn argues that although Righthaven lacked standing to bring a case for infringement of the work, it was the proper party to oppose his "fair use" defense. This argument is counter-factual and contrary to established Supreme Court precedent. Either Righthaven had a sufficient stake in the case to litigate the issues, or it did not. As made clear in *Steel Co. v. Citizens for a Better Environment*, under long standing practices and precedent, a court may not assume jurisdictional facts for the purpose of deciding even an "easy" case on the merits. 523 U.S. 83, 94-99 (1998). A court that finds the plaintiff's standing to be lacking has no jurisdiction over the controversy, and cannot issue a "hypothetical" decision on the merits.

3

Next, Hoehn argues that the Court's application of the "fair use" factors was correct. In doing so, Hoehn's argument ignores the differences between his reposting of the work in his online forum of choice and the "fair use" decisions of this Court and of the Supreme Court. Hoehn argues that his copying of the entire text of a *Las Vegas Review Journal* opinion article from the newspaper's website to another website was somehow a "transformative" non-commercial use, rather than a reader redistributing the work without paying for it. Likewise, Hoehn argues that his 100% copying of the work was properly ignored because his bare copying of the opinion article managed to generate some related discussion on a third-party website. Even more telling is Hoehn's argument regarding his impact on the market for the work — he asserts that Righthaven's failure to provide evidence of harm in its litigation market proves his use was fair, rather than considering the impact of repeated copying like his on the work's own market.

Instead, the record before the district court was clear that Hoehn copied and republished the entire *Las Vegas Review Journal* opinion article on a third party website in order to allow other potential customers to read the work without payment. His 100% copying created a direct online substitute for any potential readers of the article. He did not simply restate the facts or information in the article or even post a link to the newspaper's website. Hoehn's wholesale copying and redistribution was not a "fair use."

4

Righthaven submits that the district court erred in concluding that Righthaven was without exclusive rights in the copyrighted work at issue under any of the agreements introduced into evidence. Furthermore, despite the clear errors in its analysis warranting reversal, the district court should not have made any decision on "fair use" after finding Righthaven lacked standing to prosecute the case. This appeal presents the Court with the opportunity to affirm the intent of parties to transfer copyrights and license them back, recognize that simply posting a complete work in an online forum does not make the copying a "fair use," and reaffirm that federal courts cannot simultaneously divest themselves of jurisdiction and reach a decision on the merits. Nothing in Hoehn's arguments compels a different result, and the district court's decision should be reversed in its entirety.

## II. THE CLEAR INTENT AND EFFECT OF THE AGREEMENTS WAS TO TRANSFER COPYRIGHT INTERESTS NECESSARY TO SUPPORT RIGHTHAVEN'S ABILITY TO PROSECUTE ITS CLAIMS AGAINST HOEHN.

The first task before this Court is to evaluate whether or not Righthaven and Stephens Media, LLC were able to implement their intent to transfer sufficient copyright interests in the work to create subject matter jurisdiction for the underlying infringement suit against Hoehn. It was undisputed that the intent of the parties was to transfer all necessary rights. As such, this Court should look to

5

the expression of that intent within the Assignment, the SAA, and the Amendment, and implement their agreement.

It has long been recognized that the primary "cardinal rule" of contract interpretation, the rule "to which all others are subordinate," is to ascertain and implement the intention of the parties. *Barringer v. Gunderson*, 81 Nev. 288, 302-03, 402 P.2d 470, 477 (1965). If such intention is clear from the instrument itself, it requires no construction. *Id.* In reviewing the district court's interpretation of the Assignment and other agreements, under Nevada law, the "construction of a contractual term is a question of law" and this Court "is obligated to make its own independent determination on this issue, and should not defer to the district court's determination." *Sheehan & Sheehan v. Nelson Malley & Co.,* 121 Nev. 481, 486, 117 P.3d 219, 223 (2005).

The Assignment clearly set forth that the parties intended that it "transfers, vests and assigns the work" including "all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present and future infringements of the copyright, both accrued and unaccrued, in and to the Work." (EOR 25 p. 5) On its face, this instrument makes clear that the parties wanted to transfer "***all copyrights requisite***" for this suit. *Id.* (emphasis added).

Hoehn argues that despite the clear language of the Assignment, the SAA prevented any "valid assignment or licensing back of rights." (AB p. 16) This interpretation is contrary to the explicit language of that agreement. The SAA required Stephens Media to assign Righthaven such exclusive rights for "each and every Infringed Copyright" during the term of the agreement so Righthaven could "have the right, but not the obligation to pursue an infringement action." (EOR 25 p. 10) As part of the transfer, in order to allow Stephens Media to continue its use of the transferred works, Righthaven agreed to grant back a license to Stephens Media to continue to exploit the work, a right for which Righthaven agreed to forgo royalties. (EOR 25 p. 12) To the extent that the parties intended to allow future uses by Stephens Media, the license should be construed within the purpose of the agreement — to "transfer all ownership of the Work to Righthaven together with the right to sue for accrued, present and future infringements of the Work." (EOR 25 p. 2) Specifically, the parties did not intend "to divest or otherwise impair Righthaven's ability to file or otherwise maintain copyright infringement actions based on content and/or other protectable material specifically assigned to Righthaven through the license-back rights" granted to Stephens Media. *Id*. Moreover, the SAA explicitly included a provision designed to allow a court such as this one to "correct the defect" in its provisions "to approximate the manifest intent of the Parties." (EOR 25 p. 16) The parties intended for this provision to

7

remove impediments in the SAA's language that hinder its purpose, which was to allow Righthaven to bring suit for infringements. *Id*. at 2.

The parties intended to make sure that this was not a "bare assignment of an accrued cause of action" found to be impermissible by this Court in *Silvers v. Sony Pictures Entm't, Inc*. 402 F.3d 881, 890 (9th Cir. 2005). In that case, the plaintiff *only* received "right, title and interest in and to any claims and causes of action" for infringement of the work at issue, and never was transferred any exclusive copyright interest. In contrast, Righthaven and Stephens Media contracted to transfer the necessary exclusive copyright interests and the accrued cause of action, while otherwise leaving Stephens Media in a position to continue to use the works it transferred "in the same general manner it had done prior to entering in the SAA, such as the archiving of prior published literary works on the LVRJ Website." (EOR 25 p. 3) Indeed, Stephens Media and Righthaven transferred the copyrights and cause of action because they were mindful of the principle "that the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf." *Silvers*, 402 F.3d at 890 (*citing ABKCO Music, Inc. v. Harrisongs Music, Ltd*., 944 F. 2d 971, 981 (2nd Cir. 1991)). Like ABKCO, Righthaven made sure that it received both the copyright interests in the work and the existing infringement claim that arose during Stephens Media's ownership of the work, such that its "right to bring the claims arises not out of its ownership of the

122166.2

copyright, but from its ownership of the claims themselves which it purchased, along with the copyright." *ABKCO*, 944 F.2d at 980-981.

As an attempt to further and clarify that intent, Stephens Media and Righthaven executed the Amendment, which reiterated that their intent in executing the SAA and the Amendment was:

> "to convey all ownership rights in and to any identified Work to Righthaven through a Copyright Assignment so that Righthaven would be the rightful owner" and

> "to grant Stephens Media a license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever without in any way hindering the right of Righthaven to seek redress for any past, present or future infringements of such copyrights"

> (EOR 25 p. 26)

This agreement is abundantly clear that the parties fully intended to transfer more than a "bare assignment of an accrued cause of action." *See Silvers*, 402 F.3d at 890.

Despite the clear expression of their intent, Hoehn argues that even the Amendment "retained too many rights to Stephens Media" to implement the parties' intent. (AB p. 19) This argument is contrary to the Amendment's clear language that provided Stephens Media with a "non-exclusive license to Exploit

9

the Stephens Media Assigned Copyright" after it transferred the copyright to Righthaven.  (EOR 25 p. 26)

Hoehn similarly argues that this Court's decision in *Lahiri* compels the conclusion that the parties' express intent must be overridden to strip Righthaven of its standing to sue Hoehn for infringement.  (AB p. 23)  The facts in *Lahiri* are not comparable to this case.  *See Lahiri v. Universal Music and Video Dist.*, 606 F. 3d 1216 (9th Cir. 2010).  In that case, the underlying agreement at issue was a settlement between the purported rights holder and the true copyright holder in India, which "misled the district court by use of a settlement agreement that deceptively used ownership language," that was actually a reference to rights to recover proceeds from a lawsuit rather than a recognition of the plaintiff's copyright interests.  *Id*. at 1222.  The *Lahiri* agreement "did not convey or recognize co-ownership of" any copyright in the work by the plaintiff.  *Id*.  Here, section 7 of the SAA and the Amendment both explicitly provide that **copyrights** are being transferred to Righthaven and a license is being granted back to Stephens Media.  (EOR 25 pp. 11-12, 26-27)  The SAA also includes a separate section 5 regarding the recovery and distribution of lawsuit proceeds; it does not disguise the interests held by Righthaven or Stephens Media in litigation proceeds as ownership interests in the work.  (EOR 25 p. 11).  The Amendment did not alter this section of the SAA.  (EOR 25 p. 27)

Hoehn also argues that the Central District of California's decision in *Nafal v. Carter* leaves Righthaven "manifestly naked of copyright rights" after executing the Amendment designed to rectify any technical problems with Righthaven's standing to sue.  (AB pp. 23-24)  However, the comparison is inapt.  In *Nafal*, the plaintiff entered into an agreement with Sima, the exclusive licensee of a musical recording, to pursue litigation against an alleged infringer.  *Nafal v. Carter*, 540 F. Supp. 2d 1128, 1135 (C.D. Cal. 2007) *aff'd*, 388 F. App'x 721 (9th Cir. 2010).  Significantly, the plaintiff did not contend that he was assigned the entirety of the copyright by Sima, but only that he received "a portion of an exclusive license." *Id*.  Moreover, the plaintiff's claim to have become a "co-exclusive licensee" of the work was measured against the relationship copyright co-owners have with each other, as "tenants in common, with each co-owner having an independent right to use or license the use of a work."  *Id*. at 1142.  Because the limitations on the rights assigned to the plaintiff by Sima did not evidence an effort to create an "independent and equivalent power" to exploit the copyrights, the district court found the plaintiff was a mere "non-exclusive licensee to whom Sima may from time to time assign a cause of action."  *Id*. at 1143.

Here, the situation is markedly different.  First and foremost, the agreements between Righthaven and Stephens Media are for transfer of copyright interests, not a splitting of Stephens Media's license.  Specifically, the Assignment between

11

Righthaven and Stephens Media transfers "all copyrights requisite to have Righthaven recognized as the copyright owner of the Work."  (EOR 25 p. 6)  None of the agreements between Righthaven and Stephens Media attempt to create a joint tenancy in any copyright licenses.   The only license created by the agreements is a license back to Stephens Media.  (EOR 25 pp. 12, 26-27)

Unlike the plaintiffs in *Silvers*, *Lahiri*, or *Nafal*, Righthaven executed an agreement that assigned the copyrights in the work.   An interpretation of the agreements to provide less than the "copyrights requisite to have Righthaven recognized as the copyright owner of the Work" would effectively make the transfer a nullity.   Unlike the cases cited by Hoehn, the parties did not agree to: explicitly make a "bare assignment" of a cause of action (*Silvers*); split litigation proceeds rather than copyrights (*Lahiri*); nor create a joint tenancy in an "exclusive" license (*Nafal*).   The parties contracted to transfer copyrights to Righthaven and then license sufficient rights back, to allow Stephens Media to continue to use its works in its normal course of business.   This Court should recognize the parties' intent, as made clear in their agreements and the declarations submitted to the district court, by finding that Righthaven did have the requisite copyrights to bring the instant suit.

## III.    THE DISTRICT COURT'S "FAIR USE" RULING WAS CLEARLY ERRONEOUS AND AN ADVISORY OPINION.

### A.    It Was Improper for the District Court to Make a Merits Based Determination After Wrongly Deciding that it Lacked Subject Matter Jurisdiction Over the Case.

The district court's explanation of its summary adjudication of the "fair use" of the work begins "**Assuming** Righthaven was found to have standing to bring this action."  (EOR 28, p. 11 (emphasis added))  This is *exactly* why it should have never issued such a decision; the district court "assumed" jurisdiction over the dispute in order to issue an advisory opinion.  Having found that Righthaven lacked standing to maintain its suit, the district court was not permitted to use "hypothetical jurisdiction" to reach a merits decision that is factually separate and apart from the determination of Righthaven's ownership in the copyrights at issue. *See Steel Co.*, 523 US at 101 ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning.").  Hoehn's arguments in support of the district court's opinion highlight the problems with the advisory opinion.

*First*, Hoehn argues that Righthaven simultaneously had a sufficient interest in the case to oppose his fact intensive motion on a fair use defense, but did not

have the prerequisite interest to actually bring the underlying infringement claim. (AB pp. 27, 30)   This is simply not the law.   Indeed, the Supreme Court specifically rejected the use of "hypothetical jurisdiction" and has made clear that the judicial authority of all federal courts is limited by the "threshold jurisdictional question: whether respondent, the plaintiff below, has standing to sue." *Steel Co.*, 523 US at 102.

***Second***, Hoehn's argument that standing is a separate issue from subject matter jurisdiction is inapt in the present case.   (AB p. 26)   Citing to *Flast v. Cohen*, Hoehn argues that standing refers only to the plaintiff's ability to bring a suit, whereas the jurisdictional question is focused on the ability of the court to provide relief to any plaintiff.   *Id*.   The argument misstates the holding and language of the Supreme Court.

In *Flast*, the Supreme Court found that a taxpayer had sufficient standing to challenge spending of tax receipts on religious education in violation of the First Amendment's Establishment Clause based on the nexus between the taxpayer's injury and the alleged Constitutional violation.   *Flast v. Cohen*, 392 US 83 (1968). In its analysis, the Supreme Court made clear that the jurisdiction of the federal courts is "constitutionally restricted to 'cases' and 'controversies.'"   *Id*. at 94.   In reversing the lower courts, the decision focused on the standing aspect of the jurisdictional limits, emphasizing that "in terms of Article III limitations on federal

court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution. It is for that reason that the emphasis in standing problems is on whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy,'" *Id*. at 101.

Here, the district court (incorrectly) found that Righthaven's stake in the litigation (its ownership of exclusive rights) was insufficient for it to maintain its case against Hoehn. (EOR 28 p. 10)  Having decided that Righthaven could not enforce the rights asserted in the lawsuit, there was no continuing "case or controversy" between the parties before the district court and its jurisdiction over their dispute was extinguished.

***Third***, Hoehn argues that the district court properly moved to the fair use defense because the "jurisdictional issue and the merits are inextricably intertwined." (AB p. 28)  Hoehn's citation to *Nippon Steel Corp*. is misplaced.  In *Nippon*, the Federal Circuit distinguished Steel Co. to consider the merits of plaintiff's claim instead of simply resolving the jurisdictional challenge because in that "unusual case" the jurisdictional issue could not be "resolved without considering and deciding" the merits question — whether or not the Department of Commerce's actions were within its authority.  *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1353 (Fed. Cir. 2000).  If the actions were not within the

15

authority, the International Trade Commission had jurisdiction to enjoin the Department of Commerce; if the actions were authorized, the ITC would have jurisdiction. *Id.*

In contrast, Hoehn argues that determining Righthaven's ownership of the copyright interest in the work required the district court "to evaluate the merits" of the infringement claim and his fair use defense. (AB p. 28) This is absolutely incorrect; neither a finding of infringement nor a finding of fair use would be necessary to evaluate Righthaven's ownership of the copyright in the work. Righthaven's ownership of sufficient exclusive rights in the work depends on an evaluation of the transfers by which Righthaven acquired an interest in the work. (*See* Section II, *supra*) In contrast, the evaluation of Hoehn's infringement and affirmative defense of fair use turns on facts regarding Hoehn's copying and the nature of the work. (*See* Section III.B, *infra*) Hoehn's fair use defense clearly requires the evaluation of facts completely irrelevant to the jurisdictional dispute raised by his motion to dismiss, and its outcome is not determinative of the jurisdictional issue in any way. Thus, there is no "identity between the 'jurisdictional' issues" and the fair use issues. *But see Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 735 (9th Cir. 1979) (same disputed facts formed basis of jurisdiction and merits of claim).

*Finally*, Hoehn argues that courts routinely reach summary adjudication after finding no subject matter jurisdiction. (AB p. 29) His citations are inapposite. See *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) (overturning mootness dismissal of class action); Rattleskanke Coalition v. E.PA., 509 F.3d 1095, 1102 (affirming dismissal based on jurisdictional/standing grounds); *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009) (noting that the "district court's analysis improperly conflated the threshold standing inquiry with the merits" and overturning subject matter dismissal but independently finding failure to state a claim); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1012 (9th Cir. 2000) (affirming summary judgment finding that claims were "barred by the applicable statute of limitations or" without merit). Hoehn's argument fails to provide any authority that would allow a district court to reach a separate merits issue after determining that the plaintiff lacks sufficient standing to bring suit.

The procedural posture of the case was clear upon the district court's (erroneous) determination regarding Righthaven's standing; without standing there was no jurisdiction to continue to decide the case before the court, and the subsequent decision regarding Hoehn's fair use was an improper advisory opinion.

122166.2

**B.** **The District Court's Analysis of Hoehn's Fair Use Defense Was Clearly Erroneous.**

In its decision on the merits of Hoehn's "fair use" defense, the district court improperly evaluated the complete online copying of the work by Hoehn and wrongly determined that the four factor test favored Hoehn's use. The identical copy of the protected material was not transformative or non-commercial, the entire copying of the work weighs strongly against fair use and was substantially more than necessary for Hoehn's averred intent to promote discussion, and the copy acted as a direct substitute for the original in the online marketplace.

**1.** **Hoehn's Copying and Reproduction of the Entire Work at a Different Online Location was not Transformative and Was Commercial.**

The district court held that Hoehn's use was non-commercial/non-profit and applied a strong presumption in favor of fair use under *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449 (1984). (EOR 28 p. 13) However, unlike the personal recording devices present in Sony, Hoehn's copying and reproduction to an online forum created free copies of the copyrighted work for each person that visited the online forum where he posted the work.

Instead, this Court's analysis in *A&M Records, Inc. v. Napster, Inc.* is instructive. In that case concerning online copying of copyrighted works, this

18

Court affirmed that "[d]irect economic benefit is not required to demonstrate a commercial use."  239 F.3d 1004, 1015 (9th Cir. 2001).  Nor was a use transformative "when an original work is merely retransmitted in a different medium."  *Id.*  Instead, the copying and transmission of works to third parties who would ordinarily be required to pay for the works was considered to be "repeated and exploitative copying."  *Id.*

Here, Hoehn copied the opinion article from the *Las Vegas Review Journal*, that had been posted online at its website, and posted it online at his forum of choice.  (EOR 1, Exh. 1 p. 2, Exh. 2. pp.1-2)  Rather than access the copyrighted work online at the *Las Vegas Review Journal's* website, Hoehn's reposting on the madjack.com website transmitted copies for any user who came upon his post.

*First*, Hoehn argues that his reposting was non-commercial because he could not economically profit from the post and that Righthaven had conceded this issue. (AB p. 6)  However, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 US 539, 562 (1985). Hoehn republished the article and gave it away for free without paying for a license or allowing the newspaper to receive its customary payment.  Moreover, Righthaven did not concede that Hoehn's work was non-commercial; it clearly

stated that his ability to receive a direct monetary benefit was immaterial to the analysis. (EOR 13 p. 9). Hoehn's copying gave the work to other users who would otherwise be required to pay for it (*e.g.* by viewing advertisement on the newspaper's website or purchasing a copy of the newspaper). This is not a fair use. *Napster*, 239 F.3d at 1015.

**Next**, Hoehn further argues that his reproduction of the article was transformative because it copied the entirety of the article into his online discussion. (AB pp. 7) This argument completely misses the point of the inquiry — by republishing the work in the same online medium, Hoehn did not change the work whatsoever. He republished an entire work from the newspaper's website to provide the article's information and opinions and to foster the same discussion the article itself was intended to stoke. Hoehn did not copy the work to "to rebut the personal attack upon [the subject] and make a political comment about [the publisher]." *But see Hustler Magazine, Inc. v. Moral Majority, Inc*., 796 F.2d 1148, 1153 (9th Cir. 1986). Nor did he repurpose the work as part of an online index for "improving access to information." *Perfect 10, Inc. v. Amazon. com, Inc.*, 508 F. 3d 1146, 1165 (9th Cir. 2007); *see also Kelly v. Arriba Soft Corp*., 336 F. 3d 811 (9th Cir. 2003). Nor was he simply making a personal copy for later viewing. *Sony,* 464 U.S. 417, 449 (1984). Hoehn's use was not solely personal,

did not change the message, and did not have a different purpose; as such it was not a transformative "fair use."

The complete copying of the entire work onto a third party's website was neither "non-commercial" nor "transformative." The district court's contrary finding and resultant presumption in favor of fair use was clearly erroneous.

### 2. The Nature of the Work Weighed Against Fair Use.

The district court found that the nature of the work did not weigh against a finding of fair use. (EOR 28 pp. 14, 16) However, The "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality" and the reuse of an "author's individualized expression" is not necessary to disseminate factual material. *Harper*, 471 U.S. at 547 (1985). It is undisputed that the work contained significant amounts of creative work in its expression of opinion, and that Hoehn used the work in its entirety. This factor weighs against fair use.

### 3. The Amount and Substantiality of the Use Weighs Heavily Against Fair Use.

Although the district court did recognize that Hoehn's wholesale copying weighed against a finding of fair use, Hoehn argues that this was mitigated by the "transformative nature" of the use. (AB p. 11) Hoehn's wholesale copying of the work was not transformative (as discussed above), nor was it necessary for the online discussion of political problems in California and Illinois that appeared in a

fraction of the posts following Hoehn's republication of the article.  (*See* EOR 8 Exh. D)  Hoehn could have relayed the pertinent facts or posted a link to the original article in order to foster this discussion.

Instead, Hoehn decided to take the work without payment and republish it. This factor also weighs against a fair use finding.

### 4. The Affected Market (for work, not for Righthaven; direct competition for online viewership; disastrous if allowed to proliferate)

The district court failed to weigh the impact that repeated instances of Hoehn's complete copying would have on the market for the article, and it improperly required Righthaven to produce evidence of present harm caused by Hoehn's copying.  (EOR 28 pp. 15-16)  After showing that the work was being exploited online and showing that Hoehn's copying was a direct substitute for the article, Righthaven had sufficiently shown that the market for the work was being harmed.  *See L.A. Times v. Free Republic*, 54 U.S.P.Q.2d 1453, 1469-71 (C.D.Cal. 2000) (plaintiff attempting to exploit the market for viewing their articles online had shown sufficient harm by defendant's posting of text from articles online); *see also Los Angeles News Serv. v. Reuters Television Int'l, Ltd*., 149 F.3d 987, 994 (9th Cir. 1998) (provision of news content by third party "would result in a

substantially adverse impact on the potential market for the original works" such that proof of lost sales was unnecessary).

Without any authority, Hoehn asserts that Righthaven was required to show some damage to its market, rather than the market for the article.  (AB pp. 14-15) Righthaven met its burden by showing that the work was being exploited online prior to Hoehn's infringement and that his complete copying was an online substitute for the original.  (EOR 13 p. 13-14)  This factor weighs against fair use.

As a result, each of the fair use factors weighs against a finding in favor of Hoehn on summary judgment.  The article was copied in its entirety, rather than summarized and linked to; the copy was republished for exactly the same discussion and informational purposes as the original publication; the work acted as an online substitute for the newspaper's publication; and the work contained significant creative elements.  The district court's weighing of these factors to find fair use was a reversible error.

## IV.   **CONCLUSION**

The district court did not implement the clear intent of the parties to transfer "all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present and future infringements."  Instead, it treated their transfer and license back as a nullity.  This decision should be reversed.

Having found that Righthaven had no standing to pursue copyright claims against Hoehn, the district court had no standing to continue to the merits of the case.  Instead, it proceeded to Hoehn's factually deficient fair use defense and came to the inexplicable conclusion that the copying: of the entire work from the newspaper's website to one of Hoehn's choice; to foster the same sort of discussion the opinion article was designed to generate; and in a way that provided the creative work without customary payment, was a "fair use."  This decision should be also reversed.

Righthaven respectfully requests that this Court reverse the district court's order dismissing its case for lack of standing and granting summary adjudication on Hoehn's fair use defense.

DATED:  June 22, 2012          Respectfully submitted,

                              MILLER BARONDESS, LLP


                    By:   /s/ Erik S. Syverson
                          ERIK S. SYVERSON
                          Attorney for Appellant-Plaintiff Righthaven
                          LLC

## <u>CERTIFICATE OF WORD COUNT</u>

I certify that the text of Appellant's Reply brief is presented in 14 point Times New Roman font and consists of 5,518 (excluding tables and caption page) words as counted by the Microsoft Office Word word processing program used to generate this Reply Brief.


Dated:  June 22, 2012              Respectfully submitted,



/s/ Erik S. Syverson
ERIK S. SYVERSON
Attorney for Appellant-Plaintiff
Righthaven LLC

122166.2