1  STEVEN A. GIBSON
   steven.gibson@cox.net
2  *NON-PARTY, IN PRO PER*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>WAYNE HOEHN, an individual,<br><br>        Defendant. | Case No.: 2:11-cv-00050-PMP-RJJ<br><br>**NON-PARTY STEVEN A. GIBSON'S OBJECTION TO RECEIVER'S NOTIFICATION TERMINATING RIGHTHAVEN LLC'S CHIEF EXECUTIVE OFFICER** |

Non-party Steven A. Gibson ("Gibson"), appearing *in pro per*[1], hereby objects to Receiver Lara Pearson's ("Receiver's") Notification Terminating Righthaven LLC's ("Righthaven's") Chief Executive Officer ("CEO") insofar as said notification applies to Gibson.

This Objection is based upon the Memorandum of Points and Authorities incorporated herein and on any other matter this Court wishes to take into consideration.

---

[1] While Gibson is a licensed attorney and a partner with Dickinson Wright PLLC, he is here in an individual capacity and Dickinson Wright PLLC is not appearing as legal counsel, although, for purposes of convenience associated with this proceeding only, Gibson accepts electronic notice by the means associated with Gibson with this Court through his CM/ECF login.

-1-

## *MEMORANDUM OF POINTS AND AUTHORITIES*

**I.     INTRODUCTION**

Despite all of the negative personal attacks in the blogosphere and the less than, in my opinion, entirely fair and balanced reporting by the Las Vegas Sun, Righthaven has brought to fore some critical issues: (a) the scope of *Silvers v. Sony Pictures Entm't Inc.,* 402 F.3d 881, 884 (9th Cir. 2005), and (b) the ability of courts to decline subject matter jurisdiction and then continue to rule on fair use, attorneys' fees and the appointment of receivers. Righthaven has been famously covered by a myriad of publishers including one recent ABA Journal article asking whether Righthaven was, in fact, right. The American system of justice requires that if this Court did not, in fact, have jurisdiction to rule on attorneys' fees and/or appoint the Receiver, then the Ninth Circuit be allowed to address that possible difference of opinion. Otherwise, a fundamental precept of justice will be subverted.

Indeed, precluding justice is hardly just. Attempting to prevent the appellate process from coming to full fruition is not a just goal and hardly within the realm of equitable action. The right of appeal is a fundamental linchpin of our democratic structure. It would be an affront to the essential foundation of the U.S. judicial system if this Court would permit the Receiver to subvert an appellate process that questions this Court's very jurisdiction to have even appointed the Receiver. This honorable Court is above the anti-democratic result of not allowing its rulings to be subject to appellate review.

While the Receiver has appointed new appellate counsel, the Receiver has questioned the propriety of the appeal itself – which is no surprise given that the appeal draws into question the propriety of the Receiver. Indeed, new appellate counsel was formerly adverse to Righthaven and made no secret of his anti-Righthaven feelings. To have such counsel now be Righthaven's purported advocate is a tragic, unjust irony.

Let's call a spade a spade: the Receiver, joined by Mr. Randazza, does not want to have counsel chosen by me (the manager of the manager of Righthaven) make oral argument before the Ninth Circuit. The Receiver has chosen anti-Righthaven counsel who, no doubt, will either

1  dismiss the appeal or may otherwise not make as robust oral argument as current appellate
2  counsel.
3  While this objection is focused directly on the subject of the Receiver's attempted termination of me as CEO (as I do not represent Righthaven and am before this Court in my personal capacity only), perhaps the most salient notion is that equity should permit Righthaven counsel to finish the appellate process and make oral argument (and allow me as CEO, or at least manager, to directly engage counsel to do so).  Oral argument is effectively the only real step left in the appellate process and it is unfathomable how not allowing the judicial process to proceed with Righthaven counsel appearing before the Ninth Circuit would be wrongful, unjust or inequitable (particularly when no Righthaven assets are being used in the process).

***Regardless, and even more appalling, the Receiver, in its notification, has not followed this Court's rules regarding notice and hearing and, as such, the Receiver's acts ought not be given effect without the Receiver following this Court's rules.***

Independently, *the Receiver has acted well outside the scope of her authority*.  The Court empowered the Receiver to deal with Righthaven's intellectual property – and that is all.  Indeed, the Receiver has concluded her business with respect to same.  The Court did not generally order that the Receiver do more.  The Receiver's belief that she is generally in charge of Righthaven is not consistent with this Court's order.  As such, the Receiver has acted outside her authority and, frankly, the termination of the receivership is proper, particularly as this receiver has demonstrated a willingness to ignore this Court's rules and pursue an agenda well outside the scope of her equitable mandate.

Independently, Righthaven has clearly been prejudiced in 2012 by the inexplicable non-appearance, and non-withdrawal, of Righthaven's legal counsel (the only one who can appear on behalf of Righthaven as I am not attorney of record).  Basically, Righthaven has been left utterly defenseless by the inexcusable absence of counsel.  To have the Receiver try to further prejudice the cause of justice by precluding Righthaven appellate counsel from simply making oral argument would be inequitable, to say the least.

If this Court were to now expand the Receiver's authority, query what equity would require. As expressed to this Court in other proceedings, unless something untoward has occurred, there should remain some Righthaven furniture and equipment in storage. Righthaven has no cash. If this Court exercises its understandably broad discretion to empower the Receiver to liquidate the tangible assets as it has empowered the Receiver to liquidate the intangible assets, then there should be no objection (other than this Court's jurisdiction remains in question and the subject of appeal). However, there is nothing more for the Receiver to manage or address other than to frustrate the judicial appellate process on an unwarranted basis. Indeed, the Receiver should know exactly where the remaining tangible assets of Righthaven can be found.

No Righthaven assets are being used to compensate appellate counsel on the appeal. As such, there is nothing for the Receiver to concern herself with other than to perhaps pursue a curious path of trying to prevent oral argument before the Ninth Circuit.

Defendant has already attempted, and failed, to dismiss the appeal based upon the fact that Mr. Mangano failed to perform. The Ninth Circuit denied the motion to dismiss obviously thereby expressing its interest in having the appeal proceed.

*Even if the Receiver's termination of me as CEO was somehow within her authority and done within the parameters of permitted procedure, the Receiver's position that that somehow divests me of authority would be wrong. A limited liability company is ultimately governed by its members and the members have chosen Net Sortie Systems, LLC ("Net Sortie") as its statutory manager. I am the manager of Net Sortie. While the manager manages the CEO, in the absence of a CEO, the manager would assume management of all affairs of Righthaven.* As such, until the Receiver gains this Court's authority, if ever, to also effectively terminate me as manager and then somehow also terminate the rights of the remaining members to have Righthaven governed by its members (as member-managers), then the Receiver's conclusion that I no longer have any authority is simply wrong.

The Receiver's belief that the attempted transfer of what this Court determined were copyrights not held by Righthaven negates the vitality of the appeal is simply wrong. If the copyrights were indeed transferred, the right to pursue accrued actions was not and certainly the

-4-

1  rights in this litigation were not transferred. That would have been an entirely wrongful and
2  inequitable result.
3       This Court's jurisdiction to have entered attorneys' fees awards and to thereby give rise
4  to the Receiver remains the subject of vibrant appellate dispute. As this honorable Court surely
5  recognizes that there are at least serious questions posed by these jurisdictional questions, equity
6  argues in favor of permitting the vetting of that issue before the Ninth Circuit. It is the just
7  result.

9  II.  **STATEMENT OF FACTS**
10       The Receiver was appointed by this Court as the receiver of "Plaintiff Righthaven LLC's
11  intellectual property". (Doc. #62-10).
12       The Receiver has issued its Notification, Doc. #92 (the "Notification") terminating me
13  without any notification of hearing. In the Notification, the Receiver terminated Miller
14  Barondess as legal counsel for Righthaven.
15       Mr. Randazza, counsel for Defendant, issued a statement to the press arising out of the
16  Notification that he looks forward to having a drink in the context of Righthaven v. Gibson. See
17  Exhibit 1.
18       The Ninth Circuit only has oral argument to hear on the appeal of this case as a matter of
19  Ninth Circuit record. Also as a matter of Ninth Circuit record is the denial of Appellee's motion
20  to dismiss and the granting of Appellant's motion to correct certain defects of prior failings of
21  Mr. Mangano (see Exhibit 2), unwithdrawn legal counsel of Righthaven whose whereabouts are
22  unknown (See Exhibit 3, a declaration previously filed with this Court in another Righthaven
23  matter).
24       The Receiver has appointed Mr. Allen Lichtenstein as Righthaven legal counsel without
25  any notice of hearing and without this Court's permission. Mr. Lichtenstein has appeared in the
26  Ninth Circuit in the appeal of this case. (See Exhibit 4).
27       I remain manager of Net Sortie (see Exhibit 5) who remains manager of Righthaven (see
28  Exhibit 6).

## III. ARGUMENT

### A. The Receiver Did Not Comply With This Court's Rules In Issuing Its Notification

The Receiver has fundamentally failed to abide by this Court's rules regarding reports of receivers and has failed in particular with respect to the Notification. Local Rule 66-4 governs reports of receivers. ***There does not appear to be any evidence that the Receiver has complied in any respect with the requirements of report filings and hearings as required by LR 66-4.*** There appears to have been no hearing in which Righthaven has been notified with respect to any report(s) filed, if any, pursuant LR 66-4 and there appears to have been no hearing at all regarding the approval or disapproval of the Receiver's report, if any, or the determination of whether the "receivership may continue".[2] Indeed, as the Receiver's liquidation of the intellectual property assets, as they were, has concluded, the continuation of the receivership would appear dubious at best.

Moreover, at least with equal seriousness, ***the Receiver's further report by way of the Notification to the Court failed to also meet with Local Rule 66-5*** requiring the giving to "all interested parties and creditors at least fourteen (14) days notice of the time and place of hearings of . . . (a) All further reports of the receiver . . .". There has been no notice of hearing of whatsoever nature. Indeed, it appears as if the Receiver has altogether ignored her duties under the Local Rules. For these reasons alone, the acts of the Receiver, at a minimum, should be subject to the notice and hearing requirements and, as a Court-appointed arm, the Receiver should be held to the highest standard; the Receiver's failure to follow court rules draws into serious question the continued propriety of this Receiver as the receiver. Certainly, the Receiver made, for the first time, efforts to notify me directly at my work email address of the Notification. As such, the Receiver has demonstrated an ability to find the means to provide me notice of any hearing – but, as an interested party presently, I have not received any hearing notice or any prior communication from the Receiver (other than by way of Mr. Mangano prior to February). Also as an interested party, and as Mr. Mangano's whereabouts are unknown, I

---

[2] As Mr. Mangano has not been communicative with me since February, 2012, it is possible that he is aware of something that I am not particularly as I am not counsel and therefore have not received notifications as counsel would.

certainly desire a hearing so that finally someone interested in something other than Mr. Randazza's agenda[3] is before the Court.[4]

While the Receiver did not inform me of same, I learned that the Receiver hired Mr. Lichtenstein as Righthaven counsel for the appeal.  ***It should be noted that the Receiver, yet again, failed to follow this Court's rules in hiring Mr. Lichtenstein.***  Local Rule 66-6 clearly provides that "[a] receiver shall not employ an attorney . . . without first obtaining an order of the court authorizing such employment."  It does not appear that this Court has issued any order authorizing such employment.

Moreover, the Receiver's choice of Mr. Lichtenstein is dubious.  Mr. Lichtenstein was, prior to withdrawing and/or substituting out of the case in the face of a Rule 11 motion, adverse to Righthaven when he previously represented a Righthaven defendant.  As such, there is at least circumstantial evidence that Mr. Lichtenstein has a motivation that is not one of zealous advocacy of Righthaven's position.   Indeed, I would not waive the conflict of interest if somehow Mr. Lichtenstein was an appropriate candidate to represent Righthaven.  He was adverse to Righthaven on the same subject matter which would appear to pose a conflict, arguably not waivable.  I suspect that Mr. Lichtenstein will do nothing more than dismiss the appeal – a mere tactic driven by Mr. Randazza to subvert the clear desire of the real Righthaven to have vindication of Righthaven's interests by way of appeal.

In addition, the Receiver's supervision of appellate counsel is dubious as the Receiver's power is at some level the subject of the appeal.  If this Court does not have jurisdiction, then the argument goes that this Court did not have the constitutional power to award prevailing party attorneys' fees or do anything else beyond dismissal.  For the Receiver to hire and supervise

---

[3] Mr. Randazza has leveraged the Righthaven experience tremendously in the press and his vituperative remarks in the press and before this Court demonstrate, in my opinion, an approach of more than merely a scholarly, jurisprudentially-based examination of the merits of the issues.

[4] Mr. Randazza has made numerous accusations before the Court that have gone unattended to by Mr. Mangano and to the extent that such accusations are relied upon by the Court in this present context, I would welcome the opportunity to address same.  Indeed, he was recently quoted in the press as looking forward to having a drink in the advent of a misguided lawsuit of Righthaven vs. Gibson.

1 appellate counsel, the Receiver is effectively having to instruct counsel to argue successfully that
2 the Receiver should not be in power.  The Receiver is thus in a massive conflict of interest as is
3 counsel appointed by the Receiver.  There simply is no need for these issues.  Present counsel is
4 fully capable of making the oral argument and there is simply no need for the Receiver to
5 interfere in this process.  Of course, this assumes that Mr. Lichtenstein will in good faith even
6 attempt an argument rather than merely dismiss the appeal.

### B. Even if the Receiver Followed Procedure, the Receiver Is Acting Outside Its Authority

As the Receiver was appointed by this Court as "Receiver of Plaintiff Righthaven LLC's intellectual property" and as the Receiver's job has concluded with respect to effecting the transfer and/or other liquidation of Righthaven's intellectual property, the further acts by the Receiver to terminate me as CEO, to hire Mr. Lichtenstein, to interview and attempt to procure contingency lawyers to engage in litigation not concerning the intellectual property and to take further acts as if the Receiver is generally in charge of Righthaven is both outside the scope of the Receiver's authority, unnecessary and inappropriate.

The role of the Receiver is limited.  It is clear that the only authority sought by Hoehn from the Court was to have, effectively, the Receiver appointed to address, more or less, the liquidation of Righthaven's intellectual property.  Hoehn has clearly argued that the scope of the Receiver's role would be with respect to the Court "to appoint a receiver for Righthaven's intellectual property assets" (Doc. #62, p. 4).  As already expressed, the Order generally provided for the Receiver to be the receiver of Righthaven's intellectual property assets.[5]

---

[5] While the coverage of the Order is specifically with respect to intellectual property, there was inserted a reference to the delivery of "tangible assets".  First, as Righthaven has no ability to pay for delivery, delivery would not be possible.  It is my understanding that Mr. Mangano clarified with the Receiver the locations of the tangible assets that was also addressed to Mr. Randazza in a judgment debtor's examination.  To date, there appears to have been no attempt by the Receiver to work with the U.S. Marshal to obtain the tangible assets.  To the extent that the Receiver desires to do so, the Receiver should have all the information required to obtain said tangible assets.  This should be a simple logistical matter that ought not require any further court attention.  Note further that Mr. Randazza took whatever funds were left in the Righthaven bank account further establishing the lack of funds possessed by Righthaven.

However, it is entirely unclear how preventing the appellate process to proceed (either by terminating me, present appellate counsel or hiring (without authority) Mr. Lichtenstein), so long as no Righthaven assets are used to do so, is somehow either a just cause for the Receiver to pursue, within the Receiver's authority or equitable in nature.  Rather, it appears that the Receiver is following the agenda of Mr. Randazza who apparently has a very serious concern that the Ninth Circuit will rule in Righthaven's favor and unravel, finally, his vigorous press campaign, his personal attacks and any right to legal fees he currently enjoys.  Unlike Mr. Randazza, Righthaven generally has made a conscious decision to not litigate matters in the press, to not engage in personal attacks either before the courts or otherwise and to address the legal arguments in a clinical fashion.

Independently, as addressed more fully, *infra*, I remain the manager of the manager of Righthaven and I should have the right to hire or terminate Righthaven counsel.  By way of this Objection, I hereby seek the Court's recognition that I have the right to terminate, and so terminate, Mr. Lichtenstein's so-called representation of Righthaven and that any further act undertaken by Mr. Lichenstein will not be undertaken with proper authority.  Indeed, Mr. Lichtenstein's confusing appearance before the Ninth Circuit should subject both the Receiver and Mr. Lichtenstein to liability.  Mr. Lichtenstein should have known that the Receiver did not follow this Court's rules in having himself employed as counsel and therefore his appearance before the Ninth Circuit is *per se* malpractice and unprofessional.  Mr. Lichtenstein should also have known that I remain the manager of the manager of Righthaven and therefore retain authority to conduct the affairs of Righthaven (which, as made clear, merely constitute the interface with appellate counsel to conduct the appeal as Righthaven has literally no other activity).[6]

---

[6] The Receiver has made mention that a malpractice action against Mr. Mangano may be appropriate.  I would not argue with same and would be delighted to work with a newly-appointed receiver (one that follows this Court's rules) to pursue same to the extent that this Court believes that another receiver is required.

### C. *Regardless, the Receiver's Attempted Prevention of Oral Argument Is Inequitable, Inefficient And Curious*

Assuming *arguendo* that the Receiver was vested with general power over all the affairs of Righthaven regardless of their nature, it is inexplicable that the Receiver, unless pursuing a curious agenda, would be acting appropriately or equitably in attempting to preclude appellate counsel, acting on my instructions on behalf of Righthaven, from making oral argument.

By the time the Receiver issued the Notification, virtually all appellate briefing has been completed. Righthaven appellate counsel filed a motion to late file a reply brief given the failure of Mr. Mangano to do so and attached the proposed reply brief. In theory, as Mr. Randazza opposes such motion to late file, Righthaven appellate counsel could file a reply brief, but that would be elective. Moreover, given that the reply brief is elective in and of itself, nothing now precludes oral argument. As such, the only thing remaining is the Ninth Circuit to set a hearing date and hear from the litigants. The oral argument itself should not absorb more than a couple of hours. Therefore, appellate counsel merely has a few hours of oral argument and it is hoped not more than a few hours of preparation time in addition. Therefore, the Receiver appears to be attempting to inequitably prevent[7] a few hours of appellate counsel work that in no manner adversely affects Righthaven or its creditors – unless, of course, Righthaven succeeds in appeal in which case Righthaven should have no judgment creditors.

Therefore, query what positive, equitable agenda is achieved by preventing the appeal to come to a conclusion. Arguably, one agenda only: Mr. Randazza's personal invective and attempt to not have his attorneys' fees rulings overturned. However, preventing justice is hardly a means to justice. It is black-letter law that the purpose and parameter of a receiver's role is equitable in nature. Therefore, even if the Receiver had the power and authority to terminate me as CEO and therefore my instructions to appellate counsel, how subverting the appellate process is equitable is unfathomable.

---

[7] I understand that if Mr. Lichtenstein is appropriately instituted as counsel that he, in theory, could make oral argument, but query why Mr. Lichtenstein as opposed to appellate counsel who drafted, at least in part, the briefing before the Ninth Circuit and clearly is attempting to vindicate the real interests of Righthaven.

Independently, there is an amicus brief filed in favor of Righthaven that squarely addresses this Court's jurisdiction to decide the fair use issue (after this Court decided that it did not, in fact, have subject matter jurisdiction over the case at all). Presumably, permitting not only Righthaven to pursue appellate decision, but other amicus, would maximize an equitable result.

Allowing this particular appeal to move forward is also judicially efficient. First, the appeal is almost done. Second, if the Receiver's termination of me as CEO were to stand, then such action in this Court, in theory, ought to provide me with an opportunity to appeal. I would, also in theory, have the right to appeal on the very same basis as Righthaven is currently appealing: that this Court, having declined subject matter jurisdiction, no longer has jurisdiction over this case, did not have jurisdiction to award prevailing party attorneys' fees and thus did not have jurisdiction that gave rise to the Receiver, *i.e.*, the termination was ultimately grounded upon this Court's jurisdiction, which it declined. Another view is that the Receiver's authority is grounded upon this Court's rightful continued assumption of jurisdiction. Rather than Righthaven pursuing the appeal, it would be myself as an interested and affected party, but the issue would be identical. Of course, if I were to win the appeal, then the result would by definition be the same with this Court's actions in the absence of subject matter jurisdiction overturned. On the other hand, if my aforementioned theory of appeal is wrong and if Mr. Randazza's hoped-for drink-inducing event occurs whereby the Receiver instructs counsel to sue me on some strange malpractice action, a defense of mine will surely be that the underlying jurisdiction of this Court and thus ability to even appoint the Receiver was inappropriate (one of the same issues presently on appeal). Thus, having the Ninth Circuit set oral argument and have counsel actually advocating strongly the absence of this Court's jurisdiction is the most efficient path to have ultimate resolution of the relevant issues.

### D. The Ninth Circuit Appears To Desire That the Appellate Process Conclude

The Ninth Circuit appears to be proceeding towards oral argument. I trust that this Court can take judicial notice that the Ninth Circuit, at times, rules on appeals without undertaking oral argument. Indeed, oftentimes the Ninth Circuit will rule on appeals fairly rapidly on the briefs

1  submitted. Despite Mr. Mangano's failures to file a reply and to also fail to abide by other
2  procedures, the Ninth Circuit has permitted current appellate counsel to correct certain of Mr.
3  Mangano's failures and has not yet ruled, presumably anticipating oral argument. This
4  permission was even in the face of a very aggressive motion to dismiss on the part of Mr.
5  Randazza wherein he advanced, illucidly, tangential matters such as an argument to pierce the
6  corporate veil. Without need for Righthaven to even brief a reply, the Ninth Circuit granted
7  Righthaven's motion to have Mr. Mangano's failures corrected and denied Mr. Randazza's
8  motion to dismiss. Clearly, if the Ninth Circuit was of a mind to not permit the appeal to move
9  forward, granting the motion to dismiss would have been an option. Also before the Ninth
10 Circuit is the amicus brief which sets forth that not merely Righthaven counsel believes that this
11 Court did not have jurisdiction to make further rulings after this Court declined jurisdiction.[8]

### E. The Appeal Is the Most Effective Path For Righthaven to Satisfy The Accounts of Non-Judgment Creditors

Practically, only if Righthaven succeeds on appeal will Righthaven be able to return to a going concern and thus satisfy the debts of non-judgment creditors; if Righthaven succeeds, then there should be no judgment creditors. While the Receiver presumably believes that funds might be made available through some form of malpractice action against Mr. Mangano or myself, that does not appear to be well-founded. Mr. Mangano's poor conduct, for the most part, happened after January, 2012 and may not create the damage structure the Receiver anticipates. As there was more than just a reasonable jurisprudential basis for every single Righthaven action, although courts have certainly held that the assignment structure was not legally sustainable, that does not mean there was malpractice. If that were true, then there would arguably be malpractice

---

[8] This also demonstrates the illucidity of the Receiver's drumbeat that the appeal is not going to be successful and that there was somehow malpractice in bringing the actions originally brought by Righthaven. It should be noted that some of the finest attorneys in the nation, including, without limitation, Harvard Professor Dale Cendali, of Kirkland & Ellis, drafted briefs on behalf of Righthaven carefully articulating the propriety of Righthaven's legal actions and underlying jurisprudential basis. To claim that malpractice exists would be an indictment as well of Judge Navarro's decision in another Righthaven case whereby Judge Navarro differed from other decisions in this district and assumed jurisdiction. Variant judicial decisions and the articulate, well-grounded briefing by established copyright counsel do not malpractice make.

1   every time one side loses an argument before the court.  As indicated, Righthaven has been
2   provided counsel by some of the best legal minds in the nation well-experienced in copyright
3   law.  The various courts that have ruled on Righthaven issues have varied significantly in their
4   jurisprudential positions.  Even the Ninth Circuit was split in the *Silvers* decision (7-4).  If
5   Righthaven is merely seen as having attempted to advance the law and clarify a fact-pattern
6   significantly stronger than the *Silvers* fact-pattern, then that does not constitute malpractice.  The
7   years that will be consumed and the unlikelihood of success on the merits of a malpractice action
8   make such strategy nothing more than a vehicle of harassment.

### F.  The Receiver's Belief that CEO Termination Negates My Authority Is In Error

Even if I am terminated as CEO, I remain manager of the manager and thus in a position of controlling authority to at least administer the appeal – presently the only "business" of Righthaven.  Righthaven does nothing now other than administer the appeal.  It does not conduct any business and has no revenue stream.  To the extent that this Court requires further assistance with the disposition of tangible assets, that would be some further Righthaven business.  However, a debtor's examination has already occurred where tangible assets were identified as were the location of those tangible assets.  However, despite no doubt having knowledge of same, the Receiver has apparently declined to take any action to liquidate such tangible assets.  As Righthaven has no funds, it is not in a condition to deliver to the Receiver a bunch of desks, chairs and the like.  In sum, termination of me as CEO does not negate my statutorily-granted authority as manager.  If the Receiver actually terminated me rightfully as CEO and acting as manager would subvert the spirit of the Receiver's actions, then that might be worthy of consideration.  However, that is not the case – particularly as I have not even had the opportunity to have a hearing before this Court on this issue to understand this Court's position.

### G.  The Receiver's Belief that Transfer of Copyrights Negates The Appeal Is In Error

To suggest that Righthaven's appeal is subverted by the attempted transfer of something associated with the copyrights is not legally grounded and certainly not what was anticipated by this Court when granting such attempted transfer.  I cannot believe that this Court would subvert the appeal by issuing such order.

### H. The Challenge To this Court's Jurisdiction In A Democracy Ought to Be Able to Proceed

The law that this Court, upon declining jurisdiction, no longer had jurisdiction to do such thing as award attorneys' fees is clear and therefore that issue at least poses a serious question that equity and justice require the Ninth Circuit hear.  In Righthaven's appellate brief, Righthaven set forth a very powerful jurisprudential basis for the proposition that this Court could not take further action after declining jurisdiction:

> Numerous courts from a variety of jurisdictions have held that there cannot be an award of attorneys' fees unless has jurisdiction over the action absent an award of fees as sanctions. *See Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216 (10th Cir. 2006) ("[T]he court having determined that it lacks subject matter jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.")(emphasis in original); *Hudson v. Principi,* 260 F.3d 1357, 1363 (Fed. Cir. 2001) ("This court and others have established that there cannot be an award of attorneys' fees unless the court has jurisdiction of the action."); *W.G. v. Senatore,* 18 F.3d 60, 64 (2d Cir. 1994) ("Where there is no subject matter jurisdiction to proceed with the substantive claim, as a matter of law 'that lack of jurisdiction bars and award of attorneys fees under [42 U.S.C. §] 1988.") (internal brackets omitted); *Johnson-Manville Corp. v. United States,* 893 F.2d 324, 328 (Fed. Cir. 1989) (finding a lack of subject matter jurisdiction barred fee award); *Lane v. United States,* 727 F.2d 18, 20-21 (1st Cir. 1984) (determining that a want of subject matter jurisdiction precluded an award of fees).
>
> Consistent with the decisions from other circuits, this Court has determined under at least two federal statutes that a lack of subject matter jurisdiction precluded an award attorney's fees. *See United States v. 87 Skyline Terrace,* 26 F.3d 923, 927 n.6 (9th Cir. 1994) (listing cases holding that "subject matter jurisdiction is a condition precedent to an award of fees under the EAJA"); *Branson v. Nott,* 62 F.3d 287, 293 (9th Cir. 1995) (declining to confer prevailing party status under 42 U.S.C. § 1988 where subject matter jurisdiction was lacking); *Clark v. Busey,* 959 F.2d 808, 810 (9th Cir. 1992) ("Subject matter jurisdiction to decide the merits of the underlying action is a condition precedent to an award of fees or costs under the EAJA.") (internal quotations omitted). Barring the recovery of attorney's fees under such circumstances is wholly consistent with this Court's finding that district court action beyond dismissal after subject matter is found lacking would be vacated as a nullity.
>
> In fact, this district court's entry of an award of attorneys' fees and costs should be vacated as a nullity given the Court's lack of subject matter jurisdiction. *See*

*Morongo Band of Mission Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1380-81 (9th Cir. 1988). Specifically, this Court has stated:

> If jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss . . . . If jurisdiction was lacking then the court's various orders . . . were nullities.

*Id.* This Court's proclamation in *Morongo Band of Mission Indians* is in agreement with decisional law from other jurisdictions, including that of the United States Supreme Court. *See American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 18 (1951) (requiring a district court to vacate judgment after having determined that the district court lacked subject matter jurisdiction over the suit); *see also United States v. 51 Pieces of Real Prop., Roswell, N.M.,* 17 F.3d 1306, 1309 (10th Cir. 1994) ("[A] judgment is void if the court that enters it lacks jurisdiction over . . . the subject matter of the action."); *Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp.,* 739 F.2d 798, 804 n.6 (2d Cir. 1984) ("[A] judgment entered by a court lacking in subject matter jurisdiction may not stand."). In sum, the foregoing authorities are in agreement that a district court's entry of relief following dismissal for lack of subject matter jurisdiction cannot stand.

The amicus brief also argued comparably that this Court, having declined jurisdiction, could not have continued to rule effectively on fair use:

> The district court should not have considered the merits of the defendant's motion for summary judgment due to Righthaven's lack of standing. *See Giddings v. Vision House Productions, Inc.*, 584 F. Supp. 2d 1222, 1229 (D. Ar. 2008) (declining to address the merits of summary judgment motion where plaintiff did not own copyrights at issue)*; see also* Charles Allan Wright & Arthur R. Miller, *et al.*, 13A Federal Practice & Procedure § 3531 (3d ed. 2011) ("The fear that unnecessary decisions will prove unwise is deepened by the belief that the functional needs of the adversary system require litigants who will be affected tangibly by the decision."). In the absence of subject matter jurisdiction, the court did not have the authority to adjudicate the claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment -- which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning."). This Court should vacate the portion of the district court's order that granted the defendant's motion for summary judgment. *See Orff v. United States*, 358 F.3d 1137, 1149 (9th Cir. 2005) (where subject matter jurisdiction was lacking, district court orders were vacated as "nullities"), *aff'd*, 545 U.S. 596 (2005); *California*, 215 F.3d at 1014 (vacating district court judgment in favor of defendant due to lack of subject matter jurisdiction).

I urge that my termination as CEO was singularly designed to do one thing: subvert the appeal as the only thing I am doing as CEO is directing appellate counsel. As such, allowing me

to continue as CEO and/or manager is effectively doing nothing more than permitting me to interface authoritatively with appellate counsel with respect to oral argument.

IV. **CONCLUSION**

For the foregoing reasons: (a) my termination of CEO should not be permitted; (b) at a minimum, a hearing should occur; (c) the Receiver's continued appointment should be drawn into serious question; (d) Mr. Lichtenstein should be immediately forced to withdraw from any representation; and (e) the oral argument before the Ninth Circuit should not be further subverted by the Receiver.

Respectfully submitted this 2nd day of July, 2012.

By: /s/ Steven A. Gibson
STEVEN A. GIBSON
*NON-PARTY, IN PRO PER*

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5 of this Court, I certify that on this 2nd day of July, 2012, I caused a correct copy of the foregoing **NON-PARTY STEVEN A. GIBSON'S OBJECTION TO RECEIVER'S NOTIFICATION OF TERMINATING RIGHTHAVEN LLC'S CHIEF EXECUTIVE OFFICER** to be served via CM/ECF to all parties including the Receiver and via United States Mail with postage pre-paid to the following parties:

Erik Swen Syverson, Esq.  
Miller Barondess, LLP  
1999 Avenue of the Stars, Suite 1000  
Los Angeles, California 90067

Allen Lichtenstein, Esq.  
3315 Russell Road, No. 222  
Las Vegas, Nevada 89120

/s/ Steven A. Gibson
Steven A. Gibson