Marc J. Randazza (Nevada Bar No. 12265)
J. Malcolm DeVoy IV (Nevada Bar No. 11950)
RANDAZZA LEGAL GROUP
mjr@Randazza.com
jmd@Randazza.com
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
Telephone: 888-667-1113
Facsimile: 305-437-7662
www.Randazza.com

Attorneys for Defendant,
*Wayne Hoehn*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WAYNE HOEHN, an individual,<br><br>Defendant. | Case No. 2:11-cv-00050<br><br>**DEFENDANT'S RESPONSE TO OBJECTION OF NON-PARTY STEVEN A. GIBSON** |

**DEFENDANT'S RESPONSE TO OBJECTION OF NON-PARTY STEVEN A. GIBSON**

Defendant Wayne Hoehn ("Hoehn"), through his attorneys, files this Response to the Objection of non-party Steven A. Gibson ("Gibson").

**I. Introduction**

Mr. Gibson is clearly upset. He had a vision of a company named Righthaven LLC ("Righthaven") that would monetize "quadrillions" of dollars worth of infringement, and it would make him fabulously wealthy (Exhibit A). Unfortunately, his plan had a number of flaws: despite being a seasoned intellectual property attorney, he created it in a manner that clearly contravened *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005). Gibson's implementation of this scheme also failed to account for the fact that some unauthorized uses of copyrighted works are blessed by Title 17 - most specifically Section 107 of the Copyright Act.

As Gibson's plan began to unravel, Righthaven began acting erratically, and some might say spitefully.  Rather than post supersedeas bonds for its substantial losses, Righthaven instead spent its money on fruitless appeals – likely racking up further debts and additional liability for attorneys' fees to Mr. Hoehn and numerous other prevailing defendants.  Righthaven is an empty husk of its former self, even losing its <righthaven.com> domain name and "RIGHTHAVEN" servicemark.  Like a dog that won't hunt, Righthaven just lies there snapping at anyone who walks by.  Before this doomed dog could do further damage to itself or others, the Court placed it into receivership (Doc. # 66).  The receiver, Lara Pearson ("the "Receiver") has acted as a merciful party should – putting the dog out of its misery, and trying to stop it from biting anyone else.  Unfortunately, Gibson's ego is so deeply intertwined with Righthaven that he can not let go, can not concede defeat, and cannot even act rationally.  This can be understood and forgiven, given the fact that he likely was counting his share of "quadrillions of dollars" at one point.  Yet now Gibson can only count Righthaven's winless record, making it the 2008 Detroit Lions of copyright litigation.

After the level of mismanagement Gibson presided over during his tenure as Righthaven's CEO, he should welcome the receiver's rightful termination of him as a blessing. Instead, he has appeared in this litigation without leave of the Court in order to assert control of Righthaven so that he can continue to use it for the purpose he has since its inception: An alter-ego to assume – and neglect – liabilities that he would never take on individually.  As set forth in this response, the Receiver has every authority to terminate Gibson and Righthaven's existing contracts.  And, as seen by Gibson's conduct documented herein, his termination is the Receiver's only sensible course of action.

**II. Argument**

   **A. <u>The Receiver Has Acted, and Is Acting, Within The Broad Scope of Her Authority.</u>**

In Hoehn's Motion for this Court to appoint the Receiver (Doc. # 62), Hoehn asked only that the Court appoint a receiver under NRS 32.010.  While Hoehn and the Court contemplated specific tasks for the Receiver, such as the auction of Righthaven's intellectual property and

tangible assets, there was no restriction placed on the Receiver's authority in the Court's order granting the motion (Doc. # 66). When presented with the opportunity to object this Court's appointment of the Receiver, Righthaven declined to do so (Doc. # 64); conversely, when Righthaven invited this Court to terminate the Receivership, the Court further declined to do so (Doc. # 83).

Under Nevada law and the precedent of this Circuit, receivers have broad and almost limitless power. Consistent with Hoehn's motion and this Court's order (Docs. # 62, 66), the Receiver is entitled to use these powers to their fullest extent. The Nevada Revised Statutes allow the appointment of a receiver to carry a judgment into effect, something that obviously needed outside assistance in this case. NRS 32.010; 21.240; *Bowler v. Leonard*, 70 Nev. 370 (Nev. 1954); *see Kraemer v. Kraemer*, 79 Nev. 287 (Nev. 1963). Unless specified by the Court, the powers afforded to the receiver are limitless. *Fullerton v. Second Jud. Dist. Ct. ex rel. Cty. Of Washoe*, 111 Nev. 391, 400 (Nev. 1995). There being no precatory language qualifying the extent of the Receiver's powers neither Hoehn's motion nor the Court's order granting it (Docs. # 62, 66), the Receiver is not constrained to the limited powers Gibson believes she holds. *Id*.

While there was a need for Righthaven to assign its intellectual property to the Receiver, this is due to the nature of copyright and trademark ownership, which are governed by title rather than mere possession. Hoehn sought, and this Court granted, the exact form of relief that has been prescribed by the U.S. Supreme Court and other Circuits for the transfer and disposition of intellectual property (Docs. # 62, 66). *Ager v. Murray*, 105 U.S. 126 (1881); *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009) (citing *Ager* and explaining the process for seizing intellectual property rights in order to satisfy a judgment); *Kenyon v. Automatic Instrument Co.*, 160 F.2d 878, 884 (6th Cir. 1947) ("It is no longer open to question that a receiver appointed by a court may execute an assignment of a patent owned by an insolvent debtor"); *Security-First Nat'l Bank v. Republic Pictures Corp.*, 97 F. Supp. 360, 369 (C.D. Cal. 1951) ("A method of foreclosure not being prescribed, the Court, in the exercise of its equity jurisdiction, could prescribe proper notice either by analogy to the sales on execution as to which

the state laws are followed or by devising a special procedure which satisfies the requirement of due process").

Following these procedures established by precedent was not intended to limit the powers of the Receiver, who was entitled to take possession of Righthaven's tangible property as well (Doc. # 62 at 9-10), and cannot be constructed as doing so.  Retroactively constraining the Receiver's powers would run contrary to the Receiver's duty to take control of the estate's property. *Frank Settlemeyer & Sons, Inc v. Smith & Harmer, Ltd.*, 124 Nev. Adv. Op. 98 (Nev. 2008).  Additionally, these full powers are necessary to fulfill the receivership's objectives of paying Rightaven's many creditors, and is the reason receivership was sought. *Fullerston*, 111 Nev. at 401.  To the extent other creditors may have claims against Righthaven, the Receiver has the lawful power to resolve those claims as well. *Jones v. Free*, 83 Nev. 31, 38 (Nev. 1967).  The Receiver's exercise in this case is consistent with sound public policy and judicial economy in light of the significant number of Righthaven's known creditors.

The Receiver also has full power to reject contracts detrimental to the receivership estate. *Jones* 83 Nev. at 39. This position is hardly unique to Nevada, but affirmed nationwide on matters of receivership. In *Peabody Coal Company v. Nixon*, the Eighth Circuit Court of Appeals confirmed the notion that a receiver may renounce and terminate contracts held by the entity placed into receivership. 226 F. 20, 22-23 (8th Cir. 1915), *accord Jones*, 83 Nev. at 38. "We think we may take judicial knowledge of the fate of contracts made by an insolvent railroad company which passes into the hands of a receiver and are not assumed by him. Such contracts are practically ended." *Kan. City S. R. Co. v. Lusk*, 224 F. 704, 706 (8th Cir. 1915).  This power is integral to the receiver's obligation to not operate a business at a continuing loss. *R.J. Reynolds v. Jones*, 54 F.2d 329 (8th Cir. 1931).

Finally, the Receiver is entitled to retain counsel on behalf of the receivership estate and bring claims against the incapacitated company's officers and agents. *See generally Mortimer v. Pac. States Sav. & Loan Co.*, 62 Nev. 142 (Nev. 1943); *State ex rel. Cameron v. Second Jud. Dist. Ct. ex rel. Cnty. Of Washoe*, 48 Nev. 198, 202 (Nev. 1924).  Indeed, Nevada's precedent

recognizes the Receiver's ability to take such positions to serve the receivership estate's best interests, or to prevent interference with its administration. *State ex rel. Sparks v. State Bank & Trust Co.*, 36 Nev. 526, 532 (Nev. 1913).  At this point, Gibson is like an intoxicated and enraged driver who repeatedly crashed a car into a wall.  It is time to take the keys away from him so that he at least stops doing further damage.  Then, it will be time to make him answer for the damage he did to the car and the wall alike.

The disposition of Gibson is not only necessary to ensure the administration of the receivership estate is not usurped, but action against him, and any unknown third parties involved with the formation and administration of Righthaven, will increase the pool of resources available to compensate Righthaven's creditors.

What Gibson conspicuously declines to address is his failure as CEO to comply with the Court's order requiring Righthaven to assign its intellectual property to the Receiver (Docs. # 62, 66).  Gibson's refusal to comply with this order remains unexplained. "An order issued to a corporation is identical to an order issued to its officers, for incorporeal abstractions act through agents." *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413, 417 (7th Cir. 1995); *accord N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 634 (9th Cir. 1977).  Despite this unapologetic non-compliance with Court orders, leading to this Court's transfer of Righthaven's copyrights to the Receiver under 17 U.S.C. § 201(d), Gibson now seeks relief from this Court that he wishes to have bind the other litigants in this case – but, characteristically, not upon him.

**B. Steven Gibson's Tenure as Righthaven's CEO Has Been an Unmitigated Failure, and His Removal is in the Company's Best Interests.**

To say that Righthaven has failed under Mr. Gibson's leadership would be an understatement.  The reason why Mr. Gibson seeks to take control of the company, however, is because he *is* Righthaven, and uses the company to engage in conduct that he would not dare undertake in the course of his normal job at Dickinson Wright PLLC, nor in his own name, given the fact that he had to have known the severe penalties he would face if the litigation failed.  This is no accident, as Mr. Gibson broadcast his intentions to monetize minor copyright infringements

<mark><mark><mark><mark><mark><mark><mark><mark><mark>

into "quadrillions"[1] of dollars in potential statutory damages far and wide since 2006 (Exhibit A). To achieve this goal, Gibson and his personal company, Net Sortie Systems LLC, created Righthaven along with Stephens Media, Gibson structured the arrangement so that he would have an unchecked stranglehold on the company's control (Exhibit B §§ 5.1, 5.8, 6.3 and at 13, identifying Gibson as manager of Net Sortie), as his powers as CEO would be restricted only by the Manager, Net Sortie – which he controlled (*id*.).

Gibson alone presided over the colossal mismanagement of Righthaven, engaging in conduct that would have resulted in his immediate termination at any company that he did not solely control. Some consequences of Gibson's management are, non-exhaustively, as follows:

1. Righthaven entered into a business model that was unlawful under Circuit precedent in *Silvers*, 402 F.3d at 881, despite being an intellectual property attorney with more than two decades' experience. (Doc. # 28)

2. Righthaven's model was so obviously contrary to the Copyright Act, specifically 17 U.S.C. §§ 106 and 501 that two additional courts where *Silvers* is not controlling law, the U.S. District Courts for Colorado and South Carolina, held Righthaven's business model to be unlawful. *Righthaven v. Wolf*, 813 F. Supp. 2d 1265 (D. Colo. 2011); *Righthaven, LLC v. Eiser*, Case No. 2:10-cv-3075 *2012 U.S. Dist. LEXIS 19470* at *3-4 (D.S.C. Feb. 16, 2012). While Gibson now contends that *Silvers* is bad law, his operations – which he originally insisted were lawful under that decision – have expanded the effect of *Silvers*' reach from coast to coast.

3. Righthaven's practices under Gibson led to a class action suit being filed against it in the District of Colorado in May, 2011 based on its conduct in filing litigation designed to extract cost-of-defense settlements, and dismissing actions that could lead to litigation (Exhibit C Counterclaim ¶¶ 23-29).

---

[1] One quadrillion is expressed as either $1 \times 10^{15}$ or 1,000,000,000,000,000, and is approximately 66 times the size of the entire United States economy (an estimated 15 trillion dollars).

4. Another class action against Righthaven and its parent companies due to these same practices was threatened by at least one other attorney, Todd Kincannon of Columbia, South Carolina.[2]

5. Righthaven "made intentional misrepresentations" to the District of Nevada and "engaged in a concerted effort to hide" the financial interests of its co-owner and client, Stephens Media, through serial non-compliance with LR 7.1-1, and was sanctioned $5,000 for this misconduct. (Exhibit D)

6. Righthaven <u>never paid</u> the Court's $5,000 sanction. (Exhibit E)

7. As early as 2010, Righthaven ceased paying certain vendors, resulting in at least one of them, Legal Wings Incorporated, suing the company in a Nevada court in 2011 (Exhibit F).

8. Righthaven also failed to pay its attorneys in South Carolina and Nevada (Exhibits G, H and I).

9. As a result of litigation Righthaven initiated under Gibson's control, Righthaven has had more than $350,000 in adverse judgments (Doc. # 44; Exhibits J, K and L).

10. Despite being repeatedly informed by the Ninth Circuit Court of Appeals that Righthaven did not enjoy a likelihood of success on appeal, Gibson acted without approval from, nor notice to, the receiver in retaining new counsel to litigate the pending appeal, Case Number 11-16751, increasing Righthaven's ultimate fee liability to Hoehn if it is even partially unsuccessful on appeal. (Doc. # 92)

---

[2] Mike Masnick, *If Righthaven Declares Bankruptcy, Expect Lawyers To Go After Stephens Media, Media News, and Righthaven Principals*, Techdirt (Sept. 19, 2011), http://www.techdirt.com/articles/20110919/03022316003/if-righthaven-declares-bankruptcy-expect-lawyers-to-go-after-stephens-media-media-news-righthaven-principles.shtml (*last accessed* July 16, 2012) ("I always knew Righthaven would file bankruptcy if things got rough […] They were set up as a limited liability company just so they could do that. Fortunately, Stephens Media, MediaNews Group, Sherman Frederick, Steve Gibson, and Dickinson Wright all seem to have plenty of money" quoting Todd Kincannon).

This pattern of failure – and exponentially increasing liability for Righthaven – would be comedic if it were not financed by hundreds of defendants depleting their savings and retirement funds to settle claims that Gibson's company did not even have standing to bring (Doc. # 28).[3] Worse, the "infringement" Righthaven sued over was consistently found to be fair use under 17 U.S.C. § 107 – even where the full work was reproduced. (Doc. # 28); *Righthaven v. Democratic Underground*, 102 U.S.P.Q.2D (BNA) 1070 (D. Nev. 2012); *Righthaven v. Realty One Group, Inc.*, 38 Media L. Rep. at 2441 (D. Nev. 2011); *Righthaven v. Ctr. for Intercultural Organizing*, *2011 U.S. Dist. LEXIS 43952* (D. Nev. Apr. 22, 2011).

In light of the foregoing, it comes as little surprise that the State Bar of Nevada has opened an investigation into Gibson in connection to Righthaven.[4] This further clouds Gibson's fitness to lead Righthaven – an organization that, by his own admission, serves no purpose but to litigate (Doc. # 93 at 9:21-23). Under the terms of Righthaven's own Operating Agreement, Gibson's conduct would justify his removal as CEO for "gross dereliction of duty," "repeated refusal or failure" to follow "lawful and reasonable directives," and the "material breach" of his obligations to the Company. (Exhibit B § 6.1) However, such removal under the Operation Agreement would occur only at the discretion of Manager Net Sortie LLC – which is conveniently also controlled by Gibson (*id*. at § 6.1 and p. 13).

The Receiver's termination of Gibson is a gift. Gibson can walk away from the company and mounting evidence that he merely used it as an alter ego to avoid personal liability for a

---

[3] *See also Righthaven v. Democratic Undergound*, 791 F. Supp. 2d 968 (D. Nev. 2011); *Righthaven v. NewsBlaze LLC et al.*, Case No. 2:11-cv-00720 (Doc. # 25) (D. Nev. Nov. 4, 2011); *Righthaven v. Newman*, Case No. 2:10-cv-01762, *2011 U.S. Dist. LEXIS 116654* (D. Nev. Oct. 7, 2011); *Righthaven v. Pahrump Life*, Case No. 2:10-cv-01575, *2011 U.S. Dist. LEXIS 90345* (D. Nev. Aug. 12, 2011); *Righthaven v. Mostofi*, Case No. 2:10-cv-01066, *2011 WL 2746315* (D. Nev. July 13, 2011); *Righthaven v. Barham*, Case No. 2:10-cv-02150, *2011 WL 2473602* (D. Nev. June 22, 2011); *Righthaven v. DiBiase*, Case No. 2:10-cv-01343 *2011 WL 2473531* (D. Nev. June 22, 2011).

[4] Steve Green, *Three Attorneys Face Righthaven Inquiry By State Bar*, Vegas Inc. (Jan. 12, 2012), http://www.vegasinc.com/news/2012/jan/12/three-attorneys-face-righthaven-inquiry-state-bar/ (*last accessed* July 16, 2012) ("the State Bar of Nevada said it's launching formal proceedings to deal with grievances involving Righthaven CEO Steven Gibson").

series of inexplicable actions. Instead, he seeks to continue his control over a company that is encumbered by hundreds of thousands of dollars in judgments, lost both its domain name and servicemark to the Receiver's auction (Docs. 73, 81), and no longer has any copyright rights to assert in litigation (Doc. # 90). It defies credulity to believe that Gibson will reverse a two-year pattern of conduct that has done nothing but harm Righthaven's interests. Allowing him to remain in control of the company disserves the public interest as well, as it is the only position in which he can prevent the Receiver from accessing company records that he has refused to turn over in the past (Doc. # 69; Exhibit M), which likely contain evidence of additional misfeasance.

### C. Gibson's Substantive Arguments Have All Been Raised, Unsuccessfully, By Righthaven, and Their Re-Litigation By a Non-Party is Improper.

Gibson's substantive arguments are improperly raised before this Court. Even if they were proper for the Court to consider, they are identical to the arguments raised by Righthaven in its emergency motion for stay – made nearly one year ago (Doc. # 52) – and its later motion to quash Hoehn's writ of execution (Doc. # 76). Both motions were resolved in Hoehn's favor, and Righthaven's arguments were rejected. The Ninth Circuit has fortified this Court's conclusions, where Righthaven has twice raised the arguments contained in Gibson's objection – once in an "urgent" motion, and later in an "emergency" motion – and the Appeals Court has twice rejected them (Docs. # 57, 78). To that end, there is no need to re-hash settled law: Righthaven is not entitled to relief from this Court.

Even if there were a basis to reconsider these arguments, they are not properly raised before the Court. If Gibson wishes to make substantive arguments before the Court, then he is free to move to intervene under Federal Rule of Civil Procedure Rule 24, and be subject to the same rules and conditions as all other parties in this case. Depending on the arguments Gibson plans to raise, Hoehn *may* stipulate to his intervention. Without leave of the Court to intervene being granted, though, it is improper for Gibson to parachute into litigation as a non-party when the opportunity suits him, raise substantive arguments, and then depart to continue his pattern of vexatious behavior.

- 9 -

1     Should Gibson seek to intervene and argue the substantive issues concerning this litigation raised in his objection, his motion would be denied as an "exercise in futility." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *Summer H. v. Fukino*, 2009 U.S. Dist. LEXIS 48255 (D. Haw. June 9, 2009) ("[h]ere, as when considering a motion to amend, the Court must weigh whether granting the relief sought would be 'nothing more than an exercise in futility'" citing *Bonin*, 59 F.3d at 845). Indeed, the Court has fully considered the arguments put forth by Gibson regarding the imposition of attorneys' fees and appointment of a receiver when they were raised by Righthaven (Docs. # 56, 57, 76, 78). There is no need, nor justification, for them to be relitigated a <u>fifth</u> time. The only advantage of allowing Gibson to intervene in this action upon a proper motion is that he will be subject to the Court's sanctioning power. Then, he may be held to account for pursuing meritless litigation, raising contentions that have no basis in law or fact (Fed. R. Civ. P. 11), and further multiplying proceedings that his actions as CEO of Righthaven have already protracted far beyond the point of reasonableness (28 U.S.C. § 1927).

    Finally, there is no basis for permitting Righthaven and Gibson to seek relief from Hoehn's judgment when they have done everything in their power to do so except what the Court told them to do: Post a bond. In August of 2011, this Court clearly delineated what was required of Righthaven to stay Hoehn's judgment collection efforts: a supersedeas bond of $34,045.50 (Doc. # 56). At any time, Righthaven and Gibson could have posted this $34,045.50 bond. Gibson preferred not to. This is merely the latest attempt by Gibson, now individually rather than acting through Righthaven, to do everything *except* the one thing that would bring these collection efforts to a halt: Posting a supersedeas bond for $34,045.50.

**III. Conclusion**

    To the extent this Court can consider Gibson's objection, it should be overruled. As specified in the foregoing, the Receiver is acting, and has acted, within the scope of all legal rights provided to receivers under Nevada law. Based on the evidence known to the Receiver and presently before the Court, termination of Gibson was not only lawful, but essential to the effective administration of the receivership estate. Moreover, Gibson's history in managing

Righthaven made, and continues to make, him a clear and present value to the value of the estate's assets and their ability to satisfy the more than $350,000 in judgments entered against Righthaven.

Gibson has not submitted any new arguments for the Court to consider, and has not appeared in the proper context to do so.  Even if he had, these repetitious arguments have been rejected before, and raising them yet again, simply to consume judicial and party resources, is improper.  As CEO of Righthaven, Gibson repeatedly exercised the right to contest this Court's course of action – and at every occasion, his arguments were rejected (Docs. # 56, 57, 76, 78). Without intervening in the litigation, these arguments are not properly before the Court.  In lieu of a new and viable legal argument, Gibson instead hurls vituperative attacks on both the Receiver and Marc Randazza.  While this exercise may be cathartic for Mr. Gibson, it should not be persuasive to the Court.

Dated July 19, 2012                                             Respectfully Submitted,

                                                                RANDAZZA LEGAL GROUP


                                                                _____
                                                                Marc J. Randazza
                                                                J. Malcolm DeVoy IV

                                                                Attorneys for Defendant,
                                                                *Wayne Hoehn*

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 19th day of July 2012, I caused the document(s) entitled:

**DEFENDANT'S RESPONSE TO OBJECTION OF NON-PARTY STEVEN A. GIBSON**

and all attachments to be served as follows:

[ ]   Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile as indicated; and/or

[ X ]   by the Court's CM/ECF system, as all parties and non-parties (i.e. the Receiver and Steven A. Gibson) appearing in the litigation are registered to receive electronic notifications of this filing and links to the documents contained herein.

/s/ J. Malcolm DeVoy
J. Malcolm DeVoy