# EXHIBIT A

# THE NEED FOR SPEED:
# THE PATH TO STATUTORY DAMAGES IN COPYRIGHT

Steven A. Gibson, Partner, Lewis Brisbois Bisgaard & Smith LLP

J.D. Lowry, Associate, Lewis Brisbois Bisgaard & Smith LLP

The authors would like to thank Mrs. Raisha Gibson for her contributions related to this work.

## *Introduction*

The irony is remarkable: copyright law provides arguably the most robust protective matrix for any intangible assets and yet remains horribly underutilized by owners of copyrights. While copyright registration is not necessary for copyright ownership,[1] copyright registration provides particularly relevant and practical advantages, one of which is the ability to claim statutory damages.[2] As proving damages in any lawsuit is often the province of expensive expert witness battles, the ability on the part of copyright owners to avoid altogether that battle, and merely prove ownership and then infringement to obtain substantial monetary damages, provides an immense advantage.

## *Copyrights: What Are They*

Copyright protection attaches to "original works of authorship fixed in any tangible medium of expression."[3] "Works of authorship" include literary works; musical works (including any accompanying lyrics); dramatic works (including any

---

[1] 17 U.S.C. § 401(a).
[2] 17 U.S.C. § 412, § 504(c).
[3] 17 U.S.C. § 102(a).


Copyright ©2006 Gibson and Lowry

accompanying music); pantomimes and choreographic works; pictorial, graphic, and sculptural works; motion pictures and other audiovisual works; sound recordings; and architectural works.[4]

Copyrights ought not to be, but often are, confused with trademarks, service marks, and patents. The fundamental role of a copyright is to protect expressions of ideas rather than the ideas themselves. Conversely, patents, at least the more commonly recognized utility patents, protect the functionality of inventions – the ideas associated with the function rather than the expression of the function. It is true that both copyrights and patents have as their focus the protection of a proprietary interest, but the nature of the interest that is protected is cognizably and significantly different.[5] This commonality of copyrights and patents in protecting proprietary interests arises out of Article I, Section 8, Clause 8 of the United States Constitution, which confers on Congress the power "[t]o promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

In contrast, trademarks and service marks are governed by the Lanham Act,[6] passed by Congress under its authority pursuant to the Commerce Clause of the United States Constitution. Marks protect indicators of source; a mark may be a single word used in a particular manner, a design, or another thing (including a musical tone) capable of imparting a sensory input. Some forms of marks, such as designs, may also engender copyright protection, while few, if any, textual marks will enjoy copyright protection, as

---

[4] *Id.*
[5] The interests protected by patents and copyrights are substantially different, but that does not mean that the subject matter may be different at all. For example, the functionality that is expressed by the source code of computer software may very well be afforded patent protection (if novelty and non-obviousness prongs are met), while the textual expression of the ideas in the wording of the source code is afforded copyright protection.
[6] 15 U.S.C. § 1051 *et seq.*

such text almost inevitably lacks the substantiality to meet the originality threshold required for copyright protection.[7]

### *The Vast Universe of Infringements*

As virtually any textual or graphical work of any material substantiality is protected by copyright, the universe of works that enjoy copyright protection approaches the infinite. Every day, people write notes, companies produce textual material, and various entities display a vast array of content on the Internet, all of which work product is, generally speaking, properly the subject of copyright protection. It is an absolute mistake to believe that merely because content is displayed on the Internet that such content is not protected by copyright and may be reproduced without express authorization. Indeed, books in a traditional library enjoy copyright protection despite being publicly accessible. Public accessibility is one of the hallmarks of copyrighted works, not vice-versa.

An immense and almost immeasurable array of content resident in an also-impressive array of media (including print, electronic, digital, and optical) is thus subject to copyright protection. A vast, perhaps almost equally incalculable, ocean of infringement exists alongside it. Various content-generating industries report billions of dollars in infringements every year in their own media alone. For example, in 2003, the

[7] In theory, an individual who writes the word "the" on a piece of paper has authored text "fixed in a tangible medium of expression." That writing, however, is hardly substantial or original. Moreover, it would be both unfair and unworkable for that individual to enjoy the exclusive right to reproduce the word "the." Originality often requires far more substantiality. The minimum amount of substantiality required for copyright protection can be described as slightly more than that embodied in the routine instructions on a bottle of shampoo. In another vein, the telephone directory's white pages (as opposed to the yellow pages), while substantial in scope, are not original in nature because mere alphabetization of data does not constitute a level of originality cognizable for copyright purposes.

Recording Industry Association of America reported over $4 billion of infringement annually faced by the recording industry.[8] The Software & Information Industry Association reports $11 billion of software infringement worldwide annually,[9] a figure also cited by the Business Software Alliance.[10] In 2004, the senior vice-president and director of worldwide anti-piracy operations for the Motion Picture Association of America estimated copyright theft losses in the motion picture industry, not even including illegal Internet downloads of copyrighted motion pictures, as $3.5 billion annually.[11]

Perhaps a better way to analyze the vast nature of the infringements is to understand that in electronic media such as the Internet, billions of unauthorized reproductions occur in any given year.[12] As discussed below, if copyright owners take necessary measures to secure their entitlement to statutory damages up to $150,000 ***per infringement***,[13] and if each of those billions of infringements were multiplied by a reduced statutory damage award of merely $100,000, the dollar value of infringements would exceed trillions of dollars, arguably into the quadrillions. Even if estimates in the quadrillion range are greatly overvalued (by even a factor of 1,000), the potential value of statutory damages for copyright infringement still mandates more aggressive action on the part of copyright owners.

---

[8] www.riaa.com/issues/piracy/default.asp, accessed September 30, 2006.
[9] www.siia.net, accessed September 30, 2006.
[10] en.wikipedia.org/wiki/Business_Software_Alliance, accessed September 30, 2006.
[11] Press release, Federal Bureau of Investigation, February 19, 2004 (www.fbi.gov/pressrel/pressrel04/piracy021904.htm, accessed September 30, 2006).
[12] One commentator has cited billions of unauthorized music downloads alone (Heins, Marjorie, "Understanding Grokster," www.fepproject.org/commentaries/grokster.html, March 30, 2005 [accessed September 30, 2006).
[13] The infringement referred to here is per occurrence of infringement, not a calculus of how many reproductions by one infringer of a work. See Sony Computer Entertainment America, Inc. v. Filipiak, 406 F. Supp. 2d 1068 (N.D. CA. 2005).

### *Registration: The Lawsuit Prerequisite*

While copyright ownership exists at the moment of authorship, prior to being able to file a lawsuit in order to recover any damages, let alone statutory damages, the copyright owner must register with the United States Copyright Office, part of the Library of Congress.[14] Registration need not happen upon authorship, nor even prior to infringement. Indeed, in theory, registration can happen at any time that the copyright subsists (in most cases for contemporary works involving personal authorship, from the date of creation until 70 years after the author's death[15]).

### *Registration: The Limited Statutory Damages Prerequisite*

A copyright infringement plaintiff may elect to recover statutory damages under two circumstances: if the infringement occurs after registration, or if the infringement occurs within a statutory safe harbor period between publication and registration.[16] To take advantage of the safe harbor period, the copyright owner must register within three months after publication of the copyright work. "Publication" in the copyright setting is much more narrowly defined than in its traditional sense; under the Copyright Act, "publication" generally constitutes the distribution, or offer to distribute, copies of a work to the public or a limited subset of the public for sale, rental, lease, or further distribution or display, or to display or perform a work in public or in front of a substantial group of people constituting more than "a normal circle of a family and its social acquaintances."[17]

---

[14] www.copyright.gov.
[15] 17 U.S.C. § 302(a).
[16] 17 U.S.C. § 412.
[17] 17 U.S.C. § 101.

### *Statutory Damages: The Calculus*

Statutory damages are available to the infringed copyright holder in an amount not to exceed $30,000 "for all infringements involved in the action, with respect to any one work…"[18], with statutory damages up to $150,000 available when willful infringement is proven. Any one infringer may infringe a copyright literally innumerable times by, for example, engaging in numerous, independent unauthorized reproductions of textual or graphical material. Nonetheless, the statutory damages calculus provided by 17 U.S.C. § 504(1)(c) sets forth maximum available awards on the basis of all infringements with respect to a single work.

Not every copyright infringement warranting statutory damages will warrant a maximum statutory damage award. Trial courts enjoy wide discretion regarding the amount of statutory damages awardable, constrained only by the maxima and minima set forth in the Copyright Act[19], and the Ninth Circuit has made it clear that it will defer to trial courts regarding the appropriate measure of statutory damages.[20] In 2001, the Ninth Circuit upheld a $31.68 million statutory damages award against a television station found liable for willful infringement of copyrights of 440 individual television program episodes, reckoning that the damages award per infringed episode divided out to $72,000, well within the maxima and minima set forth in 17 U.S.C. § 504(1)(c).[21] The Ninth Circuit similarly upheld a $65,000 statutory damages award in 1994 predicated on 13 separate infringements by an importer of counterfeit Nintendo video game cartridges,

---

[18] 17 U.S.C. § 504(c)(1).

[19] *L.A. Westermann Co. v. Dispatch Printing Co.,* 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499 (1919).

[20] *See, e.g., Harris v. Emus Records Corporation,* 734 F.2d 1329, 1335 (9th Cir. 1984).

[21] *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,* 259 F.3d 1186 (9th Cir. 2001).

notwithstanding the fact that the importer was also held liable for actual damages for trademark infringement under the Lanham Act based on the same counterfeit cartridges.[22] Not only had the defendant committed two separate wrongs, against both the copyright and against the trademark, the Ninth Circuit reasoned, but the statutory damages provision of the Copyright Act specifically contemplates that enhanced damages may be imposed in cases of willful infringement as a punitive and deterrent measure.

Despite such discretion, common factors "to be considered in determining the amount of statutory damages include the expenses saved such as licensing fees) and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the infringing conduct, and the infringer's state of mind."[23] Comparable factor analysis includes: "(1) 'the expenses saved and profits reaped,' (2) 'the revenues lost by the plaintiff,' (3) 'the value of the copyright,' (4) 'the deterrent effect on others besides the plaintiff,' (5) 'whether the defendant's conduct was innocent or willful,' (6) 'whether a defendant as cooperated in providing particular records from which to assess the value of the infringing material produced,' and (7) 'the potential for discouraging a defendant.'"[24] Once again, none of these factors needs to be proved by the plaintiff in order to enjoy statutory damages, but form the basis of the discretionary analysis of the court. In this vein, perhaps demonstrating the willfulness of the infringer will be most persuasive in viewing the overarching scheme of the Copyright Act and the case law, but that is not to conclude that massive licensing fees lost by the copyright infringement will not yield great statutory damage results. However, if the copyright

---

[22] *Nintendo of America Inc. v. Dragon Pacific Int'l,* 40 F.3d 1007 (9th Cir. 1994).

[23] *Frank Music Corp. v. Sugg.*, 393 F. Supp. 2d 1145 (W.D. OK. 2005).

[24] *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D. N.Y. 2003), *citing, Fitzgerald Pub. Co. Inc. v. Baylor Pub. Co.,* 807 F. 2d 1110, 1117 (2d Cir. 1986).

plaintiff is able to demonstrate said lost revenues, then query why leverage statutory damage structures.

## *Conclusion*

Copyright registrations are hardly occurring at the pace required in order to protect material copyrights. Independently, copyright registrations are not occurring in the timeframe required in order to have the statutory damage schematic applied: hence the need for speed. Copyright owners have the tools to protect themselves. Given the Internet and the vast quantify of content readily misappropriated, it would behoove copyright owners to use these tools.