Marc J. Randazza (Nevada Bar No. 12265)
J. Malcolm DeVoy IV (Nevada Bar No. 11950)
RANDAZZA LEGAL GROUP
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
Telephone: 888-667-1113
Facsimile: 305-437-7662
www.Randazza.com
ecf@randazza.com

Attorneys for Defendant,
*Wayne Hoehn*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WAYNE HOEHN, an individual,<br><br>Defendant. | Case No. 2:11-cv-00050<br><br>**DEFENDANT'S MOTION FOR SUBSTITUTION OF RECEIVER AND CLARIFICATION OF ORDER APPOINTING RECEIVER (ECF 66)** |

**DEFENDANT'S MOTION FOR SUBSTITUTION OF RECEIVER
AND CLARIFICATION OF ORDER APPOINTING RECEIVER (ECF 66)**

Defendant Wayne Hoehn ("Hoehn"), through his attorneys, files this Motion for substitution of the receiver appointed in this case, and respectfully requests clarification of this Court's December 12, 2011 order granting Hoehn's motion to appoint a receiver for Plaintiff Righthaven LLC ("Righthaven," or the "Plaintiff").

**I. Introduction**

On December 12, 2011, this Court appointed Lara Pearson as receiver in this matter to marshal Righthaven's assets for auction. As receiver, Pearson's prime directive was to assemble Righthaven's intellectual property assets, including its domain name, trademarks and copyrights, for assets. The receiver's power also extended over other aspects of Righthaven's business, including the sale of its physical assets, such as servers, computers, office equipment and other tangible property (though, to date, Righthaven has not surrendered these items).

- 1 -

Hoehn's motion seeking the appointment of a receiver was open-ended, and neither sought nor placed any limitations on the receiver's powers. While the peculiarities of transferring the title in Righthaven's intellectual property required special attention within Hoehn's motion, this was in no way a limitation on the receiver's capacity to control Righthaven (ECF 62 at 3-5). Indeed, Hoehn's motion contemplated broad powers for the receiver, including assuming control of Righthaven's physical assets (*id*. at 9-10).

Righthaven, however, has been uncooperative in working with the receiver. Rather than voluntarily assigning its intellectual property to the receiver, Righthaven forced Hoehn's counsel to effect this transfer by judicial decree (ECF 90). While the receiver attempted satisfy Righthaven's growing list of judgments against it, the company's CEO, Steven Gibson ("Gibson"), had other plans. Without the receiver's knowledge or consent, he retained new counsel to prosecute Righthaven's appeals, but with schizophrenic results. While Righthaven has retained counsel for one of its appeals against Hoehn, it defaulted in another – Case No. 16995 (ECF 100, 102) – potentially subjecting the company to Hoehn's further fees for prevailing in that appeal.

Consequently, the receiver terminated Gibson as Righthaven's CEO on June 25, 2012, *nunc pro tunc* to January 1, 2012. Gibson objected to the receiver's legitimate exercise of her power. Under Nevada law and this Court's prior order, the receiver's actions were lawful and proper. However, for the avoidance of doubt and any further question, Hoehn seeks a clarification of the receiver's powers from the Court so that there is no question the receiver is entitled to terminate Gibson and exercise much-needed control over Righthaven's affairs.

Finally, as Lara Pearson has moved from Rimon Law Group to Exemplar LLC, and the intellectual property issues facing the receivership have largely been resolved, Hoehn seeks – and Pearson consents – to her substitution with Ryan Hamilton. Ryan Hamilton is a bankruptcy attorney familiar with the procedures and powers of the bankruptcy trustee – an almost perfect analogue for a receiver – and is willing to assume the mantle of receiver in this matter.

## II. Argument

### A. The Receiver's Powers Include the Power to Terminate Gibson and Control Righthaven.

In Hoehn's Motion for this Court to appoint the Receiver (ECF 62), Hoehn asked only that the Court appoint a receiver under NRS 32.010. Hoehn's motion contemplated the receiver's control of both Righthaven's intellectual property and physical assets (*id*. at 3-8, 10), and there was no restriction placed on the Receiver's authority in the Court's order granting the motion (ECF 66). When presented with the opportunity to object this Court's appointment of the Receiver, Righthaven declined to do so (ECF 64).

Under Nevada law and the precedent of this Circuit, receivers have broad and almost limitless power. Consistent with Hoehn's motion and this Court's order (Docs. # 62, 66), the receiver is entitled to use these powers to the fullest extent possible. The Nevada Revised Statutes allow the appointment of a receiver to carry a judgment into effect, something that obviously needed outside assistance in this case. NRS 32.010; 21.240; *Bowler v. Leonard*, 70 Nev. 370 (Nev. 1954); *see Kraemer v. Kraemer*, 79 Nev. 287 (Nev. 1963). Unless specified by the Court, the powers afforded to the receiver are limitless. *Fullerton v. Second Jud. Dist. Ct. ex rel. Cty. Of Washoe*, 111 Nev. 391, 400 (Nev. 1995). There is no precatory language qualifying the extent of the receiver's powers in Hoehn's motion, nor the Court's order appointing the receiver, and thus no basis for a limitation of these powers (ECF 62, 66).

Neither precedent nor the record in this case limits the powers of the receiver (who was entitled to take possession of Righthaven's tangible property (ECF 62 at 9-10)) and cannot be construed to do so. Moreover, retroactively constraining the receiver's powers would run contrary to the receiver's duty to take control of the estate's property. *Frank Settlemeyer & Sons, Inc v. Smith & Harmer, Ltd.*, 124 Nev. Adv. Op. 98 (Nev. 2008). Additionally, these full powers are necessary to fulfill the receivership's objectives of paying Rightaven's many creditors, and is the reason receivership was sought. *Fullerston*, 111 Nev. at 401. To the extent other creditors may have claims against Righthaven, the receiver has the lawful power to resolve those claims as

well. *Jones v. Free*, 83 Nev. 31, 38 (Nev. 1967).  The receiver's exercise in this case is consistent with sound public policy and judicial economy in light of the significant number of Righthaven's known creditors.

The receiver also has full power to reject contracts detrimental to the receivership estate. *Jones* 83 Nev. at 39. This position is hardly unique to Nevada, but affirmed nationwide on matters of receivership. In *Peabody Coal Company v. Nixon*, the United States Court of Appeals for the Eighth Circuit confirmed the notion that a receiver may renounce and terminate contracts held by the entity placed into receivership.  226 F. 20, 22-23 (8th Cir. 1915), *accord Jones*, 83 Nev. at 38. "We think we may take judicial knowledge of the fate of contracts made by an insolvent railroad company which passes into the hands of a receiver and are not assumed by him. Such contracts are practically ended." *Kan. City S. R. Co. v. Lusk*, 224 F. 704, 706 (8th Cir. 1915).   This power is integral to the receiver's obligation to not operate a business at a continuing loss. *R.J. Reynolds v. Jones*, 54 F.2d 329 (8th Cir. 1931).

Finally, the receiver is entitled to retain counsel on behalf of the receivership estate and bring claims against the incapacitated company's officers and agents. *See generally Mortimer v. Pac. States Sav. & Loan Co.*, 62 Nev. 142 (Nev. 1943); *State ex rel. Cameron v. Second Jud. Dist. Ct. ex rel. Cnty. Of Washoe*, 48 Nev. 198, 202 (Nev. 1924).  Indeed, Nevada's precedent recognizes the receiver's ability to take such positions to serve the receivership estate's best interests, or to prevent interference with its administration. *State ex rel. Sparks v. State Bank & Trust Co.*, 36 Nev. 526, 532 (Nev. 1913).  This power enables the receiver to hire counsel to represent Righthaven and terminate its few remaining cases.

Gibson has vigorously disputed the receiver's exercise of such proper and lawful powers. To quell further debate, and ensure that the receiver's further actions are given effect without undue objection, clarification as to these points would benefit third parties such as Gibson, as well as the Court, as a clear edict as to the receiver's powers will prevent further disputes from coming before it.

//

**B. The Receiver's Full Use of Its Powers Under Law is Necessary to Maximize Righthaven's Receivership Estate.**

The record in this case is replete with evidence demonstrating that anything short of the receiver taking full and complete control over Righthaven will be ineffective. Righthaven has ignored court appearances (ECF 71, 77, 86-87, 91), refused to turn over documents (ECF 69),[1] and generally refused to cooperate with the satisfaction of Hoehn's judgment (ECF 70, 86-87, 91, 92). From the record assembled before the Court, it defies all reasonableness to expect Righthaven – still putatively under Gibson's control, as it has been throughout the litigation – will suddenly begin acting reasonably, adhering to court orders, and responding to the receiver in any productive way. Rather than further indulge this unproductive behavior, the more efficient solution is for the Court to exercise its jurisdiction and expressly acknowledge the receiver's power to control and manage the company.

Further, Gibson's objection (ECF 93 n. 5) contains a number of inaccuracies that must be addressed and can be remedied by a receiver that undoubtedly possesses the full powers entitled to it by law. First and foremost, Righthaven was ordered to *deliver* its tangible assets to the Receiver, as Righthaven's officers best knew the location of its assets (ECF 62 at 10, 66). Contrary to Gibson's representations, neither Righthaven nor its counsel have provided Hoehn or the receiver with the address or location of where these assets are maintained with enough specificity to obtain them, nor provided Hoehn or the Receiver with sufficient credentials to access them. Indeed, this is precisely why the Court required Righthaven to produce these physical assets to the receiver, rather than engage in the game of cat-and-mouse Gibson believes the receiver should, while Hoehn continues to incur legal fees collecting on his judgment (ECF 62 at 10, 66).

---

[1] Although this contempt motion was denied (ECF 85), it was elucidated in this Court's March 5, 2012 hearing that Righthaven's underlying contempt – its failure to produce documents needed for an effective debtors exam – had not been purged (Decl. of J. DeVoy ¶¶ 11-15). To date, Righthaven still has failed to produce these documents, including but not limited to unredacted copies of its operating agreement, the "Righthaven Agreement," other documents integral to its business plan that likely identified "company securities" as ordered by the Court (*id.*).

Similarly, Gibson's representation that Hoehn has captured the contents of Righthaven's bank account is false. Hoehn has not been able to obtain these assets, which were less than $1,000.00 at the time of Hoehn's execution (Decl. of J. DeVoy ¶ 6). In fact, Gibson apparently continued to write checks from Righthaven's operating account for more than a month after Hoehn served Bank of Nevada with a notice of his writ of execution on Righthaven's bank accounts.[2] (Exhibit A)   If Righthaven's bank account has been depleted, it the result of Righthaven's own expenditures, directed by Gibson and intended to deprive its creditors of any recovery, rather than from any collections Hoehn realized.

Gibson's misunderstanding of the status of the receivership estate[3] and its collection efforts – and Righthaven's continued failure to meet its obligations to produce assets to the estate – underscores the need for a clear edict from this Court that the receiver is entitled to take control of the company and effectively manage it in its insolvency. Where Righthaven is required to surrender assets to the receiver, it – and its officers – must be held to account when they fail to do so. While the receiver is entitled to depose Gibson from Righthaven's leadership and effect these steps on her own, a proclamation of that power by this Court will remove Gibson's justifications for not taking the actions ordered by this Court nearly one year ago.

**C. Ryan Hamilton's Substitution for Lara Pearson Will Serve the Interests of the Receivership Estate.**

In order to complete the receivership, Ryan Hamilton – an attorney focused on bankruptcy practice and experienced in dealing with bankruptcy trustees – should be substituted as receiver for Lara Pearson. Both Mr. Hamilton and Ms. Pearson consent to this arrangement.

---

[2] While it is unclear from the signature on the checks whether the signature belongs to Steven Gibson or Raisha Y. "Drizzle" Gibson, Righthaven's Chief Administrative Officer, Gibson had knowledge of and directed such transactions as the company's CEO and spouse of the CAO.

[3] As Gibson notes in his objection, he and Righthaven have had limited ability to communicate with Righthaven's counsel. Rather than make Hoehn and the court pay the price for this breakdown of communication in the form of delay, miscommunication and misapprehension of the case's status, it would be easiest for the receiver to take full control of the company and its assets, with penalties enforceable against its offers if they refuse to comply with the receiver's orders.

Ms. Pearson's change of employment from Rimon Law Group to Exemplar LLC, coupled with the changing nature of the receivership, has precipitated this request (Decl. of L. Pearson ¶¶ 1-8). Mr. Hamilton has volunteered to serve as the court's receiver under the same terms as Ms. Pearson (Decl. of R. Hamilton ¶¶ 1-9).

This substitution not only comes at a good time for Ms. Pearson, but further reflects the changing nature of the Righthaven dispute.  The intellectual property issues that Ms. Pearson needed to address at the receivership's inception – namely the capture and sale of Righthaven's domain name, trademark and copyrights – have been all but resolved (Pearson Decl. ¶¶ 6-8). These rights have been sold, or consolidated within Ms. Pearson's control and await easy transfer to Mr. Hamilton, or to be held by Ms. Pearson until transferred at Mr. Hamilton's direction (*id.*). The more pressing issue, however, is the disposition and management of Righthaven itself, in order to wind up Righthaven's business and ensure it does not do any further harm to itself and further entitle other parties to financial recovery against it. (*id.* ¶¶ 9-11)

There should be no issue as to the suitability of this substitution among non-parties whom may be affected.  In his submission to he Court, Gibson stated that he "would be delighted to work with a newly-appointed receiver." (ECF 93 at n.6)  To the extent Gibson has any objection to the actions of the current receiver, the Court may wash away his disagreements with Ms. Pearson by substituting her with Mr. Hamilton.  Given Mr. Hamilton's bankruptcy experience (Hamilton Decl. ¶¶ 1-4), he is equipped to handle the issues of company governance and physical asset disposition that commonly confront companies that, as Mr. Gibson acknowledges, have no money.  In that respect, Mr. Hamilton is the best-qualified party to wind down the insolvent[4] company's affairs and ensure it ceases causing itself further harm by generating fee

---

[4] In his objection, Gibson repeatedly notes that Righthaven has no money. (ECF 93)  As the company has no available cash, but has outstanding financial obligations in the hundreds of thousands of dollars, there is no question that it is insolvent.  The best and rational course of action, then, is not to leave it in control of the person who brought the company to this state, but allow an attorney experienced with bankruptcy practice to cut the business' losses and work to satisfy its substantial outstanding obligations.

liability in Hoehn's case and others before the United States Court of Appeals for the Ninth Circuit.

### III. Conclusion

For the reasons explained herein, the Court should substitute Ryan Hamilton as receiver in place of Lara Pearson. Both Mr. Hamilton and Ms. Pearson consent to this arrangement, and it would serve the interests of this Court, Hoehn, and the receivership estate to do so. To the extent any clarification of this Court's December 2011 order is necessary for the edification of non-parties such as Gibson, the Court should note that the Receiver has the power to terminate Gibson and control Righthaven's affairs. As seen in this case, such powers are necessary to reduce Righthaven's future liability, maintain the pool of assets available to satisfy Hoehn's judgment (and the judgments of others), and bring Righthaven into compliance with Court orders. While the receiver has had such powers since this Court appointed Ms. Pearson to the position, a clearer proclamation of these powers will inhibit further disputes over the receiver's actions and powers, and ensure that more expeditious progress is made in the liquidation of Righthaven assets in fulfillment of Hoehn's judgment.

Dated September 19, 2012                                Respectfully Submitted,

                                                                                         RANDAZZA LEGAL GROUP

                                                                                         /s/ J. Malcolm DeVoy IV
                                                                                         Marc J. Randazza
                                                                                         J. Malcolm DeVoy IV

                                                                                         Attorneys for Defendant,
                                                                                        *Wayne Hoehn*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 19th day of September 2012, I caused the document(s) entitled

**DEFENDANT'S MOTION FOR SUBSTITUTION OF RECEIVER
AND CLARIFICATION OF ORDER APPOINTING RECEIVER (ECF 66)**

and all attachments to be served as follows:

[ ]   Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile as indicated; and/or

[ X ]   by the Court's CM/ECF system, as all parties and non-parties (i.e. the receiver and Steven A. Gibson) appearing in the litigation are registered to receive electronic notifications of this filing and links to the documents contained herein.

                        /s/ J. Malcolm DeVoy  
                        J. Malcolm DeVoy