UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS DIVISION

| | |
|---|---|
| RIGHTHAVEN, LLC, | ) CASE NO: 2:11-CV-50-PMP-RJJ |
| Plaintiff, | ) CIVIL |
| vs. | ) Las Vegas, Nevada |
| WAYNE HOEHN, | ) Wednesday, October 31, 2012 |
| Defendant. | ) (3:04 p.m. to 3:40 p.m.) |

MOTION HEARING

BEFORE THE HONORABLE PHILIP M. PRO,
UNITED STATES DISTRICT JUDGE

Appearances: See next page

Court Recorder: Henry Enriquez

Courtroom Administrator: D. Sherwood

Transcribed by: Exceptional Reporting Services, Inc.
P.O. Box 18668
Corpus Christi, TX 78480-8668
361 949-2988

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**APPEARANCES FOR:**

| | |
|---|---|
| **Plaintiff:** | **SHAWN A. MANGANO, ESQ.**<br>**Shawn A. Mangano, Ltd.**<br>**9960 West Cheyenne Ave., Suite 170**<br>**Las Vegas, NV 89129** |
| | **MICHAEL R. MUSHKIN, ESQ.**<br>**Michael R. Mushkin & Associates**<br>**4475 S. Pecos Road**<br>**Las Vegas, NV 89121** |
| **Also present:** | **STEVEN A. GIBSON, Interested Party** |
| **Defendant:** | **MARC J. RANDAZZA, ESQ.**<br>**JAMES M. DE VOY, IV., ESQ.**<br>**Randazza Legal Group**<br>**6525 W. Warm Springs Rd., Suite 100**<br>**Las Vegas, NV 89118** |
| **Receiver:** | **ALLEN LICHTENSTEIN, ESQ.**<br>**3315 Russell Rd., #H222**<br>**Las Vegas, NV 89129** |
| **Also present:** | **RYAN A. HAMILTON, Receiver** |

**Las Vegas, Nevada; Wednesday, October 31, 2012; 3:04 p.m.**

**(Call to Order)**

**THE COURT:** Have a seat everybody. Good afternoon. Alright, we're convened in Civil S-11-50, *Righthaven v. Hoehn, et al.*

We have on behalf of plaintiff Shawn Mangano. Also present is Michael Muskin. We have on behalf of defendants James DeVoy and Michael Randazza. Also Allen Lichtenstein is present on behalf of Ryan Hamilton, the receiver, who is present; and interested party Steven Gibson is present. I think that just about covers everybody that needs to be reflected in the minutes.

Counsel, the matter is on for two purposes. Well, actually we'll come to perhaps a third. But one relates to the motion for substitution of receiver and clarification of court-appointed receiver, and the other is Mr. Mangano's motion to withdraw as counsel. There's been a subsequent substitution submitted. It was inadvertently signed by the magistrate judge yesterday. I immediately vacated that when I saw it because I had ordered that Mr. Mangano be here so we could address the things leading up to today's events. And it's necessary that we take care of that before addressing any substitution.

But let's start with -- Well, there are two things that jump out at me now after our last hearing. And Mr. Mangano, you weren't present at the hearing we had earlier this

month, so you weren't directly privy to them. But that kind of illustrates part of the difficulty that we've had.

Early in this case, of course, you were active on behalf of Righthaven and argued -- filed and argued the motion to dismiss. We dealt with the motion for attorney's fees. When it came down to the motion for appointment of receiver, however, there was no response. It led to the appointment of the receiver. The receiver has been about her business, and I'm talking about Ms. Pearson, the predecessor to Mr. Hamilton, and gathered up the intellectual property, auctioned off certain items, all with an eye towards satisfying the judgment that was outstanding.

And at this time the appeal is progressing, and I'll let you-all tell me where that stands at the present time. But as far as I could determine, it's been fully briefed, and it's really a matter of the matter being set for argument so that the appeal can be heard by the circuit.

And I want to go back to something I said at the last hearing. None of the orders I entered, and the only order that we even arguably spoke of, that was the receiver motion for order, sought to interfere with the appeal, and I think that appeal is properly before the court of appeals until and unless the court of appeals says otherwise.

So I want to take that and kind of set it aside and go back to a very fundamental question. And this is really for

Mr. DeVoy and Mr. Randazza. I wish that Mr. Mangano had been participating early, and I mean early back before the receiver was appointed or the order pertaining TO that, to state what Righthaven's position might have been. And maybe there would have been clarification then after, Mr. Mangano, you found yourself in a difficult situation, as you point out in your motion, of having the receiver tell you one thing and the client the other. It would have been very appropriate to bring that matter to the Court's attention so I could address it.

And I think if you'd all go back and read the original motion to appoint the receiver, that really provides the answers. I had before me a motion to appoint a receiver for a very limited purpose. And if we go back and take a look at the contents of that motion, it really -- and we talked about this at the last hearing but Mr. Mangano wasn't privy to it, wasn't present, so didn't have the benefit of what I was talking about.

That motion, at document 62, filed almost a year ago, November 14th, 2011, 'sought the assignment of intellectual property and other intangible property which the receiver shall auction in order to partially satisfy Hoehn's judgment and writ of execution entered against Righthaven.' Well, that says what it says, to auction off the intellectual property. And that is what the entire motion then spoke to. 'Hoehn now moves this Court to put, enact the process that will allow him, at least

partially, to satisfy the judgment through Righthaven's only known assets, its' intellectual property. This Court should order Righthaven to assign its' intellectual property to a receiver who will auction off the property to partially satisfy the judgment.'

It's my understanding that has been accomplished.

**MR. RANDAZZA:** Your Honor, it hasn't fully been accomplished.

**THE COURT:** What remains to be done? It doesn't seem like it should be that complicated if it's got any value and you've got it to auction. I know we had some discussion last time about computers and desks.

**MR. RANDAZZA:** There are some copyrights left to sell off. The method that the prior receiver used was not successful. The new receiver has -- I don't want to reveal too much of it because we have a settlement that we're working on with the new receiver to compromise all of the existing claims and wrap the matter up.

**THE COURT:** Alright.

**MR. RANDAZZA:** With respect to the receivership motion, it was not our intent, nor do we see in the text that this was for a limited receivership. What we were seeking is a receiver, but we also had some -- quite honestly, some unusual tasks that we expected the receiver to engage in. We weren't intending to limit the generality of the powers of a receiver

by doing that. What we were --

**THE COURT:** Well why didn't -- I mean I'm reading what your motion says. The motion's not very clear because when I read it, I read it just as it says. It doesn't talk about any other purposes. And this is why it's always difficult when you only have one side and I don't have adversaries making their points.

**MR. RANDAZZA:** We can fix that, your Honor, because since then --

**THE COURT:** Why do we need to?

**MR. RANDAZZA:** Both myself and Mr. Mangano agreed that this was a general receivership.

**MR. MANGANO:** That was my understanding, your Honor. It was Chapter 34 they were seeking appointment, which, given the fact that we tried -- strategically we attempted to obtain a stay of the judgment, because enforcement --

**THE COURT:** Right, and I said you could by posting a bond.

**MR. MANGANO:** The enforcement efforts, that eviscerates the company. The assets --

**THE COURT:** Yeah, but we're talking about executing -- we're talking about executing on a judgment. I mean, it's executing on a judgment.

**MR. MANGANO:** Executing on the judgment, but the appointment of the receiver, that's where the problem come

along. We've got a receiver that's in there that's supposedly acting to marshal assets and to sell them for purposes of satisfying the judgment.

**THE COURT:** Well why wasn't a response to that motion filed?

**MR. MANGANO:** It was my understanding that we didn't have any opposition to it. We had no way to fight that. That was my understanding. Our understanding was to go forward and try to obtain a stay on the judgment, either from you or from the Ninth Circuit because --

**THE COURT:** Well, I made my ruling.

**MR. MANGANO:** -- once that happens, judgment enforcement efforts through a receiver or independently. A lot of the actions that have been taken by the receiver could have independently been taken by Mr. Randazza's client anyways. They could have come in and sought to seize everything that they -- And they eventually did seize. So, it's a checkmate. Any way we go, we have to get the judgment. We also have a judgment in another case that we -- you know, it's -- it all happens -- all happened at once.

**THE COURT:** Alright.

**MR. MANGANO:** And without staying the judgment, the hands are tied. The receiver comes in and now does have, from my perspective, the ability to compromise the claims, which, you know, she stands in the position of the company,

compromises the claims, maybe obtains additional monies that can be applied to the judgment. It just -- it's checkmate.

**THE COURT:** And can dismiss the appeal.

**MR. MANGANO:** I mean -- yeah, exactly, because --

**MR. RANDAZZA:** That's part of our settlement terms.

**THE COURT:** Well, that's what I wanted to find out. If you've got a settlement that you're talking about, I don't want to -- I don't mean that you have to go on the record with that -- Just a minute, Mr. Muskin -- but I don't want to go down this avenue if it's going to be unnecessary. If you-all --

**MR. RANDAZZA:** There is a settlement being worked on, your Honor, that would compromise all of the claims, close the entire matter out. However, we're in a little bit of a strange situation here. Everybody was under the impression that Mr. Gibson had abandoned his position with the company. There was no indication that he hadn't done that until he started hiring new counsel, presumably with money that should have gone to satisfy judgment creditors.

However, when he did start acting, that's when Ms. Pearson said, wait a minute, I'm the receiver, you have to go through me in order to enact these -- in order to take these actions.

So right now the only impediment to a settlement which will satisfy Mr. Hoehn's claims against Righthaven is

that we're not sure at this time, although we were all sure before, we're not sure at this time who has the authority to sign off on it. If it's the receiver, then the Righthaven story ends in fourteen days or less, most likely. If it is Mr. Gibson coming back and saying that he runs the company, I don't know what's going to happen. I mean the case has been full of surprises and I'm sure that we have more to look forward to.

It seems proper to us, given the intent of our motion, given the fact that Righthaven's counsel interpreted it the same way we did, given the language saying 'we're asking for a receiver to whom Righthaven assigns all of its property'. And we think it would be extremely prejudicial at this point to go back and say that was a limited receivership. And even if that was your Honor's understanding and your Honor's intent in your order, remember --

**THE COURT:** My intent was to grant the motion that was filed.

**MR. RANDAZZA:** If your intent --

**THE COURT:** And it says what it says. That's my problem.

**MR. RANDAZZA:** Well if we have a misunderstanding as to what it says, because, you know, remember it also asks for delivery of all physical property, it asks for a writ of bodily attachment if Righthaven didn't assign its copyrights. It didn't do that, or we didn't get that. We simply assumed that

your Honor's order was lighter than what we had asked for in some regards and then consistent with what we had asked for in others.

So if it was not your Honor's intent at that time to grant a full receivership, given that I inartfully drafted the motion, then I think it would be proper to issue a new order saying that a receiver is a receiver and you want the receiver to simply wind these affairs up, settle this matter with Mr. Hoehn and finally close the book on this case.

**MR. GIBSON:** Your Honor, if I may briefly before Mr. Muskin?

**THE COURT:** Yes.

**MR. GIBSON:** Mr. Mangano has not contacted me, has not commu -- you've indicated that I was the CEO. Mr. Mangano has not contacted me. I don't believe that Mr. Mangano is speaking in the interest of Righthaven today. I don't know what the settlement --

**MR. MANGANO:** I contacted his counsel.

**MR. GIBSON:** If I may, your Honor. I have grave concerns by the fact that Mr. Mangano has not communicated with me as the CEO since February, has not appeared before this Court, has not sought the guidance of this Court, is frankly, I believe, making misrepresentations to save his own skin, frankly, given the pending bar complaint against him. I have grave -- Mr. Muskin is being brought in because Mr. Mangano has

failed to advocate the interest of Righthaven in this case since February. And, as your Honor indicated, has caused Righthaven potentially to make some waivers.

There was never the intention of Righthaven, frankly, to not oppose the parameter of the receivership. Mr. Mangano never indicated to me that Righthaven should accede to a general receivership at any time. So for Mr. Mangano, so long as I'm CEO, and for Mr. Randazza to say that I've abandoned the company, since all that is before the company is effectively the appeal and dealing with cooperating with auction and what-have-you, I don't know why he would be maintaining that I've ever abandoned this company or Net Sortie Systems (sp.ph.) as manager has abandoned the company.

So Mr. Muskin is here to speak on behalf of Righthaven. I do not believe that Mr. Mangano is in a position to advocate the interest of Righthaven this afternoon.

**MR. MANGANO:** Your Honor, if I can respond to that?

**THE COURT:** Yes, sir.

**MR. MANGANO:** Mr. Gibson was fired in February by the receiver. Mr. Gibson, without revealing substantive communications, had directed me to take actions that I felt were personally in violation of your order. He can make whatever representations he wants now, but I've watched him throw two other in-house lawyers under the bus, and I've seen him do it, and he's misled me to believe certain circumstances

which later were revealed not to be true, in front of Judge Hunt.

I don't want to work with Mr. Gibson. There has been repeated attempts to continue to challenge and do whatever you can with the receiver's authority, which all it did was put me in the position of facing contempt orders and sanctions, threats from opposing counsel.

I've done everything I could to represent this company. I have sought stay orders, I have fought your judgment, I have filed appeals with the Ninth Circuit, I've sought emergency stay relief from the Ninth Circuit, and all of that failed. And, Mr. Gibson was fired. I still communicated with the receiver, Ms. Pearson. I still tried to coordinate what I could do.

But, you know, at some point this has got to stop. I'm either in or I'm out. I've got to tell you, I can't represent this individual if he is at all affiliated with that entity. It's come to that point. He's filed bar complaints, he's made filings with -- before Judge Leen that are factually inaccurate and complete falsehoods in response to things that I have informed the Court as to how I proceeded with the litigation. You know, I've got a mother right now who's within three hours of a heart surgery as we speak. I've been traveling back and forth between California.

I don't want to have anything to do with this guy.

It's enough. I've appeared before you for 13 years. I've tried cases in front of you. I think, you know, at some point, you know, I was stepping between a rock and a hard place, between having the receiver tell me one thing and having a client representative, up to the point he was fired, tell me to do something that's completely counter to what I believed the spirit of your order was.

That's where I am. He can disagree, he can say whatever he wants. But I've got to get that off my chest.

**THE COURT:** Alright.

**MR. RANDAZZA:** And your Honor, if I could add just one thing here. Mr. Gibson has stated that Mr. Mangano has not been working for him since February. We have here a motion from almost April, from March 21st of 2012, in one of the other Righthaven cases, the *Righthaven versus Pahrump Life*, document 78, where they've said that Shawn Mangano was handling all aspects of the case, including the day-to-day running of it. And Ms. Sendali (sp.ph.) was told by Righthaven her job was done and Mr. Mangano would handle the case. So I think there's maybe some inconsistency there that needed to be recorded.

**THE COURT:** Alright. And Mr. Lichtenstein, let me make sure with regard to Mr. Hamilton, the newly-appointed receiver, did you have anything to add on behalf of the receiver?

**MR. LICHTENSTEIN:** Nothing at this time, your Honor.

I had represented Ms. Pearson, and I'm representing Mr. Hamilton. The reason for that is, as you can see, there are all sorts of things coming from all sorts of different directions, and so, you know, in a sense the receiver doesn't have a dog in this fight. He was just trying to carry out his particular job, and all I'm trying to do is give legal advice in order to help him do that.

**THE COURT:** And do I understand that the parties are in the throes of resolving the judgment that you've been trying to execute on for the past year?

**MR. RANDAZZA:** Your Honor, it depends on the status of the receivership. If the receiver has the authority to compromise claims, yes. If Mr. Gibson is somehow now restored to his position and is in charge, then I guess we're at square one.

**THE COURT:** Okay. Okay, Mr. Muskin, let me hear from you. There's been a proposed substitution of counsel. Are you appearing on behalf of -- Are you retained by Mr. Gibson?

**MR. MUSKIN:** I'm retained by Righthaven, your Honor.

**THE COURT:** And who on behalf of Righthaven retained you?

**MR. MUSKIN:** The physical person was Mr. Gibson. The managing member is the company that paid me.

**THE COURT:** The company paid you?

**MR. MUSKIN:** There is a managing member of Righthaven

that's a company --

**THE COURT:** No, I mean did you get a check from Righthaven?

**MR. MUSKIN:** No, I got a check from the managing member company.

**THE COURT:** From Mr. Gibson?

**MR. MUSKIN:** Well, it's -- I apologize.

**THE COURT:** Well what I'm concerned with is Righthaven's got money that is supposed to be executed.

**MR. MUSKIN:** No, I'll try and address each of these issues, your Honor.

**THE COURT:** Alright.

**MR. MUSKIN:** What you have before you today is an attempt to compromise the appeal. That's what this is about. And I'm fascinated at the dodge-ball, because the first thing that you said when you walked in the courtroom was that 'none of the orders of this Court are meant to interfere with the appeal.' Your first words. That's because that's what the Court should do. If this Court were to exercise any form of jurisdiction that would interfere with an appeal, it would be wrong, patently wrong.

So what you did was you entered an order that set forth a limited receiver. And the reason that I'm here is because I know a thing or two about receivers. And had this been a normal circumstance with an experienced receiver, the

very first thing the receiver would have done was to check for other judgments, check for liens and claims against the assets of Righthaven, because then they would marshal the assets for the benefit of all of those creditors. Because under our statute and under the Federal Rule, the receiver isn't a needle; it isn't an offensive weapon. The receiver is a blanket; it's meant to protect. And what you have is a receiver that's being used as an offensive weapon, just exactly what the statute is designed not to do.

**THE COURT:** If you're allowed to enter the case instead of Mr. Mangano, what do you propose specifically be done?

**MR. MUSKIN:** Well, interestingly enough I agree with you. They've got the intellectual property. If there are sticks and bricks that they identify that they want, they can identify them, they can get them. I'm actually in the process now --

**THE COURT:** So you're not suggesting they can't execute on their judgment?

**MR. MUSKIN:** Oh no, absolutely not. It's not bonded. You know, we've been doing this a long time, Judge. If you don't post the bond, you don't get the stay. No, not at all. And they've done just that. And if their receiver needs to sell more intellectual property than they've already got their hands on, then your order is fine just for that purpose. But

if it's the Court's intention to compromise the appeal in this case, then you do have to change --

**THE COURT:** What about ongoing operations? We've got the sticks and bricks, as you say in the intellectual property, that's in possession of the receiver for purposes of auctioning, recovering whatever can be recovered, pursuing money. We've got the appeal, which is briefed and awaiting argument in the court of appeals on the underlying order that I made a long time ago on standing and fair use and whatever else. I'm not sure what else you want to appeal.

**MR. MUSKIN:** And I want to make clear, your Honor, I'm not here to help on the intellectual property issue.

**THE COURT:** But what remains of Righthaven?

**MR. MUSKIN:** Well, the entity --

**THE COURT:** In other words, what is the --

**MR. MUSKIN:** -- the entity itself.

**THE COURT:** Yeah, I know, but I mean --

**MR. MUSKIN:** The entity itself. If has no assets. Any expenditures that are made, anything that it has, there's no secret about where the money comes from. The managing member or any of its other members can contribute money. No rule against that.

So I'm personally mystified at the use of the receiver. As Mr. Mangano said, they could have done this on their own. They didn't need a receiver. They don't get to use

the authority of the Court as a sword. It's not theirs, it's yours. It's not what it's designed for. They could have had a writ, they could have, you know, garnished, sought a writ of possession. There's a host of collection mechanisms that are out there for the collection of a judgment. Respectfully, a receiver is not the right way to do it.

**THE COURT:** Alright, alright.

**MR. MUSKIN:** Now, as you've said, most of what you intended, or all of it, has been accomplished because they have whatever there is to have. There are some CPUs; they are now the subject of the other case and they're going to be copied, as was requested in their collection effort, to see if there's any other intellectual property or anything else of value.

I'm sorry that Mr. Mangano has had some problems. I don't want to get involved in the dispute between he and Mr. Gibson. I know Mr. Gibson to be a reasonable person. He has not said anything to me that came close to being a misrepresentation. I've looked pretty close at what's gone on here. I want to facilitate a resolution.

**THE COURT:** What other creditors? You mentioned the other case. I'm familiar with the case that Judge Leen --

**MR. MUSKIN:** Oh, let me see. I may have brought it.

**THE COURT:** -- has been dealing with, but are there other --

**MR. MUSKIN:** There are some miscellaneous creditors;

not a lot of money, any of them, combined. It's --

**THE COURT:** Judgment creditors?

**MR. MUSKIN:** Yes, sir. There's one that went to judgment. It's a relatively small amount. I don't know that I brought the -- I had a list of them and I don't think I brought it, your Honor. I brought some cases that I was reading.

**THE COURT:** Alright.

**MR. MUSKIN:** But I could provide that.

**THE COURT:** I'm sorry, Mr. Mangano?

**MR. MANGANO:** There's also a $5,000 sanction order that's been unveiled.

**THE COURT:** Okay. In the case that Judge Leen is --

**MR. MANGANO:** That was in the *Democratic Underground* matter. That was Judge Hunt.

**THE COURT:** Judge Hunt's case.

**MR. MANGANO:** And that's against it, so that's another.

**THE COURT:** Okay, alright.

**MR. MUSKIN:** There's more than just this judgment. There's the Hoehn -- sorry. DiBiase, this is Hoehn?

**THE COURT:** This is Hoehn.

**MR. MUSKIN:** Sorry.

**THE COURT:** DiBiase is the one that is in front of --

**MR. MUSKIN:** Correct. And those are both attorneys' fee --

**THE COURT:** -- Judge Hunt and Judge Leen.

**MR. MUSKIN:** Right. Those are both attorneys' fee awards. And I want to say there's four other minor claims.

**THE COURT:** Okay.

**MR. MUSKIN:** And your Honor, respectfully, the receiver had a charge. It was very clear in your order. It was also clear in the motion, just as you pointed out, that they sought the intellectual property. And I guess the theory was, although I'm not certain that it actually ever fits under the rule, was because of the nature of the asset a receiver was more appropriate to handle it then than doing it as a judgment creditor. I suppose I could come up with a set of facts that would justify that, but I don't believe this one does.

**THE COURT:** Alright.

**MR. MUSKIN:** So if you have any questions, your Honor, but I am prepared --

**THE COURT:** No, no. I wanted to find out if Mr. --

**MR. MUSKIN:** I am prepared to substitute in to the case.

**THE COURT:** Alright, thanks. Mr. Randazza?

**MR. RANDAZZA:** Yes. Your Honor, a receiver is appointed when a company is so mismanaged that it can't run itself anymore. I think we couldn't have a better example of that here -- than what we have here. We have a company that was organized, seemingly, if you look at the facts, it looks

like it was organized entirely to evade the inevitable attorney's fees award that would be levied against it.

Now we have -- You know, there was a question that your Honor asked Mr. Muskin that didn't get answered, which is: Where is the money coming from to pay him?

**THE COURT:** But wouldn't the appointment of the receiver in the guise that you describe with the powers that you seek for that receiver prevent or guarantee that the appeal would be dismissed? It might satisfy this particular execution, but wouldn't it gut any appeal, any opportunity for review?

**MR. RANDAZZA:** Not necessarily, your Honor.

**THE COURT:** How would the appeal be received?

**MR. RANDAZZA:** Because we are working on a settlement. Mr. Hoehn is willing to settle for one amount if the appeal goes forward. He's willing to settle for another if the appeal is over and he can stop spending attorney's fees. I mean it's not unusual for when a party has a claim against another party and gets a judgment to say, yeah, I'll compromise my claim against you.

**THE COURT:** Why is that dependent upon the existence of the receiver? I can understand being willing to settle for one amount if the appeal is dropped. Parties negotiate those things all the time. Or, going forward in another amount. But that has no dependency on a receiver.

**MR. RANDAZZA:** It is much more appropriate, we think, at this point. First of all, the company was abandoned. There's no question about that. The facts in the record reflect that it was abandoned. So, we need --

**THE COURT:** But the company had no assets. It had --

**MR. RANDAZZA:** We need somebody to be in charge of the company.

**THE COURT:** Right.

**MR. RANDAZZA:** Now, we have asked that that be a receiver because we think that, you know, you've heard from Righthaven's counsel. If you look at the records in other cases dealing with this company, look, Mr. Gibson has not -- has been called out as being dishonest by your colleagues. He's been quite unreasonable, and I think that his only purpose here is to simply use this to throw a tantrum. I wish I had a more civil way of putting it, but that's the best I can do, your Honor.

**THE COURT:** If the case went forward through appeal and my orders are affirmed by the court of appeals and Mr. Hoehn still has his judgment, and of course he's pursuing that as best he can -- he can execute through every cognizable mechanism for execution known to anybody -- isn't that exactly where any judgment creditor would be in any case?

**MR. RANDAZZA:** That may be the case, your Honor, but Mr. Hoehn has moved for a receiver for a reason, to help

compromise his claims, to get this case against him resolved.

The fact is if this case --

**THE COURT:** Well, and he did --

**MR. RANDAZZA:** If this company didn't need a receiver, your Honor, remember they're -- I mean, what is Righthaven's purpose at this point? Its purpose is simply to prosecute that appeal. It could do, you know, when we think about what caused Righthaven's downfall, in this case alone I don't think there was another fair use decision, but all of the other cases dealt with standing because the strategic alliance agreement was drafted in a way that it did not confer standing.

**THE COURT:** I think you're right. The standing prong was I think apparent in every case, at least that I'm aware of. The fair use was not.

**MR. RANDAZZA:** So if Righthaven serves for any purpose at this point, if this is a company whose sole purpose is to continue to beat up on defendants that it's already lost to, then I think appointing a receiver to wind its affairs down is appropriate because it's being mismanaged and misused.

If, on the other hand, Righthaven were going to continue its campaign, why couldn't Righthaven write a new strategic alliance agreement? Yourself, your opinion alone would be a good guide to do that. Write a new strategic alliance agreement that actually confers the rights that would give it standing and continue on as a going concern. The only

thing that stands between Righthaven and doing that is -- you know, if Mr. Gibson actually is the CEO of the company, where is that action?

The only thing that this company is doing is serving to continue to beat up on its defendants which have already prevailed. I think if nothing else that is an appropriate place to put a receiver in place, ask that receiver to manage the company responsibly for the benefit of all of these people, you know, including Mr. Hoehn, to whom it owes money.

**THE COURT:** Yeah. What is it doing to beat up on your client other than pursuing its appeal?

**MR. RANDAZZA:** Well, pursuing its appeal is costing Mr. Hoehn quite a lot of money out of his retirement fund, your Honor, and he would be --

**THE COURT:** Okay. Okay, I understand.

**MR. RANDAZZA:** -- delighted to settle this case.

**THE COURT:** I understand there are costs attendant on both sides.

**MR. RANDAZZA:** I mean, your Honor, to be honest I want that appeal to go forward. I'm going to bring that appeal and I'm going to get my name on that really great appellate decision. You're not looking at anybody more desirous of that appeal going forward than myself. But my client has got to stop the bleeding at some point. My client was improperly dragged into this case, improperly dragged through this case,

and at this point continues to be abused in this case.

And we have a settlement that we can come to an agreement. You know, I don't want to reveal the terms of it because we haven't finalized it and I don't want it to be a public thing yet. But talking to the receiver, we've got a very reasonable claim here that any responsible person running this company would probably agree to. It allows the company to continue to exist. The company could pick itself up off the ground and have a do-over.

At this point the company doesn't even have standing to pursue that appeal because it doesn't own the copyright that it's appealing over. The receiver has it. So how does it even have standing to pursue that appeal? We haven't yet moved to dismiss the appeal because --

**THE COURT:** Shouldn't that be decided by the court of appeals?

**MR. RANDAZZA:** Your Honor, before we spend Mr. Hoehn's money filing the motion to dismiss the appeal, we had presumed at --

**THE COURT:** Look, I'm not telling you not to settle.

**MR. RANDAZZA:** -- every step of the way --

**THE COURT:** I'm not suggesting you not settle. I don't think Mr. Muskin has been a party to the discussions that you've had either. He's not been in the case, but --

**MR. RANDAZZA:** And our position is he's not properly

here because the receiver is in charge of the company. So I guess we need to know that --

**THE COURT:** Okay, okay. Well, let's cut to the chase and let's get it done.

**MR. MUSKIN:** Just one brief comment, your Honor?

**THE COURT:** Yeah.

**MR. MUSKIN:** I want the record to reflect that I did answer your question as to where the money came from. I just couldn't remember the exact name of the managing member. Although Mr. Gibson said the name earlier, I must be getting a little bit feeble. I couldn't remember the name of the managing member's corporate name. So I don't know where counsel is coming from that I didn't answer your question. I most certainly did.

They moved for a receiver -- this is a quote -- 'to resolve this claim.' Now the truth comes out. They didn't move for a receiver to sell intellectual property, Judge.

**THE COURT:** Okay. I know what they --

**MR. MUSKIN:** They moved for a receiver --

**THE COURT:** I know what the motion --

**MR. MUSKIN:** -- to compromise the appeal.

**THE COURT:** Look, I know what the motion says. I've got the motion in front of me. I read it when it was filed. I awaited a response; there was no response. I granted the motion as would be agreed to when there is no response. And

I'm satisfied -- I was satisfied then, as I stated at the last hearing, I was still satisfied and I'm satisfied now that that receivership was for the limited purpose that has been achieved in this case. Now, I'm not speaking about desks and things. If there's still something to dispose of that's within the scope of the receivership order, then that's fine.

But that receivership order does not otherwise confer upon the receiver the ability to compromise the appeal that Righthaven had already -- appeals that Righthaven had already timely filed. It was never intended to do that. The court of appeals can deal with that entire matter as it sees fit. If that compromises what the parties were trying to do in terms of settlement, that's unfortunate, perhaps, but it wouldn't be appropriate to perpetuate and allow a settlement that's based upon a misunderstanding of the authority of the receiver, the scope of the receivership and the intent of the Court in its order.

So what I'm going to do, and I'm not going to put Mr. Mangano through any more paces with regard to a situation that he's been in for a considerable period of time vis-à-vis his clients basically, more than one as he says between a rock and a hard place. Though I would say that had the matter been put before me by appropriate motion earlier, I could have tried to deal with the very issue sometime proximate to the time the order of receivership was entered, which was last December I

think was the date that the actual order was entered. The motion was filed -- yeah, December 12th, 2011.

So I'm going to confirm that the receivership is for the limited purpose that I've already outlined, exactly what was requested, and that was to satisfy the judgment, to marshal the assets, dispose of the assets to satisfy the judgment, not to fire counsel handling the appeal, not to take any other action with regard to Righthaven's appeal. It's not a general receivership for all purposes or other operation of -- well, there's no other company to operate, but for other action with regard to the company.

Secondly, I'll grant Mr. Mangano's motion to withdraw as counsel, at document 107. I agree he's in an untenable position at this point, and clearly a conflict exists between he and the only individual that he was able to communicate with as to the client previously, in the form of Mr. Gibson. I'll allow Mr. Muskin to substitute in as counsel for Righthaven.

And if the parties are able to resolve the matter by settlement, and whether that includes or doesn't include resolution of the appeal, that's something you all can do. But if not, the appeal will take its course before the Ninth Circuit Court of Appeals, as all appeals do. Whatever assets remain under the supervision of the receiver can be sold to satisfy the judgment. At that point, the duties of the receiver would be complete.

And that's all without prejudice, unless the court of appeals says otherwise, to Mr. Hoehn to pursue execution of the judgment he has through any other manners that are available to him and go after assets that are subject to execution.

But I think that that's about as much as I can say on the subject. I hope that give you the responses to the issues that you have. I realize it's not totally satisfactory to everybody.

**MR. MANGANO:** It's satisfactory to me.

**THE COURT:** Well, except for Mr. Mangano at this point.

**MR. MANGANO:** Thank you very much, your Honor.

**THE COURT:** Alright. Anything further?

**ATTORNEYS:** Thank you, your Honor.

**THE COURT:** Thanks very much. Have a good afternoon. Happy Nevada Day, everybody.

**(This proceeding was adjourned at 3:40 p.m.)**

**CERTIFICATION**

**I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**

**April 10, 2013**

**Signed** **Dated**

***TONI HUDSON, TRANSCRIBER***